

## STATE OF NEVADA

**BARBARA K. CEGAVSKE**
*Secretary of State*

**KIMBERLEY PERONDI**
*Deputy Secretary for*
*Commercial Recordings*

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

## OFFICE OF THE
## SECRETARY OF STATE

### Certified Copy

12/30/2019 10:38:22 AM

| | |
|---|---|
| **Work Order Number:** | W2019123000180 |
| **Reference Number:** | 20190383183 |
| **Through Date:** | 12/30/2019 10:38:22 AM |
| **Corporate Name:** | EQUIALT FUND, LLC |

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number | Description | Number of Pages |
|---|---|---|
| 20110382785-17 | Articles of Organization | 3 |
| 20150224332-84 | Annual List | 1 |
| 20160220229-66 | Annual List | 1 |
| 20180221251-04 | Annual List | 1 |
| 20140505790-63 | Annual List | 1 |
| 20120267762-25 | Annual List | 1 |
| 20130326577-56 | Annual List | 1 |
| 20110397199-22 | Initial List | 1 |
| 20170232633-39 | Annual List | 1 |
| 20190199281-92 | Annual List | 1 |
| 20190200413-42 | Noncommercial Registered Agent-Statement of Change | 1 |
| 20140505791-74 | Noncommercial Registered Agent-Statement of Change | 1 |

**EXHIBIT**

**10**

**STATE OF NEVADA**

*BARBARA K. CEGAVSKE*
Secretary of State

*KIMBERLEY PERONDI*
Deputy Secretary for
Commercial Recordings



**OFFICE OF THE
SECRETARY OF STATE**

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*



Certified By: Paul Reyes
Certificate Number: B20191230473134
You may verify this certificate
online at  **http://www.nvsos.gov**

Respectfully,

BARBARA K. CEGAVSKE
Nevada Secretary of State



**ROSS MILLER**
**Secretary of State**
**204 North Carson Street, Suite 4**
**Carson City, Nevada 89701-4520**
**(775) 684-5708**
**Website:  www.nvsos.gov**



*050102*

## Articles of Organization
## Limited-Liability Company
(PURSUANT TO NRS CHAPTER 86)

| Filed in the Office of | Business Number |
| --- | --- |
| *[signature]* | **E0295022011-4** |
| | Filing Number |
| Secretary of State | **20110382785-17** |
| State Of Nevada | Filed On |
| | **05/23/2011** |
| | Number of Pages |
| | **3** |

(This document was filed electronically.)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                                      ABOVE SPACE IS FOR OFFICE USE ONLY

| 1. Name of Limited-Liability Company: (must contain approved limited-liability company wording; see instructions) | EQUIALT FUND, LLC | Check box if a Series Limited-Liability Company [X] | Check box if a Restricted Limited-Liability Company [ ] |
| --- | --- | --- | --- |

| 2. Registered Agent for Service of Process: (check only one box) | [ ] Commercial Registered Agent: _____ Name |
| --- | --- |
| | [X] Noncommercial Registered Agent (name and address below)  **OR**  [ ] Office or Position with Entity (name and address below) |
| | PAUL R WASSGREN, ESQ-SEE ATTACHED |
| | Name of Noncommercial Registered Agent  **OR**  Name of Title of Office or Other Position with Entity |
| | 3800 HOWARD HUGHES PKWY S — LAS VEGAS — Nevada 89169 |
| | Street Address — City — Zip Code |
| | _____ — _____ — Nevada _____ |
| | Mailing Address (if different from street address) — City — Zip Code |

| 3. Dissolution Date: (optional) | Latest date upon which the company is to dissolve (if existence is not perpetual): _____ |
| --- | --- |

| 4. Management: (required) | Company shall be managed by:  [X] Manager(s)  **OR**  [ ] Member(s) (check only one box) |
| --- | --- |

| 5. Name and Address of each Manager or Managing Member: (attach additional page if more than 3) | 1) EQUIALT, LLC |
| --- | --- |
| | Name |
| | 10161 PARK RUN DR., #150 — LAS VEGAS — NV 89145 |
| | Street Address — City — State — Zip Code |
| | 2) _____ |
| | Name |
| | _____ — _____ — _____ |
| | Street Address — City — State — Zip Code |
| | 3) _____ |
| | Name |
| | _____ — _____ — _____ |
| | Street Address — City — State — Zip Code |

| 6. Name, Address and Signature of Organizer: (attach additional page if more than 1 organizer) | PAUL R WASSG-SEE ATTACHED | **X** PAUL R WASSGREN, ESQ |
| --- | --- | --- |
| | Name | Organizer Signature |
| | 3800 HOWARD HUGHES PKWY S — LAS VEGAS — NV 89169 |
| | Address — City — State — Zip Code |

| 7. Certificate of Acceptance of Appointment of Registered Agent: | *I hereby accept appointment as Registered Agent for the above named Entity.* |
| --- | --- |
| | **X** PAUL R WASSGREN, ESQ — 5/23/2011 |
| | **Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity** — Date |

*This form must be accompanied by appropriate fees.*                    Nevada Secretary of State NRS 86 DLLC Articles
                                                                          Revised: 9-9-10

# Articles of Organization
(PURSUANT TO NRS CHAPTER 86)
## *CONTINUED*
### *Includes data that is too long to fit in the fields on the NRS 86 Form and all additional managers and organizers*

| **ENTITY NAME**: | EQUIALT FUND, LLC |
|---|---|

| **FOREIGN NAME TRANSLATION**: | Not Applicable |
|---|---|

| **REGISTERED AGENT NAME**: | PAUL R WASSGREN, ESQ |
|---|---|
| **STREET ADDRESS**: | 3800 HOWARD HUGHES PKWY STE 500, LAS VEGAS, NV 89169 |
| **MAILING ADDRESS**: | , , NV |

| ADDITIONAL | Organizers |
|---|---|
| Name: PAUL R WASSGREN, ESQ | |
| Address: 3800 HOWARD HUGHES PKWY STE 500 | |
| City: LAS VEGAS | |
| State: NV | |
| Zip Code: 89169 | |

PAGE 2

## ADDENDUM TO ARTICLES OF ORGANIZATION
## OF
## EQUIALT FUND, LLC

### ARTICLE 8
### PURPOSES AND POWERS

The Company is organized for any legal and lawful purpose for which a limited liability company may be organized in the State of Nevada, except banking and insurance. The Company shall have all the powers granted to a limited liability company under the laws of the State of Nevada.

### ARTICLE 9
### MANAGEMENT OF THE COMPANY

No individual Members of the Company, other than the Manager, shall have any individual rights or powers to take part in the management of the Company other than as expressly set forth in the Act or the Operating Agreement. No Member who is not also a Manager shall have the right to contract debts or incur liability on behalf of the Company.

### ARTICLE 10
### LIABILITIES OF MANAGERS AND MEMBERS

Members and Managers of the Company are not individually liable for any debts or liabilities of the Company.

### ARTICLE 11
### INDEMNIFICATION

The Company may indemnify any person or entity who is or was a Manager, Member, Officer, Director, Employee, or Agent of the Company to the fullest extent permitted or authorized by Nev. Rev. Stat. §§86.411 to 86.461, et. seq. The indemnification and advance of expenses authorized herein shall not be exclusive to any other rights to which any manager, officer, employee, or agent may be entitled under any bylaw, agreement or otherwise. The Articles of Organization shall not be interpreted to limit in any manner the indemnification or right to advancement for expenses of an individual who would otherwise be entitled thereto.

INITIAL ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE
BUSINESS LICENSE APPLICATION OF:

ENTITY NUMBER

EQUIALT FUND, LLC

E0295022011-4

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF | MAY, 2015 | TO | MAY, 2016

*100402*

USE BLACK INK ONLY - DO NOT HIGHLIGHT

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

| Filed in the Office of | Business Number |
| | E0295022011-4 |
| *Barbara K. Cegavske* | Filing Number |
| | 20150224332-84 |
| Secretary of State | Filed On |
| State Of Nevada | 05/18/2015 |
| | Number of Pages |
| | 1 |

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $125.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

(This document was filed electronically.)
ABOVE SPACE IS FOR OFFICE USE ONLY

**ANNUAL LIST FILING FEE** $125.00   **LATE PENALTY:** $75.00 (if filing late)   **BUSINESS LICENSE FEE:** $200.00   **LATE PENALTY:** $100.00 (if filing late)

---

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

**NRS 76.020 Exemption Codes**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: [ ]

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

**NOTE:** If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.

| NAME | | | | |
| EQUIALT, LLC | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 10161 PARK RUN DR., #150 , USA | LAS VEGAS | NV | 89145 |

| NAME | | | | |
| | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | | | | |
| | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | | | | |
| | MANAGER OR MANAGING MEMBER | | | |
| ADDRESS | CITY | STATE | ZIP CODE |

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** BRIAN DAVISON

| Title | Date |
| MANAGER OF MANAGER | 5/18/2015 12:39:09 PM |

**Signature of Manager, Managing Member or Other Authorized Signature**

Nevada Secretary of State List ManorMem
Revised: 1-5-15

**INITIAL ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

| | ENTITY NUMBER |
|---|---|
| EQUIALT FUND, LLC | E0295022011-4 |
| NAME OF LIMITED-LIABILITY COMPANY | |

FOR THE FILING PERIOD OF   **MAY, 2016**   TO   **MAY, 2017**

*100403*

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

## **YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov**

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Return completed form with the fee of $150.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

| Filed in the Office of | Business Number E0295022011-4 |
|---|---|
| *Barbara K. Cegavske* | Filing Number 20160220229-66 |
| Secretary of State State Of Nevada | Filed On 05/16/2016 |
| | Number of Pages 1 |

(This document was filed electronically.)
**ABOVE SPACE IS FOR OFFICE USE ONLY**

**ANNUAL LIST FILING FEE:** $150.00   **LATE PENALTY:** $75.00 (if filing late)          **BUSINESS LICENSE FEE:** $200.00   **LATE PENALTY:** $100.00 (if filing late)

---

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

**NRS 76.020 Exemption Codes**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: ☐

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

**NOTE:** If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.

| NAME | | | |
|---|---|---|---|
| EQUIALT, LLC | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 10161 PARK RUN DR., #150 , USA | LAS VEGAS | NV | 89145 |

| NAME | | | |
|---|---|---|---|
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | | | |
|---|---|---|---|
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | | | |
|---|---|---|---|
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** BRIAN DAVISON

| Title | Date |
|---|---|
| AUTHORIZED REPRESENTATIVE | 5/16/2016 1:22:30 PM |

**Signature of Manager, Managing Member or Other Authorized Signature**

Nevada Secretary of State List ManorMem
Revised: 7-1-15

**INITIAL ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER

| EQUIALT FUND, LLC | E0295022011-4 |
|---|---|

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF **MAY, 2018** TO **MAY, 2019**

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. A **Manager, or if none, a Managing Member** of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $150.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A **copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

| | Business Number |
|---|---|
| Filed in the Office of | E0295022011-4 |
| *Barbara K. Cegavske* | Filing Number |
| | 20180221251-04 |
| Secretary of State | Filed On |
| State Of Nevada | 05/14/2018 |
| | Number of Pages |
| | 1 |

(This document was filed electronically.)
**ABOVE SPACE IS FOR OFFICE USE ONLY**

\*100403\*

**ANNUAL LIST FILING FEE:** $150.00   **LATE PENALTY:** $75.00 (if filing late)       **BUSINESS LICENSE  FEE:** $200.00   **LATE PENALTY:** $100.00 (if filing late)

---

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

**NRS 76.020 Exemption Codes**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: ☐

001 - Governmental Entit
006 - NRS 680B.020 Insurance Co.

**NOTE:** If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.

| NAME | |
|---|---|
| EQUIALT, LLC | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 10161 PARK RUN DR., #150 | LAS VEGAS | NV | 89145 |

| NAME | |
|---|---|
| | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| NAME | |
|---|---|
| | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| NAME | |
|---|---|
| | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

---

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** BRIAN DAVISON

| Title | Date |
|---|---|
| AUTHORIZED REPRESENTATIVE | 5/14/2018 5:04:00 PM |

**Signature of Manager, Managing Member or Other Authorized Signature**

Nevada Secretary of State List ManorMem
Revised: 7-1-17

INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE
BUSINESS LICENSE APPLICATION OF:

ENTITY NUMBER
E0295022011-4

EquiAlt Fund, LLC
NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF          5/31/2014          TO          5/31/2015

USE BLACK INK ONLY - DO NOT HIGHLIGHT

\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\*

[X] Return one file stamped copy. (If filing not accompanied by order instructions,
file stamped copy will be sent to registered agent.)

_IMPORTANT: Read instructions before completing and returning this form._

1. Print or type names and addresses, either residence or business, for all manager or managing
members. A Manager, or if none, a Managing Member of the LLC must sign the form. FORM WILL
BE RETURNED IF UNSIGNED.

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $125.00. A $75.00 penalty must be added for failure to file this
form by the deadline. An annual list received more than 90 days before its due date shall be deemed
an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. Ordering Copies: If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification.
A copy fee of $2.00 per page is required for each additional copy generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must
accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms
received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

