**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                                    Case No. 8:20-cv-325-T-35AEP

BRIAN DAVISON,
BARRY M. RYBICKI,
EQUIALT LLC,
EQUIALT FUND, LLC
EQUIALT FUND II, LLC,
EQUIALT FUND III, LLC,
EA SIP, LLC,

        Defendants,
and

128 E. DAVIS BLVD., LLC;
310 78TH AVE, LLC;
551 3D AVE S, LLC;
604 WEST AZEELE, LLC;
2101 W. CYPRESS, LLC;
2112 W. KENNEDY BLVD, LLC;
5123 E. BROADWAY AVE, LLC;
BLUE WATERS TI, LLC; BNAZ, LLC;
BR SUPPORT SERVICES, LLC;
 BUNGALOWS TI, LLC;
CAPRI HAVEN, LLC; EA NY, LLC;
EQUIALT 519 3RD AVE S., LLC;
MCDONALD REVOCABLE LIVING TRUST;
SILVER SANDS TI, LLC;
TB OLDEST HOUSE EST. 1842, LLC.

        Relief Defendants.
_____/

**RECEIVER'S SUPPLEMENT TO THE FIRST QUARTERLY FEE APPLICATION
FOR ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF
<u>COSTS TO RECEIVER AND HIS PROFESSIONALS</u>**

On June 16, 2020, Magistrate Judge Anthony Porcelli held a hearing on the Receiver's First Quarterly Fee Application for Order Awarding Fees, Costs and Reimbursement of Costs to Receiver and His Professionals ("Motion for Fees") [Doc. 88]. At the hearing, the Court requested that the Receiver supplement his motion with further information related to the reasonableness of the fees sought, including, but not limited to more specific information related to the billing professionals, their backgrounds and their rates.[1]

I.   **Summary of Activity During Time Period Encompassed by Motion for Fees**

The Receiver's First Quarterly Status Report was attached as an exhibit to the Motion for Fees. This lengthy report sets out the activities of the Receiver and his professionals during the time encompassed by the Motion for Fees. Below is a summary of some of these significant activities:

- Served the order appointing the Receiver and freezing the assets of the defendants and relief defendants on at least **73** individuals and entities who could have assets and/or records belonging to the Receivership Estate;

- Recovered **$4,192,415.62** from accounts at Bank of America, N.A. and transferred to Receiver-controlled accounts at ServisFirst Bank;

- Froze, at minimum, an additional **$1,616,188.73** at numerous financial institutions plus an additional $1,066,174.18 in accounts at Bank of America that are related to the Defendants but not specifically part of the Receivership;

- Analyzed EquiAlt's debenture obligations as well as sales agent compensation and management fees paid related to the EquiAlt investments;

---

[1] Also during the hearing, the Court granted Defendant Davison's oral motion that the Receiver post his Motion for Fees on the Receivership website. The Receiver complied with this ruling promptly.

- Assessed commingling of funds among the Receivership Entities;

- Secured three parcels of real property in Florida, plus EquiAlt's office in Arizona;

- Secured a $2.7 million condominium in New Your City.

- Located and secured millions of dollars of automobiles and other personal property. Reached a consent agreement with the State of Michigan Department of Licensing and Regulatory Affairs regarding its existing claims against EquiAlt;

- Retained legal counsel, forensic accountants, tax accountants, a technology services firm, and an asset manager to assist the Receiver;

- Interviewed dozens of individuals, including employees, sales agents, investors, and accountants;

- Established an informational website for investors and other interested parties;

- Took control of EquiAlt's website;

- Collected hundreds of thousands of pages of documents from at least **20** nonparties, including employees, banks, credit card companies, accountants, lawyers, jewelers, car companies;

- Fielded dozens of calls from investors and have registered over 500 EquiAlt investors through the Receiver's website;

- Analyzed the corporate structure of the EquiAlt entities and funds and over 18 LLCs named as relief defendants;

- Investigated the creation and operation of the EquiAlt REIT and Qualified Opportunity Zone; and

- Continued to run the day-to-day operations of the Receivership Entities which includes the management of over 350 real estate properties. These activities include collection of rent, construction, rehab of properties, handling of maintenance requests and adjusting to a COVID-19 environment.

