# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,
Plaintiff,

v.                                                    CASE NO. 8:20-CV-325-T-35AEP

BRIAN DAVISON;
BARRY M. RYBICKI;
EQUIALT LLC;                                          **DISPOSITIVE MOTION**
EQUIALT FUND, LLC;
EQUIALT FUND II, LLC;
EQUIALT FUND III, LLC;                                <u>ORAL ARGUMENT REQUESTED</u>
EA SIP, LLC;

Defendants, and

128 E. DAVIS BLVD, LLC;
310 78TH AVE, LLC;
551 3D AVE S, LLC;
604 WEST AZEELE, LLC;
2101 W. CYPRESS, LLC;
2112 W. KENNEDY BLVD, LLC;
5123 E. BROADWAY AVE, LLC;
BLUE WATERS TI, LLC;
BNAZ, LLC;
BR SUPPORT SERVICES, LLC;
BUNGALOWS TI, LLC;
CAPRI HAVEN, LLC;
EA NY, LLC;
EQUIALT 519 3RD AVE S., LLC;
MCDONALD REVOCABLE LIVING TRUST;
SILVER SANDS TI, LLC;
TB OLDEST HOUSE EST. 1842, LLC;
Relief Defendants.
_____/

## DEFENDANT BRIAN DAVISON'S MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant Brian Davison ("Davison"), through counsel and pursuant to Federal Rule of

Civil Procedure 12(b)(6), seeks entry of an order dismissing the Amended Complaint and hereby

submits the following memorandum of law in support of his motion to dismiss the July 9, 2020

Amended Complaint ("Am. Cmplt.") submitted by plaintiff Securities and Exchange

Commission ("SEC").

## I.

## <u>INTRODUCTION</u>

The SEC commenced this case to halt what they characterized as an ongoing "scheme to

defraud" related to the offering of certain interest-bearing investments in real estate debenture

investment funds, including EquiAlt LLC ("EquiAlt") (the manager of the following entities),

EquiAlt Fund, LLC ("Fund I"), EquiAlt Fund II, LLC ("Fund II"), EquiAlt Fund III, LLC

("Fund III") and EA SIP, LLC ("EA SIP") (collectively, the "Funds").

The Funds were separate investment vehicles that obtained investments through

debentures – instruments with set, periodic interest payments – and used those funds to buy

distressed real estate assets. Ultimately, according to the Receiver appointed in this action, the

Funds acquired over 350 residential units, and other properties. *See, e.g*., Receiver's First

Quarterly Report, Docket Entry 84, at 50.

At the time that this action was commenced, the largest of the Funds had entered into the

wind-down phase, Davison was spearheading the sale of properties to generate funds to pay

investors, fund-raising had effectively been halted and Fund III had already been closed.

The Amended Complaint ("Am. Cmplt.") (Docket Entry 138) asserts that the Funds

relied on a wide range of purportedly material misrepresentations and omissions to raise money

from supposedly unaccredited investors. The SEC alleges that this conducted violated Sections

5(a) and (c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a) and (c) (Count

I); Sections 17(a)(1), (2) and (3) of the Securities Act, 15 U.S.C. § 77q(a)(1), (2), and (3) (Counts

II, III and IV); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15

U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5 (Counts V, VI and VII);

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (Count VIII); and Section 15(a) of the

Exchange Act, 15 U.S.C. § 78o(a) (Count IX).

Yet the SEC's claims against Davison founder upon one essential failure: according to

the SEC's own allegations, and the documents it has submitted in support thereof, Davison did

not communicate directly with investors and was not responsible for any misrepresentations that

might have been made to them. Moreover, to the extent that oral misrepresentations might have

been made by other defendants, the written disclosures that investors received directly

contradicted those claimed oral misstatements.

Finally, notwithstanding the SEC's inflammatory rhetoric that this is a classic Ponzi

scheme, that assertion is negated by the fact that the Funds acquired hundreds of properties, most

of which were occupied, and were in the process of selling many of them off.[1]

## II.

### THE SEC'S OWN SUBMISSIONS DEMONSTRATE <br> THE ABSENCE OF ACTIONABLE CLAIMS AGAINST DAVISON

Considering that the SEC alleges a widespread scheme to defraud by misrepresenting the

nature of interests purchased by investors and the risks associated with that investment, it is

remarkable that the SEC's submissions demonstrate Davison played no role in making those

alleged misrepresentations. Moreover, many of the misrepresentations allegedly made to

investors were directly contradicted by written disclosures provided to them.

