# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                         Case No. 8:20-cv-325-T-35AEP

BRIAN DAVISON,
BARRY M. RYBICKI,
EQUIALT LLC,
EQUIALT FUND, LLC
EQUIALT FUND II, LLC,
EQUIALT FUND III, LLC,
EA SIP, LLC,

       Defendants,
and

128 E. DAVIS BLVD., LLC;
310 78TH AVE, LLC;
551 3D AVE S, LLC;
604 WEST AZEELE, LLC;
2101 W. CYPRESS, LLC;
2112 W. KENNEDY BLVD, LLC;
5123 E. BROADWAY AVE, LLC;
BLUE WATERS TI, LLC; BNAZ, LLC;
BR SUPPORT SERVICES, LLC;
 BUNGALOWS TI, LLC;
CAPRI HAVEN, LLC; EA NY, LLC;
EQUIALT 519 3RD AVE S., LLC;
MCDONALD REVOCABLE LIVING TRUST;
SILVER SANDS TI, LLC;
TB OLDEST HOUSE EST. 1842, LLC.

       Relief Defendants.
_____/

## RECEIVER'S SECOND QUARTERLY FEE APPLICATION FOR ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF <u>COSTS TO RECEIVER AND HIS PROFESSIONALS</u>

Burton W. Wiand, the Court-appointed Receiver over the corporate Defendants and all Relief Defendants (the "Receiver" and the "Receivership" or "Receivership Estate") pursuant to the Court's Order dated February 14, 2020 (Doc. 11) (the "Order Appointing Receiver"), respectfully submits this Second Quarterly Fee Application to the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals.  This Application covers all fees and costs incurred from April 1, 2020 through June 30, 2020.  A Standardized Accounting Report (the "Accounting Report") from April 1, 2020 through June 30, 2020 is attached as Exhibit 1.[1]

Since the appointment of the Receiver, he and those he has retained to assist him have engaged in substantial and continuing efforts for the benefit of the Receivership.  During the time covered by this Application, among other things, the Receiver and his professionals have done the following:

- Located and moved for the return of $310,000 in deposits made with SIMWEST (d/b/a Audemars Piquet) by EquiAlt for the purchase of watches for Mr. Davison's personal collection;

- Negotiated the return of $193,911.19 in deposits from Miller Motorcars made by EquiAlt for the purchase of luxury vehicles for Mr. Davison;

- Located buyers and moved for the approval of the sale of three Ferraris and return of two Ferraris to Ferrari Financial, which, if approved, would return over $320,000 in proceeds to the Receivership Estate;

- With the Court's approval, retained counsel to investigate and pursue claims against law firms that provided legal counsel to the EquiAlt entities;

- Took possession of Mr. Davison's Bentley and Rolls Royce Cullinan;

---

[1]  The Securities and Exchange Commission ("SEC" or the "Commission") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "Billing Instructions").  The Accounting Report is one of the requirements contained in the Billing Instructions.

- Continued its investigation into the REIT and QOZ and moved the Court to expand the Receivership over those entities;

- Received and began the analysis of documents from over 30 individuals and entities, from banks, credit card companies, law firms, accountants, car dealerships, auctioneers, and jewelers, reflecting Receivership assets or documents related to such, amounting to over 20 GB of data;

- Maintained and updated the Receiver's website for the benefit of EquiAlt investors;

- Continued to register investors – more than 225 additional registrations since the last status report – and have continued to field inquiries from investors – over 150 emails and 350 telephone calls;

- Continued to run the day-to-day operations of the Receivership Entities which includes the management of over 350 real estate properties. These activities include collection of rent, construction, rehab of properties, handling of maintenance requests and adjusting to a COVID-19 environment.