Filed in the Office of
~~~ (signature)

Secretary of State
State Of Nevada

Business Number
E0295022011-4
Filing Number
20140505790-63
Filed On
07/14/2014
Number of Pages
1

ABOVE SPACE IS FOR OFFICE USE ONLY

| ANNUAL LIST FILING FEE: $125.00 | LATE PENALTY: $75.00 (if filing late) | BUSINESS LICENSE FEE: $200.00 | LATE PENALTY: $100.00 (if filing late) |

CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW

NRS 76.020 Exemption Codes

[ ] Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: [    ]

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to
attach the Declaration of Eligibility form will result in rejection, which could result in late fees.

NAME
EquiAlt, LLC

MANAGER OR MANAGING MEMBER

ADDRESS
10161 Park Run Drive, #150

CITY
Las Vegas

STATE
NV

ZIP CODE
89145

NAME

MANAGER OR MANAGING MEMBER

ADDRESS

CITY

STATE    ZIP CODE

NAME

MANAGER OR MANAGING MEMBER

ADDRESS

CITY

STATE    ZIP CODE

NAME

MANAGER OR MANAGING MEMBER

ADDRESS

CITY

STATE    ZIP CODE

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing
the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is
a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X _(signature)_

Signature of Manager, Managing Member or
Other Authorized Signature

Title
Authorized Signatory

Date
July 11, 2014

Nevada Secretary of State List Manor/Mem
Revised: 8-8-13

**ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:**

FILE NUMBER

EQUIALT FUND, LLC

E0295022011-4

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF ___5/2012___ TO ___5/2013___

**\*\*YOU MAY FILE THIS FORM ONLINE AT WWW.NVSOS.GOV\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

PAUL R WASSGREN, ESQ
3800 HOWARD HUGHES PKWY STE 500
LAS VEGAS, NV 89169  USA

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: WWW.NVSOS.GOV

*110401*

| Filed in the Office of | Business Number E0295022011-4 |
| | Filing Number 20120267762-25 |
| Secretary of State State Of Nevada | Filed On 04/17/2012 |
| | Number of Pages 1 |

{This document was filed electronically.}
ABOVE SPACE IS FOR OFFICE USE ONLY

USE BLACK INK ONLY - DO NOT HIGHLIGHT

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT*: *Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Annual list fee is $125.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

ANNUAL LIST FILING FEE: $125.00     LATE PENALTY: $75.00     BUSINESS LICENSE FEE: $200.00     LATE PENALTY: $100.00

**Complete only if applicable**

☐ Pursuant to NRS, this corporation is exempt from the business license fee.  Exemption code: _____

☐ Month and year your State Business License expires: ___ 20 ___

**Section 7(2) Exemption Codes**
001 - Governmental Entity
002 - 501(c) Nonprofit Entity
003 - Home-based Business
004 - Natural Person with 4 or less rental dwelling units
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
| EQUIALT, LLC | ☑ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
| 10161 PARK RUN DR., #150 , USA | LAS VEGAS | NV | 89145 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
| | ☐ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
| | ☐ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
| | ☐ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of sections 6 to 18 of AB 146 of the 2009 session of the Nevada Legislature and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** BRIAN DAVISON

**Signature of Manager or Managing Member**

| Title | Date |
| MANAGER OF MANAGER | 4/17/2012 2:50:42 PM |

Nevada Secretary of State Annual List ManorMem
Revised: 8-5-09

**ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:**

FILE NUMBER

EQUIALT FUND, LLC

E0295022011-4

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF — MAY, 2013 — TO — MAY, 2014

**\*\*YOU MAY FILE THIS FORM ONLINE AT WWW.NVSOS.GOV\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process may be served is:

PAUL R WASSGREN, ESQ
3800 HOWARD HUGHES PKWY STE 500
LAS VEGAS, NV 89169

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: WWW.NVSOS.GOV

\*110405\*

| Filed in the Office of | Business Number E0295022011-4 |
|---|---|
| | Filing Number 20130326577-56 |
| Secretary of State | Filed On 05/16/2013 |
| State Of Nevada | Number of Pages 1 |

( This document was filed electronically )

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

ABOVE SPACE IS FOR OFFICE USE ONLY

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Return completed form with the fee of $125.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

ANNUAL LIST FILING FEE: $125.00 — LATE PENALTY: $75.00 — BUSINESS LICENSE FEE: $200.00 — LATE PENALTY: $100.00

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

**NRS 76.020 Exemption Codes**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: [ ]

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

**NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| EQUIALT, LLC | ☒ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 10161 PARK RUN DR., #150 , USA | LAS VEGAS | NV | 89145 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) | | |
|---|---|---|---|
| | ☐ MANAGER | ☐ MANAGING MEMBER | |
| ADDRESS | CITY | STATE | ZIP CODE |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of NRS Chapter 76 and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** BRIAN DAVISON

| Title | Date |
|---|---|
| CEO OF MANAGER | 5/16/2013 12:18:07 PM |

**Signature of Manager or Managing Member**

Nevada Secretary of State Annual List ManorMem
Revised: 3-9-12

**INITIAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:**

FILE NUMBER

EQUIALT FUND, LLC

E0295022011-4

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF  5/2011  TO  5/2012

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsos.gov\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

PAUL R WASSGREN, ESQ
3800 HOWARD HUGHES PKWY STE 500
LAS VEGAS, NV 89169 USA

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: www.nvsos.gov

\*100401\*

| Filed in the Office of | Business Number E0295022011-4 |
|---|---|
| | Filing Number 20110397199-22 |
| Secretary of State | Filed On 05/27/2011 |
| State Of Nevada | Number of Pages 1 |

(This document was filed electronically)

ABOVE SPACE IS FOR OFFICE USE ONLY

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

☐ **Return one file stamped copy.** (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT: Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*
2. If there are additional managers or managing members, attach a list of them to this form.
3. Initial list fee is $125.00 . A $75.00 penalty must be added for failure to file this form by the last day of the first month following organization date.
4. State business license fee is $200.00. Effective 2/1/2010, $100 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the first month following the initial registration date. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include initial list and business license fees will result in rejection of filing.

INITIAL LIST FILING FEE: $125.00     LATE PENALTY: $75.00     BUSINESS LICENSE FEE: $200.00     LATE PENALTY: $100.00

**Complete only if applicable**

☐ Pursuant to NRS, this corporation is exempt from the business license fee. Exemption code:

☐ Month and year your State Business License expires: ___ 20 ___

**Section 7(2) Exemption Codes**
001 - Governmental Entity
002 - 501(c) Nonprofit Entity
003 - Home-based Business
004 - Natural Person with 4 or less rental dwelling units
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
| EQUIALT, LLC | ☑ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 10161 PARK RUN DR., #150 , USA | LAS VEGAS | NV | 89145 |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
| | ☐ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
| | ☐ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
| | ☐ MANAGER   ☐ MANAGING MEMBER |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of sections 6 to 18 of AB 146 of the 2009 session of the Nevada Legislature and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

D. DAVISON

X _____

**Signature of Manager or Managing Member**

| Title | Date |
|---|---|
| AUTHORIZED SIGNATORY | 5/27/2011 10:17:31 AM |

# INITIAL ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE

## BUSINESS LICENSE APPLICATION OF:

ENTITY NUMBER

EQUIALT FUND, LLC

E0295022011-4

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF  MAY, 2017  TO  MAY, 2018

*100403*

USE BLACK INK ONLY - DO NOT HIGHLIGHT

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐  Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $150.00. A $75.00 penalty will be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A **copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

| Filed in the Office of | Business Number **E0295022011-4** |
| *Barbara K. Cegavske* | Filing Number **20170232633-39** |
| Secretary of State State Of Nevada | Filed On **05/30/2017** |
| | Number of Pages **1** |

(This document was filed electronically.)
ABOVE SPACE IS FOR OFFICE USE ONLY

**ANNUAL LIST FILING FEE:** $150.00   LATE PENALTY: $75.00 (if filing late)     **BUSINESS LICENSE FEE:** $200.00   LATE PENALTY: $100.00 (if filing late)

---

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

☐  Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code:

**NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

**NRS 76.020 Exemption Codes**

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

NAME
EQUIALT, LLC

**MANAGER OR MANAGING MEMBER**

| ADDRESS | CITY | STATE | ZIP CODE |
| 10161 PARK RUN DR., #150 | LAS VEGAS | NV | 89145 |

NAME

**MANAGER OR MANAGING MEMBER**

| ADDRESS | CITY | STATE | ZIP CODE |

NAME

**MANAGER OR MANAGING MEMBER**

| ADDRESS | CITY | STATE | ZIP CODE |

NAME

**MANAGER OR MANAGING MEMBER**

| ADDRESS | CITY | STATE | ZIP CODE |

---

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** BRIAN DAVISON

**Signature of Manager, Managing Member or Other Authorized Signature**

| Title | Date |
| CEO OF MANAGER | 5/30/2017 1:25:26 PM |

Nevada Secretary of State List ManorMem
Revised: 7-1-15

**INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER

| EQUIALT FUND, LLC | E0295022011-4 |
|---|---|

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF MAY, 2019 TO MAY, 2020

*100403*

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

_IMPORTANT:_ Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. _FORM WILL BE RETURNED IF UNSIGNED._

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $150.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

| Filed in the Office of | Business Number E0295022011-4 |
|---|---|
| _Barbara K. Cegavske_ Secretary of State State Of Nevada | Filing Number 20190199281-92 |
| | Filed On 05/06/2019 |
| | Number of Pages 1 |

(This document was filed electronically.)
**ABOVE SPACE IS FOR OFFICE USE ONLY**

**ANNUAL LIST FILING FEE:** $150.00   **LATE PENALTY:** $75.00 (if filing late)       **BUSINESS LICENSE FEE:** $200.00   **LATE PENALTY:** $100.00 (if filing late)

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

**NRS 76.020 Exemption Codes**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: ☐

001 - Governmental Entit
006 - NRS 680B.020 Insurance Co.

**NOTE:** If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.

| NAME | | | |
|---|---|---|---|
| EQUIALT, LLC | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| 10161 PARK RUN DR., #150 | LAS VEGAS | NV | 89145 |

| NAME | | | |
|---|---|---|---|
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | | | |
|---|---|---|---|
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

| NAME | | | |
|---|---|---|---|
| | **MANAGER OR MANAGING MEMBER** | | |
| ADDRESS | CITY | STATE | ZIP CODE |
| | | | |

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** BRIAN DAVISON

**Signature of Manager, Managing Member or Other Authorized Signature**

| Title | Date |
|---|---|
| MANAGER OF MANAGER | 5/6/2019 4:17:33 PM |

Nevada Secretary of State List ManorMem
Revised: 7-1-17




*181004*

**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

# Statement of Change of
# Registered Agent
# by Represented Entity
### (PURSUANT TO NRS 77.340)

| Filed in the Office of | Business Number E0295022011-4 |
|---|---|
| *Barbara K. Cegavske* | Filing Number 20190200413-42 |
| Secretary of State State Of Nevada | Filed On 05/06/2019 |
| | Number of Pages 1 |

This form may be submitted by: the Represented Entity to appoint a new Registered Agent or amend own service of process info. For more information please visit http://www.nvsos.gov/index.aspx?page=141

USE BLACK INK ONLY - DO NOT HIGHLIGHT

ABOVE SPACE IS FOR OFFICE USE ONLY

1. Name of Represented Entity:

EquiAlt Fund, LLC

2. Entity File Number:   E0295022011-4

3. This statement of change will have the following effect:   (check only one)

[X]  Appoints a new agent for service of process (complete 4a or 4b)

[ ]  Updates contact information of the Represented Entity acting as own agent (complete 4c)

4. Information in effect upon the filing of this statement:   (complete only one section)

a)  Commercial Registered Agent:
Registered Agent Solutions, Inc.
Name

b)  Noncommercial Registered Agent:

Name

|  | | Nevada | |
|---|---|---|---|
| Street Address | City | | Zip Code |
|  | | Nevada | |
| Mailing Address (if different from street address) | City | | Zip Code |

c)  Title of Office or Other Position within Represented Entity:

Name of Title or Position

|  | | Nevada | |
|---|---|---|---|
| Street Address | City | | Zip Code |
|  | | Nevada | |
| Mailing Address (if different from street address) | City | | Zip Code |

5. Signature of Represented Entity: (required)

X _____     5-6-2019
Authorized Signature                                          Date

6. Registered Agent Acceptance:  (required)
I hereby accept appointment as Registered Agent for the above named Entity.

X _____, Assistant Secretary          Date 5/6/19
Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity

**FEE: $60.00**
*This form must be accompanied by appropriate fees.*

Nevada Secretary of State Form RA Change by Entity
Revised: 1-5-15



**ROSS MILLER**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov



*181003*

| Filed in the Office of | Business Number E0295022011-4 |
|---|---|
| *signature* | Filing Number 20140505791-74 |
| Secretary of State | Filed On 07/14/2014 |
| State Of Nevada | Number of Pages 1 |

# Statement of Change of Registered Agent by Represented Entity

(PURSUANT TO NRS 77.340)

This form may be submitted by: the Represented Entity to appoint a new Registered Agent or amend own service of process info. For more information please visit http://www.nvsos.gov/index.aspx?page=141

USE BLACK INK ONLY - DO NOT HIGHLIGHT          ABOVE SPACE IS FOR OFFICE USE ONLY

**1. Name of Represented Entity:**

EquiAlt Fund, LLC

**2. Entity File Number:**  E0295022011-4

**3. This statement of change will have the following effect:**   (check only one)

[X]  Appoints a new agent for service of process (complete 4a or 4b)

[ ]  Updates contact information of the Represented Entity acting as own agent (complete 4c)

**4. Information in effect upon the filing of this statement:**   (complete only one section)

a) Commercial Registered Agent:

Laughlin Associates, Inc.
Name

b) Noncommercial Registered Agent:

_____
Name

| Street Address | City | Nevada Zip Code |
|---|---|---|
| Mailing Address (if different from street address) | City | Nevada Zip Code |

c) Title of Office or Other Position within Represented Entity:

Authorized Signatory
Name of Title or Position

| 3800 Howard Hughes Parkway, Suite 500 | Las Vegas | Nevada | 89169 |
|---|---|---|---|
| Street Address | City | | Zip Code |
| Mailing Address (if different from street address) | City | Nevada | Zip Code |

**5. Signature of Represented Entity: (required)**

X *signature*                     July 11, 2014
Authorized Signature                                  Date

**6. Registered Agent Acceptance: (required)**

I hereby accept appointment as Registered Agent for the above named Entity.

X *signature*                     7/14/14
Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity          Date

**FEE: $60.00**
*This form must be accompanied by appropriate fees.*

Nevada Secretary of State Form RA Change by Entity
Effective 5-7-13





# CERTIFICATE OF EXISTENCE
# WITH STATUS IN GOOD STANDING

I, Barbara K. Cegavske, the duly qualified and elected Nevada Secretary of State, do hereby certify that I am, by the laws of said State, the custodian of the records relating to filings by corporations, non-profit corporations, corporations sole, limited-liability companies, limited  partnerships, limited-liability partnerships and business trusts pursuant to Title 7 of the Nevada Revised Statutes which are either presently in a status of good standing or were in good standing for a time period subsequent of 1976 and am the proper officer to execute this certificate.

I further certify that the records of the Nevada Secretary of State, at the date of this certificate, evidence, **EQUIALT FUND, LLC**, as a DOMESTIC LIMITED-LIABILITY COMPANY (86) duly organized under the laws of Nevada and existing under and by virtue of the laws of the State of Nevada since 05/23/2011, and is in good standing in this state.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on  12/30/2019.

*Barbara K. Cegavske*

BARBARA K. CEGAVSKE
Secretary of State

Certificate Number: B20191230473145
You may verify this certificate
online at http://www.nvsos.gov



**EXHIBIT**

**11**

# EQUIALT

**PRIVATE PLACEMENT MEMORANDUM**

**EQUIALT FUND, LLC**



VG1 164167v2 04/26/13

# PRIVATE PLACEMENT MEMORANDUM

## EQUIALT FUND, LLC

### $50,000,000

### 10% DEBENTURES

### MINIMUM PURCHASE: $25,000

EQUIALT FUND, LLC, a Nevada limited liability company (the "Company"), organized under the Nevada Limited Liability Company Act, hereby offers (the "Offering"), by and through its Manager, up to Fifty Million Dollars ($50,000,000) in 10% Debentures ( the "Securities") of the Company. EQUIALT, LLC, a Nevada limited liability company, is the Manager (the "Manager") of the Company. The securities referred to herein are being offered on a best efforts basis to residents of Arizona, California, Florida and Nevada, and may be offered in other states.

DATE OF THIS PRIVATE PLACEMENT MEMORANDUM:  June 20, 2011

INVESTMENT IN THE SECURITIES INVOLVES A HIGH DEGREE OF RISK. INVESTORS WILL BE REQUIRED TO REPRESENT THAT THEY ARE FAMILIAR WITH AND UNDERSTAND THE TERMS OF THE OFFERING (SEE "RISK FACTORS," "CONFLICTS OF INTEREST" AND "COMPENSATION AND FEES TO THE MANAGER AND AFFILIATES.").

THE SECURITIES HAVE NOT BEEN REGISTERED WITH NOR APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("COMMISSION") NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS OFFERING HAS NOT BEEN APPROVED OR DISAPPROVED UNDER APPLICABLE STATE SECURITIES LAWS, BY THE SECURITIES DIVISION OF CORPORATIONS, SECURITIES REGULATION DIVISION ("DIVISION"), NOR HAS THE DIVISION REVIEWED OR PASSED UPON THE ACCURACY OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

DURING THE COURSE OF THE OFFERING AND PRIOR TO SALE, EACH OFFEREE OF THE SECURITIES AND HIS ADVISOR(S) ARE INVITED TO ASK QUESTIONS OF AND OBTAIN ADDITIONAL INFORMATION FROM THE MANAGER CONCERNING THE TERMS AND CONDITIONS OF THE OFFERING, THE COMPANY, THE DEBT TO BE OWED BY THE COMPANY AND ANY OTHER RELEVANT MATTERS (INCLUDING, BUT NOT LIMITED TO, ADDITIONAL INFORMATION TO VERIFY THE ACCURACY OF THE INFORMATION SET FORTH HEREIN), TO THE EXTENT THE MANAGER POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

OFFEREES OR ADVISORS HAVING QUESTIONS OR DESIRING ADDITIONAL INFORMATION SHOULD CONTACT THE MANAGER.

THIS MEMORANDUM DOES NOT CONTAIN AN UNTRUE STATEMENT OF A MATERIAL FACT OR OMIT TO STATE A MATERIAL FACT NECESSARY TO MAKE THE STATEMENTS MADE, IN LIGHT OF THE CIRCUMSTANCES UNDER WHICH THEY WERE MADE, NOT MISLEADING. IT CONTAINS A FAIR SUMMARY OF THE MATERIAL TERMS OF DOCUMENTS PURPORTED TO BE SUMMARIZED HEREIN. THIS MEMORANDUM CONTAINS SUMMARIES OF CERTAIN DOCUMENTS, THAT ARE BELIEVED TO BE ACCURATE, BUT REFERENCE IS HEREBY MADE TO THE ACTUAL DOCUMENTS, COPIES OF WHICH ARE ATTACHED HERETO OR ARE AVAILABLE AT THE OFFICE OF THE MANAGER, FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO. ALL SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THIS REFERENCE, AND NOTHING IN THIS MEMORANDUM SHALL EXTEND THE LIABILITY UNDER ANY SUCH DOCUMENTS OF ANY OF THE PARTIES HERETO. ALL DOCUMENTS RELATING TO THE OFFERING WILL BE MADE AVAILABLE TO THE OFFEREE NAMED BELOW AND/OR HIS ADVISOR(S) UPON REQUEST.

THE OFFERING CAN BE WITHDRAWN AT ANY TIME BEFORE CONSUMMATION AND IS SPECIFICALLY MADE SUBJECT TO THE CONDITIONS DESCRIBED IN THIS MEMORANDUM. IN CONNECTION WITH THE OFFERING AND SALE OF THE SECURITIES, THE MANAGER RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO REJECT ANY SUBSCRIPTION IN WHOLE OR IN PART OR TO ALLOT TO ANY PROSPECTIVE INVESTOR LESS THAN THE SECURITIES SUBSCRIBED FOR BY SUCH PROSPECTIVE INVESTOR.

SINCE THERE ARE SUBSTANTIAL RESTRICTIONS ON THE TRANSFERABILITY OF THE SECURITIES, EACH OFFEREE MUST ASSUME THAT HE WILL BEAR THE ECONOMIC RISK OF HIS INVESTMENT FOR AN INDEFINITE PERIOD. THE SECURITIES MAY NOT BE TRANSFERRED WITHOUT THE PRIOR WRITTEN CONSENT OF THE REMAINING MEMBERS. IN ADDITION, SECURITIES ARE NOT REGISTERED FOR SALE TO THE PUBLIC UNDER THE SECURITIES ACT OF 1933 OR THE SECURITIES LAWS OF ANY STATE AND THE SECURITIES MAY BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF BY AN INVESTOR ONLY IF, AMONG OTHER THINGS, THE SECURITIES ARE REGISTERED OR, IN THE OPINION OF COUNSEL TO THE COMPANY, REGISTRATION IS NOT REQUIRED UNDER SUCH LAWS.

THIS MEMORANDUM HAS BEEN PREPARED SOLELY FOR THE USE OF PERSONS WHO MAY WANT TO PURCHASE SECURITIES AND DELIVERY THEREOF CONSTITUTES AN OFFER ONLY IF THE NAME OF AN OFFEREE APPEARS IN THE APPROPRIATE SPACE PROVIDED BELOW AND IF THE PERSON SO NAMED MEETS THE SUITABILITY STANDARDS SET FORTH UNDER "QUALIFICATION OF INVESTORS." ANY DISTRIBUTION OF THIS MEMORANDUM TO ANY PERSON OTHER THAN THE OFFEREE NAMED BELOW (OR TO THOSE INDIVIDUALS WHOM HE RETAINS TO ADVISE HIM WITH RESPECT THERETO) IS UNAUTHORIZED AND ANY REPRODUCTION OF THIS

MEMORANDUM IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, WITHOUT THE PRIOR WRITTEN CONSENT OF THE MANAGER, IS PROHIBITED.

NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED TO BE MADE IN THIS MEMORANDUM OR SHOULD BE INFERRED THEREFROM WITH RESPECT TO THE ECONOMIC RETURN OR THE TAX TREATMENT WHICH MAY ACCRUE TO THE INVESTOR.  NO ASSURANCE CAN BE GIVEN THAT EXISTING TAX LAWS WILL NOT BE CHANGED OR INTERPRETED ADVERSELY, EITHER OF WHICH MAY DENY THE INVESTORS ALL OR A PORTION OF THE TAX TREATMENT CONSIDERED HEREIN.  PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, TAX OR INVESTMENT ADVICE. EACH INVESTOR SHOULD CONSULT HIS OWN ATTORNEY, ACCOUNTANT AND OTHER ADVISORS AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING A PURCHASE BY HIM OF A DEBENTURE.

NO OFFERING LITERATURE OR ADVERTISING IN WHATEVER FORM WILL OR MAY BE EMPLOYED IN THE OFFERING EXCEPT FOR THIS MEMORANDUM AND STATEMENTS CONTAINED OR DOCUMENTS SUMMARIZED HEREIN.  NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATIONS, OR GIVE ANY INFORMATION, WITH RESPECT TO THE SECURITIES, EXCEPT FOR INFORMATION CONTAINED OR REFERRED TO HEREIN.

| Name of Offeree: | | Memorandum Number: | |
|---|---|---|---|

i

# TABLE OF CONTENTS

QUALIFICATION OF INVESTORS.....................................4

GLOSSARY OF TERMS.............................................4

SUMMARY OF THE OFFERING.......................................4

THE OFFERING..................................................4

METHOD OF DISTRIBUTION........................................4

RISK AND OTHER IMPORTANT FACTORS..............................4

SOURCES AND USES OF FUNDS.....................................4

PROJECTED SOURCES AND USES OF CASH............................4

COMPENSATION AND FEES TO THE MANAGER..........................4

THE PROJECT...................................................4

MANAGEMENT OF THE PROJECT.....................................4

COMPANY INVESTMENT OBJECTIVES AND POLICIES....................4

COMPETITION...................................................4

CONFLICTS OF INTEREST.........................................4

STANDARD OF CARE; INDEMNIFICATION.............................4

RESTRICTIONS ON TRANSFER......................................4

EXHIBIT A.....................................................4
FORM OF DEBENTURE.............................................4
EXHIBIT B.....................................................4
OFFEREE SUITABILITY QUESTIONNAIRE.............................4
EXHIBIT C.....................................................4
SUBSCRIPTION AGREEMENT........................................4
EXHIBIT D.....................................................4
PRO FORMA.....................................................4

These securities are offered subject to (a) prior sale, (b) approval of counsel, (c) the right to terminate the offer without prior notice or to reject any subscription, and (d) certain other conditions.

## QUALIFICATION OF INVESTORS

Each Debenture requires a minimum investment of $25,000, provided, however, the Company reserves the right to accept subscriptions for a lesser amount. Additional investment may be made in increments of $5,000.