II.  **Factors to Determine Reasonableness of Fees Incurred**

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is in part based on the nature and extent of the services rendered and the value of those services. *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). Additionally, the Court should consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a case involving an award of attorneys' fees under federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Based on the information provided herein as well as the Receiver's First Quarterly Status Report, the Receiver believes that the Court when considering these factors and the work accomplished in the first six weeks of this Receivership will determine that the Receiver's Motion for Fees is reasonable and should be granted.

A receiver and the team he or she assembles is entitled to reasonable compensation and courts have looked at several factors in determining reasonableness: (1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of

the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership. *SEC v. W.L. Moody & Co,* 374 F. Supp. 465, 480-484 (S.D. Tex. 1974). In this case, the Receiver has begun his duties in earnest to investigate, locate and preserve assets for the benefit of defrauded investors while also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 350 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers.

It should also be noted that this Receivership has just begun and many of the fees and expenses will be non-recurring in that the work accomplished has built a foundation for the continued work of the Receivership. For example, much of the work by the forensic accountants and information technology firms are one-time expenses for the gathering and input of data and information. These labor-intensive activities now will make other Receivership tasks in the future, such as the claims process and potential clawback litigation, much more efficient and cost-effective.

Additionally, the Receiver and his attorneys continue to struggle to obtain cooperation from Defendant Davison for access to records, vehicles, websites and financial information. Finally, the Receiver has sought to keep the EquiAlt investors up to date regarding the Court's progress through the Receivership website, allowing investors to register for information related to this matter. The Receiver and designated paralegals at Wiand Guerra King also field telephone calls from investors and sales agents regarding the allegations in this case and the underlying investments.

### III. Professionals and Services Provided

On February 11, 2020, the SEC filed its Emergency *Ex Parte* Motion for Appointment of Receiver [Doc. 6]. As part of that motion, the SEC attached proposal from three different candidates to serve as Receiver in this case and recommended to the Court the appointment of Mr. Wiand as the Receiver in this case.

Based on the information submitted by the SEC and a hearing held on February 13, 2020, the Court granted the SEC's motion and appointed Burton Wiand as Receiver on February 14, 2020 ("Receivership Order"). [Doc. 11] In the Receivership Order, the Court specifically authorized the Receiver to retain the law firm of Wiand Guerra King, P.A. ("WGK"). Doc. 11 at ¶16.

The Court also authorized the Receiver to retain these specific professionals:

- forensic accountants Yip Associates;
- information technology consultants Adam Sharp and E-Hounds, Inc.;
- counsel specializing in information technology research, Robert Stines of Freeborn & Peters LLP; and
- RWJ Group, LLC.

Doc. 11 at ¶3. Additionally, the Order provided for the retention of investigators and counsel in Phoenix (¶3) as well as the engagement of accountants, private security firm or other persons "to assist the Receiver in carrying out the Receiver's duties and responsibilities." Doc. 11 at ¶6.

A. **The Receiver and Wiand Guerra King**

In its motion requesting the appointment of the Receiver, the SEC noted that the Receiver and WGK provided rate reductions that would "substantially reduce the costs of the Receivership" and that these rates were lower than the other candidates. Doc. 6 at p. 3. Mr. Wiand agreed to reduce his own hourly rate by nearly 30% from $500 to $360. Further, partner rates for the firm of WGK, which typically range from $310 to $475, were to be capped at $350/hour and associate rates, which range from $235 to $290, would be capped at $240/hour. *See* Doc. 6 at p.3; Wiand proposal attached as Exhibit 1.  For the time covered by the Motion for Fees, the Receiver billed 221 hours at the agreed rate of $360/hour, for a total bill of $79,560. The Receiver's invoices are attached as Exhibit 2.