---

[1] Further demonstrating that the operations of the Funds were real and substantial, the Funds were recognized as one of the larger purchasers of tax liens that allowed them to buy assets cheaply. *See, e.g.,* https://www.tampabay.com/news/business/realestate/tampa-investor-profits-when-people-dont-pay-their-property-taxes/2223949/; *see also* https://www.businessobserverfl.com/article/equialt-tampa-distressed-property-investment.

*First*, the Amended Complaint not only fails to set out that Davison is responsible for those misrepresentations, it affirmatively provides to the contrary. The Amended Complaint explicitly states – repeatedly – that it was defendant Barry Rybicki ("Rybicki") who controlled the marketing and selling process. It states that "Davison and Rybicki largely split their primary functions" (Am. Cmplt. ¶ 38) and that "Rybicki primarily controlled communications with investors [and] marketing" and executed agreements with investors. *Id.*, ¶ 4. *See also id.*, ¶ 11 ("Rybicki's activities were largely directed toward soliciting and raising money from investors" and "Rybicki communicated directly with investors, and raised money from investors for the Funds"), ¶ 41("Rybicki was otherwise primarily responsible for raising money for the Funds from investors.")

Rybicki was in charge of the sales force, as well as marketing materials. The Amended Complaint alleges that "Rybicki created, reviewed, or approved changes to marketing materials" and "controlled the distribution or dissemination of the Funds offering documents to prospective investors." Am. Cmplt. ¶ 40. The SEC makes clear that "Rybicki primarily controlled the sales force and communications with investors" (*id.*) and that he "managed EquiAlt's relationships with various third-party sales agents," "provided those agents with marketing and offering materials" and "advised third-party sales agents that neither a license nor registration were required to sell EquiAlt securities." *Id.*, ¶ 41; ¶ 47 ("sales force was amassed in large part by Rybicki.") *See also id.* at ¶¶ 58, 64-67, 71-72, 76.

*Second*, the materials submitted by the SEC in support of the Order to Show Cause, consisting of investor questionnaires and other materials from investors, further demonstrate that Davison cannot be implicated in any misrepresentations in the selling process.

The SEC submitted, contemporaneously with its initial application, what were marked as Exhibits 6, 36, 37 and 28 (Docket Entries 7-2, 7-6, 7-7 and 7-8; these are attached hereto as Exhibits 1, 2, 3 and 4). These exhibits included questionnaires from various investors, and a declaration of one investor, James M. Conley ("Conley"), that attached the disclosure materials he received from one of the sales agents Rybicki controlled. *See* Ex. 4, DE 7-8 at ¶¶ 9, 17.

In the first investor questionnaire (Ex. 1, DE 7-2 at pages 1-7)) the investor relates that it was Rybicki who contacted them. Furthermore, rebutting the SEC's claim, that investor notes no misrepresentations that were made to them, and then adds "Everything has gone smoothly." The second investor questionnaire (DE 7-2 at pages 8-14) also states that such investor was contacted by Rybicki, not Davison.

Docket Entry 7-6, Exhibit 2 hereto, includes questionnaires from multiple investors. Not one says they had any contact with Davison. Instead they state – each and every one – that they only interacted with Rybicki or sales agents Rybicki purportedly controlled. Some also note no alleged misstatements were made, *see, e.g*., DE 7-6 at 5-6, and as another investor proclaimed "So Far I'm Happy With Them!" DE 7-6 at 63; Ex. 2 hereto.

Exhibit 37 to the SEC's Order to Show Cause Application (Docket Entry 7-7, and Exhibit 3 hereto) contains an additional investor questionnaire, where the investors states he had not been contacted by Davison. *See, e.g*., DE 7-7 at 3.[2]

Exhibit 38, DE 7-8, Exhibit 4 hereto, which includes the materials from Conley, also indicate that he never spoke to Davison, and that his investment was based largely on the oral

---

[2] This questionnaire also included a January 8, 2020 letter (page 8), noting that the Fund is closed and that they would shift to "the sale of the fund's assets to repay all investor principle starting in Q1 2020." It provided that "Management estimates that the value of the assets exceeds the liabilities against the fund." Finally, it sets out a plan involving "a pipeline of short-term flips to assist with cash flow and liquidity in the wind-down process."

representations made to him by others. *See* Ex. 4 at 1-2, ¶¶ 3-11. Conley's Declaration attached various disclosure documents, which provided, among other things, that the investments were risky and not registered (Ex. 4, at 11, 18, 29, 3968, 75, 85); that investor had to be accredited (*id.*, 72), and that commissions of up to 14% would be paid (*id.*, 100). All these disclosures negate the claim by the SEC of misrepresentations regarding those matters.