The above activities are discussed in more detail in the Receiver's Second Quarterly Status Report which was filed on August 11, 2020 (Doc. 179) (the "Quarterly Status Report"). The Quarterly Status Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the potential establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities.  The Receiver incorporates the Quarterly Status Report into this Application and has attached a true and correct copy of the Quarterly Status Report as Exhibit 2 for the Court's convenience.  The Quarterly Status Report addresses all activity that resulted in the fees and costs sought in this motion.

## Case Background

As of the date of filing this Application, the Court has appointed Burton W. Wiand as

Receiver over the assets of the following entities and individuals:[2]

a)      Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt
        Fund III, LLC; and EA SIP, LLC; and

b)      Relief Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave
        S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy
        Blvd, LLC; 5123 E. Broadway Ave, LLC; Blue Waters TI, LLC; BNAZ,
        LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven,
        LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable
        Living Trust; Silver Sands TI, LLC; TB Oldest House Est. 1842, LLC.

*See* Doc. 11. The foregoing Defendants and Relief Defendants are collectively referred to as

the "Receivership Entities." On February 11, 2020, the Securities and Exchange Commission

("SEC") filed a complaint (Doc. 1) against the Receivership Entities. The complaint charges

the Defendants with violations of the federal securities laws and regulations in connection

with a real estate Ponzi scheme. The SEC alleges that from January 2010 to November 2019,

EquiAlt raised more than $170 million from approximately 1100 investors to invest in three

separate real estate funds. The SEC alleges that EquiAlt misrepresented the use of the

proceeds of the investments and that Defendants Davison and Rybicki, who controlled the

---

[2]  On May 19, 2020, the Receiver filed a motion to expand the scope of the Receivership to
include EquiAlt QOZ Fund GP, LLC, EquiAlt Qualified Opportunity Zone Fund, LP
("QOZ"), EquiAlt Secured Income Portfolio REIT, Inc. ("REIT"), EquiAlt Holdings LLC
(sponsor of the QOZ and REIT), EquiAlt Property Management LLC (property manager of
the QOZ and REIT), and EquiAlt Capital Advisors, LLC (investment advisor for the QOZ
and REIT) (collectively "QOZ and REIT Entities") (Doc. 90). The Receiver's investigation
has revealed that the QOZ and REIT entities, although not originally included in the SEC's
request for appointment of Receiver, are inextricably intertwined with the EquiAlt corporate
Defendants and were similarly managed by individual Defendants Brian Davison and Barry
Rybicki. The Court has not issued a ruling on this motion.

operations of the corporate Defendants, misappropriated monies from EquiAlt to the detriment of the investors.  As directed by the Court (*see* Doc. 11 ¶ 2) and discussed in the Quarterly Status Report, the Receiver is conducting an independent investigation of the Receivership Entities and their operations. Although the Receiver's findings are preliminary, there is abundant evidence that supports the allegations that the Defendants were operating a fraudulent investment scheme.

**Professional Services Rendered and Costs Incurred**

The Order Appointing Receiver authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court.  *See* Doc. 11 ¶¶ 31, 32.  The Order Appointing Receiver also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel.  *See* Doc. 11 ¶ 31.  On March 20, 2020, the Receiver filed a motion approve the retention of Coldwell Banker to provide valuations of properties owned by the Receivership Entities (Doc. 61), which is still pending.  Paragraph 6 of the Order Appointing Receiver provides for the Receiver to engage persons "to assist the Receiver in carrying out the Receiver's duties and responsibilities, including . . . accountants . . . ." To that end, the Receiver retained PDR CPAs ("PDR") to assist with general accounting and tax services for the Receivership. Out of an abundance of caution, the Receiver filed an unopposed motion to approve the retention of PDR on April 9, 2020. The Court granted this motion on May 11, 2020 (Doc. 85).