Investment in the Securities offered hereby involves risk and is suitable only for persons of financial means who have provided for liquidity in their other investments. No Securities will be sold to Investors who will not warrant and represent to the Company and the Manager (and unless the Manager shall have reasonable grounds to believe) that such offeree has such knowledge and expertise in financial and business matters, is capable of evaluating the merits and risks of the prospective investment and is able to bear the economic risks of the investment, or alternatively, that such Investor's legal or financial representative has such knowledge and expertise about financial and business matters and is capable of evaluating the merits and risks of the investment together with the Investor having the ability to bear the economic risks of the investment. In either case, the Investor must also warrant and represent to the Company and the Manager that he is acquiring the Securities for his own account.

Each Investor must satisfy the Manager that the Investor can bear a total loss of his investment. Each Investor will be required to represent that he is acquiring the Securities being purchased by him for investment and for his own account, and not with a view to resale or distribution. Resale of the Securities is subject to extensive restrictions (see "SUMMARY OF THE OFFERING"). It is not expected that any public market for the resale of the Securities will develop.

## GLOSSARY OF TERMS

"Act" - the Securities Act of 1933, as amended.

"Affiliate" - (i) any person directly or indirectly controlling, controlled by or under common control with another person, (ii) a person owning or controlling 10% or more of the outstanding voting securities of such other person, (iii) any officer, director, partner or employee of such person and (iv) if such other person is an officer, director, partner or employee, any company for which such person acts in any such capacity.

"Agreement" - the Operating Agreement of the Company, as such may be amended from time to time.

"Debenture" - the 10% Debentures offered to Investors herein.

"Manager" - this Company's Manager:  EQUIALT, LLC or its successor(s) as determined by the Agreement.

"Memorandum" - this Private Placement Memorandum.

"Company" - this limited liability company:   EQUIALT FUND, LLC, a Nevada limited liability company.

"Investor(s)" – prospective purchasers of Debentures in the Company.

"Project" - the proposed business of the Company (i.e., acquiring, improving and/or selling distressed real property).

"Reserves" - all reserves established by the Manager in its sole discretion for the Company's purposes, including, but not limited to, operating expenses and other working capital needs, liabilities, and taxes.

### SUMMARY OF THE OFFERING

This summary of certain provisions of the Memorandum is intended only for a quick reference and is not intended to be complete.  This Memorandum describes in detail numerous aspects of the transaction which are material to Investors, including those summarized below, and this Memorandum and the accompanying Exhibits must be read in their entirety by reference to the full text of this Memorandum and the underlying documents.

The Offering.

The Memorandum describes an offering (the "Offering") to prospective Investors of 10% Debentures issued by EQUIALT FUND, LLC, a limited liability company formed under the laws of the State of Nevada.

The Company.

EQUIALT FUND, LLC (the "Company"), a Nevada limited liability company, was formed as of May 23, 2011, when its Articles of Organization were filed with the Nevada Secretary of State's Office pursuant to the Nevada Limited Liability Company Act as adopted by the State of Nevada.  The office of the Company is located at 10161 Park Run Drive, Suite 150, Las Vegas, Nevada  89145.

The Manager.

The Manager of the Company is EQUIALT, LLC, a Nevada limited liability company (See "THE MANAGERS").

Purpose of the Offering.

The purpose of this Offering is to secure capital in order to enable the Company to purchase, improve, lease and/or dispose of distressed real property, enter into opportunistic loan transactions and/or engage in other ventures.   (See "MANAGEMENT OF THE COMPANY" and "INVESTMENT OBJECTIVES".)

<u>Investment Objectives.</u>

The primary investment objective of the Company shall be to purchase and sell single family properties in certain distressed real estate markets in the U.S. and participate in opportunistic lending in the U.S.

<u>Securities Being Offered.</u>

An aggregate of up to $50 million in 10% Debentures of the Company are being offered.  The Securities shall be offered on a best efforts basis scheduled to close on or before December 31, 2011. The minimum subscription accepted by the Company will be for $25,000, and additional investment may be made in increments of $5,000.  (See "Allocation of Benefits" below.)  Under no circumstances will the Company admit more than thirty-five (35) non-accredited Investors as computed under Rule 501 of Regulation D promulgated under the Act.  The Offering will terminate on a date to be determined by the Manager on or prior to December 31, 2011, provided the Manager shall have the right to extend the Offering indefinitely.

<u>Selling Agent.</u>

Securities are being offered directly through the Company.  The Company may utilize the services of one or more registered broker/dealers or other financial intermediaries.  In such cases, the Company may pay commissions or fees of up to 12% to such persons.

The purchase price is payable by Investors in full by cash.

<u>Risk Factors.</u>

The purchase of Securities involves a high degree of risk to the Investor including certain risks relating to regulatory, operating, tax and investment matters.  (See "RISK FACTORS.")

<u>Allocation of Benefits.</u>

a)      Profits, Losses and Net Cash Flow.

The Company does not anticipate substantial profits, losses or Net Cash Flow until assets are sold.

b)      Net Proceeds from Refinancing, Sale or upon Termination of the Company.

In the event that the Company disposes of substantially all of its assets, the Company shall be obligated to satisfy all of its debts, including without limitation the Debentures, prior to any distribution of cash to its members.

<u>Management of the Project.</u>

The Project will be managed by the Company through EQUIALT, LLC, the Company's Manager.

<u>Compensation and Fees to Manager.</u>

The Manager will receive Management Fees as set forth in the Operating Agreement and described more fully below. (See "COMPENSATION AND FEES TO MANAGER AND AFFILIATES.")

<u>No Tax Ruling.</u>

The Company will not seek a ruling from the Internal Revenue Service (the "IRS") as to any aspects of the Offering and will rely on the opinion of the Manager and its legal counsel with respect to its classification as a limited liability company for Federal income tax purposes. (See "RISK FACTORS - TAX RISKS.")

<u>Management and Control of the Company.</u>

The Manager will be responsible for the management and control of the Company. EQUIALT, LLC will serve as the initial Manager.

<u>Distributions to Investors.</u>

The Manager does not anticipate cash distributions from operations of the Company. (See "SOURCES AND USES OF FUNDS.") Each Investor will receive payments pursuant to the terms of the Debentures.

<u>Status of Investor.</u>

Each Investor will be a creditor of the Company pursuant to the terms of the Debenture (See "EXHIBIT A.")

<u>Further Investigation.</u>

Statements contained in this Summary or elsewhere in the Private Placement Memorandum as to the contents of the other offering documents are not necessarily complete and each such statement is deemed to be qualified and amplified in all respects by the provisions of such agreements and documents, copies of which are either attached hereto or are available upon reasonable notice for examination by offerees, or their duly authorized representatives, at the office of the Manager, located at 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145. Each offeree and his business and/or tax advisors are urged to examine all agreements and documents.

**THE OFFERING**

While this Offering is made to various parties, it is not a registered offering under Federal securities laws. This Offering is being made pursuant to the private offering exemption of Section 4(2) of the Act and/or Regulation D promulgated under the Act. This Offering is also being made in strict compliance with the applicable state securities laws. Each Investor must represent that he is acquiring his Debenture ("Securities") for investment purposes only and not with a view to resale or distribution. All Securities are offered subject to prior sale, when, as and if issued, and subject to the right of the

Manager to reject any subscription in whole or in part.  The Company will only sell Securities to persons meeting its suitability standards, which the Company's Manager may determine in its sole and absolute discretion.

### METHOD OF DISTRIBUTION

This Private Placement Memorandum summarizes a proposed transaction in which Investors will be entitled to hold a Debenture issued by EQUIALT FUND, LLC, a Nevada limited liability company.

The purpose of this Offering is to raise monies to enable the Company to purchase distressed real property and either derive rental income therefrom or dispose of the property for a profit.

Distribution of Securities.

These securities are being offered through the Company.  There is no firm commitment for the purchase of any Securities.  Sales of the Securities may be made to residents of Arizona, California, Florida and Nevada, and possibly in other jurisdictions, all in compliance with the laws of each jurisdiction.

### RISK AND OTHER IMPORTANT FACTORS

Investment herein involves substantial risks.  Investors should consider the risks mentioned elsewhere in this Private Placement Memorandum as well as the following matters:

Tax Risks.

A summary of Federal income tax provisions is included in this Memorandum.   No representation or warranty of any kind is made by the Manager, the Company, counsel to the Manager or the Company with respect to any tax consequences relating to the Company, or the allocation of taxable income or loss set forth in this Memorandum and each Investor should seek his own tax advice concerning the purchase of a Debenture.

1.      Suitability of the Investment to the Investor.  It is expected that the Debenture will yield taxable income to its Investors.

2.      Federal Income Tax Risks.

a.      Necessity of Obtaining Professional Advice.   THERE IS NO GENERAL EXPLANATION OF THE FEDERAL INCOME TAX ASPECTS OF INVESTMENT IN THE COMPANY CONTAINED IN THIS MEMORANDUM, AND ACCORDINGLY, EACH INVESTOR IS URGED TO CONSULT SUCH INVESTOR'S OWN TAX INVESTMENT AND LEGAL ADVISORS WITH RESPECT TO SUCH MATTERS AND WITH RESPECT TO THE ADVISABILITY OF INVESTING IN THE COMPANY.  The income tax consequences of an investment in the Company are complex, subject to varying interpretations, and may vary significantly between Investors depending upon such personal factors such as sources of income, investment

portfolios and other tax considerations. A Prospective Investor should consider with his professional advisors the tax effects of his becoming a Debenture holder. Each Investor should, at his own expense, retain, consult with and rely on his own advisors with respect to the tax effects of his investment in the Company. In addition to considering the federal income tax consequences, each Investor should also consider with his own advisors the state and local tax consequences of an investment in the Company.

No representations are made as to any federal, state or local tax consequences resulting from an investment in the Company, and no assurances are given that any deduction or other federal income tax benefits will be available to Members in the Company in the current or future years.

　　　　b.　　　Company Tax Status. Although the Manager believes that the Company will be treated as a partnership for federal income tax purposes, such treatment cannot be assured. The Manager reserves the right to convert the Company to a corporation if it is in the best interests of the Company to do so.

　　　　c.　　　Tax Law Changes. The existence and amount of particular credits and deductions, if any, claimed by the Company may depend upon various determinations and allocations, characterizations of payments, and other matters which are subject to potential controversy on factual as well as legal grounds. Changes in the Code and official interpretations thereof after the date of this Memorandum may eliminate or reduce any perceived tax benefits from an investment in the Securities. There can be no assurance that regulations having an adverse effect on the creditors will not be issued in the future and enforced by the courts. Any modification or change in the Code or the regulations promulgated thereunder, or any judicial decision, could be applied retroactively to any investment in the Company. In view of this uncertainty, Investors are urged to consider ongoing developments in this area and consult their advisors concerning the effects of such developments on an investment in the Company in light of their own personal tax situations.

　　　　d.　　　Absence of Ruling or Opinion. The Company will not seek a ruling from the IRS or an opinion of counsel with respect to any tax matters described in this Memorandum.

　　　Operating Risks.

　　　1.Risk of Interpretation of Real Estate Documents and Agreements. There are certain risks in connection with any real estate acquisition resulting from the drafting and subsequent interpretation of mortgages, deeds, leases, purchase agreements, management contracts, et cetera. Any documents describing the Property or the legal relations thereto could be subject to various interpretations and potential disputes. While legal counsel will review certain legal documents, it is impossible to prevent and be secured against such various differing interpretations.

　　　2.Risks of Real Estate Ownership. Real estate is not readily marketable. It is fixed in location and is subject to adverse social and economic changes and uses. Carrying costs may increase beyond the levels sustainable.

　　　3.Results of Operations - Possible Operating Deficits. This Memorandum and the attached Financial Projections are based upon projected results which may be greater than results obtained from actual operations. Actual results may differ adversely for a number of reasons; including, but not

limited to, the possibility of increases in entitlement costs, losses due to structural-related deficiencies and real estate taxes, which cannot be fully recovered through increased property values and other revenues, softness in the demand for land due to changing socio-economic conditions in the area in which the Property is located and competition among other real estate development projects in the area.

Following the Offering, the Company may be subject to rising operating costs, although the Company does not anticipate significant operating costs.  (See "FINANCIAL PROJECTIONS - SOURCES AND USES OF CASH".)  However, there is no assurance that these funds will be adequate.  Additional capital may be raised by the Company.

4.Risk of Financing and Potential Foreclosure on Mortgage Loan.  A mortgage loan may be secured by the Property.  The risk of foreclosure can arise from, among other things, the failure by the Company to meet any of the other various conditions existing in the mortgage loan documents.

Payment of principal and interest on the mortgage loan will be due on a monthly basis.  It is anticipated that these payments will be met by the Company from its initial capital and revenue sources.  No assurance can be given that the funds generated by the initial capital or revenue will be sufficient to meet the monthly payments.

5.Risk of Failure to Obtain Loan.  Although the Company does not intend to secure a loan to purchase the Property, such a loan could be secured by the Property.  In the event of a default on the loan, the lender could foreclose upon the Property.

6.Dependence Upon Issuer.  The Manager has full discretion in the management of the Project and in the management and control of the affairs of the Company, including the authority to sell less than all or substantially all of the Company's assets for whatever consideration it deems appropriate. Except upon the sale of all or substantially all of the Company's assets, the sale of such assets will not result in the dissolution of the Company.  The sale of all or substantially all of the Company's interests in the Property will result in the dissolution of the Company.

The success of the operations of the Company will be dependent in large measure on the judgment and ability of the Manager.

7.Dependability of Assumptions.  The description of the contemplated results of the operations of the Company described in this Memorandum are based on various assumptions concerning many facts over which the Company has no control, including, without limitation:

      (a)     The continuing advantages of certain provisions of the Federal Income Tax laws and of certain local tax laws; and

      (b)     The management capabilities of the Manager.

8.Conflicts of Interest.  The Manager and its affiliates are not required to devote themselves exclusively to the affairs of the Company.  Further, the Manager and its affiliates may own real estate in the same market as the Property.  The Manager and its affiliates may have a conflict of interest in the ownership of these other properties and in allocating management, services and functions between this Company and their other present and future interests.  The Manager and its affiliates believe that they

have sufficient time and staff to be fully capable of discharging their responsibilities to the Company and to any other present or future activities.

9.<u>Limited Transferability.</u>  The Securities have not been registered under the Act, or under the securities laws of any state, but are being offered and sold in reliance upon exemptions from registration thereunder, including the exemptions from federal registration contained in Section 4(2) of the Act and/or Regulation D, Rule 506 promulgated thereunder.  As a consequence of the restrictions on subsequent transfer imposed by these exemptions, the Securities may not be subsequently sold, assigned, conveyed, pledged, hypothecated or otherwise transferred by the holder thereof, whether or not for consideration, except in compliance with the Act and applicable state securities laws.  There will be no public market for the Securities following termination of this Offering and it is not expected that a public market for the Securities will ever develop.

10.<u>Company's Redemption Option.</u>  The Company has the legal right, but not the obligation, to repurchase the Debentures prior to their maturity date.

11.<u>Management Decisions.</u>  The Manager is vested with the exclusive authority as to the management and conduct of the business and affairs of the Company.  The success of the Company depends, to a large extent, upon the management decisions made by the Manager.

12.    <u>Best Efforts Offering.</u>  The Company will utilize proceeds of the Offering as and when received.  No escrow account has been established for this Offering.

CONSULT YOUR OWN ATTORNEY, ACCOUNTANT AND/OR FINANCIAL CONSULTANT FOR AN EVALUATION OF THE MERIT OF AND THE RISKS INHERENT IN THIS INVESTMENT.  EACH PROSPECTIVE INVESTOR IS RESPONSIBLE FOR ANY FEES OR CHARGES INCURRED IN CONNECTION WITH SUCH AN EVALUATION.

**SOURCES AND USES OF FUNDS**

The Company is offering up to Fifty Million Dollars in Debentures.

The funds received will be used to purchase, own, improve and/or sell real property.

**PROJECTED SOURCES AND USES OF CASH**

The Company's sources and uses of capital are set forth below:

| SOURCES: | | |
|---|---|---|
| | | |
| Debentures: | | |
| **TOTAL SOURCES:** | | **$50,000,000.00** |

| USES: | | | |
|---|---|---|---|
| | | | |
| | Investment in Property | | $45,000,000.00 |
| | Accounting and Tax Preparation | | $550,000.00 |
| | Legal Costs | | $250,000.00 |
| | Investor Relations and Communications Expenses | | $2,500,000.00 |
| | Marketing and Sponsorship Event Fees | | 200,000.00 |
| | Miscellaneous Expenses and Reserves | | $1,500,000.00 |
| | **TOTAL USES:** | | **$50,000,000.00** |

Pursuant to this Offering, the Company is raising debt financing of up to $50,000,000. It is not anticipated that the Company will require additional capital beyond that mentioned above. However, if additional capital is needed, the Manager may seek additional capital through means determined by it.

Because any projection of the future is subject to uncertainties, actual results could vary significantly from those estimated. All uses of proceeds are estimated and subject to change.

### COMPENSATION AND FEES TO THE MANAGER

The Manager shall be exclusively responsible for the management and control of the operations of the Company. The Manager shall be reimbursed for any direct funds or expenses advanced by it prior to or after formation of the Company to the extent that such expenses are incurred or paid directly on behalf of the Company. The Manager shall be entitled to a management fees as set forth in the governing documents of the Company.

### THE PROJECT

The Company plans to purchase distressed real property in opportunistic markets, such as southern Nevada, Arizona and Florida. The Company may "flip" these properties or hold them for investment, in the Manager's sole and absolute discretion. The Company may use some of its capital to engage in lending activities when risk management and income analysis deem appropriate. We anticipate that the principal amount of real estate loans generally will be in the range of approximately $25,000 to $1 million. Our loans may be secured by a deed of trust or other form of security. Generally, any such loan transaction will have a term of two months to two years, and may be extended at the manager's discretion. We anticipate that substantially all of the loans to be invested in or purchased will require the borrower to make a balloon payment on the principal amount upon maturity of the loan either by sale of the property/project and/or its units, by refinance, or other means which we will attempt to establish before funding. From time to time, opportunities may arise in which the Company may be able to participate in opportunistic real estate related activity with other entities or individuals. These opportunities will be evaluated in a like manner by the Manager

## MANAGEMENT OF THE PROJECT

The Manager is EQUIALT, LLC.  The Manager shall manage the Company.  As such, the Manager has the power and authority, on the Company's behalf and in its name, to manage, administer, and operate the Company's day-to-day business affairs, and to do or cause to be done on behalf of the Company anything necessary or appropriate for the same, including but not limited to the powers and authority set forth in the Agreement.  The Manager's power and authority is subject to the limitations set forth in the Agreement.  The Manager shall serve as Manager until its successor is appointed by the Company's members as provided in the Agreement.  The Manager may delegate its duties to others.

## COMPANY INVESTMENT OBJECTIVES AND POLICIES

The primary investment objective of the Company is to purchase distressed real property in the U.S. and derive economic benefit through a resale or lease.

## COMPETITION

There is significant competition in the distressed real property markets referenced herein, and other competitors may enter the field.

## MANAGER

EQUIALT, LLC, a Nevada limited liability company organized in 2011, serves as the Manager.

The principals involved in the project are as follows:

### Brian Davison – Chief Executive Officer

Brian Davison's real estate career began in 1994, in North County San Diego.  He has the hands-on experience in a variety of functions in the real estate and mortgage industries: encompassing management loan renegotiation and customer retention at a publicly traded REIT, regional Vice President of a private residential mortgage company, the broker-owner of a multi-state branch correspondent residential loan origination company with in-house underwriting and outbound marketing support system, and Vice President of a private lending company.  Brian has held real estate and/or mortgage broker licenses in California, Nevada, and Florida, with additional work in the Arizona and Colorado markets.  Brian has facilitated over $1.5 billion in mortgage and real estate transactions, is an active investor in a variety of markets and is host of an investor radio show "The Cash Flow Show" and author of investor risk management book "The Top 10 Pitfalls of Trust Deed Investing".  In early 2009, he founded and sold Invest REO LLC dba The Cash Flow Store, an opportunistic distressed real estate investment company.  He currently holds a State of Nevada Real Estate License.