The attorneys at WGK have been the primary counsel for the Receiver, working with the other professionals hired by the Receiver to investigate, marshal and preserve assets. Additionally, WGK timekeepers have been active in reviewing legal issues that have arisen in the operation of the business of the Receivership Entities as well as responding to EquiAlt investors with questions regarding the SEC action. Katherine Donlon, a twenty-five year lawyer, specializing in commercial and securities litigation has been largely responsible for day to day dealings with counsel for the Defendants and the SEC as well as actively investigating and seeking information related to the personal assets of the individual Defendants. Jared Perez has been practicing for 15 years and has worked on numerous receiverships in both state and federal court.  Mr. Perez was responsible for organizing the legal efforts related to the takedown of the Tampa EquiAlt office, helping direct communications with investors, advising on real estate issues and coordinating legal efforts

with Bank of America. Associate Max McKinley, a former assistant state attorney, has largely worked to marshal assets and provide counsel on the real estate transactions for EquiAlt and the Receiver as well as providing oversight in the EquiAlt office. Additionally, he has provided support with legal research and writing. Paralegal Jeffrey Rizzo traveled to Arizona and assisted with the takedown of the EquiAlt offices there. He has also been primarily responsible for the Receiver's bank accounts, service of process for the Receivership Entities, real estate support and gathering. And analysis of documents from third-parties. Paralegal Amanda Stephens has been the primary point of contact for investors through the Receiver's website, emails and telephone calls. A summary of these professionals' hours is set forth below. The

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Katherine Donlon (KCD) | Partner | 179.3 | $350.00 | $62,755.00 |
| Jared J. Perez (JJP) | Partner | 63.5 | $350.00 | $22,225.00 |
| Maya Lockwood (MML) | Of Counsel | 0.9 | $240.00 | $216.00 |
| R. Max McKinley (RMM) | Associate | 174.8 | $240.00 | $41,952.00 |
| Jeffrey Rizzo (JR) | Paralegal | 167.3 | $135.00 | $21,674.25 |
| Mary Gura (MG) | Paralegal | 0.5 | $135.00 | $67.50 |
| Amanda Stephens (AS) | Paralegal | 69.0 | $135.00 | $9,315.00 |
| Fees | | | | $158,204.75 |
| Disbursements | | | | $7,472.15 |
| Total | | | | $165,676.90 |

In addition to legal fees, WGK has advanced costs of $7,472.15 as summarized below.

| Costs | Total |
|---|---|
| Photocopies | $536.85 |
| Telephone | $212.73 |
| Online Research | $488.56 |

| Delivery Services | $821.88 |
| --- | --- |
| Out of town Travel | $2,318.58 |
| Court Fees | $822.55 |
| Other | $2,271.00 |
| Total | $7,472.15 |

The "Court Fees" are for the miscellaneous actions that must be filed within ten days of the appointment of Receiver in those districts where later actions may be brought. The "Out of Town Travel" costs were for Mr. Rizzo to travel to Arizona to assist with the takedown of the Phoenix office. The "Other" category includes $1,920 in costs related to the Receivership website. A copy of the WGK's invoices are attached as Exhibit 3.

The Receiver is seeking approval for the payment of WGK's invoice in the total amount of $165,676.90.

**B. Freeborn & Peters LLP**

The Court specifically appointed attorney Robert Stines of Freeborn & Peters LLP to aid the Receiver with technology-related issues that would necessarily arise with the Receivership. Mr. Stines has been practicing law for over ten years and is a certified IAPP U.S.-law privacy professional. *See* Exhibit 4. His practice is focused on cyber law, electronic discovery, digital evidence, privacy and data security. In this case, he has provided counsel and assistance to the Receiver related to EquiAlt's websites, investor portals, internet and email accounts, and encrypted data on servers and laptops. He has also been a liaison for the Receiver with vendor E-Hounds. Mr. Stines' hourly rate is $345. For the time covered by the Motion for Fees, Mr. Stines billed 47.20 hours for a total of $16,284 and his paralegal Holly Haynes billed .5 hours at $210/hour for a total of $105. *See* Exhibit 5.

| Professional  | Position | Hours | Rate    | Total      |
|---------------|----------|-------|---------|------------|
| Robert Stines | Partner  | 47.2  | $345.00 | $16,284.00 |
| Holly Haynes  | Paralegal| 0.5   | $210.00 | $105.00    |
| Total         |          |       |         | $16,389.00 |

The Receiver is seeking approval for the payment of Freeborn& Peters' invoice in the total amount of $16,389.