**Third**, the allegations set out in the Amended Complaint are directly contradicted by disclosures set out in the materials sent to investors. A comparison of the allegations set out in the Amended Complaint with statements made in disclosure documents sent to investors further erodes the claims made by the SEC.

| WHAT IS CLAIMED | WHAT THE DISCLOSURES SAID |
| --- | --- |
| Investors were told that investments in the EquiAlt funds were secure, safe, low risk, and conservative. Am. Cmplt. ¶¶ 3, 46, 72. | The written disclosures provided to investors stated that "INVESTMENT IN THE SECURITIES INVOLVES A HIGH DEGREE OF RISK" (Fund II May 10, 2013 Private Placement Memorandum ("PPM"), Ex. 5,[3] at i; *see also id.* at 3; Fund II March 29, 2017 PPM at 3, and 5 ("Investment herein involves substantial risk.")[4]; EA SIP LLC January 23, 2016 PPM at i-ii, and 7-9[5]; Equialt Fund LLC 2018 Subscription Agreement, Section 4.1.[6] |
| The PPM's misstated the uses of investor proceeds. Am. Cmplt. ¶¶ 55-57. | "Because any projection of the future is subject to uncertainties, actual results could vary significantly from those estimated. All uses of proceeds are estimated and subject to |

---

[3] A copy of this PPM was included as Exhibit 12, Docket Entry 7-5, pages 1 through 14 to the SEC's original moving papers, and is submitted with this memorandum as Exhibit 5.

[4] This PPM is included in Docket Entry 7-8, included as Exhibit 4 hereto, at pages 11-29.

[5] This PPM is included as pages 32 through 49 of Docket Entry 7-5.

[6] This subscription agreement is included as pages 35 through 63 of Docket Entry 7-6, which is included as Exhibit 2 to this Memorandum.

| | change." 10. Fund II May 10, 2013 PPM, Ex., at 4; *see also* EA SIP LLC PPM, at 9. |
|---|---|
| "EquiAlt falsely told investors in at least one Fund (Fund 2) it was registered with the Commission." Am. Cmplt. ¶ 79. | "THESE SECURITIES HAVE NOT BEEN REGISTERED WITH NOR APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION. . . . THIS OFFERING HAS NOT BEEN APPROVED OR DISAPPROVED UNDER APPLICABLE STATE SECURITIES LAWS" Fund II May 10, 2013 PPM, at i. *See also* March 29, 2017 PPM at i, 4; Subscription Agreement at Section 4.6; EA SIP LLC PPM at i, 5; 2018 EquiAlt Fund, LLC Subscription Agreement, at Section 4.6 ("The Subscriber understands that the Units have not been registered.") |
| "Defendants also failed to disclose the various fees being paid by the Funds." Am. Cmplt. ¶ 60; *see also id.* at 61; 69 ("Investors were also misled about the payment of management fees to EquiAlt"). | "This Offering offers substantial compensation and benefits to the Manager and other affiliates." Fund II May 10, 2013 PPM, at 12. *See also* March 29, 2017 PPM at 9, 13; EA SIP LLC PPM at 4, 10, 12. |
| "Defendants also failed to adequately disclose to investors that their funds would be used to pay commissions to unregistered third party sales agents." Am. Cmplt. ¶ 63. | "The Company may utilize the services of one or more registered broker/dealers or other financial intermediaries. In such cases, the Company may pay commissions or fees of up to 12% to such persons." Fund II May 10, 2013 PPM, at 3. *See also* Subscription Agreement for Fund II, at Section 3.8 ("The Company may pay commissions of up to fourteen percent (14%) to licensed broker/dealers or finders in connection with this Offering.") |

## III.

## LEGAL ANALYSIS
## EACH AND EVERY CLAIM ASSERTED BY THE SEC IS DEFICIENT

On a motion to dismiss, while "the Court must accept all factual allegations in a

complaint as true and take them in the light most favorable to plaintiff" it is also the case that

"[a]llegations of security fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *SEC v. Radius Capital Corp.*, 2012 WL 695668, *2 (M.D. Fl. Mar. 1, 2012) (citation omitted). Furthermore, the "Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment." *Id*. at *3. *See also SFM Holdings, Ltd. v. Banc of Am. Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *In re Paradyne Networks, Inc. Securities Litig.*, 197 F. Supp. 2d 1349, 1352 (M.D. Fla. 2002); *SEC v. Ustian*, 229 F.Supp.3d 739, 761-64 (N.D. Ill. 2017.

    A.    <u>The SEC's Failure to Satisfy Rule 9(b) Dooms Its Fraud Claims</u>

    Most seriously, the Amended Complaint fails to plead fraud with particularity. This defect requires dismissal of Counts II through IX.