The Order Appointing Receiver also specifically authorized the Receiver to retain (1) Wiand Guerra King P.A. ("WGK") to provide legal services; (2) Yip Associates ("Yip") to provide forensic accounting services; (3) E-Hounds, Inc. ("E-Hounds") to provide computer forensic services; (4) RWJ Group, LLC ("RWJ") to provide asset management and investigative services; (5) Freeborn & Peters LLP ("Freeborn") to provide legal services relating to information technology; (6) Baskin Richards PLC ("Baskin"), legal counsel in Arizona, to assist in the service of the Order Appointing Receiver and securing records and assets; and (7) Digital Acuity LLC ("Digital Acuity"), forensic investigators in Arizona, to assist in securing records (the foregoing and PDR are collectively, the "Professionals").[3]  *See* Doc. 11 ¶¶ 3, 16.[4] (Doc. 88).

---

[3]  The Order Appointing Receiver specifically authorized the Receiver to retain "investigators, and counsel in Phoenix, Arizona to assist in the service of the Order and securing of records and assets."  *See* Doc. 11 ¶ 3.  Pursuant to this paragraph, the Receiver retained Baskin and Digital Acuity as stated above. Digital Acuity aided the Receiver with the imaging of the hard drives and other computer equipment at the EquiAlt offices in Arizona. This was a one-time expense for the Receivership, and thus, Digital Acuity is no longer providing services to the Receivership.

[4]  On June 26, 2020, the Receiver filed a motion for leave to retain Johnson Pope Bokor Ruppel & Burns, LLP ("Johnson Pope") on a contingency fee basis to investigate and pursue claims against law firms that provided services to EquiAlt, LLC or another Receivership Entity (Doc. 121), which the Court granted on July 1, 2020 (Doc. 127). In addition to agreeing to work on a contingency fee basis as outlined in the motion to retain Johnson Pope, the firm has also agreed to advance costs subject to reimbursement from any recovery with the exception of costs associated with E-Hounds and Yip Associates. Any costs incurred by Yip Associates and E-Hounds in connection with Johnson Pope's investigation and any eventual litigation will be included in the invoices for these two professionals in the Receiver's fee applications. No costs have been incurred as of the date of this Application. As with any contingency fee arrangement, Johnson Pope is only entitled to payment if it procures a successful resolution of the Receiver's potential claims.

As described above and more fully in the Quarterly Status Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, and analyze investor information for an eventual claims process and possible litigation. The Receivership is still in its early stages and much of the work accomplished during the time covered by this Application has continued to build the foundation of the work of the Receivership which will make other Receivership tasks in the future more efficient and cost-effective. While the Receiver and his professionals are investigating and locating and preserving assets for the benefit of defrauded investors, they are also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 350 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers. The services provided by the Receiver and his professionals are for the benefit of aggrieved investors, creditors, and other interested parties.

## I.     The Receiver.

The Receiver requests the Court award him fees for the professional services rendered from April 1, 2020 through June 30, 2020, in the amount of $68,328.00.[5]   The standard hourly rate the Receiver charges clients in private litigation is $500.  However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be

---

[5]  In the Court's Report and Recommendation on the Receiver's First Motion for Fees, the Court applied the 20% holdback provision of the Receivership Order. Assuming that the Court approves the reasonableness of the hours and fees herein, the 80% award of fees to the Receiver would be $54,662.40.

reduced to $360, representing nearly a thirty percent discount off the standard hourly rate which he charges clients in comparable matters. This rate was set forth in the Receiver's submission to the SEC. *See* Doc. 6, Ex. 1.

The Receiver commenced services immediately upon his appointment. The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed. The Billing Instructions identify each such business enterprise or litigation matter as a separate "project." Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories.[6] At this early stage of the Receivership, no separate matters have been commenced to warrant billing as a separate project.