### Diane Dutton, MBA, CPA – Chief Financial Officer

Diane Dutton was born and raised in Brooklyn, New York, and relocated to Southern Nevada in 1980, after working for KPMG Peat Marwick (NYC office). Ms. Dutton holds an MBA and BBA from Pace University, NYC Campus and is a Nevada CPA. Ms Dutton has held positions as Controller, COO and CFO, as well as VP of Profit Planning and Investor Relations during an IPO, responsible for SEC reporting and secondary offering of a subsidiary of Reno-based International Game Technologies. In her various roles, Ms. Dutton has managed the M&A process, debt offerings and divestiture processes for several companies.

From January 2003 to February 2008, Diane was CFO, COO of Prudential Americana Group REALTORS® & Americana Holdings, LLC, Las Vegas, Nevada, which included $100 Million Real Estate, Mortgage & Title Operations oversight. In this capacity, her duties included auditing, financial reporting to PREFSA and SEC Compliance. Diane oversaw a $22.5 Million Senior & Mezzanine level financial offering, which closed October, 2004. Reporting to the Board of Directors, PREFSA and the CEO, she directed the company's tax function and compliance with appropriate local, state and federal jurisdictions.

Ms. Dutton is also the author of *A Woman's Ladder to Success is paved with Broken Glass Ceilings* (published in 2007). Diane is a member of the Executive Board of the NSCPA, and AICPA Ambassador speaking on behalf of the CPA Profession. She is also a member of TMA, CEO-CFO Group, NAFE, NAWBO and Women and Network.

### Barry M. Rybicki — President - Arizona Operations

Barry has over 14 years of experience in real estate lending. He has lived in Phoenix, Arizona, for the past 21 years, originally coming to Arizona from Nebraska to attend Arizona State University where he majored in Accounting and minored in Marketing. He served as President to a bank in Arizona, and managed a $10,000,000 line of credit. This capacity required; real estate evaluation, risk management, customer service, underwriting, appraisal review. He has handled over $540,000,000.00 in residential deeds of trust in the Phoenix market and continues to have an overall understanding of the residential sectors inside of Maricopa County. Barry also served as Vice President for Cole Management LLC, where he gained significant experience in originating, structuring and negotiating deals, developing and implementing business strategies, assessing market and competitive issues, and raising capital from debt and equity providers. He remains actively involved in the community donating his time to Coach youth sports and is currently the Treasurer of Pinnacle High Schools' Boys Soccer Team.

### Andre Sears – President, Business Development and Marketing

Andre is a native of Las Vegas and has spent most of his professional career in the financial/investment field. Andre brings more than ten years of financial expertise to EquiAlt. Prior to joining the team of professionals at CFS, he served as Vice President of Business Development for a local bank and as Private Client Manager for a private real estate investment company. Andre performed his undergraduate studies at Boise State University and is a graduate of the Investment Banking Institute of California. Sears has gained financial experience in business planning and development, commercial real estate evaluation, customer service, sales, and marketing as well as financial goal implementation. Andre's career success can be directly attributed to his ability to educate

his clients, help them clarify and prioritize their financial goals, implement a plan of action and then follow up with timely and effective ongoing client service. Mr. Sears is often a guest speaker for association and community groups on various financial topics.

Andre's strong commitment to give back to his community is demonstrated through his volunteer activities. Mr. Sears currently serves on the Board of Trustees for the Southern Nevada Leukemia and Lymphoma Society (LLS) where he is "Relentless in finding a cure…". In 2008, Mr. Sears served as Corporate Walk Chairman for the Southern Nevada Light the Night Walk for the LLS and has accepted the invitation to do so again in 2009. Andre also volunteers his time with the YMCA and Boys and Girls Clubs.

### Zolt Szorenyi – Business Development, Market Analysis

President of Developers Marketing Solutions and a licensed real estate agent in Las Vegas since 1997, Zolt has been actively involved in selling residential and commercial real estate. His experience is ranging in Resale and New Construction Single Family and Attached products, Representing and Negotiating for Buyers and Sellers on private and corporate levels, Industrial and Multi Family Commercial products. From April of 2004 to August of 2006 he was the Chief Operating Officer of one of the largest Real Estate Marketing and Sales Firms in Las Vegas. During that time, Zolt was personally involved with the marketing and sales of over 20 developments in the Las Vegas area which totaled over 7,000 homes. Zolt founded Developers Marketing Solutions in 2006. He has put together a team of experienced professionals that includes specialists in market research and reporting, business development, marketing plans and budgeting, sales training and management, escrow management, project management and sales strategies through networks throughout the US. Since April of 2008, Zolt has launched the Trustee Sale and Foreclosure acquisition department. Annually, Developers Marketing Solutions finds and purchases 300-400 homes for individual investor's purchases.

### Jim McMillan, MBA – Business Development, Investment Research

Vice President of Developers Marketing Solutions and a graduate from the University of Nevada Las Vegas with a Masters Degree in Business and a Bachelors Degree from Brigham Young University and as a licensed real estate agent in Las Vegas since 2004, Jim has analyzed and researched multiple properties for real estate business development. He has worked on dozens of communities over the years that go under his microscopic process which includes product analysis; project development and analysis; market trends, research and reporting; database creation and implementation. Currently with the Trustee Sales, Jim is instrumental in analyzing and researching each property as well as title research in finding the best investment opportunities for our investors.

### Marc Cardwell – Business Strategy and Development

While attending the University of Southern California Mr. Cardwell worked full time as an Equities Analyst for investment bank Van Kasper and Company (since acquired by Wells Fargo) and merchant banker W.E. Meyers. Upon completing his B.S. in Finance he went to work for The Dewey Consulting Group where he rose to Vice President and co-managed both The Conti Mortgage Securitization Conduit, as well as the Southern Pacific Funding Securitization Conduit. While there he

also specialized in Mergers and Acquisitions of Sub Prime mortgage companies, and completed six deals on behalf of its clients. He then founded American Lending Group which was profitably sold in 2002, but remained as a part-time consultant until 2004. He also has consulted to various public and private mortgage banks, brokerages and hard money lenders in the areas of: risk analysis, secondary marketing, mergers and acquisitions, and converting mortgage brokers into bankers. In particular he consulted exclusively to a public REIT that specialized in hard money lending for a period of two years, where he helped them create new guidelines and refined risk based pricing as well as establishing a new subprime banking division. In addition to his involvement in the mortgage industry he owns a check cashing store, a smog test shop, and has developed residential properties.

### CONFLICTS OF INTEREST

The Company is subject to various existing and/or potential conflicts of interest arising out of its relationship with the Manager and/or its affiliates.  These conflicts may involve:

(a)     <u>Allocation of Manager's Activities.</u>  The Manager and/or its affiliates serve and may serve in such capacity in other limited partnerships, limited liability companies, corporations or entities which will compete with the activities of the Company.  The Manager and/or its affiliates may have conflicts of interest in allocating management, time, services and functions between other limited partnerships or ventures and this Company as well as any future limited partnerships or limited liability companies.  The Manager believes that, together with its affiliates and any employees or agents which may be retained in the future, it has sufficient staff to be fully capable of discharging its responsibilities to this Company and any other present or future limited partnerships, limited liability companies, corporations or entities.  (See "THE MANAGER.")

The Agreement provides that no contract, action or transaction is void or voidable with respect to the Company because it is between or affects the Company and one or more of its Members, managers, or officers or because it is between or affects the Company and any other person in which one or more of its Members, managers or officers are Members, managers, directors, trustees, or officers or have financial or personal interest, or because one or more interested Members, managers or officers participate in or vote at the meeting that authorizes the contracts, action, or transaction, provided certain circumstances apply.

(b)     <u>Compensation to Manager and Class B Member.</u>  This Offering involves substantial compensation and benefits to the Manager and other affiliates.

The Manager believes that the fees that the Company intends to pay are reasonable, in light of the tasks and risks undertaken, and will result in substantial benefits to the Company, its member(s) and its Debenture holders.

(c)     <u>Lack of Independent Counsel.</u>  The prospective Investors and the Company have not had separate legal counsel in connection with the formation of the Company, the acquisition of the Property and the offering of the Securities;  Investors should seek their own independent counsel.

(d)     <u>Liability of Members and Managers.</u>  Applicable state law and the Agreement provide that the debts, obligations and liabilities of the Company, however or wherever arisen or derived, shall

be solely those of the Company, and no Member of the Company shall be personally liable for the same to third parties solely by reason of his or her status as a Member, and that the failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs shall not be grounds for imposing personal liability on Members for liabilities or obligations of the Company.

## STANDARD OF CARE; INDEMNIFICATION

1.  <u>Standard of Care of Manager</u>.  Nevada law provides that a manager of a limited liability company shall perform his duties as a manager in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the Company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances.  This is in addition to the several duties and obligations of and limitations on the Manager as set forth in the Agreement.  To impose liability on a manager, however, it must be shown by clear and convincing evidence that the standard of care was not met by the Manager.

It should be noted that the cost of litigation against the Manager for enforcement of the standard of care may be prohibitively high and that any judgment obtained may not be collectible since the Manager is not bonded and any judgment exceeding its net worth may not be collectible.  An investment decision should be based on the judgment of an Investor as to the investment factors described in this Memorandum rather than reliance upon the value of the right to bring legal actions against or to control the activities of the Manager.

Notwithstanding the standards of care obligations, the Manager has broad discretionary power under the terms of the Operating Agreement and under applicable state law to manage the affairs of the Company with the assistance, if desirable, of consultants or others retained for the account of the Company or the Manager.  Generally, actions taken by the Manager are not subject to vote or review by the Members, except to the limited extent provided in the Agreement.

2.  <u>Indemnification</u>.  The Agreement provides that the Company may, to the fullest extent not prohibited by the Agreement or any provisions of applicable law indemnify the Manager and/or Project Manager against any and all costs and expenses (including amounts paid in settlement, and other disbursements) actually and reasonably incurred by or imposed upon such person in connection with any action, suit, investigation or proceeding (or any claim or other matter therein), whether civil, criminal, administrative or otherwise in nature, including any settlements thereof or any appeal therein, with respect to which the Manager is named or otherwise becomes or is threatened to be made a party by reason of being or at any time having been the Manager of the Company or, at the direction or request of the Company, a manager, director, trustee, officer, employee, or agent of or fiduciary for any other limited liability company, corporation, partnership, trust, venture, or other entity or enterprise.

Because there are provisions in the Agreement for indemnification of the Manager, purchasers of Securities may have a more limited right of action than they would have absent such provision in the Agreement.  Insofar as indemnification for liabilities arising out of the Act may not be provided to directors, officers and controlling persons pursuant to the foregoing, or otherwise, the Manager has been advised that in the opinion of the U.S. Securities and Exchange Commission, such indemnification is contrary to public policy and is, therefore, unenforceable.

## RESTRICTIONS ON TRANSFER

The Securities have not been registered under the Act. The Securities are being offered and will be sold in the absence of any registration under the Act, by reason of an exemption under Section 4(2) and/or Regulation D promulgated under the Act. The availability of such exemption is dependent, in part, upon the "investment intent" of each Investor and will not be available if any Investor purchases a Debenture with a view toward its distribution. Accordingly, each Investor will be required to acknowledge that his purchase is being made for investment, for his own record and beneficial account, and without any view to the distribution thereof. A Debenture may not be resold by a Member unless and until it is subsequently registered under the Act and applicable state securities laws or unless appropriate exemptions from registration are available.

Investors have not been, and will not be, granted the right to require the registration of the Securities under the Act and applicable state securities laws. Moreover, the Company has no intention to register the Securities under federal securities laws (or to take any action to make exemptions from registration on resale or transfer available to the Investors) and, in view of the nature of the transaction, it is highly unlikely that there will be any such registration (or such action taken) at any time in the future. Accordingly, an Investor must bear the economic risk of an investment in a Debenture for an indefinite period of time.



PRIVATE PLACEMENT MEMORANDUM

EQUIALT FUND, LLC

EquiAlt Fund LLC.

**EXHIBIT**
33
12/16/19

FOIA Confidential Treatment Requested

RA00000001

# PRIVATE PLACEMENT MEMORANDUM

## EQUIALT FUND, LLC

### $100,000,000

### 12% DEBENTURES

### MINIMUM PURCHASE: $25,000

EQUIALT FUND, LLC, a Nevada limited liability company (the "Company"), organized under the Nevada Limited Liability Company Act, hereby offers (the "Offering"), by and through its Manager, up to One Hundred Million Dollars ($100,000,000) in 12% Debentures ( the "Securities") of the Company.  EQUIALT, LLC, a Nevada limited liability company, is the Manager (the "Manager") of the Company.  The securities referred to herein are being offered on a best efforts basis to residents of Arizona, California, Florida and Nevada, and may be offered in other states.

DATE OF THIS PRIVATE PLACEMENT MEMORANDUM:  June 20, 2011

INVESTMENT IN THE SECURITIES INVOLVES A HIGH DEGREE OF RISK. INVESTORS WILL BE REQUIRED TO REPRESENT THAT THEY ARE FAMILIAR WITH AND UNDERSTAND THE TERMS OF THE OFFERING (SEE "RISK FACTORS," "CONFLICTS OF INTEREST" AND "COMPENSATION AND FEES TO THE MANAGER AND AFFILIATES.").

THE SECURITIES HAVE NOT BEEN REGISTERED WITH NOR APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("COMMISSION") NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS OFFERING HAS NOT BEEN APPROVED OR DISAPPROVED UNDER APPLICABLE STATE SECURITIES LAWS, BY THE SECURITIES DIVISION OF CORPORATIONS, SECURITIES REGULATION DIVISION ("DIVISION"), NOR HAS THE DIVISION REVIEWED OR PASSED UPON THE ACCURACY OF THIS OFFERING.  ANY REPRESENTATION TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

DURING THE COURSE OF THE OFFERING AND PRIOR TO SALE, EACH OFFEREE OF THE SECURITIES AND HIS ADVISOR(S) ARE INVITED TO ASK QUESTIONS OF AND OBTAIN ADDITIONAL INFORMATION FROM THE MANAGER CONCERNING THE TERMS AND CONDITIONS OF THE OFFERING, THE COMPANY, THE DEBT TO BE OWED BY THE COMPANY AND ANY OTHER RELEVANT MATTERS (INCLUDING, BUT NOT LIMITED TO, ADDITIONAL INFORMATION TO VERIFY THE ACCURACY OF THE INFORMATION SET FORTH HEREIN), TO THE EXTENT THE MANAGER POSSESSES SUCH INFORMATION OR

EquiAlt Fund LLC

i

CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.   OFFEREES OR ADVISORS HAVING QUESTIONS OR DESIRING ADDITIONAL INFORMATION SHOULD CONTACT THE MANAGER.

THIS MEMORANDUM DOES NOT CONTAIN AN UNTRUE STATEMENT OF A MATERIAL FACT OR OMIT TO STATE A MATERIAL FACT NECESSARY TO MAKE THE STATEMENTS MADE, IN LIGHT OF THE CIRCUMSTANCES UNDER WHICH  THEY WERE MADE, NOT MISLEADING.  IT CONTAINS A FAIR SUMMARY OF THE MATERIAL TERMS OF DOCUMENTS PURPORTED TO BE SUMMARIZED HEREIN.   THIS MEMORANDUM CONTAINS SUMMARIES OF CERTAIN DOCUMENTS, THAT ARE BELIEVED TO BE ACCURATE, BUT REFERENCE IS HEREBY MADE TO THE ACTUAL DOCUMENTS, COPIES OF WHICH ARE ATTACHED HERETO OR ARE AVAILABLE AT THE OFFICE OF THE MANAGER, FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO.  ALL SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THIS REFERENCE, AND NOTHING IN THIS MEMORANDUM SHALL EXTEND THE LIABILITY UNDER ANY SUCH DOCUMENTS OF ANY OF THE PARTIES HERETO. ALL DOCUMENTS RELATING TO THE OFFERING WILL BE MADE AVAILABLE TO THE OFFEREE NAMED BELOW AND/OR HIS ADVISOR(S) UPON REQUEST.

THE OFFERING CAN BE WITHDRAWN AT ANY TIME BEFORE CONSUMMATION AND IS SPECIFICALLY MADE SUBJECT TO THE CONDITIONS DESCRIBED IN THIS MEMORANDUM.   IN CONNECTION WITH THE OFFERING AND SALE OF THE SECURITIES, THE MANAGER RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO REJECT ANY SUBSCRIPTION IN WHOLE OR IN PART OR TO ALLOT TO ANY PROSPECTIVE INVESTOR LESS THAN THE SECURITIES SUBSCRIBED FOR BY SUCH PROSPECTIVE INVESTOR.

SINCE THERE ARE SUBSTANTIAL RESTRICTIONS ON THE TRANSFERABILITY OF THE SECURITIES, EACH OFFEREE MUST ASSUME THAT HE WILL BEAR THE ECONOMIC RISK OF HIS INVESTMENT FOR AN INDEFINITE PERIOD.  THE SECURITIES MAY NOT BE TRANSFERRED WITHOUT THE PRIOR WRITTEN CONSENT OF THE REMAINING MEMBERS.   IN ADDITION, SECURITIES ARE NOT REGISTERED FOR SALE TO THE PUBLIC UNDER THE SECURITIES ACT OF 1933 OR THE SECURITIES LAWS OF ANY STATE AND THE SECURITIES MAY BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF BY AN INVESTOR ONLY IF, AMONG OTHER THINGS, THE SECURITIES ARE REGISTERED OR, IN THE OPINION OF COUNSEL TO THE COMPANY, REGISTRATION IS NOT REQUIRED UNDER SUCH LAWS.

THIS MEMORANDUM HAS BEEN PREPARED SOLELY FOR THE USE OF PERSONS WHO MAY WANT TO PURCHASE SECURITIES AND DELIVERY THEREOF CONSTITUTES AN OFFER ONLY IF THE NAME OF AN OFFEREE APPEARS IN THE APPROPRIATE SPACE PROVIDED BELOW AND IF THE PERSON SO NAMED MEETS THE SUITABILITY STANDARDS SET FORTH UNDER "QUALIFICATION OF INVESTORS."    ANY

EquiAlt Fund LLC

ii

DISTRIBUTION OF THIS MEMORANDUM TO ANY PERSON OTHER THAN THE OFFEREE NAMED BELOW (OR TO THOSE INDIVIDUALS WHOM HE RETAINS TO ADVISE HIM WITH RESPECT THERETO) IS UNAUTHORIZED AND ANY REPRODUCTION OF THIS MEMORANDUM IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, WITHOUT THE PRIOR WRITTEN CONSENT OF THE MANAGER, IS PROHIBITED.

NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED TO BE MADE IN THIS MEMORANDUM OR SHOULD BE INFERRED THEREFROM WITH RESPECT TO THE ECONOMIC RETURN OR THE TAX TREATMENT WHICH MAY ACCRUE TO THE INVESTOR.  NO ASSURANCE CAN BE GIVEN THAT EXISTING TAX LAWS WILL NOT BE CHANGED OR INTERPRETED ADVERSELY, EITHER OF WHICH MAY DENY THE INVESTORS ALL OR A PORTION OF THE TAX TREATMENT CONSIDERED HEREIN. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, TAX OR INVESTMENT ADVICE.  EACH INVESTOR SHOULD CONSULT HIS OWN ATTORNEY, ACCOUNTANT AND OTHER ADVISORS AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING A PURCHASE BY HIM OF A DEBENTURE.

NO OFFERING LITERATURE OR ADVERTISING IN WHATEVER FORM WILL OR MAY BE EMPLOYED IN THE OFFERING EXCEPT FOR THIS MEMORANDUM AND STATEMENTS CONTAINED OR DOCUMENTS SUMMARIZED HEREIN.  NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATIONS, OR GIVE ANY INFORMATION, WITH RESPECT TO THE SECURITIES, EXCEPT FOR INFORMATION CONTAINED OR REFERRED TO HEREIN.

Name of Offeree: _____     Memorandum Number: _____

EquiAlt Fund LLC

ii

## TABLE OF CONTENTS

QUALIFICATION OF INVESTORS ..................................................................1
GLOSSARY OF TERMS ...............................................................................1
SUMMARY OF THE OFFERING ...................................................................2
THE OFFERING ..........................................................................................5
METHOD OF DISTRIBUTION .....................................................................5
RISK AND OTHER IMPORTANT FACTORS ...................................................5
SOURCES AND USES OF FUNDS ................................................................9
PROJECTED SOURCES AND USES OF CASH ................................................9
COMPENSATION AND FEES TO THE MANAGER .......................................10
THE PROJECT ...........................................................................................10
MANAGEMENT OF THE PROJECT .............................................................10
COMPANY INVESTMENT OBJECTIVES AND POLICIES...............................10
COMPETITION .........................................................................................10
CONFLICTS OF INTEREST .......................................................................13
STANDARD OF CARE; INDEMNIFICATION ...............................................14
RESTRICTIONS ON TRANSFER.................................................................15
EXHIBIT A

FORM OF DEBENTURE ..............................................................................1

FOIA Confidential Treatment Requested                                  RA00000005

These securities are offered subject to (a) prior sale, (b) approval of counsel, (c) the right to terminate the offer without prior notice or to reject any subscription, and (d) certain other conditions.

## QUALIFICATION OF INVESTORS

Each Debenture requires a minimum investment of $25,000, provided, however, the Company reserves the right to accept subscriptions for a lesser amount. Additional investment may be made in increments of $5,000.

Investment in the Securities offered hereby involves risk and is suitable only for persons of financial means who have provided for liquidity in their other investments. No Securities will be sold to Investors who will not warrant and represent to the Company and the Manager (and unless the Manager shall have reasonable grounds to believe) that such offeree has such knowledge and expertise in financial and business matters, is capable of evaluating the merits and risks of the prospective investment and is able to bear the economic risks of the investment, or alternatively, that such Investor's legal or financial representative has such knowledge and expertise about financial and business matters and is capable of evaluating the merits and risks of the investment together with the Investor having the ability to bear the economic risks of the investment. In either case, the Investor must also warrant and represent to the Company and the Manager that he is acquiring the Securities for his own account.

Each Investor must satisfy the Manager that the Investor can bear a total loss of his investment. Each Investor will be required to represent that he is acquiring the Securities being purchased by him for investment and for his own account, and not with a view to resale or distribution. Resale of the Securities is subject to extensive restrictions (see "SUMMARY OF THE OFFERING"). It is not expected that any public market for the resale of the Securities will develop.

## GLOSSARY OF TERMS

"Act" - the Securities Act of 1933, as amended.