**C. <u>Baskin Richards PLC</u>**

EquiAlt's main office is located in Tampa, but individual defendant Barry Rybicki ran part of the EquiAlt operations in Phoenix from both his home and an executive office space. Recognizing this, the Court approved the retention of Arizona counsel and investigators as the Receiver deemed necessary.  The Receiver hired the firm of Baskin Richards to aid him with Rybicki-related issues in Arizona, including the initial takedown of those offices. The Baskin Richars firm has also been responsible for interviewing former employees, sales agents and other witnesses in Arizona. Mr. Baskin has been practicing law for 30 years and is a former Senior Counsel at the Securities Division of the Arizona Corporation Commission and also worked for the Arizona Attorney' General's Office prosecuting securities and white collar cases.  Mr. Baskin's hourly rate is $425 and for the time covered by the Motion for Fees, he billed 18.6 hours for a total of $7,905. Three associates, Mladen Milovic, Austin Miller and Shayna Stuart have billed a total of 24 hours at an hourly rate of $225. Paralegals Christina McDonald and Kellen Quinn billed 2.8 hours at a rate of $125/hour. The attorneys' biographies are attached as Exhibit 6. Baskin Richards' invoices are attached as Exhibit 7.

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Alan Baskin (ASB) | Partner | 18.6 | $425.00 | $7,905.00 |
| Austin Miller (AJM) | Associate | 1.1 | $225.00 | $247.50 |
| Mladen Milovic (MZM) | Associate | 22.3 | $225.00 | $5,017.50 |
| Shayna Stuart (SGS) | Associate | 0.6 | $225.00 | $135.00 |
| Cristina McDonald (CJM) | Paralegal | 1.1 | $125.00 | $137.50 |
| Kellen Quinn (KSQ) | Paralegal | 1.7 | $125.00 | $212.50 |
| Fees | | | | $13,655.00 |
| Disbursements | | | | $296.13 |
| Total | | | | $13,951.13 |

The Receiver is seeking approval for the payment of Baskin Richards' invoice in the total amount of $13,951.13.

### D. Yip Associates

As stated above, the Court approved the retention of Yip Associates in its February 14, 2020 order. Yip Associates has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at issue in this case. Below is a brief summary of the activities performed by Yip Associates:

- Yip Associates assisted the receivership team in the takeover of Receivership Entities, including conducting interviews of accounting personnel and retrieving accounting documents and information maintained electronically.

- Yip Associates reviewed and analyzed 62 bank accounts held in the names of the various Receivership Entities and relief defendants, Brian D. Davison, and Barry M. Rybicki, across seven banking institutions and brokerage firms.

- Yip Associates reviewed, analyzed and compiled the bank account data into a database containing over 84,000 bank transactions covering a period of more than eight years. The bank account analysis conducted resulted in the identification of additional bank accounts, potential assets and causes of action for the Receivership Estate.

- Yip Associates' master database served as the source for the detailed schedules included in the Receiver's First Quarterly Status Report.

- Yip Associates reviewed and analyzed more than 800 investor files, including, Summary of Terms; Private Placement Memoranda; Subscription Agreement; Prospective Purchaser Questionnaire; and Authorization Forms from retirement accounts.

- Yip Associates had numerous discussions with Equialt personnel to obtain an understanding of Equialt's internal electronic investor files containing debenture details and investor contact information.

- Yip Associates reviewed several sources of information in preparation of a comprehensive investor database with detailed information including the date, amount of funds raised from each investor and the corresponding sales agent for each transaction.