    "Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.' Fed.R.Civ.P. 9(b).'" *SEC v. Spinosa*, 31 F.Supp. 3d 1371, 1374 (S.D. Fla. 2014). "This Rule 'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" *Id* at 1374-75. (internal citations omitted).  In order to satisfy this requirement, the complaint must set forth "(1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud." *Spinosa*, 31 F.Supp. 3d at 1375 (internal citations omitted). *See also SEC v. Spartan Sec. Grp., Ltd*., 2019 WL 2372277 (M.D. Fla. June 5, 2019) (Rule 9(b) requires the claim to set forth: "'(1) precisely what statements or omissions were

made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud.'") *See also SEC v. RPM Int'l, Inc*., 282 F. Supp.3d 1, 12 (D.C. Cir. 2017) (9(b) standard applies to securities claims sounding in fraud including Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act).

While the Amended Complaint asserts that investors were misled, it does not contain the kind of detailed statements required to demonstrate that it was Davison who misled them, let alone specify the time or place of each such misstatement or identify the investors to which they were made. Remarkably, the materials submitted by the SEC affirmatively demonstrate that Davison did not make any actionable misrepresentations to investors. Due to the failure to satisfy Fed.R.Civ.Proc. 9(b), the SEC cannot prevail on the fraud claims set out against Davison.

Under very similar circumstances, multiple courts, including courts in this District, have repeatedly dismissed securities fraud claims by the SEC. In *Spinosa*, for example, the SEC alleged that various materials were misleading, and that the defendant knew it, but it did not specifically identify the investors to whom these materials were distributed. The Court held that the failure to identify the investors to which specific misrepresentations were made required dismissal of the relevant count. *Spinosa*, 31 F. Supp.3d at 1375-76. The same reasoning applies to this case.

*SEC v. Radius Capital Corp*., 2012 WL 695668, * 7 (M.D. Fla. Mar. 1, 2012), which is from this District, is also instructive, as it demonstrates that a complaint is legally deficient where it lacks facts to tie a defendant to purported misstatements. In that case, the Court held that Fed.R.Civ.Proc. 9(b) is not satisfied merely by saying disclosure documents were misleading.

Rather, the SEC must allege facts showing that the defendant in question had ultimate authority over statements made and in how they were communicated to investors. That court held that Fed.R.Civ.Proc. 9(b) is unsatisfied where "the Complaint does not explain the process by which prospectuses are issued and distributed and does not identify who was ultimately responsible for the content of the prospectuses in this matter." *Id*. This analysis applies with equal force here. Neither the Amended Complaint nor any materials submitted by the SEC allege that Davison made any oral statements directly to investors. Furthermore, the SEC has failed to plead facts that, if true, would show him to be the author, ultimate authority for, or disseminator of any written misstatements. To the contrary, the materials submitted by the SEC demonstrate the opposite. The same conclusion was reached in *SEC v. Dauplaise*, 2006 WL 449175 (M.D. Fla. Feb. 22, 2006). In that case, the court held that the alleged misstatement or omission must be specifically attributed to the defendant under Fed.R.Civ.Proc. 9(b). In that case, like in the case at bar, where the SEC "failed to articulate which misrepresentations and/or omissions are attributable to [Defendant] at the time of their public dissemination" dismissal was required. *Id*., at * 6 (failure to allege that defendant prepared document dooms claim).[7]

The SEC's consistent use of the passive voice throughout the Amended Complaint is indicative of their inability to identify who made which alleged misrepresentations and to whom they were made: "Investors were attracted by representations" (Am. Cmplt. ¶ 46); "Investors were also misled about the payment of management fees" (*id*. ¶ 69); "Investors were misled about the safety and risk of their investments" (*id*. ¶ 72); *see also id*. at ¶ 82. The law, however, requires more than this. It requires the SEC to specifically delineate who said what to whom and

---

[7] *See also SEC v. Levin*, 2013 WL 594736, * 6 (S.D.Fl. Feb. 14, 2013. In *Levin*, the Court dismissed claims where the SEC failed to connect specific factual allegations to each cause of action. 2013 WL 594736 at *8-9.

when and where they did so, and why what was said was misleading. The SEC's failure to do so mandates dismissal.[8]

> B.      The Section 10(b) Claims Are Deficient

In addition to being defective for failing to satisfy Fed.R.Civ.Proc. 9(b), the claims under Section 10(b) of the Exchange Act (Counts V, VI and VII) fall for the following reasons.