For the time covered by this motion, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing

---

[6] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure; and (6) Employee Benefits/Pensions, which is defined as review issues such as severance, retention, 401K coverage and continuance of pension plan. The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate. In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

investor information for an eventual claims process and possible litigation. These activities of the Receiver are set forth in detail in the Quarterly Status Report. Ex. 2. A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as Exhibit 3. The Receiver's time and fees for services rendered for each Activity Category from April 1, 2020 through June 30, 2020, are as follows:

**Receivership**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 18.9 | $6,804.00 |
| Asset Analysis and Recovery | 82.4 | $29,664.00 |
| Business Operations | 51.2 | $18,432.00 |
| Case Administration | 37.3 | $13,428.00 |
| **TOTAL** | **189.8** | **$68,328.00** |

## II.   Wiand Guerra King P.A.

The Receiver requests the Court award WGK fees for professional services rendered and costs incurred from April 1, 2020 through June 30, 2020, in the amounts of $184,628.00[7] and $7,594.50, respectively. As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, WGK's attorneys and paralegals have agreed to reduce their standard rates as provided in the fee schedule attached as Exhibit 4. As shown in the fee schedule, WGK agreed to limit its partner rates, which typically range from $315 to $475, to $350 per hour and its associate rates, which range from $235 to $290, to $240 per hour.

---

[7]   In the Court's Report and Recommendation on the Receiver's First Motion for Fees, the Court applied the 20% holdback provision of the Receivership Order. Assuming that the Court approves the reasonableness of the hours and fees herein, the 80% award of fees to related to Wiand Guerra King would be $147,702.40.

Ex. 4.  WGK began providing services immediately upon the appointment of the Receiver. The activities of WGK for the time covered by this Application are set forth in the Quarterly Status Report.  *See* Ex. 2.  WGK has billed time for these activities in accordance with the Billing Instructions.  As discussed above, at this early stage of the Receivership, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information for the eventual claims process and possible litigation.  Ex. 2.  A copy of the statement summarizing the services rendered and costs incurred by WGK from April 1, 2020 through June 30, 2020, is attached as Exhibit 5. WGK's time and fees for services rendered on this matter for each Activity Category are as follows:

<div align="center">

**Receivership**
**WGK's Time and Fees for Services Rendered**

</div>

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 83.3 | $19,104.00 |
| Asset Analysis and Recovery | 385.5 | $107,750.00 |
| Business Operations | 126.1 | $23,131.00 |
| Case Administration | 195.2 | $34,643.00 |
| **TOTAL** | **790.1** | **$184,628.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Katherine Donlon (KCD) | Partner | 25 | 222 | $350.00 | $77,700.00 |
| Jared J. Perez (JJP) | Partner | 15 | 18.7 | $350.00 | $6,545.00 |
| Maya Lockwood (MML) | Of Counsel | 21 | 4.4 | $240.00 | $936.00 |
| R. Max McKinley (RMM) | Associate | 5 | 246.4 | $240.00 | $59,136.00 |

| Jeffrey Rizzo (JR) | Paralegal | | 151.7 | $135.00 | $20,479.50 |
|---|---|---|---|---|---|
| Amanda Stephens (AS) | Paralegal | | 146.90 | $135.00 | $19,831.50 |
| Fees | | | | | $184,628.00 |
| Disbursements | | | | | $7,594.50 |
| Total | | | 790.10 | | $192,222.50 |

In addition to legal fees, WGK has advanced costs of $7,594.50 as summarized below.

| Costs | Total |
|---|---|
| Photocopies | $313.50 |
| Telephone | $493.66 |
| Online Research | $1,152.87 |
| Delivery Services | $57.47 |
| Other | $5,577.00 |
| Total | $7,594.50 |

The "Other" category of costs includes $1,275 related to the Receiver's website and $4,264 for fees related to updating the registered agents for the Receivership Entities as well as submitting corporate annual reports for those entities where required.

## III.    Yip Associates.

The Receiver requests the Court award Yip fees for professional services rendered and costs incurred from April 1, 2020 through June 30, 2020, in the amount of $277,479. Yip is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support. The firm is a leading boutique forensic accounting firm serving clients throughout the United States and abroad.  Maria Yip, who founded the firm in 2008, has 27 years of experience in public and forensic accounting. Yip has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at

issue in this case.  Additionally, Yip provides invaluable resources on the tracing of investor proceeds to various assets and properties.