"Affiliate" - (i) any person directly or indirectly controlling, controlled by or under common control with another person, (ii) a person owning or controlling 10% or more of the outstanding voting securities of such other person, (iii) any officer, director, partner or employee of such person and (iv) if such other person is an officer, director, partner or employee, any company for which such person acts in any such capacity.

"Agreement" - the Operating Agreement of the Company, as such may be amended from time to time.

"Debenture" - the 12% Debentures offered to Investors herein.

"Manager" - this Company's Manager: EQUIALT, LLC or its successor(s) as determined by the Agreement.

EquiAlt Fund LLC

1

RA00000006

"Memorandum" - this Private Placement Memorandum.

"Company" – this limited liability company:   EQUIALT FUND, LLC, a Nevada limited liability company.

"Investor(s)" – prospective purchasers of Debentures in the Company.

"Project" - the proposed business of the Company (i.e., acquiring, improving and/or selling distressed real property).

"Reserves" - all reserves established by the Manager in its sole discretion for the Company's purposes, including, but not limited to, operating expenses and other working capital needs, liabilities, and taxes.

### SUMMARY OF THE OFFERING

This summary of certain provisions of the Memorandum is intended only for a quick reference and is not intended to be complete.  This Memorandum describes in detail numerous aspects of the transaction which are material to Investors, including those summarized below, and this Memorandum and the accompanying Exhibits must be read in their entirety by reference to the full text of this Memorandum and the underlying documents.

The Offering.

The Memorandum describes an offering (the "Offering") to prospective Investors of 12% Debentures issued by EQUIALT FUND, LLC, a limited liability company formed under the laws of the State of Nevada.

The Company.

EQUIALT FUND, LLC (the "Company"), a Nevada limited liability company, was formed as of May 23, 2011, when its Articles of Organization were filed with the Nevada Secretary of State's Office pursuant to the Nevada Limited Liability Company Act as adopted by the State of Nevada.  The office of the Company is located at 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

The Manager.

The Manager of the Company is EQUIALT, LLC, a Nevada limited liability company (See "THE MANAGERS").

Purpose of the Offering.

The purpose of this Offering is to secure capital in order to enable the Company to purchase, improve, lease and/or dispose of distressed real property, enter into opportunistic loan transactions and/

EquiAlt Fund LLC

2

RA00000007

or engage in other ventures.   (See "MANAGEMENT OF THE COMPANY" and "INVESTMENT OBJECTIVES".)

### Investment Objectives.

The primary investment objective of the Company shall be to purchase and sell single family properties in certain distressed real estate markets in the U.S. and participate in opportunistic lending in the U.S.

### Securities Being Offered.

An aggregate of up to $100 million in 12% Debentures of the Company are being offered.  The Securities shall be offered on a best efforts basis scheduled to close on or before December 31, 2011. The minimum subscription accepted by the Company will be for $25,000, and additional investment may be made in increments of $5,000.  (See "Allocation of Benefits" below.)  Under no circumstances will the Company admit more than thirty-five (35) non-accredited Investors as computed under Rule 501 of Regulation D promulgated under the Act.   The Offering will terminate on a date to be determined by the Manager on or prior to December 31, 2011, provided the Manager shall have the right to extend the Offering indefinitely.

### Selling Agent.

Securities are being offered directly through the Company.  No commissions of any kind will be paid to selling agents or brokers.

The purchase price is payable by Investors in full by cash.

### Risk Factors.

The purchase of Securities involves a high degree of risk to the Investor including certain risks relating to regulatory, operating, tax and investment matters.  (See "RISK FACTORS.")

### Allocation of Benefits.

a)      Profits, Losses and Net Cash Flow.

The Company does not anticipate substantial profits, losses or Net Cash Flow until assets are sold.

b)      Net Proceeds from Refinancing, Sale or upon Termination of the Company.

In the event that the Company disposes of substantially all of its assets, the Company shall be obligated to satisfy all of its debts, including without limitation the Debentures, prior to any distribution of cash to its members.

EquiAlt Fund LLC

3

FOIA Confidential Treatment Requested

Management of the Project.

The Project will be managed by the Company through EQUIALT, LLC, the Company's Manager.

Compensation and Fees to Manager.

The Manager will receive Management Fees as set forth in the Operating Agreement and described more fully below. (See "COMPENSATION AND FEES TO MANAGER AND AFFILIATES.")

No Tax Ruling.

The Company will not seek a ruling from the Internal Revenue Service (the "IRS") as to any aspects of the Offering and will rely on the opinion of the Manager and its legal counsel with respect to its classification as a limited liability company for Federal income tax purposes. (See "RISK FACTORS - TAX RISKS.")

Management and Control of the Company.

The Manager will be responsible for the management and control of the Company. EQUIALT, LLC will serve as the initial Manager.

Distributions to Investors.

The Manager does not anticipate cash distributions from operations of the Company. (See "SOURCES AND USES OF FUNDS.") Each Investor will receive payments pursuant to the terms of the Debentures.

Status of Investor.

Each Investor will be a creditor of the Company pursuant to the terms of the Debenture (See "EXHIBIT A.")

Further Investigation.

Statements contained in this Summary or elsewhere in the Private Placement Memorandum as to the contents of the other offering documents are not necessarily complete and each such statement is deemed to be qualified and amplified in all respects by the provisions of such agreements and documents, copies of which are either attached hereto or are available upon reasonable notice for examination by offerees, or their duly authorized representatives, at the office of the Manager, located at 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145. Each offeree and his business and/or tax advisors are urged to examine all agreements and documents.

EquiAlt Fund LLC

4

RA00000009

### THE OFFERING

While this Offering is made to various parties, it is not a registered offering under Federal securities laws.  This Offering is being made pursuant to the private offering exemption of Section 4(2) of the Act and/or Regulation D promulgated under the Act.  This Offering is also being made in strict compliance with the applicable state securities laws.  Each Investor must represent that he is acquiring his Debenture ("Securities") for investment purposes only and not with a view to resale or distribution.  All Securities are offered subject to prior sale, when, as and if issued, and subject to the right of the Manager to reject any subscription in whole or in part.   The Company will only sell Securities to persons meeting its suitability standards, which the Company's Manager may determine in its sole and absolute discretion.

### METHOD OF DISTRIBUTION

This Private Placement Memorandum summarizes a proposed transaction in which Investors will be entitled to hold a Debenture issued by EQUIALT FUND, LLC, a Nevada limited liability company.

The purpose of this Offering is to raise monies to enable the Company to purchase distressed real property and either derive rental income therefrom or dispose of the property for a profit.

Distribution of Securities.

These securities are being offered through the Company.  There is no firm commitment for the purchase of any Securities.  Sales of the Securities may be made to residents of Arizona, California, Florida and Nevada, and possibly in other jurisdictions, all in compliance with the laws of each jurisdiction.

### RISK AND OTHER IMPORTANT FACTORS

Investment herein involves substantial risks.   Investors should consider the risks mentioned elsewhere in this Private Placement Memorandum as well as the following matters:

Tax Risks.

A summary of Federal income tax provisions is included in this Memorandum.    No representation or warranty of any kind is made by the Manager, the Company, counsel to the Manager or the Company with respect to any tax consequences relating to the Company, or the allocation of taxable income or loss set forth in this Memorandum and each Investor should seek his own tax advice concerning the purchase of a Debenture.

1.    Suitability of the Investment to the Investor.  It is expected that the Debenture will yield taxable income to its Investors.

EquiAlt Fund LLC

5

RA00000010

2.   Federal Income Tax Risks.

a.   Necessity of Obtaining Professional Advice.   THERE IS NO GENERAL EXPLANATION OF THE FEDERAL INCOME TAX ASPECTS OF INVESTMENT IN THE COMPANY CONTAINED IN THIS MEMORANDUM, AND ACCORDINGLY, EACH INVESTOR IS URGED TO CONSULT SUCH INVESTOR'S OWN TAX INVESTMENT AND LEGAL ADVISORS WITH RESPECT TO SUCH MATTERS AND WITH RESPECT TO THE ADVISABILITY OF INVESTING IN THE COMPANY.   The income tax consequences of an investment in the Company are complex, subject to varying interpretations, and may vary significantly between Investors depending upon such personal factors such as sources of income, investment portfolios and other tax considerations.  A Prospective Investor should consider with his professional advisors the tax effects of his becoming a Debenture holder.  Each Investor should, at his own expense, retain, consult with and rely on his own advisors with respect to the tax effects of his investment in the Company.  In addition to considering the federal income tax consequences, each Investor should also consider with his own advisors the state and local tax consequences of an investment in the Company.

No representations are made as to any federal, state or local tax consequences resulting from an investment in the Company, and no assurances are given that any deduction or other federal income tax benefits will be available to Members in the Company in the current or future years.

b.   Company Tax Status.  Although the Manager believes that the Company will be treated as a partnership for federal income tax purposes, such treatment cannot be assured.  The Manager reserves the right to convert the Company to a corporation if it is in the best interests of the Company to do so.

c.   Tax Law Changes.   The existence and amount of particular credits and deductions, if any, claimed by the Company may depend upon various determinations and allocations, characterizations of payments, and other matters which are subject to potential controversy on factual as well as legal grounds.  Changes in the Code and official interpretations thereof after the date of this Memorandum may eliminate or reduce any perceived tax benefits from an investment in the Securities.  There can be no assurance that regulations having an adverse effect on the creditors will not be issued in the future and enforced by the courts.  Any modification or change in the Code or the regulations promulgated thereunder, or any judicial decision, could be applied retroactively to any investment in the Company.  In view of this uncertainty, Investors are urged to consider ongoing developments in this area and consult their advisors concerning the effects of such developments on an investment in the Company in light of their own personal tax situations.

d.   Absence of Ruling or Opinion.  The Company will not seek a ruling from the IRS or an opinion of counsel with respect to any tax matters described in this Memorandum.

EquiAlt Fund LLC

6

RA00000011

<u>Operating Risks.</u>

1.<u>Risk of Interpretation of Real Estate Documents and Agreements.</u>  There are certain risks in connection with any real estate acquisition resulting from the drafting and subsequent interpretation of mortgages, deeds, leases, purchase agreements, management contracts, et cetera.  Any documents describing the Property or the legal relations thereto could be subject to various interpretations and potential disputes.  While legal counsel will review certain legal documents, it is impossible to prevent and be secured against such various differing interpretations.

2.<u>Risks of Real Estate Ownership.</u>  Real estate is not readily marketable.  It is fixed in location and is subject to adverse social and economic changes and uses.  Carrying costs may increase beyond the levels sustainable.

3.<u>Results of Operations - Possible Operating Deficits.</u>  This Memorandum and the attached Financial Projections are based upon projected results which may be greater than results obtained from actual operations.  Actual results may differ adversely for a number of reasons; including, but not limited to, the possibility of increases in entitlement costs, losses due to structural-related deficiencies and real estate taxes, which cannot be fully recovered through increased property values and other revenues, softness in the demand for land due to changing socio-economic conditions in the area in which the Property is located and competition among other real estate development projects in the area.

Following the Offering, the Company may be subject to rising operating costs, although the Company does not anticipate significant operating costs.  (See "FINANCIAL PROJECTIONS - SOURCES AND USES OF CASH".)  However, there is no assurance that these funds will be adequate.  Additional capital may be raised by the Company.

4.<u>Risk of Financing and Potential Foreclosure on Mortgage Loan.</u>  A mortgage loan may be secured by the Property.  The risk of foreclosure can arise from, among other things, the failure by the Company to meet any of the other various conditions existing in the mortgage loan documents.

Payment of principal and interest on the mortgage loan will be due on a monthly basis.  It is anticipated that these payments will be met by the Company from its initial capital and revenue sources.  No assurance can be given that the funds generated by the initial capital or revenue will be sufficient to meet the monthly payments.

5.<u>Risk of Failure to Obtain Loan.</u>  Although the Company does not intend to secure a loan to purchase the Property, such a loan could be secured by the Property.  In the event of a default on the loan, the lender could foreclose upon the Property.

6.<u>Dependence Upon Issuer.</u>  The Manager has full discretion in the management of the Project and in the management and control of the affairs of the Company, including the authority to sell less than all or substantially all of the Company's assets for whatever consideration it deems appropriate.  Except upon the sale of all or substantially all of the Company's assets, the sale of such assets will not

EquiAlt Fund LLC

7

RA00000012

result in the dissolution of the Company.  The sale of all or substantially all of the Company's interests in the Property will result in the dissolution of the Company.

The success of the operations of the Company will be dependent in large measure on the judgment and ability of the Manager.

7. Dependability of Assumptions.  The description of the contemplated results of the operations of the Company described in this Memorandum are based on various assumptions concerning many facts over which the Company has no control, including, without limitation:

(a)     The continuing advantages of certain provisions of the Federal Income Tax laws and of certain local tax laws; and

(b)     The management capabilities of the Manager.

8. Conflicts of Interest.   The Manager and its affiliates are not required to devote themselves exclusively to the affairs of the Company.  Further, the Manager and its affiliates may own real estate in the same market as the Property.  The Manager and its affiliates may have a conflict of interest in the ownership of these other properties and in allocating management, services and functions between this Company and their other present and future interests.  The Manager and its affiliates believe that they have sufficient time and staff to be fully capable of discharging their responsibilities to the Company and to any other present or future activities.

9. Limited Transferability.  The Securities have not been registered under the Act, or under the securities laws of any state, but are being offered and sold in reliance upon exemptions from registration thereunder, including the exemptions from federal registration contained in Section 4(2) of the Act and/or Regulation D, Rule 506 promulgated thereunder.  As a consequence of the restrictions on subsequent transfer imposed by these exemptions, the Securities may not be subsequently sold, assigned, conveyed, pledged, hypothecated or otherwise transferred by the holder thereof, whether or not for consideration, except in compliance with the Act and applicable state securities laws.  There will be no public market for the Securities following termination of this Offering and it is not expected that a public market for the Securities will ever develop.

10. Company's Redemption Option.  The Company has the legal right, but not the obligation, to repurchase the Debentures prior to their maturity date.

11. Management Decisions.   The Manager is vested with the exclusive authority as to the management and conduct of the business and affairs of the Company.  The success of the Company depends, to a large extent, upon the management decisions made by the Manager.

12.     Best Efforts Offering.  The Company will utilize proceeds of the Offering as and when received.  No escrow account has been established for this Offering.

EquiAlt Fund LLC

FOIA Confidential Treatment Requested                                                                RA00000013

CONSULT YOUR OWN ATTORNEY, ACCOUNTANT AND/OR FINANCIAL CONSULTANT FOR AN EVALUATION OF THE MERIT OF AND THE RISKS INHERENT IN THIS INVESTMENT.   EACH PROSPECTIVE INVESTOR IS RESPONSIBLE FOR ANY FEES OR CHARGES INCURRED IN CONNECTION WITH SUCH AN EVALUATION.

**SOURCES AND USES OF FUNDS**

The Company is offering up to Fifty Million Dollars in Debentures.

The funds received will be used to purchase, own, improve and/or sell real property.

**PROJECTED SOURCES AND USES OF CASH**

The Company's sources and uses of capital are set forth below:

**SOURCES:**

Debentures:

| | |
|---|---|
| **TOTAL SOURCES:** | **$100,000,000.00** |

**USES:**

| | |
|---|---|
| Investment in Property | $95,000,000 |
| Accounting and Tax Preparation | $550,000.00 |
| Legal Costs | $250,000.00 |
| Investor Relations and Communications Expenses | $2,500,000.00 |
| Marketing and Sponsorship Event Fees | $200,000.00 |
| Miscellaneous Expenses and Reserves | $1,500,000.00 |
| **TOTAL USES:** | $100,000,000 |

Pursuant to this Offering, the Company is raising debt financing of up to $100,000,000.  It is not anticipated that the Company will require additional capital beyond that mentioned above. However, if additional capital is needed, the Manager may seek additional capital through means determined by it.

Because any projection of the future is subject to uncertainties, actual results could vary significantly from those estimated.  All uses of proceeds are estimated and subject to change.

EquiAlt Fund LLC

9

RA00000014

### COMPENSATION AND FEES TO THE MANAGER

The Manager shall be exclusively responsible for the management and control of the operations of the Company.   The Manager shall be reimbursed for any direct funds or expenses advanced by it prior to or after formation of the Company to the extent that such expenses are incurred or paid directly on behalf of the Company.   The Manager shall be entitled to a management fees as set forth in the governing documents of the Company.

### THE PROJECT

The Company plans to purchase distressed real property in opportunistic markets, such as southern Nevada, Arizona and Florida.   The Company may "flip" these properties or hold them for investment, in the Manager's sole and absolute discretion.   The Company may use some of its capital to engage in lending activities when risk management and income analysis deem appropriate.   We anticipate that the principal amount of real estate loans generally will be in the range of approximately $25,000 to $1 million.   Our loans may be secured by a deed of trust or other form of security. Generally, any such loan transaction will have a term of two months to two years, and may be extended at the manager's discretion.   We anticipate that substantially all of the loans to be invested in or purchased will require the borrower to make a balloon payment on the principal amount upon maturity of the loan either by sale of the property/project and/or its units, by refinance, or other means which we will attempt to establish before funding. From time to time, opportunities may arise in which the Company may be able to participate in opportunistic real estate related activity with other entities or individuals.  These opportunities will be evaluated in a like manner by the Manager

### MANAGEMENT OF THE PROJECT

The Manager is EQUIALT, LLC.   The Manager shall manage the Company.   As such, the Manager has the power and authority, on the Company's behalf and in its name, to manage, administer, and operate the Company's day-to-day business affairs, and to do or cause to be done on behalf of the Company anything necessary or appropriate for the same, including but not limited to the powers and authority set forth in the Agreement.   The Manager's power and authority is subject to the limitations set forth in the Agreement.   The Manager shall serve as Manager until its successor is appointed by the Company's members as provided in the Agreement. The Manager may delegate its duties to others.

### COMPANY INVESTMENT OBJECTIVES AND POLICIES

The primary investment objective of the Company is to purchase distressed real property in the U.S. and derive economic benefit through a resale or lease.

### COMPETITION

There is significant competition in the distressed real property markets referenced herein, and other competitors may enter the field.

EquiAlt Fund LLC

FOIA Confidential Treatment Requested

RA00000015

## MANAGER

EQUIALT, LLC, a Nevada limited liability company organized in 2011, serves as the Manager.

The principals involved in the project are as follows:

### Brian Davison – Chief Executive Officer

Brian Davison's real estate career began in 1994, in North County San Diego.  He has the hands-on experience in a variety of functions in the real estate and mortgage industries:  encompassing management, loan renegotiation at a publicly traded REIT, regional Vice President of a private residential mortgage company, the broker-owner of a multi-state branch correspondent residential loan origination company with in-house underwriting and outbound marketing support system, and Vice President of a private lending company.  Brian has held real estate and/or mortgage broker licenses in California, Nevada, and Florida, with additional work in the Arizona and Colorado markets.  Brian has facilitated over $1.5 billion in mortgage and real estate transactions, is an active investor in a variety of markets and is host of "The Cash Flow Show."  In early 2009, he founded Invest REO LLC dba The Cash Flow Store, an opportunistic distressed real estate investment company.   He currently holds a State of Nevada Real Estate License.

### Diane Dutton, MBA, CPA – Chief Financial Officer

Diane Dutton was born and raised in Brooklyn, New York, and relocated to Southern Nevada in 1980, after working for KPMG Peat Marwick (NYC office).  Ms. Dutton holds an MBA and BBA from Pace University, NYC Campus and is a Nevada CPA.   Ms Dutton has held positions as Controller, COO and CFO, as well as VP of Profit Planning and Investor Relations during an IPO, responsible for SEC reporting and secondary offering of a subsidiary of Reno-based International Game Technologies.  In her various roles, Ms. Dutton has managed the M&A process, debt offerings and divestiture processes for several companies.

From January 2003 to February 2008, Diane was CFO, COO of Prudential Americana Group REALTORS® & Americana Holdings, LLC, Las Vegas, Nevada, which included $100 Million Real Estate, Mortgage & Title Operations oversight.  In this capacity, her duties included auditing, financial reporting to PREFSA and SEC Compliance.  Diane oversaw a $22.5 Million Senior & Mezzanine level financial offering, which closed October, 2004.  Reporting to the Board of Directors, PREFSA and the CEO, she directed the company's tax function and compliance with appropriate local, state and federal jurisdictions.

Ms. Dutton is also the author of *A Woman's Ladder to Success is paved with Broken Glass Ceilings* (published in 2007).  Diane is a member of the Executive Board of the NSCPA, and AICPA Ambassador speaking on behalf of the CPA Profession.   She is also a member of TMA, CEO-CFO Group, NAFE, NAWBO and Women and Network.