- Yip Associates prepared cash flow models through the end of 2020.

- Yip Associates performed analyses of income tax returns for the EquiAlt entities for years 2011 through 2018.

    - Analyzed properties held by each fund and the movement of such properties within the funds over the life of the funds.

    - Compiled a list of asset sales for each entity during each year as reported.

- Yip Associates reviewed and analyzed documents to determine the basis for the calculation of fees charged by Equialt LLC to the funds, including management fees, construction management fees, asset management fees, acquisition fees, disposition fees, property management fees, resort management fees, and project management fees.

Maria Yip, who founded the firm in 2008, has 27 years of experience in public and forensic accounting. The firm is a leading boutique forensic accounting firm serving clients throughout the United States and abroad. In addition to provide forensic accounting and financial investigation services, Ms. Yip is a sitting United States Bankruptcy Trustee in the Southern District of Florida and serves as a court-appointed receiver, examiner, liquidating trustee, custodian and assignee for the benefit of creditors.

Ms. Yip is a partner in her firm and bills at $495/hour. Additional professionals that have expended significant time on this case are Christopher Cropley, a manager with Yip Associates with twelve years of experience, and Danny Zamorano, a senior associate, with five years of experience. Mr. Cropley's rate is $300/hour and Mr. Zamorano's rate is $245. Similar rates for Yip Associates' professionals have been approved by other courts in the Middle District. *See* Exhibit 8. Yip Associates' invoices, with a summary of hours by professional with their hourly rates is attached as Exhibit 9. In addition to their fees, Yip Associates is seeking reimbursement for locksmith charges of $1,076 related to the seizure of Mr. Davison's condominium in New York.

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Maria Yip (MMY) | Partner | 79.9 | $495.00 | $39,550.50 |
| Christopher M. Cropley (CMC) | Manager | 210.1 | $300.00 | $63,030.00 |
| Brandon I. Victor (BOV) | Sr. Associate | 14 | $245.00 | $3,430.00 |
| Nicole E. Duenas (NED) | Sr. Associate | 4.3 | 245.00 | $1,053.50 |
| Danny D. Zamorano (DDZ) | Sr. Associate | 269.3 | 245.00 | $65,978.50 |
| Matthew J. Bellacosa (MJB) | Associate | 52.7 | $195.00 | $10,276.50 |
| Crystal Fieros (CF) | Associate | 68.9 | 195.00 | $13,435.50 |
| Santiago I. Carpio (SIC) | Associate | 11.7 | $195.00 | $2,281.50 |
| William P. Martin (WPM) | Associate | 161.1 | $195.00 | $31,414.50 |
| Christian Varela (CV) | Paraprofessional | 53 | 125.00 | $6,625.00 |
| Expenses | | | | $1,076.00 |
| Total | | | | $238,157.50 |

As mentioned previously, much of the costs associated with forensic accounting in these type of cases is front-loaded as accounts, statement, transactions, and investor documents are being input, digested and analyzed. Many of these early expenses will not be duplicated but will be incredibly beneficial to the Receivership later as a claims process will be implemented and the potential filing of clawback actions analyzed. The Receiver is

seeking approval for the payment of Yip Associates' invoice in the total amount of $238,151.50.

**E. PDR CPAs**

The Receivership Order permitted the Receiver to engage accountants to assist in carrying out the Receiver's duties. The Receiver hired PDR CPAs ("PDR") with whom Mr. Wiand has worked on several other receiverships. Out of an abundance of caution, the Receiver ultimately filed an unopposed motion with Court to approve of the retention of PDR and that motion was granted. [Doc. 85] Specifically, the Court noted that PDR's role "shall be limited to internal Receivership accounting, financial reporting, tax preparation and filing, and internal accounting for EquiAlt." *Id.* The Order also required the Receiver to advise the Court of a maximum number of hours anticipated to be incurred by the PDR. This information was filed with the Court. The invoices submitted by PDR, attached as Exhibit 10, comport with the Receiver's previous filing in response to the Court's order. [Doc.87]

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| William E. Price (WEP) | Partner | 27.5 | $320.00 | $8,800.00 |
| Gail Heinold (GAH) | Senior | 12.25 | $155.00 | $1,898.75 |
| Sharon O'Brien (SAO) | Staff | 22.2 | $125.00 | $2,775.00 |
| Fees | | | | $13,473.75 |
| Disbursements | | | | $370.39 |
| Total | | | | $13,844.14 |

The Receiver is seeking approval for the payment of PDR's invoices in the total amount of $13,844.14.