> 1.      Count VI (Violations of Section 10(b) and Rule 10b-5(b) Thereunder) Fails

First, the Section 10(b) claim must be dismissed because the SEC fails to allege facts in the Amended Complaint that demonstrate that Davison is the author of any misstatement. As the Supreme Court held in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011), the "maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it" and that person is the only one who can be held liable for it. As set out below, it was Rybicki, and the sales agents the SEC alleges he controlled, not Davison, who made all of the actionable oral statements identified by the SEC. Second, to the extent that any misstatements were made in official documents, those misstatements are made by the Funds, not by Davison. Only those corporate defendants, arguably, can be the maker of those statements.

Precedent establishes that the SEC's allegations cannot suffice. For example, in this Circuit, allegations that defendants paid stock promoters to write flattering articles about their company and its stock price and even "worked in conjunction with stock promoters, particularly with respect to the timing of articles by the stock promoters and company press releases,"

---

[8] Furthermore, the SEC has failed to allege facts to show that specific investors in each of the Funds was misled by an actionable misrepresentation from Davison. Instead, the SEC has lumped in all of the Funds without explicitly setting out what misrepresentations were made with respect to each, who made them, when they were made, and what they were. This additional failure to satisfy 9(b) further validates dismissal of the fraud claims.

without disclosing to investors that the articles were paid for, were not sufficient to support a claim for securities fraud because the defendants were not the "makers" of the statements in the articles. *In re Galectin Therapeutics, Inc. Sec. Litig*., 843 F.3d 1257, 1272 (11th Cir. 2016). *See also SEC v. Radius Capital Corp*., 2012 WL 695668, at *7 (M.D. Fla. Mar. 1, 2012) (dismissing 10b-5 claim involving allegedly false statements in prospectuses where the complaint failed to explain "the process by which prospectuses [were] issued and distributed and [did] not identify who was ultimately responsible for the content of the prospectuses").

Here, as in the cases above, the Amended Complaint does not allege, other than in conclusory fashion, that Davison was the "maker" or ultimate authority of any of the false or misleading statements at issue here.  In fact Davison is not alleged to have made any oral misstatements to investors or to have been the author of any written misstatements, all of which were alleged to have been made by Rybicki: "Davison and Rybicki largely split their primary functions" (Am. Cmplt., ¶ 38); "Rybicki primarily controlled communications with investors [and] marketing…and executed agreements with investors" (*id*. at ¶ 4); "Rybicki primarily controlled the sales force and communications with investors" "Rybicki created, reviewed, or approved changes to marketing materials" and "controlled the distribution or dissemination of the Funds' offering documents to prospective investors" (*id*.); "Rybicki, or others under his direction, supervision, or control, provided account statements to investors showing that almost 90% of investors' funds were invested in real estate" (*id*. at ¶ 58); "Rybicki knew that many of the subscription agreements he signed with investors falsely stated that investments in the Funds were being sold 'without commissions'" (*id*. at ¶ 64); "Rybicki also knew his representations to investors about commissions were false as it was his role to recruit and pay the sales agents' commissions" (*id*. at ¶ 65); "The misrepresentations [regarding management fees] were repeated

in Account Statements Rybicki drafted and sent to investors" (*id*. at ¶ 72); and "Rybicki also made oral misrepresentations to investors regarding the safety of investing in the funds" (*id*. at ¶ 76).

This claim must be dismissed because the Amended Complaint does not allege that it was Davison who made any oral misrepresentations to investors. In order to show that the defendant violated subsection (b), "'the SEC must allege that the defendant '(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.'" *SEC v. Fiore*, 416 F. Supp. 3d 306 (S.D.N.Y. 2019) (quoting *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016)). *See also SEC v. Monterosso*, 756 F.3d 1326, 1333-34 (11th Cir. 2017). The absence of specific allegations that Davison made actionable misrepresentations to investors further dooms this claim.

2.   Counts V and VII Are Defective

In Counts V and VII, the SEC alleges violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder. Each of these also fails.

In order to establish that a defendant violated subsection (a) or subsection (c), "'the SEC must allege that the defendant (1) committed a manipulative or deceptive act; (2) in furtherance of the alleged scheme to defraud; and (3) with scienter.'" *Fiore*, 416 F. Supp. 306, at 319 (quoting *SEC v. Thompson*, 238 F. Supp. 3d 575 (S.D.N.Y. 2017)).

But there are no allegations that Davison personally committed any manipulative acts in connection with the purchase or sale of a security. The Supreme Court recently clarified the effect of its *Janus* ruling on the other subsections of Section 10(b), in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019). In *Lorenzo*, the Supreme Court held that in certain circumstances a person can be

held liable under subsections (a) and (c) for directly disseminating misleading statements to investors, even if they are not the maker of those statements. However, as set out in *Lorenzo*, they must have directly distributed materials containing misstatements to investors, while knowing that they were false.