Ms. Yip is a partner in her firm and bills at $495 per hour. Manager Christopher Cropoey and Senior Associate Danny Zamorano continue to work diligently on this matter. Cropley has 12 years of experience and a billing rate of $300 and Zamorano has five years of experience and a billing rate of $245.   Associates Renee Johnson, Crystal Fieros and Santiago Carpio have also expended significant time on this matter during this period. Their hourly rate is $195 and their years of experience are notes below. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite <u>Exhibit 6</u>.   A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Yip Associates Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Maria Yip (MMY) | Partner | 27 | 50.30 | $495.00 | $24,898.50 |
| Christopher M. Cropley (CMC) | Manager | 12 | 93.50 | $300.00 | $28,050.00 |
| Danny D. Zamorano (DDZ) | Sr. Associate | 5 | 378.60 | $245.00 | $92,757.00 |
| Renee Johnson (RJ) | Associate | 9 | 180.10 | $195.00 | $35,119.50 |
| Matthew J. Bellacosa (MJB) | Associate | 4 | 82.30 | $195.00 | $16,048.50 |
| Crystal Fieros (CF) | Associate | 3 | 108.30 | $195.00 | $21,118.50 |
| Santiago I. Carpio (SIC) | Associate | 3 | 174.30 | $195.00 | $33,988.50 |
| William P. Martin (WPM) | Associate | 1 | 27.30 | $195.00 | $5,323.50 |
| Christian Varela  (CV) | Paraprofessional | | 161.40 | $125.00 | $20,175.00 |
| Fees | | | | | $277,479.00 |
| Disbursements | | | | | $574.95 |
| Total | | | 1,256.10 | | $278,053.95 |

As mentioned previously, much of the costs associated with forensic accounting in these type

of cases is front-loaded as accounts, statements, transactions, and investor documents are being input, digested and analyzed. This will be critical to the Receiver when the Claims Process is initiated. Additionally, in this billing period, the Receiver has received over 20 GB of data from various sources, much of which has been uploaded and processed by Yip for the benefit of tracing assets. Such work and information will not be duplicated but will be incredibly beneficial to the Receivership as they continue to identify and locate Receivership assets. It should also be noted that the fees charged by Yip this quarter (and in July) have continued to decrease each month, in particular, in June and July: April - $132,613; May - $108,489.50; June - $36,376.50 and July - $24,822.

For the Court's convenience, below is a summary of the work provided by Yip during this billing period:

### April 2020

- Continued to review and analyze bank accounts held in the names of the various EquiAlt Entities and relief defendants, and in the names of Brian D. Davison and Barry M. Rybicki, across seven banking institutions and brokerage firms. The analysis of the bank accounts resulted in a database containing over 84,000 bank transactions covering a period of over eight years, from August 2011 through February 2020.
- Prepared cash flow analysis for all EquiAlt Funds.
- Prepared analysis of investors transferred to REIT fund.
- Prepared analysis of real estate purchases and expenditures related to Tampa office; NY apartment; Tampa warehouse; and 128 Biscayne properties.
- Prepared analysis of distributions to B. Davison and B. Rybicki recorded in QuickBooks.
- Attended various conference calls with Receiver's team and government representatives.

**May 2020**

- Continued to review and analyze bank accounts held in the names of the various EquiAlt Entities and relief defendants, and in the names of Brian D. Davison and Barry M. Rybicki, across seven banking institutions and brokerage firms. The analysis of the bank accounts resulted in a database containing over 84,000 bank transactions covering a period of over eight years, from August 2011 through February 2020.
- Prepared analysis of management fees charged by EquiAlt LLC to the EquiAlt Funds.
- Compiled financial statements for the EquiAlt entities.
- Assisted with preparation of Receiver's Report, including preparation of diagrams and exhibits.
- Prepared analysis of transfers between EquiAlt Funds.
- Traced and classified investor transactions.
- Prepared analysis of erosion of value to remaining investors resulting from transfers to the REIT.
- Prepared analysis of real estate properties purchased by the REIT.
- Assisted with preparation of Receiver's declaration, including preparation of exhibits.
- Attended various conference calls with Receiver's team.