EquiAlt Fund LLC

11

RA00000016

**Barry M. Rybicki — President - Arizona Operations**

Barry has over 14 years of experience in real estate lending. He has lived in Phoenix, Arizona, for the past 21 years, originally coming to Arizona from Nebraska to attend Arizona State University where he majored in Accounting and minored in Marketing. He served as President to a bank in Arizona, and managed a $10,000,000 line of credit. This capacity required; real estate evaluation, risk management, customer service, underwriting, appraisal review. He has handled over $540,000,000.00 in residential deeds of trust in the Phoenix market and continues to have an overall understanding of the residential sectors inside of Maricopa County. Barry also served as Vice President for Cole Management LLC, where he gained significant experience in originating, structuring and negotiating deals, developing and implementing business strategies, assessing market and competitive issues, and raising capital from debt and equity providers. He remains actively involved in the community donating his time to Coach youth sports and is currently the Treasurer of Pinnacle High Schools' Boys Soccer Team.

**Zolt Szorenyi – Business Development, Market Analysis**

President of Developers Marketing Solutions and a licensed real estate agent in Las Vegas since 1997, Zolt has been actively involved in selling residential and commercial real estate. His experience is ranging in Resale and New Construction Single Family and Attached products, Representing and Negotiating for Buyers and Sellers on private and corporate levels, Industrial and Multi Family Commercial products. From April of 2004 to August of 2006 he was the Chief Operating Officer of one of the largest Real Estate Marketing and Sales Firms in Las Vegas. During that time, Zolt was personally involved with the marketing and sales of over 20 developments in the Las Vegas area which totaled over 7,000 homes. Zolt founded Developers Marketing Solutions in 2006. He has put together a team of experienced professionals that includes specialists in market research and reporting, business development, marketing plans and budgeting, sales training and management, escrow management, project management and sales strategies through networks throughout the US. Since April of 2008, Zolt has launched the Trustee Sale and Foreclosure acquisition department. Annually, Developers Marketing Solutions finds and purchases 300-400 homes for individual investor's purchases.

**Jim McMillan, MBA – Business Development, Investment Research**

Vice President of Developers Marketing Solutions and a graduate from the University of Nevada Las Vegas with a Masters Degree in Business and a Bachelors Degree from Brigham Young University and as a licensed real estate agent in Las Vegas since 2004, Jim has analyzed and researched multiple properties for real estate business development. He has worked on dozens of communities over the years that go under his microscopic process which includes product analysis; project development and analysis; market trends, research and reporting; database creation and implementation. Currently with the Trustee Sales, Jim is instrumental in analyzing and researching each property as well as title research in finding the best investment opportunities for our investors.

**Marc Cardwell – Business Strategy and Development**

EquiAlt Fund LLC

12

RA00000017

While attending the University of Southern California Mr. Cardwell worked full time as an Equities Analyst for investment bank Van Kasper and Company (since acquired by Wells Fargo) and merchant banker W.E. Meyers. Upon completing his B.S. in Finance he went to work for The Dewey Consulting Group where he rose to Vice President and co-managed both The Conti Mortgage Securitization Conduit, as well as the Southern Pacific Funding Securitization Conduit. While there he also specialized in Mergers and Acquisitions of Sub Prime mortgage companies, and completed six deals on behalf of its clients. He then founded American Lending Group which was profitably sold in 2002, but remained as a part-time consultant until 2004. He also has consulted to various public and private mortgage banks, brokerages and hard money lenders in the areas of: risk analysis, secondary marketing, mergers and acquisitions, and converting mortgage brokers into bankers. In particular he consulted exclusively to a public REIT that specialized in hard money lending for a period of two years, where he helped them create new guidelines and refined risk based pricing as well as establishing a new subprime banking division. In addition to his involvement in the mortgage industry he owns a check cashing store, a smog test shop, and has developed residential properties.

**CONFLICTS OF INTEREST**

The Company is subject to various existing and/or potential conflicts of interest arising out of its relationship with the Manager and/or its affiliates. These conflicts may involve:

(a)     <u>Allocation of Manager's Activities.</u> The Manager and/or its affiliates serve and may serve in such capacity in other limited partnerships, limited liability companies, corporations or entities which will compete with the activities of the Company. The Manager and/or its affiliates may have conflicts of interest in allocating management, time, services and functions between other limited partnerships or ventures and this Company as well as any future limited partnerships or limited liability companies. The Manager believes that, together with its affiliates and any employees or agents which may be retained in the future, it has sufficient staff to be fully capable of discharging its responsibilities to this Company and any other present or future limited partnerships, limited liability companies, corporations or entities. (See "THE MANAGER.")

The Agreement provides that no contract, action or transaction is void or voidable with respect to the Company because it is between or affects the Company and one or more of its Members, managers, or officers or because it is between or affects the Company and any other person in which one or more of its Members, managers or officers are Members, managers, directors, trustees, or officers or have financial or personal interest, or because one or more interested Members, managers or officers participate in or vote at the meeting that authorizes the contracts, action, or transaction, provided certain circumstances apply.

(b)     <u>Compensation to Manager and Class B Member.</u> This Offering involves substantial compensation and benefits to the Manager and other affiliates.

EquiAlt Fund LLC

13

RA00000018

The Manager believes that the fees that the Company intends to pay are reasonable, in light of the tasks and risks undertaken, and will result in substantial benefits to the Company, its member(s) and its Debenture holders.

(c)      <u>Lack of Independent Counsel.</u>  The prospective Investors and the Company have not had separate legal counsel in connection with the formation of the Company, the acquisition of the Property and the offering of the Securities;  Investors should seek their own independent counsel.

(d)      <u>Liability of Members and Managers.</u>  Applicable state law and the Agreement provide that the debts, obligations and liabilities of the Company, however or wherever arisen or derived, shall be solely those of the Company, and no Member of the Company shall be personally liable for the same to third parties solely by reason of his or her status as a Member, and that the failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs shall not be grounds for imposing personal liability on Members for liabilities or obligations of the Company.

## STANDARD OF CARE; INDEMNIFICATION

1.      <u>Standard of Care of Manager.</u>  Nevada law provides that a manager of a limited liability company shall perform his duties as a manager in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the Company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances.  This is in addition to the several duties and obligations of and limitations on the Manager as set forth in the Agreement.   To impose liability on a manager, however, it must be shown by clear and convincing evidence that the standard of care was not met by the Manager.

It should be noted that the cost of litigation against the Manager for enforcement of the standard of care may be prohibitively high and that any judgment obtained may not be collectible since the Manager is not bonded and any judgment exceeding its net worth may not be collectible.  An investment decision should be based on the judgment of an Investor as to the investment factors described in this Memorandum rather than reliance upon the value of the right to bring legal actions against or to control the activities of the Manager.

Notwithstanding the standards of care obligations, the Manager has broad discretionary power under the terms of the Operating Agreement and under applicable state law to manage the affairs of the Company with the assistance, if desirable, of consultants or others retained for the account of the Company or the Manager.  Generally, actions taken by the Manager are not subject to vote or review by the Members, except to the limited extent provided in the Agreement.

2.      <u>Indemnification.</u>  The Agreement provides that the Company may, to the fullest extent not prohibited by the Agreement or any provisions of applicable law indemnify the Manager and/or Project Manager against any and all costs and expenses (including amounts paid in settlement, and other disbursements) actually and reasonably incurred by or imposed upon such person in connection

EquiAlt Fund LLC

14

RA00000019

with any action, suit, investigation or proceeding (or any claim or other matter therein), whether civil, criminal, administrative or otherwise in nature, including any settlements thereof or any appeal therein, with respect to which the Manager is named or otherwise becomes or is threatened to be made a party by reason of being or at any time having been the Manager of the Company or, at the direction or request of the Company, a manager, director, trustee, officer, employee, or agent of or fiduciary for any other limited liability company, corporation, partnership, trust, venture, or other entity or enterprise.

Because there are provisions in the Agreement for indemnification of the Manager, purchasers of Securities may have a more limited right of action than they would have absent such provision in the Agreement.  Insofar as indemnification for liabilities arising out of the Act may not be provided to directors, officers and controlling persons pursuant to the foregoing, or otherwise, the Manager has been advised that in the opinion of the U.S. Securities and Exchange Commission, such indemnification is contrary to public policy and is, therefore, unenforceable.

### RESTRICTIONS ON TRANSFER

The Securities have not been registered under the Act.  The Securities are being offered and will be sold in the absence of any registration under the Act, by reason of an exemption under Section 4(2) and/or Regulation D promulgated under the Act.  The availability of such exemption is dependent, in part, upon the "investment intent" of each Investor and will not be available if any Investor purchases a Debenture with a view toward its distribution.   Accordingly, each Investor will be required to acknowledge that his purchase is being made for investment, for his own record and beneficial account, and without any view to the distribution thereof.  A Debenture may not be resold by a Member unless and until it is subsequently registered under the Act and applicable state securities laws or unless appropriate exemptions from registration are available.

Investors have not been, and will not be, granted the right to require the registration of the Securities under the Act and applicable state securities laws.  Moreover, the Company has no intention to register the Securities under federal securities laws (or to take any action to make exemptions from registration on resale or transfer available to the Investors) and, in view of the nature of the transaction, it is highly unlikely that there will be any such registration (or such action taken) at any time in the future.  Accordingly, an Investor must bear the economic risk of an investment in a Debenture for an indefinite period of time.

FOIA Confidential Treatment Requested

RA00000020

EXHIBIT A

FORM OF DEBENTURE

**THIS SECURITY HAS NOT BEEN REGISTERED WITH THE U.S. SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE, AND IS ISSUED IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR RE-SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.**

## 12% DEBENTURE

$355.00                                                          August 3, 2016

FOR VALUE RECEIVED, the undersigned, EquiAlt Fund LLC, a Nevada limited liability company having an address of 10161 Park Run Drive, Suite 150, Las Vegas, NV 89145 ("Maker"), promises to pay to the order of Provident Trust Group, LLC FBO John F. Crane IRA having an address of 8880 W. Sunset Rd. #250, Las Vegas NV 89148  ("Holder"), the principal sum of Three Hundred Fifty Five and 00/100 Dollars ($355.00) (the "Principal Amount"), together with interest on the unpaid Principal Amount thereof computed from the date hereof (the "Commencement Date"), at the rates provided herein, on the Maturity Date defined in Section 1 hereof.

1.  Maturity.  The Principal Amount and any unpaid interest due under this debenture (the "Debenture") shall be due and payable on August 1, 2019 (the "Maturity Date").

2.  Interest Rate and Payments.  Interest hereunder shall accrue as follows:

(a)      From the Commencement Date, interest shall accrue on the unpaid Principal Amount at the rate of Twelve and 00/100 percent (12%) per annum.

(b)      Monthly payments to start in September of 2016.

3.  Prepayment.  This Debenture may be prepaid in whole or in part at any time, without penalty or premium, it being understood and agreed that, except as expressly provided herein,

EQUIALT FUND LLC

FOIA Confidential Treatment Requested                                   RA00000021

Maker shall not be entitled, by virtue of any prepayment or otherwise, to a refund of interest, any other fees, points, charges and the like paid by Maker to Holder in connection with his Debenture.

4.   Waiver.   Maker hereby waives all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, demand for payment, protest, notice of protest and notice of dishonor, to the extent permitted by law. Maker further waives trial by jury.   No extension of time for payment of this Debenture or any installment hereof, no alteration, amendment or waiver of any provision of this Debenture and no release or substitution of any collateral securing Maker's obligations hereunder shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Maker under this Debenture.

5.   Default and Remedies.   At the election of the holder of this Debenture, all payments due hereunder may be accelerated, and this Debenture shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (1) Maker fails to pay on or before the date due, any amount payable hereunder; (2) Maker fails to perform or observe any other term or provision of this Debenture with respect to payment; or (3) Maker fails to perform or observe any other term or provision of this Debenture, which default is not cured within sixty (60) days of receipt of written notice.   In addition to the rights and remedies provided herein, the holder of this Debenture may exercise any other right or remedy in any other document, instrument or agreement evidencing, securing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

Any forbearance by the holder of this Debenture in exercising any right or remedy hereunder or under any other agreement or instrument in connection with the Debenture or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any right or remedy by the holder of this Debenture.   The acceptance by the holder of this Debenture of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the right of the holder of this Debenture to require prompt payment when due of all other sums payable hereunder or to declare a default for failure to make prompt payment.

6.   Assignment of Debenture.   If this Debenture is transferred in any manner by Holder, the right, option or other provisions herein shall apply with equal effect in favor of any subsequent holder hereof, provided, however, that any assignment by Holder must comply with applicable Federal and state securities laws, and Maker shall be entitled to demand an opinion of counsel opining that any transfer will comply with said laws.

7.   Waiver of Offset.   By its acceptance of Holder's funds and execution of this Debenture, Maker acknowledges, agrees and confirms that, as of the time of signing, it has no defense, offset or counterclaim for any occurrence in relation to this Loan.

EQUIALT FUND LLC

FOIA Confidential Treatment Requested                                                    RA00000022

8. <u>Acceptable Currency</u>. All payments of principal and interest hereunder are payable in lawful money of the United States of America.

9. <u>Joint and Several Obligations</u>. If more than one person signs this Debenture, each person signs as a Maker, unless otherwise stated and shall be fully, jointly, severally and personally obligated to keep all of the promises made in this Debenture, including the promise to pay all sums due and owing.

10. <u>Miscellaneous</u>.    This Debenture shall be binding on the parties hereto and their respective heirs, legal representatives, executors, successors and assigns. This Debenture shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.    This Debenture shall be exclusively governed by the laws of the State of Nevada without regard to choice of law consideration.    Maker hereby irrevocably consents to the jurisdiction of the courts of the State of Nevada and of any federal court located in Nevada in connection with any action or proceeding arising out of or relating to this Debenture.  This Debenture may not be changed or terminated except upon the prior written agreement of the Holder.    A determination that any portion of this Debenture is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Debenture to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision to the extent legally permissible and otherwise as it may apply to other persons or circumstances.

11. <u>Jury Waiver</u>.    **MAKER AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY MAKER OR THE HOLDER OF THIS DEBENTURE ON OR WITH RESPECT TO THIS DEBENTURE OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY.  MAKER AND HOLDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.  MAKER ACKNOWLEDGES AND AGREES THAT AS OF THE DATE HEREOF THERE ARE NO DEFENSES OR OFFSETS TO ANY AMOUNTS DUE IN CONNECTION WITH THE LOAN.  FURTHER, MAKER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.  MAKER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS DEBENTURE AND THAT HOLDER WOULD NOT EXTEND CREDIT TO MAKER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS DEBENTURE.**

EQUIALT FUND LLC

FOIA Confidential Treatment Requested

RA00000023

*[Remainder of this page intentionally blank.]*

EQUIALT FUND LLC

FOIA Confidential Treatment Requested

IN WITNESS WHEREOF, the Maker has executed this Debenture on the date first above written.

**MAKER:**

EquiAlt Fund LLC
a Nevada limited liability company

By:  EquiAlt LLC
      a Nevada limited liability company
      its Manager


By: _____
Name: _____
Title: _____

EQUIALT FUND LLC

FOIA Confidential Treatment Requested

RA00000025



## PRIVATE PLACEMENT MEMORANDUM

### EQUIALT FUND, LLC



EquiAlt Fund LLC.

# PRIVATE PLACEMENT MEMORANDUM

## EQUIALT FUND, LLC

### $50,000,000

### 8.00% DEBENTURES

### MINIMUM PURCHASE: $25,000

EQUIALT FUND, LLC, a Nevada limited liability company (the "Company"), organized under the Nevada Limited Liability Company Act, hereby offers (the "Offering"), by and through its Manager, up to Fifty Million Dollars ($50,000,000) in 8.00% Debentures ( the "Securities") of the Company. EQUIALT, LLC, a Nevada limited liability company, is the Manager (the "Manager") of the Company. The securities referred to herein are being offered on a best efforts basis to residents of Arizona, California, Florida and Nevada, and may be offered in other states.

DATE OF THIS PRIVATE PLACEMENT MEMORANDUM: June 20, 2011

INVESTMENT IN THE SECURITIES INVOLVES A HIGH DEGREE OF RISK. INVESTORS WILL BE REQUIRED TO REPRESENT THAT THEY ARE FAMILIAR WITH AND UNDERSTAND THE TERMS OF THE OFFERING (SEE "RISK FACTORS," "CONFLICTS OF INTEREST" AND "COMPENSATION AND FEES TO THE MANAGER AND AFFILIATES.").

THE SECURITIES HAVE NOT BEEN REGISTERED WITH NOR APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("COMMISSION") NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS OFFERING HAS NOT BEEN APPROVED OR DISAPPROVED UNDER APPLICABLE STATE SECURITIES LAWS, BY THE SECURITIES DIVISION OF CORPORATIONS, SECURITIES REGULATION DIVISION ("DIVISION"), NOR HAS THE DIVISION REVIEWED OR PASSED UPON THE ACCURACY OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

DURING THE COURSE OF THE OFFERING AND PRIOR TO SALE, EACH OFFEREE OF THE SECURITIES AND HIS ADVISOR(S) ARE INVITED TO ASK QUESTIONS OF AND OBTAIN ADDITIONAL INFORMATION FROM THE MANAGER CONCERNING THE TERMS AND CONDITIONS OF THE OFFERING, THE COMPANY, THE DEBT TO BE OWED BY THE COMPANY AND ANY OTHER RELEVANT MATTERS (INCLUDING, BUT NOT LIMITED TO, ADDITIONAL INFORMATION TO VERIFY THE ACCURACY OF THE INFORMATION SET FORTH HEREIN), TO THE EXTENT THE MANAGER POSSESSES SUCH INFORMATION OR

EquiAlt Fund LLC

i

CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.  OFFEREES OR ADVISORS HAVING QUESTIONS OR DESIRING ADDITIONAL INFORMATION SHOULD CONTACT THE MANAGER.

THIS MEMORANDUM DOES NOT CONTAIN AN UNTRUE STATEMENT OF A MATERIAL FACT OR OMIT TO STATE A MATERIAL FACT NECESSARY TO MAKE THE STATEMENTS MADE, IN LIGHT OF THE CIRCUMSTANCES UNDER WHICH  THEY WERE MADE, NOT MISLEADING.  IT CONTAINS A FAIR SUMMARY OF THE MATERIAL TERMS OF DOCUMENTS PURPORTED TO BE SUMMARIZED HEREIN.  THIS MEMORANDUM CONTAINS SUMMARIES OF CERTAIN DOCUMENTS, THAT ARE BELIEVED TO BE ACCURATE, BUT REFERENCE IS HEREBY MADE TO THE ACTUAL DOCUMENTS, COPIES OF WHICH ARE ATTACHED HERETO OR ARE AVAILABLE AT THE OFFICE OF THE MANAGER, FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO.  ALL SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THIS REFERENCE, AND NOTHING IN THIS MEMORANDUM SHALL EXTEND THE LIABILITY UNDER ANY SUCH DOCUMENTS OF ANY OF THE PARTIES HERETO. ALL DOCUMENTS RELATING TO THE OFFERING WILL BE MADE AVAILABLE TO THE OFFEREE NAMED BELOW AND/OR HIS ADVISOR(S) UPON REQUEST.

THE OFFERING CAN BE WITHDRAWN AT ANY TIME BEFORE CONSUMMATION AND IS SPECIFICALLY MADE SUBJECT TO THE CONDITIONS DESCRIBED IN THIS MEMORANDUM.   IN CONNECTION WITH THE OFFERING AND SALE OF THE SECURITIES, THE MANAGER RESERVES THE RIGHT, IN ITS SOLE DISCRETION, TO REJECT ANY SUBSCRIPTION IN WHOLE OR IN PART OR TO ALLOT TO ANY PROSPECTIVE INVESTOR LESS THAN THE SECURITIES SUBSCRIBED FOR BY SUCH PROSPECTIVE INVESTOR.

SINCE THERE ARE SUBSTANTIAL RESTRICTIONS ON THE TRANSFERABILITY OF THE SECURITIES, EACH OFFEREE MUST ASSUME THAT HE WILL BEAR THE ECONOMIC RISK OF HIS INVESTMENT FOR AN INDEFINITE PERIOD.  THE SECURITIES MAY NOT BE TRANSFERRED WITHOUT THE PRIOR WRITTEN CONSENT OF THE REMAINING MEMBERS.   IN ADDITION, SECURITIES ARE NOT REGISTERED FOR SALE TO THE PUBLIC UNDER THE SECURITIES ACT OF 1933 OR THE SECURITIES LAWS OF ANY STATE AND THE SECURITIES MAY BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF BY AN INVESTOR ONLY IF, AMONG OTHER THINGS, THE SECURITIES ARE REGISTERED OR, IN THE OPINION OF COUNSEL TO THE COMPANY, REGISTRATION IS NOT REQUIRED UNDER SUCH LAWS.

THIS MEMORANDUM HAS BEEN PREPARED SOLELY FOR THE USE OF PERSONS WHO MAY WANT TO PURCHASE SECURITIES AND DELIVERY THEREOF CONSTITUTES AN OFFER ONLY IF THE NAME OF AN OFFEREE APPEARS IN THE APPROPRIATE SPACE PROVIDED BELOW AND IF THE PERSON SO NAMED MEETS THE SUITABILITY STANDARDS SET FORTH UNDER "QUALIFICATION OF INVESTORS."   ANY

EquiAlt Fund LLC

i

RA00000028

DISTRIBUTION OF THIS MEMORANDUM TO ANY PERSON OTHER THAN THE OFFEREE NAMED BELOW (OR TO THOSE INDIVIDUALS WHOM HE RETAINS TO ADVISE HIM WITH RESPECT THERETO) IS UNAUTHORIZED AND ANY REPRODUCTION OF THIS MEMORANDUM IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, WITHOUT THE PRIOR WRITTEN CONSENT OF THE MANAGER, IS PROHIBITED.

NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED TO BE MADE IN THIS MEMORANDUM OR SHOULD BE INFERRED THEREFROM WITH RESPECT TO THE ECONOMIC RETURN OR THE TAX TREATMENT WHICH MAY ACCRUE TO THE INVESTOR. NO ASSURANCE CAN BE GIVEN THAT EXISTING TAX LAWS WILL NOT BE CHANGED OR INTERPRETED ADVERSELY, EITHER OF WHICH MAY DENY THE INVESTORS ALL OR A PORTION OF THE TAX TREATMENT CONSIDERED HEREIN. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, TAX OR INVESTMENT ADVICE. EACH INVESTOR SHOULD CONSULT HIS OWN ATTORNEY, ACCOUNTANT AND OTHER ADVISORS AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING A PURCHASE BY HIM OF A DEBENTURE.