F.  **RWJ Group, LLC**

RWJ Group, LLC was specifically noted in the Court's February Order appointing the Receiver. Robert Jernigan, the founder of RWJ Group, acts as an investigator and asset manager for the Receiver. Jernigan is a former law enforcement office over 30 years experience in law enforcement, investigations and business management. He has over 11 years experience working with Receivers, specifically for investigative work and marshalling and management of assets. Mr. Jernigan has also been instrumental in overseeing employees at EquiAlt and helping to manage its day to day operations which has been particularly challenging given the recent pandemic. Although the number of hours is high, Roger Jernigan has been the main onsite supervisor in the EquiAlt office at a rate much less than had the Receiver hired a full-time property manager.

John Jernigan and Pamela Jernigan, also of RWJ Group, provided services in this case with surveillance, real property identification and assessment, inventory of assets and seizure of the EquiAlt Tampa office. The hourly rate charged for these professionals is $90. The biographies for these individuals are attached as Exhibit 11. A summary of their billed hours is set forth below. RWJ Group's invoices are attached at Exhibit 12.

| Professional | Hours | Rate | Total |
|---|---|---|---|
| Roger Jernigan (RWJ) | 362.8 | $90.00 | $32,652.00 |
| Pamela Jernigan (PKJ) | 58.5 | $90.00 | $5,265.00 |
| John Jernigan (JHJ) | 75.5 | $90.00 | $6,795.00 |
| Fees | 496.8 | | $44,712.00 |
| Disbursements (Mileage) | | | $2,627.04 |
| Total | | | $47,339.04 |

Based on the activities completed for the time period encompassed by the Motion for Fees, the Receiver believes RWJ's fees are reasonable and requests Court approval for the payment of RWJ Group's invoices in the total amount of $47,339.04.

### G. E-Hounds

E-Hounds was also specifically designated in the Receivership Order. Adam Sharp, and technicians Robert Rohr and Sean Organ were present during the takedown of the Tampa EquiAlt office. They were instrumental in collecting and preserving all electronic records, including email records, GoDaddy records, and DropBox files as well as computer equipment at that time. All of these records have been preserved and retained on E-Hounds proprietary review platform. Additionally, E-Hounds has helped the Receiver in securing websites owned by the Receivership Entities. Although the Receiver's team is actively using the E-Hounds platform, much of the "heavy lifting" as it relates to information technology will have occurred with this initial fee application.

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Adam Sharp (ADS) | Owner | 22.25 | $300.00 | $6,675.00 |
| Robert Rohr (RTR) | Technician | 33.63 | $195.00 | $6,556.88 |
| Robert Rohr (RTR) | Preservation | 40.50 | $225.00 | $9,112.50 |
| Sean Organ (SPO) | Technician | 30.25 | $195.00 | $5,898.75 |
| Sean Organ (SPO) | Preservation | 5.00 | $225.00 | $1,125.00 |
| Dave Bukas (DAB) | Project Mgmt | 8.75 | $195.00 | $1,706.25 |
| Flat Fee | | | | $1,000.00 |
| Monthly Platform Charges | | | | $1,980.00 |
| Total | | | | $34,054.38 |

The Receiver is seeking approval for the payment of E-Hounds' invoices, attached as Exhibit 13, in the total amount of $34,054.38.[2]

### H. Digital Acuity

Digital Acuity is a Phoenix-based information technology firm which aided the Receiver with the imaging of the hard drives and other computer equipment at the EquiAlt offices in Arizona. This is a one-time expense for the Receivership.