Following Lorenzo, courts have held Section 10(b) claims to be deficient where the defendant is not alleged to have made or disseminated the alleged misrepresentations at issue. See, *e.g.*, *Geoffrey A. Orley Revocable Tr. U/A/D 1/26/2000 v. Genovese*, 2020 WL 611506, at *7 (S.D.N.Y. Feb. 7, 2020) (dismissing securities fraud claim where defendant was only alleged to have "advised" maker of alleged false and misleading statements during the creation of the documents containing them).  *See also Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*, 2020 WL 2836312, at *5 (E.D. Mich. May 31, 2020) (granting summary judgment for defendant against whom there was no evidence that they "made or disseminated misrepresentations"); *EnSource Investments LLC v. Willis*, 2019 WL 6700403, at *13 (S.D. Cal. Dec. 6, 2019) (same).

Thus, the Amended Complaint fails under *Lorenzo*, as there are no allegations that Davison directly disseminated misleading materials to investors. Again, not only are there no allegations to that effect, all the materials submitted by the SEC demonstrate that Davison had no involvement with distribution of materials to investors. Moreover, as set forth above, claimed oral misrepresentations were contradicted by written statements, further chipping away at the SEC's claims.

3.    The Section 10(b) Claims Fail For Additional Reasons

The 10(b) claims also fail for two additional reasons. First, because the alleged oral misstatements are contradicted by written disclosures, the Amended Complaint fails to allege facts that demonstrate materiality. "When an allegedly inaccurate, oral statement is contradicted

by an accurate, written statement, the written statement controls, rendering the oral statement immaterial and not actionable." *SEC v. Stifel, Nicolaus & Co., Inc.*, 2012 WL 4069346, at *8 (E.D. Wis. Sept. 14, 2012); *see also Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1322 (7th Cir. 1988) (accurate written disclosure negates materiality element of securities fraud claim).

Second, the SEC fails to allege facts that would, if true, demonstrate that Davison's conduct was "in connection with" the purchase or sale of securities. *See SEC v. Goble*, 682 F.3d 943, 942-46 (11th Cir. 2012) (holding that improper misconduct that is not in connection with securities transaction cannot support securities fraud claim); *SEC v. Roanoke Tech. Corp.*, 2006 WL 3813755, * 5 (Dec. 26, 2006) (dismissing Section 10(b) and Section 17(a) claims where alleged "bad acts" were not in connection with securities transactions).[9]

C.   The Section 17 Claims Fail (Counts II through IV)

Since Davison was not the person alleged by the SEC to be involved in investor communications, and he was not alleged to directly transmit the alleged misstatements to investors, the SEC will not be able to sustain its Section 17(a) claims against Davison. In addition to the reasons set out above, there is an additional reason to dismiss these claims: Davison did not commit fraud in connection with the purchase or sale of securities.

"Section 17(a) of the Securities Act, section 10(b) of the Exchange Act and Rule 10b–5, all proscribe fraudulent conduct *in the purchase or sale of securities*." *SEC v. Radius Capital Corp.*, 2012 WL 695668, *3 (M.D. Fla. Mar. 1, 2012) (emphasis supplied). *See also SEC v. Levin*, 2014 WL 11878357, *14 (S.D. Fla. Oct. 6, 2014) "Section 17(a) of the Securities Act prohibits fraud *in the offer or sale of securities*.") (emphasis supplied). Moreover, for the

---

[9] These same arguments also apply to the claims under Section 17 of the Securities Act.

purposes of Section 17(a), it is not sufficient for the SEC to allege fraud ***and*** the offer or sale of securities; the fraud ***must be connected to*** the offer and sale. *SEC v. ITT Educ. Servs., Inc.*, 303 F. Supp. 3d 746, 774–75 (S.D. Ind. 2018) (denying summary judgment to SEC, where only undisputed facts were that defendant filed registration statements).

Whatever Davison might have done with respect to managing the Funds, that purported misconduct is irrelevant the claims against him that are not in connection with the offer or sale of securities. *See ITT*, at 775 ("The Court would be issuing an impermissible advisory opinion if it were to grant summary judgment that if the SEC proves that Defendants engaged in violative acts, that those acts were 'in the offer or sale of any securities' for purposes of § 17(a)."). Alleged back office misconduct regarding the purported misuse of investor funds, even if proven, cannot be the basis of a Section 17 claim. As set out above at B(3), the purported misconduct alleged is not legally sufficient to satisfy this element.