**June 2020**

- Reviewed and analysed credit card accounts held in the name of B. Rybicki.
- Reviewed and analysed credit card accounts held in the name of B. Davison.
- Performed tracing of alleged reimbursements from REIT to EquiAlt LLC.
- Researched select investor transactions.
- Prepared analysis of payments to or for the benefit of B. Davison, for various periods.
- Prepared analysis of payments to or for the benefit of B. Rybicki, for various periods.
- Prepared analysis of investor vs. non-investor funds (Ponzi activity analysis), for multiple periods.

IV.    **PDR CPAs.**

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from April 1, 2020 through June 30, 2020, in the amount of $21,821.67. PDR is an accounting firm that specializes in tax matters and has extensive experience with the tax treatment of settlement funds.   PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing.   The Court approved hourly billing rates for PDR's professionals (Doc. 85).  Later, at the request of the Court, the Receiver provided an estimate of anticipated monthly fees for PDR's services - $15,000 for each of the first three months and $6,000/month thereafter. As seen by the information attached as composite Exhibit 7, the fees sought are below these limitations.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**PDR's Time and Fees for Services Rendered**

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| William E. Price (WEP) | Partner | 23.25 | $320.00 | $7,440.00 |
| Gail Heinold (GAH) | Senior | 21.25 | $155.00 | $3,293.75 |
| Sharon O'Brien (SAO) | Staff | 78.55 | $125.00 | $9,818.75 |
| Fees |  |  |  | $20,552.50 |
| Disbursements |  |  |  | $1,269.17 |
| Total |  | 123.05 |  | $21,821.67 |

V.    **E-Hounds, Inc.**

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from April 1, 2020 through June 30, 2020, in the amount of $7,340.25.  E-Hounds is a computer forensics firm that assists the Receiver in securing and

analyzing electronic data. They have been instrumental in collecting and preserving all electronic records, including email records, GoDaddy records, and DropBox files as well as computer equipment. E-Hounds continues to update and maintain its proprietary review platform, which the Receiver's team is actively using. This quarter, E-Hounds mirrored Mr. Davison's laptop so as to provide that to Mr. Davison's counsel. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite <u>Exhibit 8</u>. A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

<p align="center"><b>E-Hounds' Time and Fees for Services Rendered</b></p>

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Adam Sharp (ADS) | Owner | 3.20 | $300.00 | $960.00 |
| Robert Rohr (RTR) | Technician | 4.25 | $195.00 | $828.75 |
| Robert Rohr (RTR) | Preservation | 1.00 | $225.00 | $225.00 |
| Dave Bukas (DAB) | Project Mgmt | 6.60 | $195.00 | $1,287.00 |
| Flat Fee (full workup of laptop) | | | | $1,000.00 |
| Monthly Platform Charges | | | | $2,970.00 |
| Fees | | | | $7,270.75 |
| Disbursements | | | | $69.50 |
| Total | | 15.05 | | $7,340.25 |

**VI.**     **<u>The RWJ Group, LLC.</u>**

The Receiver requests the Court award RWJ fees for professional services rendered and costs incurred from April 1, 2020 through June 30, 2020, in the amounts of $39,847.50 and $2,168.94, respectively. RWJ, which is owned and operated by Roger Jernigan, is an asset management and investigation firm. Roger Jernigan, the founder of RWJ Group, acts as an investigator and asset manager for the Receiver. Mr. Jernigan is a former law

enforcement officer with over 30 years experience in law enforcement, investigations and business management.  He has over 11 years experience working with Receivers, specifically for investigative work and marshalling and management of assets.  RWJ assists the Receiver with overseeing ongoing business operations and property recovered by the Receiver, including aiding with efforts to sell such businesses and property. Its efforts are designed to ensure that Receivership assets are maintained and/or enhanced to allow for maximum recovery for the Receivership Estate.  Mr. Jernigan has also been instrumental in overseeing employees at EquiAlt and helping to manage its day to day operations which has been particularly challenging given the recent pandemic.

Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite Exhibit 9.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**RWJ's Time and Fees for Services Rendered**

| Professional | Hours | Rate | Total |
|---|---|---|---|
| Roger Jernigan (RWJ) | 442.75 | $90.00 | $39,847.50 |
| Fees | | | $39,847.50 |
| Disbursements (Mileage) | | | $2,168.94 |
| Total | 442.75 | | $42,016.44 |

## VII.   Freeborn & Peters LLP.

The Receiver requests the Court award Freeborn fees for professional services rendered from April 1, 2020 through June 30, 2020, in the amount of $10,125.00. The Court specifically appointed attorney Robert Stines of Freeborn & Peters LLP to aid the Receiver with technology-related issues that would necessarily arise with the Receivership. Mr. Stines has been practicing law for over ten years and is a certified IAPP U.S.-law privacy

professional.  His practice is focused on cyber law, electronic discovery, digital evidence, privacy and data security.  He provides counsel and assistance to the Receiver related to EquiAlt's websites, investor portals, internet and email accounts, and encrypted data on servers and laptops. Mr. Stines works with E-Hounds to segregate and review potentially privileged data prior to allowing access to the Receiver's attorneys.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite <u>Exhibit 10</u>.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Freeborn's Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Robert Stines | Partner | 10 | 28.50 | $345.00 | $9,832.50 |
| Taylor R. Ryan | Associate | 3 | 1.30 | $225.00 | $292.50 |
| Total | | | 29.80 | | $10,125.00 |

## VIII.  <u>Baskin Richards PLC.</u>

The Receiver requests the Court award Baskin Richards fees for professional services rendered and costs incurred from April 1, 2020 through June 30, 2020, in the amount of $3,860.00.  EquiAlt's main office is located in Tampa, but individual Defendant Barry Rybicki ran part of the EquiAlt operations in Phoenix from both his home and an executive office space. Recognizing this, the Court approved the retention of Arizona counsel and investigators as the Receiver deemed necessary.  The Receiver hired the firm of Baskin Richards as local counsel to aid him with issues in Arizona related to Defendant Rybicki and other employees and sales agents located in Arizona. , including the initial takedown of those offices.  Since that time, the Baskin firm has assisted the Receiver in interviewing former

employees of BR Support Services and EquiAlt in Arizona as well as sales agents who were involved in the solicitation of the EquiAlt Funds.

Mr. Baskin has been practicing law for 30 years and is a former Senior Counsel at the Securities Division of the Arizona Corporation Commission and also worked for the Arizona Attorney' General's Office prosecuting securities and white collar cases. Copies of the statement summarizing the services rendered and costs incurred for the pertinent period are attached as composite Exhibit 11. A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Baskin Richards' Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp | Hours | Rate | Total |
|---|---|---|---|---|---|
| Alan Baskin (ASB) | Partner | 30 | 3.10 | $425.00 | $1,317.50 |
| Mladen Milovic (MZM) | Associate | 1 | 11.30 | $225.00 | $2,542.50 |
| Total | | | 14.40 | | $3,860.00 |

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his

professionals); *see also* Doc. 11 ¶ 16.  The determination of fees to be awarded is largely within the discretion of the trial court.  *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944).  In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership.  *See Elliot*, 953 F.2d at 1577.

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This is in part based on the nature and extent of the services rendered and the value of those services. *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). Additionally, the Court should consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a case involving an award of attorneys' fees under federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

similar cases. Based on the information provided herein as well as the Receiver's Second Quarterly Status Report, the Receiver believes that the Court when considering these factors and the work accomplished during this quarter of the Receivership will determine that the Receiver's Motion for Fees is reasonable and should be granted.