NO OFFERING LITERATURE OR ADVERTISING IN WHATEVER FORM WILL OR MAY BE EMPLOYED IN THE OFFERING EXCEPT FOR THIS MEMORANDUM AND STATEMENTS CONTAINED OR DOCUMENTS SUMMARIZED HEREIN. NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATIONS, OR GIVE ANY INFORMATION, WITH RESPECT TO THE SECURITIES, EXCEPT FOR INFORMATION CONTAINED OR REFERRED TO HEREIN.

Name of Offeree: _____   Memorandum Number: _____

EquiAlt Fund LLC                                     i

## TABLE OF CONTENTS

QUALIFICATION OF INVESTORS .................................................................................................1

GLOSSARY OF TERMS ...............................................................................................................1

SUMMARY OF THE OFFERING ...................................................................................................2

THE OFFERING ........................................................................................................................5

METHOD OF DISTRIBUTION ......................................................................................................5

RISK AND OTHER IMPORTANT FACTORS ...................................................................................5

SOURCES AND USES OF FUNDS ...............................................................................................9

PROJECTED SOURCES AND USES OF CASH ..............................................................................9

COMPENSATION AND FEES TO THE MANAGER .......................................................................10

THE PROJECT ........................................................................................................................10

MANAGEMENT OF THE PROJECT ...........................................................................................10

COMPANY INVESTMENT OBJECTIVES AND POLICIES ...............................................................10

COMPETITION .......................................................................................................................10

CONFLICTS OF INTEREST .......................................................................................................13

STANDARD OF CARE; INDEMNIFICATION ................................................................................14

RESTRICTIONS ON TRANSFER ................................................................................................15

EXHIBIT A

FORM OF DEBENTURE ...........................................................................................................1

EquiAlt Fund LLC

i

RA00000030

These securities are offered subject to (a) prior sale, (b) approval of counsel, (c) the right to terminate the offer without prior notice or to reject any subscription, and (d) certain other conditions.

## QUALIFICATION OF INVESTORS

Each Debenture requires a minimum investment of $25,000, provided, however, the Company reserves the right to accept subscriptions for a lesser amount. Additional investment may be made in increments of $5,000.

Investment in the Securities offered hereby involves risk and is suitable only for persons of financial means who have provided for liquidity in their other investments. No Securities will be sold to Investors who will not warrant and represent to the Company and the Manager (and unless the Manager shall have reasonable grounds to believe) that such offeree has such knowledge and expertise in financial and business matters, is capable of evaluating the merits and risks of the prospective investment and is able to bear the economic risks of the investment, or alternatively, that such Investor's legal or financial representative has such knowledge and expertise about financial and business matters and is capable of evaluating the merits and risks of the investment together with the Investor having the ability to bear the economic risks of the investment. In either case, the Investor must also warrant and represent to the Company and the Manager that he is acquiring the Securities for his own account.

Each Investor must satisfy the Manager that the Investor can bear a total loss of his investment. Each Investor will be required to represent that he is acquiring the Securities being purchased by him for investment and for his own account, and not with a view to resale or distribution. Resale of the Securities is subject to extensive restrictions (see "SUMMARY OF THE OFFERING"). It is not expected that any public market for the resale of the Securities will develop.

## GLOSSARY OF TERMS

"Act" - the Securities Act of 1933, as amended.

"Affiliate" - (i) any person directly or indirectly controlling, controlled by or under common control with another person, (ii) a person owning or controlling 10% or more of the outstanding voting securities of such other person, (iii) any officer, director, partner or employee of such person and (iv) if such other person is an officer, director, partner or employee, any company for which such person acts in any such capacity.

"Agreement" - the Operating Agreement of the Company, as such may be amended from time to time.

"Debenture" - the 8.00% Debentures offered to Investors herein.

"Manager" - this Company's Manager: EQUIALT, LLC or its successor(s) as determined by the Agreement.

EquiAlt Fund LLC

1

RA00000031

"Memorandum" - this Private Placement Memorandum.

"Company" - this limited liability company:   EQUIALT FUND, LLC, a Nevada limited liability company.

"Investor(s)" – prospective purchasers of Debentures in the Company.

"Project" - the proposed business of the Company (i.e., acquiring, improving and/or selling distressed real property).

"Reserves" - all reserves established by the Manager in its sole discretion for the Company's purposes, including, but not limited to, operating expenses and other working capital needs, liabilities, and taxes.

### SUMMARY OF THE OFFERING

This summary of certain provisions of the Memorandum is intended only for a quick reference and is not intended to be complete.  This Memorandum describes in detail numerous aspects of the transaction which are material to Investors, including those summarized below, and this Memorandum and the accompanying Exhibits must be read in their entirety by reference to the full text of this Memorandum and the underlying documents.

The Offering.

The Memorandum describes an offering (the "Offering") to prospective Investors of 8.00% Debentures issued by EQUIALT FUND, LLC, a limited liability company formed under the laws of the State of Nevada.

The Company.

EQUIALT FUND, LLC (the "Company"), a Nevada limited liability company, was formed as of May 23, 2011, when its Articles of Organization were filed with the Nevada Secretary of State's Office pursuant to the Nevada Limited Liability Company Act as adopted by the State of Nevada.  The office of the Company is located at 10161 Park Run Drive, Suite 150, Las Vegas, Nevada  89145.

The Manager.

The Manager of the Company is EQUIALT, LLC, a Nevada limited liability company (See "THE MANAGERS").

Purpose of the Offering.

The purpose of this Offering is to secure capital in order to enable the Company to purchase, improve, lease and/or dispose of distressed real property, enter into opportunistic loan transactions and/

EquiAlt Fund LLC

2

RA00000032

or engage in other ventures.   (See "MANAGEMENT OF THE COMPANY" and "INVESTMENT OBJECTIVES".)

Investment Objectives.

The primary investment objective of the Company shall be to purchase and sell single family properties in certain distressed real estate markets in the U.S. and participate in opportunistic lending in the U.S.

Securities Being Offered.

An aggregate of up to $50 million in 8.00% Debentures of the Company are being offered. The Securities shall be offered on a best efforts basis scheduled to close on or before December 31, 2011.   The minimum subscription accepted by the Company will be for $25,000, and additional investment may be made in increments of $5,000.   (See "Allocation of Benefits" below.)   Under no circumstances will the Company admit more than thirty-five (35) non-accredited Investors as computed under Rule 501 of Regulation D promulgated under the Act.   The Offering will terminate on a date to be determined by the Manager on or prior to December 31, 2011, provided the Manager shall have the right to extend the Offering indefinitely.

Selling Agent.

Securities are being offered directly through the Company.   No commissions of any kind will be paid to selling agents or brokers.

The purchase price is payable by Investors in full by cash.

Risk Factors.

The purchase of Securities involves a high degree of risk to the Investor including certain risks relating to regulatory, operating, tax and investment matters.  (See "RISK FACTORS.")

Allocation of Benefits.

a)      Profits, Losses and Net Cash Flow.

The Company does not anticipate substantial profits, losses or Net Cash Flow until assets are sold.

b)      Net Proceeds from Refinancing, Sale or upon Termination of the Company.

In the event that the Company disposes of substantially all of its assets, the Company shall be obligated to satisfy all of its debts, including without limitation the Debentures, prior to any distribution of cash to its members.

EquiAlt Fund LLC

3

Management of the Project.

The Project will be managed by the Company through EQUIALT, LLC, the Company's Manager.

Compensation and Fees to Manager.

The Manager will receive Management Fees as set forth in the Operating Agreement and described more fully below. (See "COMPENSATION AND FEES TO MANAGER AND AFFILIATES.")

No Tax Ruling.

The Company will not seek a ruling from the Internal Revenue Service (the "IRS") as to any aspects of the Offering and will rely on the opinion of the Manager and its legal counsel with respect to its classification as a limited liability company for Federal income tax purposes. (See "RISK FACTORS - TAX RISKS.")

Management and Control of the Company.

The Manager will be responsible for the management and control of the Company. EQUIALT, LLC will serve as the initial Manager.

Distributions to Investors.

The Manager does not anticipate cash distributions from operations of the Company. (See "SOURCES AND USES OF FUNDS.") Each Investor will receive payments pursuant to the terms of the Debentures.

Status of Investor.

Each Investor will be a creditor of the Company pursuant to the terms of the Debenture (See "EXHIBIT A.")

Further Investigation.

Statements contained in this Summary or elsewhere in the Private Placement Memorandum as to the contents of the other offering documents are not necessarily complete and each such statement is deemed to be qualified and amplified in all respects by the provisions of such agreements and documents, copies of which are either attached hereto or are available upon reasonable notice for examination by offerees, or their duly authorized representatives, at the office of the Manager, located at 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145. Each offeree and his business and/or tax advisors are urged to examine all agreements and documents.

EquiAlt Fund LLC

4

RA00000034

## THE OFFERING

While this Offering is made to various parties, it is not a registered offering under Federal securities laws.  This Offering is being made pursuant to the private offering exemption of Section 4(2) of the Act and/or Regulation D promulgated under the Act.  This Offering is also being made in strict compliance with the applicable state securities laws.  Each Investor must represent that he is acquiring his Debenture ("Securities") for investment purposes only and not with a view to resale or distribution.  All Securities are offered subject to prior sale, when, as and if issued, and subject to the right of the Manager to reject any subscription in whole or in part.  The Company will only sell Securities to persons meeting its suitability standards, which the Company's Manager may determine in its sole and absolute discretion.

## METHOD OF DISTRIBUTION

This Private Placement Memorandum summarizes a proposed transaction in which Investors will be entitled to hold a Debenture issued by EQUIALT FUND, LLC, a Nevada limited liability company.

The purpose of this Offering is to raise monies to enable the Company to purchase distressed real property and either derive rental income therefrom or dispose of the property for a profit.

Distribution of Securities.

These securities are being offered through the Company.  There is no firm commitment for the purchase of any Securities.  Sales of the Securities may be made to residents of Arizona, California, Florida and Nevada, and possibly in other jurisdictions, all in compliance with the laws of each jurisdiction.

## RISK AND OTHER IMPORTANT FACTORS

Investment herein involves substantial risks.  Investors should consider the risks mentioned elsewhere in this Private Placement Memorandum as well as the following matters:

Tax Risks.

A summary of Federal income tax provisions is included in this Memorandum.   No representation or warranty of any kind is made by the Manager, the Company, counsel to the Manager or the Company with respect to any tax consequences relating to the Company, or the allocation of taxable income or loss set forth in this Memorandum and each Investor should seek his own tax advice concerning the purchase of a Debenture.

1.    Suitability of the Investment to the Investor.  It is expected that the Debenture will yield taxable income to its Investors.

EquiAlt Fund LLC

5

RA00000035

2.   Federal Income Tax Risks.

a.   Necessity of Obtaining Professional Advice.   THERE IS NO GENERAL EXPLANATION OF THE FEDERAL INCOME TAX ASPECTS OF INVESTMENT IN THE COMPANY CONTAINED IN THIS MEMORANDUM, AND ACCORDINGLY, EACH INVESTOR IS URGED TO CONSULT SUCH INVESTOR'S OWN TAX INVESTMENT AND LEGAL ADVISORS WITH RESPECT TO SUCH MATTERS AND WITH RESPECT TO THE ADVISABILITY OF INVESTING IN THE COMPANY.   The income tax consequences of an investment in the Company are complex, subject to varying interpretations, and may vary significantly between Investors depending upon such personal factors such as sources of income, investment portfolios and other tax considerations.   A Prospective Investor should consider with his professional advisors the tax effects of his becoming a Debenture holder.   Each Investor should, at his own expense, retain, consult and rely on his own advisors with respect to the tax effects of his investment in the Company.   In addition to considering the federal income tax consequences, each Investor should also consider with his own advisors the state and local tax consequences of an investment in the Company.

No representations are made as to any federal, state or local tax consequences resulting from an investment in the Company, and no assurances are given that any deduction or other federal income tax benefits will be available to Members in the Company in the current or future years.

b.   Company Tax Status.   Although the Manager believes that the Company will be treated as a partnership for federal income tax purposes, such treatment cannot be assured.   The Manager reserves the right to convert the Company to a corporation if it is in the best interests of the Company to do so.

c.   Tax Law Changes.   The existence and amount of particular credits and deductions, if any, claimed by the Company may depend upon various determinations and allocations, characterizations of payments, and other matters which are subject to potential controversy on factual as well as legal grounds.   Changes in the Code and official interpretations thereof after the date of this Memorandum may eliminate or reduce any perceived tax benefits from an investment in the Securities. There can be no assurance that regulations having an adverse effect on the creditors will not be issued in the future and enforced by the courts.   Any modification or change in the Code or the regulations promulgated thereunder, or any judicial decision, could be applied retroactively to any investment in the Company.   In view of this uncertainty, Investors are urged to consider ongoing developments in this area and consult their advisors concerning the effects of such developments on an investment in the Company in light of their own personal tax situations.

d.   Absence of Ruling or Opinion.   The Company will not seek a ruling from the IRS or an opinion of counsel with respect to any tax matters described in this Memorandum.

EquiAlt Fund LLC

6

RA00000036

<u>Operating Risks.</u>

1.<u>Risk of Interpretation of Real Estate Documents and Agreements.</u>  There are certain risks in connection with any real estate acquisition resulting from the drafting and subsequent interpretation of mortgages, deeds, leases, purchase agreements, management contracts, et cetera.  Any documents describing the Property or the legal relations thereto could be subject to various interpretations and potential disputes.  While legal counsel will review certain legal documents, it is impossible to prevent and be secured against such various differing interpretations.

2.<u>Risks of Real Estate Ownership.</u>  Real estate is not readily marketable.  It is fixed in location and is subject to adverse social and economic changes and uses.  Carrying costs may increase beyond the levels sustainable.

3.<u>Results of Operations - Possible Operating Deficits.</u>  This Memorandum and the attached Financial Projections are based upon projected results which may be greater than results obtained from actual operations.  Actual results may differ adversely for a number of reasons; including, but not limited to, the possibility of increases in entitlement costs, losses due to structural-related deficiencies and real estate taxes, which cannot be fully recovered through increased property values and other revenues, softness in the demand for land due to changing socio-economic conditions in the area in which the Property is located and competition among other real estate development projects in the area.

Following the Offering, the Company may be subject to rising operating costs, although the Company does not anticipate significant operating costs.  (See "FINANCIAL PROJECTIONS - SOURCES AND USES OF CASH".)  However, there is no assurance that these funds will be adequate.  Additional capital may be raised by the Company.

4.<u>Risk of Financing and Potential Foreclosure on Mortgage Loan.</u>  A mortgage loan may be secured by the Property.  The risk of foreclosure can arise from, among other things, the failure by the Company to meet any of the other various conditions existing in the mortgage loan documents.

Payment of principal and interest on the mortgage loan will be due on a monthly basis.  It is anticipated that these payments will be met by the Company from its initial capital and revenue sources.  No assurance can be given that the funds generated by the initial capital or revenue will be sufficient to meet the monthly payments.

5.<u>Risk of Failure to Obtain Loan.</u>  Although the Company does not intend to secure a loan to purchase the Property, such a loan could be secured by the Property.  In the event of a default on the loan, the lender could foreclose upon the Property.

6.<u>Dependence Upon Issuer.</u>  The Manager has full discretion in the management of the Project and in the management and control of the affairs of the Company, including the authority to sell less than all or substantially all of the Company's assets for whatever consideration it deems appropriate.  Except upon the sale of all or substantially all of the Company's assets, the sale of such assets will not

EquiAlt Fund LLC

7

RA00000037

result in the dissolution of the Company. The sale of all or substantially all of the Company's interests in the Property will result in the dissolution of the Company.

The success of the operations of the Company will be dependent in large measure on the judgment and ability of the Manager.

7. Dependability of Assumptions. The description of the contemplated results of the operations of the Company described in this Memorandum are based on various assumptions concerning many facts over which the Company has no control, including, without limitation:

(a)    The continuing advantages of certain provisions of the Federal Income Tax laws and of certain local tax laws; and

(b)    The management capabilities of the Manager.

8. Conflicts of Interest.   The Manager and its affiliates are not required to devote themselves exclusively to the affairs of the Company. Further, the Manager and its affiliates may own real estate in the same market as the Property. The Manager and its affiliates may have a conflict of interest in the ownership of these other properties and in allocating management, services and functions between this Company and their other present and future interests. The Manager and its affiliates believe that they have sufficient time and staff to be fully capable of discharging their responsibilities to the Company and to any other present or future activities.

9. Limited Transferability. The Securities have not been registered under the Act, or under the securities laws of any state, but are being offered and sold in reliance upon exemptions from registration thereunder, including the exemptions from federal registration contained in Section 4(2) of the Act and/or Regulation D, Rule 506 promulgated thereunder. As a consequence of the restrictions on subsequent transfer imposed by these exemptions, the Securities may not be subsequently sold, assigned, conveyed, pledged, hypothecated or otherwise transferred by the holder thereof, whether or not for consideration, except in compliance with the Act and applicable state securities laws. There will be no public market for the Securities following termination of this Offering and it is not expected that a public market for the Securities will ever develop.

10. Company's Redemption Option. The Company has the legal right, but not the obligation, to repurchase the Debentures prior to their maturity date.

11. Management Decisions.   The Manager is vested with the exclusive authority as to the management and conduct of the business and affairs of the Company. The success of the Company depends, to a large extent, upon the management decisions made by the Manager.

12.    Best Efforts Offering. The Company will utilize proceeds of the Offering as and when received. No escrow account has been established for this Offering.

EquiAlt Fund LLC

8

RA00000038

CONSULT YOUR OWN ATTORNEY, ACCOUNTANT AND/OR FINANCIAL CONSULTANT FOR AN EVALUATION OF THE MERIT OF AND THE RISKS INHERENT IN THIS INVESTMENT.  EACH PROSPECTIVE INVESTOR IS RESPONSIBLE FOR ANY FEES OR CHARGES INCURRED IN CONNECTION WITH SUCH AN EVALUATION.

### SOURCES AND USES OF FUNDS

The Company is offering up to Fifty Million Dollars in Debentures.

The funds received will be used to purchase, own, improve and/or sell real property.

### PROJECTED SOURCES AND USES OF CASH

The Company's sources and uses of capital are set forth below:

**SOURCES:**

| | |
|---|---|
| Debentures: | |
| **TOTAL SOURCES:** | $50,000,000.00 |

**USES:**

| | |
|---|---|
| Investment in Property | $45,000,000.00 |
| Accounting and Tax Preparation | $550,000.00 |
| Legal Costs | $250,000.00 |
| Investor Relations and Communications Expenses | $2,500,000.00 |
| Marketing and Sponsorship Event Fees | $200,000.00 |
| Miscellaneous Expenses and Reserves | $1,500,000.00 |
| **TOTAL USES:** | 50,000,000.00 |

Pursuant to this Offering, the Company is raising debt financing of up to $50,000,000.  It is not anticipated that the Company will require additional capital beyond that mentioned above.  However, if additional capital is needed, the Manager may seek additional capital through means determined by it.

Because any projection of the future is subject to uncertainties, actual results could vary significantly from those estimated.  All uses of proceeds are estimated and subject to change.

EquiAlt Fund LLC

9

RA00000039

## COMPENSATION AND FEES TO THE MANAGER

The Manager shall be exclusively responsible for the management and control of the operations of the Company.   The Manager shall be reimbursed for any direct funds or expenses advanced by it prior to or after formation of the Company to the extent that such expenses are incurred or paid directly on behalf of the Company.   The Manager shall be entitled to a management fees as set forth in the governing documents of the Company.

## THE PROJECT

The Company plans to purchase distressed real property in opportunistic markets, such as southern Nevada, Arizona and Florida.   The Company may "flip" these properties or hold them for investment, in the Manager's sole and absolute discretion. The Company may use some of its capital to engage in lending activities when risk management and income analysis deem appropriate.   We anticipate that the principal amount of real estate loans generally will be in the range of approximately $25,000 to $1 million.   Our loans may be secured by a deed of trust or other form of security. Generally, any such loan transaction will have a term of two months to two years, and may be extended at the manager's discretion.   We anticipate that substantially all of the loans to be invested in or purchased will require the borrower to make a balloon payment on the principal amount upon maturity of the loan either by sale of the property/project and/or its units, by refinance, or other means which we will attempt to establish before funding. From time to time, opportunities may arise in which the Company may be able to participate in opportunistic real estate related activity with other entities or individuals.  These opportunities will be evaluated in a like manner by the Manager