| Service Provided | Hours | Rate | Total | |
|---|---|---|---|---|
| Engineering Hours | 9.2 | $200.00 | $1,840.00 | |
| Consulting Hours | 11.11 | $325.00 | $3,610.75 | |
| Flat Fee - Image Hard Drive | 8 | $695.00 | $5,560.00 | |
| Subtotal | | | | $11,010.75 |
| **Disbursements** | **Quantity** | **Cost** | **Total** | |
| Hard Drives < 2TB | 6 | $225.00 | $1,350.00 | |
| Hard Drives > 2TB | 2 | $325.00 | $650.00 | |
| Shipping of Drives | | | $149.35 | |
| Subtotal | | | | $2,149.35 |
| Total | | | | $13,160.10 |

The Receiver is seeking approval for the payment of Digital Acuity's invoice, attached as Exhibit 14, in the total amount of $13,160.10.

### IV. The SEC Has No Objection to the Receiver's Motion for Fees

Prior to filing the Motion for Fees, the Receiver submitted his motion to the SEC for review and comment. As stated in the Receiver's 3.01(g) certification and affirmed by SEC attorney Alise Henry's at this Court's hearing on June 16th, the SEC did not have any

---

[2] In the original Motion for Fees, E-Hounds' invoices totaled $36,034.38. However, in preparing this Supplement, an error was found on the calculation of the total on E-Hounds' March invoice, resulting in a decrease of that invoice by $1,980.

17

objection to the Receiver's motion. "[I]n a securities receivership, '[o]pposition or acquiescence by the SEC to the fee application will be given great weight.'" *S.E.C. v. Byers,* 590 F. Supp. 2d 637 (S.D.N.Y. 2008) (quoting *S.E.C. v. Fifth Ave. Coach Lines, Inc.,* 364 F.Supp. 1220, 1222 (S.D.N.Y.1973)). Further to this point, the Court's Receivership Order provides that "Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court." Doc. 11 at ¶35. However, the fact that the SEC did not request the holdback should be given some weight by this Court. The holdback proposition, urged by Defendant Davison's counsel, makes more sense in the context where the fees requested are disproportionate to the size of the Receivership Estate. The Receiver estimates that the value of assets controlled by the Receivership Estate, including real estate, vehicles, jewelry, and bank and investment accounts exceed $80 million. At the present time, rental operations of the Receivership Estate are sufficient to offset the expenses of EquiAlt's business operations

Finally, as noted during the hearing on June 16th, the Receiver does not believe there is a reason for the holdback. Should the Court make that decision, however, the Receiver, in light of the pandemic, requests that the Court not apply the holdback to the requests for reimbursement of expenses advanced by all professionals and not apply the holdback to the fees sought for the third-party vendors.

**V. Conclusion**

Based on the foregoing and his previously filed Motion for Fees, the Receiver respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Burton W. Wiand, Receiver | $79,560.00 |
| Wiand Guerra King PA | $165,676.90 |
| Freeborn & Peters LLP | $16,389.00 |
| Baskin Richards PLC | $13,951.13 |
| Yip Associates | $238,151.50 |
| PDR CPAs | $13,844.14 |
| RWJ Group, LLC | $47,339.04 |
| E-Hounds, Inc. | $34,054.38 |
| Digital Acuity LLC | $13,160.10 |

Respectfully submitted,

**s/Katherine C. Donlon**
Katherine C. Donlon, FBN 0066941
kdonlon@wiandlaw.com
Jared J. Perez, FBN 0085192
jperez@wiandlaw.com
R. Max McKinley, FBN 0119556
mmckinley@wiandlaw.com
WIAND GUERRA KING P.A.
5505 West Gray Street
Tampa, FL 33609
Tel.:  (813) 347-5100
Fax:  (813) 347-5198

*Attorneys for the Receiver Burton W. Wiand*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 26, 2020, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court through the CM/ECF system, which served counsel of record.

<b>s/Katherine C. Donlon</b>