### D.   Control Person Liability (Count VIII) Cannot Be Established

The SEC does not allege facts sufficient to show that Davison controlled Rybicki or the sales agents. To the contrary, the Amended Complaint sets out that Rybicki controlled them. As noted in *SEC v. LottoNet Operating Corp.*, 2017 WL 6949289 (S.D. Fla. Mar. 31, 2017), for control person liability to attach in the Eleventh Circuit, the defendant has to have "'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the ***specific corporate policy which resulted in the primary liability***.'" *Id*. at *17 (emphasis supplied). *See also SEC v. Huff*, 758 F.Supp.3d 1288, 1342 (S.D. Fla. 2010) (control person liability requires the power to direct and control the conduct that resulted in the primary liability).

Here, as the Amended Complaint sets out, it was Rybicki who controlled the sales staff. *See, e.g.*, Am. Cmplt. ¶¶ 11, 40, 41, 47, 58. Given these allegations that it was someone other than Davison who controlled the persons committing the purportedly violative conduct, the SEC cannot prevail on this claim either.

E.   Aiding and Abetting Liability (Count IX) Is Not Established

"For aiding and abetting liability under the federal securities laws, three elements must be established: (1) a primary or independent securities law violation committed by another party; (2) awareness or knowledge by the aider and abettor that his or her role was part of an overall activity that was improper; also conceptualized as scienter in aiding and abetting antifraud violations; and (3) that the aider and abettor ***knowingly and substantially assisted the conduct that constitutes the violation***." *SEC v. Levin,* 2014 WL 11878357, *20 (S.D. Fla. Oct. 6, 2014) (emphasis supplied) (citation omitted); *see also SEC v. Spartan*, * 6; *SEC v. LottoNet Operating Corp.*, 2017 WL 6949289, *18 (S.D. Fla. Mar. 31, 2017).

Here, the Amended Complaint is devoid of allegations that Davison "knowingly and substantially assisted" the purportedly violative conduct of Rybicki and the sales staff Rybicki supervised. Nor does the SEC allege facts that would show that Davison even knew about Rybicki's alleged misconduct with respect to investors. Accordingly, the SEC cannot prevail on this claim.

F.   The Section 5 Claims Are Deficient (Count I)

To prevail on a claim for violation of Section 5, the SEC must show that Davison was a "necessary participant" and a "substantial factor" in the sale of the unregistered securities at issue. Here, the SEC has not sufficiently alleged that Davison was either and, accordingly, these claims must be dismissed.

The elements of a Section 5 violation are that: (1) the defendant sold or offered to sell securities; (2) no registration statement covered the securities; and (3) the sale or offer was made through the use of interstate facilities or mails. *SEC v. Randy*, 38 F. Supp. 2d 657,667 (N.D. Il. 1999).

"To demonstrate that a defendant sold securities, the SEC must prove that the defendant was a 'necessary participant' or 'substantial factor' in the illicit sale." *SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004). When determining whether the defendant was a "necessary participant," the courts will look at "whether, but for the defendant's participation, the sale transaction would not have taken place." *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) (citing *SEC v. Murphy*, 626 F.2d 633, 650–51 (9th Cir. 1980).) However, but-for causation is not sufficient for liability. *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248 (9th Cir. 2013).

> For example, a printer may prepare key documents or a bank may advance cash to a customer upon the customer's presentation of an instrument and then pass the instrument to another person. Both would satisfy a "but for" causation test, but these acts nonetheless do not render the defendants sellers. Before a person's acts can be considered the proximate cause of a sale, his acts must also be a substantial factor in bringing about the transaction.

*Id.* at 1255 (quoting *Murphy*, 626 F.2d at 650).

Additionally, a defendant's title alone does not determine whether he is liable for violating Section 5. *Id.* at 1258. For example, in *SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *17 (C.D.Cal. July 18, 2016), the court held that allegations of ownership of an allegedly illicit seller, absent allegations of participatory conduct in a scheme, were insufficient to state a claim for violation of Section 5. There, the court dismissed the complaint against defendants against whom there were only conclusory allegations of participation in their respective entities' sale of

stock, noting that "SEC seeks the unreasonable inference that their ownership is sufficient to establish their personal participation." *Id.*

A similar result was reached in *SEC v. BIH Corp.*, 5 F. Supp. 3d 1342, 1347 (M.D. Fla. 2014), where the court held that a defendant who admitted to receiving sale proceeds and writing and disseminating press releases for the company, but denied approaching the buyers and structuring the transaction at issue, was not, as a matter of law, a "necessary participant" or a "substantial factor" in the sale.