A receiver and the team he or she assembles is entitled to reasonable compensation and courts have looked at several factors in determining reasonableness: (1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership. *SEC v. W.L. Moody & Co*, 374 F. Supp. 465, 480-484 (S.D. Tex. 1974). In this case, the Receiver has begun his duties in earnest to investigate, locate and preserve assets for the benefit of defrauded investors while also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 350 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers.

This Receivership has just begun and many of the fees and expenses will be non-recurring in that the work accomplished during the time covered by this Application has continued to build a foundation for the ongoing work of the Receivership. For example, much of the work by the forensic accountants are one-time expenses for the gathering and input of data and information. These labor-intensive activities now will make other Receivership tasks in the future, such as the claims process and potential clawback litigation, much more efficient and cost-effective.

Additionally, the Receiver and his attorneys continue to struggle to obtain cooperation from Defendant Davison for access to records, vehicles, websites and financial information. Finally, the Receiver has sought to keep the EquiAlt investors up to date regarding the Court's progress through the Receivership website, allowing investors to register for information related to this matter. The Receiver and designated paralegals at Wiand Guerra King also field telephone calls from investors and sales agents regarding the allegations in this case and the underlying investments.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal receiverships, securities, banking, and finance.  Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and WGK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets.  The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida and have been found reasonable by this Court in granting the Receiver's First Application for Fees.   This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently.   The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested

parties.   The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the SEC investigated and filed the initial pleadings in this case, as directed by the Order Appointing Receiver (*see, e.g.,* Doc. 11 ¶¶ 2, 4), the Receiver is now involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to locate and gather investors' money, the determination of investor and other creditor claims and any ultimate payment of these claims.   While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion.   *S.E.C. v. Byers,* 590 F. Supp. 2d 637 (S.D.N.Y. 2008) (quoting *S.E.C. v. Fifth Ave. Coach Lines, Inc.,* 364 F.Supp. 1220, 1222 (S.D.N.Y.1973) ("[I]n a securities receivership, '[o]pposition or acquiescence by the SEC to the fee application will be given great weight.'").

## CONCLUSION

Under the Order Appointing Receiver, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations.   The Order Appointing Receiver further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred.   In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Burton W. Wiand, Receiver | $68,328.00 |
| Wiand Guerra King P.A. | $192,222.50 |
| Yip Associates | $278,053.95 |
| PDR CPAs | $21,821.67 |
| E-Hounds, Inc. | $7,340.25 |
| RWJ Group, LLC | $42,016.44 |
| Freeborn & Peters LLP | $10,125.00 |
| Baskin Richards PLC | $3,860.00 |

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel for the Receiver has conferred with counsel for the SEC and is authorized to represent to the Court that the SEC does not oppose the relief requested in this motion.  Counsel for defendant Brian Davison has not consented to the relief sought. Counsel for Barry Rybicki takes no position on the motion. Both individual defendants reserve their rights as to this motion.

## RECEIVER'S CERTIFICATION

The Receiver has reviewed this Second Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Application**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Securities and Exchange Commission.

All fees contained in the Application are based on the rates listed in the fee schedule, attached as Exhibit 4.  Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor.  The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate.  With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/Burton W. Wiand**
Burton W. Wiand, as Receiver

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 20, 2020, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court through the CM/ECF system, which served counsel of record.

<div style="margin-left: 50%;">

**s/Katherine C. Donlon**

Katherine C. Donlon, FBN 0066941

kdonlon@wiandlaw.com

Jared J. Perez, FBN 0085192

jperez@wiandlaw.com

WIAND GUERRA KING P.A.

5505 West Gray Street

Tampa, FL  33609

Tel.:   (813) 347-5100

Fax:   (813) 347-5198

*Attorneys for the Receiver Burton W. Wiand*

</div>