## MANAGEMENT OF THE PROJECT

The Manager is EQUIALT, LLC.   The Manager shall manage the Company.   As such, the Manager has the power and authority, on the Company's behalf and in its name, to manage, administer, and operate the Company's day-to-day business affairs, and to do or cause to be done on behalf of the Company anything necessary or appropriate for the same, including but not limited to the powers and authority set forth in the Agreement.   The Manager's power and authority is subject to the limitations set forth in the Agreement.  The Manager shall serve as Manager until its successor is appointed by the Company's members as provided in the Agreement.  The Manager may delegate its duties to others.

## COMPANY INVESTMENT OBJECTIVES AND POLICIES

The primary investment objective of the Company is to purchase distressed real property in the U.S. and derive economic benefit through a resale or lease.

## COMPETITION

There is significant competition in the distressed real property markets referenced herein, and other competitors may enter the field.

EquiAlt Fund LLC

<div align="center">10</div>

RA00000040

## MANAGER

EQUIALT, LLC, a Nevada limited liability company organized in 2011, serves as the Manager.

The principals involved in the project are as follows:

### Brian Davison – Chief Executive Officer

Brian Davison's real estate career began in 1994, in North County San Diego.  He has the hands-on experience in a variety of functions in the real estate and mortgage industries: encompassing management, loan renegotiation at a publicly traded REIT, regional Vice President of a private residential mortgage company, the broker-owner of a multi-state branch correspondent residential loan origination company with in-house underwriting and outbound marketing support system, and Vice President of a private lending company.  Brian has held real estate and/or mortgage broker licenses in California, Nevada, and Florida, with additional work in the Arizona and Colorado markets.  Brian has facilitated over $1.5 billion in mortgage and real estate transactions, is an active investor in a variety of markets and is host of "The Cash Flow Show."  In early 2009, he founded Invest REO LLC dba The Cash Flow Store, an opportunistic distressed real estate investment company.  He currently holds a State of Nevada Real Estate License.

### Diane Dutton, MBA, CPA – Chief Financial Officer

Diane Dutton was born and raised in Brooklyn, New York, and relocated to Southern Nevada in 1980, after working for KPMG Peat Marwick (NYC office).  Ms. Dutton holds an MBA and BBA from Pace University, NYC Campus and is a Nevada CPA.   Ms Dutton has held positions as Controller, COO and CFO, as well as VP of Profit Planning and Investor Relations during an IPO, responsible for SEC reporting and secondary offering of a subsidiary of Reno-based International Game Technologies.  In her various roles, Ms. Dutton has managed the M&A process, debt offerings and divestiture processes for several companies.

From January 2003 to February 2008, Diane was CFO, COO of Prudential Americana Group REALTORS® & Americana Holdings, LLC, Las Vegas, Nevada, which included $100 Million Real Estate, Mortgage & Title Operations oversight.  In this capacity, her duties included auditing, financial reporting to PREFSA and SEC Compliance.  Diane oversaw a $22.5 Million Senior & Mezzanine level financial offering, which closed October, 2004.  Reporting to the Board of Directors, PREFSA and the CEO, she directed the company's tax function and compliance with appropriate local, state and federal jurisdictions.

Ms. Dutton is also the author of *A Woman's Ladder to Success is paved with Broken Glass Ceilings* (published in 2007).  Diane is a member of the Executive Board of the NSCPA, and AICPA Ambassador speaking on behalf of the CPA Profession.  She is also a member of TMA, CEO-CFO Group, NAFE, NAWBO and Women and Network.

EquiAlt Fund LLC

11

RA00000041

### Barry M. Rybicki — Managing Director

Barry has over 14 years of experience in real estate lending.  He has lived in Phoenix, Arizona, for the past 21 years, originally coming to Arizona from Nebraska to attend Arizona State University where he majored in Accounting and minored in Marketing.  He served as President to a bank in Arizona, and managed a $10,000,000 line of credit.  This capacity required; real estate evaluation, risk management, customer service, underwriting, appraisal review. He has handled over $540,000,000.00 in residential deeds of trust in the Phoenix market and continues to have an overall understanding of the residential sectors inside of Maricopa County.   Barry also served as Vice President for Cole Management LLC, where he gained significant experience in originating, structuring and negotiating deals, developing and implementing business strategies, assessing market and competitive issues, and raising capital from debt and equity providers.   He remains actively involved in the community donating his time to Coach youth sports and is currently the Treasurer of Pinnacle High Schools' Boys Soccer Team.

### Andre Sears - V.P. Investors Relations

Andre's career includes 19 years of diverse senior management, marketing, finance and business development experience, with particular expertise in evaluating and developing new business opportunities and managing complex relationships. Andre served as Vice President of Business Development for the largest trust company in the state of Nevada helping grow the company to nearly $5 billion in assets under custody.  He held executive roles at a regional registered investment firm and Sun West Bank, respectively.  Andre performed his undergraduate studies at Boise State University and has completed Program for Leadership Development (PLD) modules at Harvard Business School - Executive Education.

Andre's strong commitment to give back to his community is demonstrated through his volunteer activities.  Mr. Sears proudly served on the Board of Trustees for the Southern Nevada Leukemia and Lymphoma Society (LLS) from 2008 – 2013.  In 2008 and 2009, Mr. Sears served as Corporate Walk Chairman for the Southern Nevada Light the Night Walk.  Andre is also an active member of the Clark County Bar Association.

### Zolt Szorenyi – Business Development, Market Analysis

President of Developers Marketing Solutions and a licensed real estate agent in Las Vegas since 1997, Zolt has been actively involved in selling residential and commercial real estate. His experience is ranging in Resale and New Construction Single Family and Attached products, Representing and Negotiating for Buyers and Sellers on private and corporate levels, Industrial and Multi Family Commercial products. From April of 2004 to August of 2006 he was the Chief Operating Officer of one of the largest Real Estate Marketing and Sales Firms in Las Vegas. During that time, Zolt was personally involved with the marketing and sales of over 20 developments in the Las Vegas area which totaled over 7,000 homes. Zolt founded Developers Marketing Solutions in 2006. He has put together a team of experienced professionals that includes specialists in market research and reporting, business

FOIA Confidential Treatment Requested                                    RA00000042

development, marketing plans and budgeting, sales training and management, escrow management, project management and sales strategies through networks throughout the US. Since April of 2008, Zolt has launched the Trustee Sale and Foreclosure acquisition department. Annually, Developers Marketing Solutions finds and purchases 300-400 homes for individual investor's purchases.

### Jim McMillan, MBA – Business Development, Investment Research

Vice President of Developers Marketing Solutions and a graduate from the University of Nevada Las Vegas with a Masters Degree in Business and a Bachelors Degree from Brigham Young University and as a licensed real estate agent in Las Vegas since 2004, Jim has analyzed and researched multiple properties for real estate business development. He has worked on dozens of communities over the years that go under his microscopic process which includes product analysis; project development and analysis; market trends, research and reporting; database creation and implementation. Currently with the Trustee Sales, Jim is instrumental in analyzing and researching each property as well as title research in finding the best investment opportunities for our investors.

### Marc Cardwell – Business Strategy and Development

While attending the University of Southern California Mr. Cardwell worked full time as an Equities Analyst for investment bank Van Kasper and Company (since acquired by Wells Fargo) and merchant banker W.E. Meyers. Upon completing his B.S. in Finance he went to work for The Dewey Consulting Group where he rose to Vice President and co-managed both The Conti Mortgage Securitization Conduit, as well as the Southern Pacific Funding Securitization Conduit. While there he also specialized in Mergers and Acquisitions of Sub Prime mortgage companies, and completed six deals on behalf of its clients. He then founded American Lending Group which was profitably sold in 2002, but remained as a part-time consultant until 2004. He also has consulted to various public and private mortgage banks, brokerages and hard money lenders in the areas of: risk analysis, secondary marketing, mergers and acquisitions, and converting mortgage brokers into bankers. In particular he consulted exclusively to a public REIT that specialized in hard money lending for a period of two years, where he helped them create new guidelines and refined risk based pricing as well as establishing a new subprime banking division. In addition to his involvement in the mortgage industry he owns a check cashing store, a smog test shop, and has developed residential properties.

### CONFLICTS OF INTEREST

The Company is subject to various existing and/or potential conflicts of interest arising out of its relationship with the Manager and/or its affiliates. These conflicts may involve:

(a)      <u>Allocation of Manager's Activities.</u>   The Manager and/or its affiliates serve and may serve in such capacity in other limited partnerships, limited liability companies, corporations or entities which will compete with the activities of the Company.   The Manager and/or its affiliates may have conflicts of interest in allocating management, time, services and functions between other limited partnerships or ventures and this Company as well as any future limited partnerships or limited liability

FOIA Confidential Treatment Requested

RA00000043

companies. The Manager believes that, together with its affiliates and any employees or agents which may be retained in the future, it has sufficient staff to be fully capable of discharging its responsibilities to this Company and any other present or future limited partnerships, limited liability companies, corporations or entities. (See "THE MANAGER.")

The Agreement provides that no contract, action or transaction is void or voidable with respect to the Company because it is between or affects the Company and one or more of its Members, managers, or officers or because it is between or affects the Company and any other person in which one or more of its Members, managers or officers are Members, managers, directors, trustees, or officers or have financial or personal interest, or because one or more interested Members, managers or officers participate in or vote at the meeting that authorizes the contracts, action, or transaction, provided certain circumstances apply.

(b)     <u>Compensation to Manager and Class B Member.</u>  This Offering involves substantial compensation and benefits to the Manager and other affiliates.

The Manager believes that the fees that the Company intends to pay are reasonable, in light of the tasks and risks undertaken, and will result in substantial benefits to the Company, its member(s) and its Debenture holders.

(c)     <u>Lack of Independent Counsel.</u>  The prospective Investors and the Company have not had separate legal counsel in connection with the formation of the Company, the acquisition of the Property and the offering of the Securities;  Investors should seek their own independent counsel.

(d)     <u>Liability of Members and Managers.</u>  Applicable state law and the Agreement provide that the debts, obligations and liabilities of the Company, however or wherever arisen or derived, shall be solely those of the Company, and no Member of the Company shall be personally liable for the same to third parties solely by reason of his or her status as a Member, and that the failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs shall not be grounds for imposing personal liability on Members for liabilities or obligations of the Company.

### STANDARD OF CARE; INDEMNIFICATION

1.     <u>Standard of Care of Manager.</u>  Nevada law provides that a manager of a limited liability company shall perform his duties as a manager in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the Company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances. This is in addition to the several duties and obligations of and limitations on the Manager as set forth in the Agreement. To impose liability on a manager, however, it must be shown by clear and convincing evidence that the standard of care was not met by the Manager.

It should be noted that the cost of litigation against the Manager for enforcement of the standard of care may be prohibitively high and that any judgment obtained may not be collectible since the Manager is

EquiAlt Fund LLC

<div align="center">14</div>

RA00000044

not bonded and any judgment exceeding its net worth may not be collectible.  An investment decision should be based on the judgment of an Investor as to the investment factors described in this Memorandum rather than reliance upon the value of the right to bring legal actions against or to control the activities of the Manager.

Notwithstanding the standards of care obligations, the Manager has broad discretionary power under the terms of the Operating Agreement and under applicable state law to manage the affairs of the Company with the assistance, if desirable, of consultants or others retained for the account of the Company or the Manager.  Generally, actions taken by the Manager are not subject to vote or review by the Members, except to the limited extent provided in the Agreement.

      2.    <u>Indemnification</u>.  The Agreement provides that the Company may, to the fullest extent not prohibited by the Agreement or any provisions of applicable law indemnify the Manager and/or Project Manager against any and all costs and expenses (including amounts paid in settlement, and other disbursements) actually and reasonably incurred by or imposed upon such person in connection with any action, suit, investigation or proceeding (or any claim or other matter therein), whether civil, criminal, administrative or otherwise in nature, including any settlements thereof or any appeal therein, with respect to which the Manager is named or otherwise becomes or is threatened to be made a party by reason of being or at any time having been the Manager of the Company or, at the direction or request of the Company, a manager, director, trustee, officer, employee, or agent of or fiduciary for any other limited liability company, corporation, partnership, trust, venture, or other entity or enterprise.

Because there are provisions in the Agreement for indemnification of the Manager, purchasers of Securities may have a more limited right of action than they would have absent such provision in the Agreement.  Insofar as indemnification for liabilities arising out of the Act may not be provided to directors, officers and controlling persons pursuant to the foregoing, or otherwise, the Manager has been advised that in the opinion of the U.S. Securities and Exchange Commission, such indemnification is contrary to public policy and is, therefore, unenforceable.

## RESTRICTIONS ON TRANSFER

      The Securities have not been registered under the Act.  The Securities are being offered and will be sold in the absence of any registration under the Act, by reason of an exemption under Section 4(2) and/or Regulation D promulgated under the Act.  The availability of such exemption is dependent, in part, upon the "investment intent" of each Investor and will not be available if any Investor purchases a Debenture with a view toward its distribution.   Accordingly, each Investor will be required to acknowledge that his purchase is being made for investment, for his own record and beneficial account, and without any view to the distribution thereof.  A Debenture may not be resold by a Member unless and until it is subsequently registered under the Act and applicable state securities laws or unless appropriate exemptions from registration are available.

      Investors have not been, and will not be, granted the right to require the registration of the Securities under the Act and applicable state securities laws.  Moreover, the Company has no intention

EquiAlt Fund LLC

15

RA00000045

to register the Securities under federal securities laws (or to take any action to make exemptions from registration on resale or transfer available to the Investors) and, in view of the nature of the transaction, it is highly unlikely that there will be any such registration (or such action taken) at any time in the future.  Accordingly, an Investor must bear the economic risk of an investment in a Debenture for an indefinite period of time.

EquiAlt Fund LLC

16

EXHIBIT A

FORM OF DEBENTURE

**THIS SECURITY HAS NOT BEEN REGISTERED WITH THE U.S. SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE, AND IS ISSUED IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR RE-SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.**

## 8.00% DEBENTURE

**$250,000.00**                                                                **July 29, 2015**

FOR VALUE RECEIVED, the undersigned, EquiAlt Fund LLC, a Nevada limited liability company having an address of 10161 Park Run Drive, Suite 150, Las Vegas, NV 89145 ("Maker"), promises to pay to the order of Investor name having an address of Investor address ("Holder"), the principal sum of Two Hundred Fifty Thousand Dollars and no/100 ($250,000.00) (the "Principal Amount"), together with interest on the unpaid Principal Amount thereof computed from the date hereof (the "Commencement Date"), at the rates provided herein, on the Maturity Date defined in Section 1 hereof.

1. Maturity. The Principal Amount and any unpaid interest due under this debenture (the "Debenture") shall be due and payable on August 1, 2018 (the "Maturity Date").

2. Interest Rate and Payments. Interest hereunder shall accrue as follows:

(a)       From the Commencement Date, interest shall accrue on the unpaid Principal Amount at the rate of Eight and 00/100 percent (8.00%) per annum.

(b)       Monthly payments in the amount of $1,667.00 will begin in September of 2015.

3. Prepayment. This Debenture may be prepaid in whole or in part at any time, without penalty or premium, it being understood and agreed that, except as expressly provided herein, Maker shall not be entitled, by virtue of any prepayment or otherwise, to a refund of interest,

EQUIALT FUND LLC

any other fees, points, charges and the like paid by Maker to Holder in connection with his Debenture.

4. <u>Waiver</u>.  Maker hereby waives all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, demand for payment, protest, notice of protest and notice of dishonor, to the extent permitted by law. Maker further waives trial by jury.  No extension of time for payment of this Debenture or any installment hereof, no alteration, amendment or waiver of any provision of this Debenture and no release or substitution of any collateral securing Maker's obligations hereunder shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Maker under this Debenture.

5. <u>Default and Remedies</u>.  At the election of the holder of this Debenture, all payments due hereunder may be accelerated, and this Debenture shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "<u>Event of Default</u>"): (1) Maker fails to pay on or before the date due, any amount payable hereunder; (2) Maker fails to perform or observe any other term or provision of this Debenture with respect to payment; or (3) Maker fails to perform or observe any other term or provision of this Debenture, which default is not cured within sixty (60) days of receipt of written notice.  In addition to the rights and remedies provided herein, the holder of this Debenture may exercise any other right or remedy in any other document, instrument or agreement evidencing, securing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

Any forbearance by the holder of this Debenture in exercising any right or remedy hereunder or under any other agreement or instrument in connection with the Debenture or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any right or remedy by the holder of this Debenture.  The acceptance by the holder of this Debenture of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the right of the holder of this Debenture to require prompt payment when due of all other sums payable hereunder or to declare a default for failure to make prompt payment.

6. <u>Assignment of Debenture</u>.  If this Debenture is transferred in any manner by Holder, the right, option or other provisions herein shall apply with equal effect in favor of any subsequent holder hereof, provided, however, that any assignment by Holder must comply with applicable Federal and state securities laws, and Maker shall be entitled to demand an opinion of counsel opining that any transfer will comply with said laws.

7. <u>Waiver of Offset</u>. By its acceptance of Holder's funds and execution of this Debenture, Maker acknowledges, agrees and confirms that, as of the time of signing, it has no defense, offset or counterclaim for any occurrence in relation to this Loan.

EQUIALT FUND LLC

8. <u>Acceptable Currency</u>. All payments of principal and interest hereunder are payable in lawful money of the United States of America.

9. <u>Joint and Several Obligations</u>. If more than one person signs this Debenture, each person signs as a Maker, unless otherwise stated and shall be fully, jointly, severally and personally obligated to keep all of the promises made in this Debenture, including the promise to pay all sums due and owing.

10. <u>Miscellaneous</u>.   This Debenture shall be binding on the parties hereto and their respective heirs, legal representatives, executors, successors and assigns. This Debenture shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.   This Debenture shall be exclusively governed by the laws of the State of Nevada without regard to choice of law consideration.  Maker hereby irrevocably consents to the jurisdiction of the courts of the State of Nevada and of any federal court located in Nevada in connection with any action or proceeding arising out of or relating to this Debenture. This Debenture may not be changed or terminated except upon the prior written agreement of the Holder.   A determination that any portion of this Debenture is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Debenture to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision to the extent legally permissible and otherwise as it may apply to other persons or circumstances.

11. <u>Jury Waiver</u>.   MAKER AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY MAKER OR THE HOLDER OF THIS DEBENTURE ON OR WITH RESPECT TO THIS DEBENTURE OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY.  MAKER AND HOLDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.   MAKER ACKNOWLEDGES AND AGREES THAT AS OF THE DATE HEREOF THERE ARE NO DEFENSES OR OFFSETS TO ANY AMOUNTS DUE IN CONNECTION WITH THE LOAN.  FURTHER, MAKER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.   MAKER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS DEBENTURE AND THAT HOLDER WOULD NOT EXTEND CREDIT TO MAKER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS DEBENTURE.

EQUIALT FUND LLC

FOIA Confidential Treatment Requested

*[Remainder of this page intentionally blank.]*

IN WITNESS WHEREOF, the Maker has executed this Debenture on the date first above written.

**MAKER:**

EquiAlt Fund LLC
a Nevada limited liability company

By:  EquiAlt LLC
a Nevada limited liability company
its Manager

By: _____
Name: _____
Title: _____

EQUIALT FUND LLC

FOIA Confidential Treatment Requested

RA00000050