Here, the Amended Complaint makes clear that it was not Davison, but Rybicki, who is alleged to have sold or offered to sell securities in violation of Section 5:  "Davison and Rybicki largely split their primary functions" (Am. Cmplt., ¶ 38); "Rybicki primarily controlled communications with investors [and] marketing … and executed agreements with investors" *(id.* at ¶ 4); "Rybicki's activities were largely directed toward soliciting and raising money from investors" (*id.* at ¶ 11); "Rybicki communicated directly with investors, and raised money from investors for the Funds." (*id.*); "Rybicki primarily controlled the sales force and communications with investors" (*id.* at ¶ 40); "Rybicki was otherwise primarily responsible for raising money for the Funds from investors" (*id.* at ¶ 41); "Rybicki managed EquiAlt's relationships with various third-party sales agents (acting as unregistered broker-dealers)" (*id.*); "Rybicki even advised third-party sales agents that neither a license nor registration were required to sell EquiAlt securities" (*id.*); and "Rybicki also met with investors and solicited investments in the Funds directly" (*id.*).

Given the paucity of specific allegations against Davison with respect to the offering and sale of the securities at issue, the SEC has not alleged facts that would, if true, establish Davison

as either a "necessary participant" or a "substantial factor" in the sale of unregistered securities. Accordingly, the Section 5 claim must be dismissed.

## IV.

### THE CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DENIED AS THE SEC HAS NOT SHOWN A LIKELIHOOD OF THE WRONG BEING REPEATED

The gravamen of the SEC's Amended Complaint is the claim that there was an ongoing sale of investments in the Funds that had to be halted by government intervention. *See, e.g.,* Am. Cmplt. ¶¶ 1, 3, 9. Leaving aside the question of whether that was true at the time this action was commenced (and indeed, the January 8, 2020 letter to investors, at Docket Entry 7-7, page 8, would indicate that at least by that point some of the Funds were being wound down and assets being sold to pay back investors), it is certainly no longer the case.

There are not going to be additional investors and, indeed, Funds had been gated prior to the commencement of this action. As the docket in this action reflects, the Receiver is executing the plan originally created by Davison (although with significant added costs) to realize value for investors by selling off properties – including one that had been listed prior to the Receivership. (*See* Docket Entry 137; *see also* Docket Entry 170.) There is thus no continuing fraud to block.

Instead there is simply the orderly wind-down of the funds. As Docket Entry 137 reflects, for example, the properties are being sold for a significant multiple of acquisition cost. *See* Docket entry 137, at 4 n.3.

Moreover, we understand that the Receiver has retained largely the same staff that Davison employed, and is using them to operate the business, including for purposes of valuation. If the Funds were being run as an illegal scheme, it makes little sense that the Receiver would retain the same staff.

Given that the SEC's legal case against Davison fails, and there is no likelihood of the purported wrong continuing, it makes sense for the Court to lift the Receivership, or convert it into a monitorship, as set out in our response to the SEC's application for a TRO. *See* Docket Entry 160.

## **CONCLUSION**

As set forth above and in the accompanying exhibits, the SEC has failed to allege facts that, if true, would establish liability against defendant Davison. Consequently the Amended Complaint – and each and every claim asserted therein as against Davison – must be dismissed.

## **REQUEST FOR ORAL ARGUMENT PURSUANT TO LOCAL RULE 3.01(j)**

Defendant Brian Davison requests that the Court entertain oral argument on this Defendant Brian Davison's Motion to Dismiss the Amended Complaint and Memorandum of Law in Support Thereof ("Motion"). Defendant Davison believes oral argument will assist the Court in better understanding the factual and legal issues in the Motion. Defendant Davison estimates the time required for argument will be one or hour or less.

/s/ Gerald D. Davis
GERALD D. DAVIS, ESQ.
Florida Bar No. 764698
gdavis@trenam.com
bshepard@trenam.com
ohoeppner@trenam.com
CHARLES M. HARRIS, JR., ESQ.
Florida Bar No. 967459
TRENAM, KEMKER, SCHARF,
BARKIN, FRYE, O'NEILL &
MULLIS, P.A.
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
Tel: (727) 896-7171
Attorneys for Defendant Brian
Davison

/s/ Howard Fischer
HOWARD FISCHER, ESQ.
New York Bar No. 2644052
hfischer@mosessinger.com
MOSES & SINGER, LLP
405 Lexington Avenue
New York, NY 10174
Telephone: 212-554-7800
Attorneys for Defendant Brian Davison

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been filed via the Court's CM/ECF system, which will send an electronic copy of the foregoing and a notice of filing same to all counsel of record, on this 10th day of August, 2020.

/s/ Gerald D. Davis
Attorney