## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                  Case No. 8:20-cv-325-T-35AEP

BRIAN DAVISON,
BARRY M. RYBICKI,
EQUIALT LLC,
EQUIALT FUND, LLC
EQUIALT FUND II, LLC,
EQUIALT FUND III, LLC,
EA SIP, LLC,

        Defendants,
and

128 E. DAVIS BLVD., LLC;
310 78TH AVE, LLC;
551 3D AVE S, LLC;
604 WEST AZEELE, LLC;
2101 W. CYPRESS, LLC;
2112 W. KENNEDY BLVD, LLC;
5123 E. BROADWAY AVE, LLC;
BLUE WATERS TI, LLC; BNAZ, LLC;
BR SUPPORT SERVICES, LLC;
BUNGALOWS TI, LLC;
CAPRI HAVEN, LLC; EA NY, LLC;
EQUIALT 519 3RD AVE S., LLC;
MCDONALD REVOCABLE LIVING TRUST;
SILVER SANDS TI, LLC;
TB OLDEST HOUSE EST. 1842, LLC.

        Relief Defendants.
_____/

## RECEIVER'S THIRD QUARTERLY FEE APPLICATION FOR
## ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF
## <u>COSTS TO RECEIVER AND HIS PROFESSIONALS</u>

Burton W. Wiand, the Court-appointed Receiver over the corporate Defendants and all Relief Defendants (the "Receiver" and the "Receivership" or "Receivership Estate") pursuant to the Court's Order dated February 14, 2020 (Doc. 11) (the "Order Appointing Receiver"),[1] respectfully submits this Third Quarterly Fee Application to the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals.  This Application covers all fees and costs incurred from July 1, 2020 through September 30, 2020.  A Standardized Accounting Report (the "Accounting Report") from July 1, 2020 through September 30, 2020 is attached as Exhibit 1.[2]

Since the appointment of the Receiver, he and those he has retained to assist him have engaged in substantial and continuing efforts for the benefit of the Receivership.  During the time covered by this Application, among other things, the Receiver and his professionals have done the following:

- Brought the following monies into the Receivership after receiving Court approval:

  o $310,000 in deposits from SIMWEST (d/b/a Audemars Piquet) originally paid by EquiAlt for the purchase of watches for Mr. Davison's personal collection;

  o $326,856.47 from the sale of three Ferraris;

---

[1]   On August 17, 2020, the Court granted the Receiver's Motion to Expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, EquiAlt QOZ Fund GP, LLC, EquiAlt Secured Income Portfolio REIT, Inc., EquiAlt Holdings LLC, EquiAlt Property Management LLC, and EquiAlt Capital Advisors, LLC ("REIT and QOZ Entities") (Doc. 184).

[2]   The Securities and Exchange Commission ("SEC" or the "Commission") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "Billing Instructions").  The Accounting Report is one of the requirements contained in the Billing Instructions.

- Sought and obtained approval from the Court for the sale of the following properties:

    o 22706 Gage Loop Road, #39, Land O' Lakes - $92,500
    o 6346 Newtown Circle, #A3, Tampa - $81,000
    o 1803 Brigadoon Dr., Clearwater - $136,000
    o 4203 W. Bay Villa Ave., Tampa - $520,000

- Took over operations of the REIT and QOZ upon the Court's granting of the Receiver's Motion to Expand the Receivership to include those entities associated with the REIT and QOZ;

- Receiver brought claims on behalf of the Funds against attorney Paul Wassgren, Fox Rothschild and DLA Piper in the Central District Court of California;

- Gained access to Mr. Davison's laptop which included emails and text messages previously not seen;

- Continued investigation into predecessor entities EquityAlt and EGPP;

- Continued investigation into Receivership interests in Commerce Brewing, Rock Brothers and other brewery-related investments;

- Protected certain Davison investments in his Merrill Lynch account for the benefit of the Receivership Estate by funding capital calls for those investments from other Davison accounts;

- EquiAlt Fund II received back $500,000 (half of its original investment) in Alternative Capital;

- Began the process of analyzing investors' investments and distributions in preparation for initiation of claims process;

- Maintained and updated the Receiver's website for the benefit of EquiAlt investors;

- Continued to register investors – more than 60 additional registrations since the last status report (for a total of 812 registrations) – and have continued to field inquiries from investors – over 130 emails and over 330 telephone calls;

- Continued to run the day-to-day operations of the Receivership Entities which includes the management of over 350 real estate properties. These activities include collection of rent, construction, rehab of properties, handling of maintenance requests and

The above activities are discussed in more detail in the Receiver's Third Quarterly Status Report which was filed on November 13, 2020 (Doc. 217) (the "Quarterly Status Report"). The Quarterly Status Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the potential establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities.  The Receiver incorporates the Quarterly Status Report into this Application and has attached a true and correct copy of the Quarterly Status Report as Exhibit 2 for the Court's convenience.  The Quarterly Status Report addresses all activity that resulted in the fees and costs sought in this motion.

## Case Background

As of the date of filing this Application, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities:

a)  Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP, LLC;

b)  Relief Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC; Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; TB Oldest House Est. 1842, LLC; and

c)  EquiAlt Qualified Opportunity Zone Fund, EquiAlt QOZ Fund GP, LLC, EquiAlt Secured Income Portfolio REIT, Inc., EquiAlt Holdings LLC, EquiAlt Property Management LLC, and EquiAlt Capital Advisors, LLC ("REIT and QOZ Entities").

See Docs. 11 and 184.  The foregoing entities are collectively referred to as the "Receivership Entities." On February 11, 2020, the Securities and Exchange Commission

("SEC") filed a complaint (Doc. 1) against the Defendants and Relief Defendants. The complaint charges the Defendants with violations of the federal securities laws and regulations in connection with a real estate Ponzi scheme. The SEC alleges that from January 2010 to November 2019, EquiAlt raised more than $170 million from approximately 1100 investors to invest in three separate real estate funds. The SEC alleges that EquiAlt misrepresented the use of the proceeds of the investments and that Defendants Davison and Rybicki, who controlled the operations of the corporate Defendants, misappropriated monies from EquiAlt to the detriment of the investors. As directed by the Court (*see* Doc. 11 ¶ 2) and discussed in the Quarterly Status Report, the Receiver is conducting an independent investigation of the Receivership Entities and their operations. Although the Receiver's findings are preliminary, there is abundant evidence that supports the allegations that the Defendants were operating a fraudulent investment scheme.

**Professional Services Rendered and Costs Incurred**

The Order Appointing Receiver authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court. *See* Doc. 11 ¶¶ 31, 32. The Order Appointing Receiver also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel. *See* Doc. 11 ¶ 31. Paragraph 6 of the Order Appointing Receiver provides for the Receiver to engage persons "to assist the Receiver in carrying out the Receiver's duties and responsibilities, including . . . accountants . . . ." To that end, the Receiver retained PDR

CPAs ("PDR") to assist with general accounting and tax services for the Receivership. Out of an abundance of caution, the Receiver filed an unopposed motion to approve the retention of PDR on April 9, 2020. The Court granted this motion on May 11, 2020 (Doc. 85).

The Order Appointing Receiver also specifically authorized the Receiver to retain (1) Wiand Guerra King P.A. ("WGK") to provide legal services; (2) Yip Associates ("Yip") to provide forensic accounting services; (3) E-Hounds, Inc. ("E-Hounds") to provide computer forensic services; (4) RWJ Group, LLC ("RWJ") to provide asset management and investigative services; (5) Freeborn & Peters LLP ("Freeborn") to provide legal services relating to information technology; (6) Baskin Richards PLC ("Baskin"), legal counsel in Arizona, to assist in the service of the Order Appointing Receiver and securing records and assets; and (7) Digital Acuity LLC ("Digital Acuity"), forensic investigators in Arizona, to assist in securing records (the foregoing and PDR are collectively, the "Professionals").[3] *See* Doc. 11 ¶¶ 3, 16.[4] (Doc. 88).

---

[3] The Order Appointing Receiver specifically authorized the Receiver to retain "investigators, and counsel in Phoenix, Arizona to assist in the service of the Order and securing of records and assets." *See* Doc. 11 ¶ 3. Pursuant to this paragraph, the Receiver retained Baskin and Digital Acuity as stated above. Digital Acuity aided the Receiver with the imaging of the hard drives and other computer equipment at the EquiAlt offices in Arizona. This was a one-time expense for the Receivership, and thus, Digital Acuity is no longer providing services to the Receivership.

[4] On June 26, 2020, the Receiver filed a motion for leave to retain Johnson Pope Bokor Ruppel & Burns, LLP ("Johnson Pope") on a contingency fee basis to investigate and pursue claims against law firms that provided services to EquiAlt, LLC or another Receivership Entity (Doc. 121), which the Court granted on July 1, 2020 (Doc. 127). In addition to agreeing to work on a contingency fee basis as outlined in the motion to retain Johnson Pope, the firm has also agreed to advance costs subject to reimbursement from any recovery with the exception of costs associated with E-Hounds and Yip Associates. Any costs incurred by Yip Associates and E-Hounds in connection with Johnson Pope's investigation and any eventual litigation will be included in the invoices for these two professionals in the

As described above and more fully in the Quarterly Status Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, and analyze investor information for an eventual claims process and possible litigation. The Receivership is also selling certain assets and properties and preserving those proceeds for the benefit of the victim investors. While the Receiver and his professionals are investigating and locating and preserving assets for the benefit of defrauded investors, they are also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 350 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers. The services provided by the Receiver and his professionals are for the benefit of aggrieved investors, creditors, and other interested parties.

I.      **The Receiver.**

The Receiver requests the Court award him fees for the professional services rendered from July 1, 2020 through September 30, 2020, in the amount of $44,028. The standard hourly rate the Receiver charges clients in private litigation is $500. However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to $360, representing nearly a thirty percent discount off the standard hourly rate

---

Receiver's fee applications. As with any contingency fee arrangement, Johnson Pope is only entitled to payment if it procures a successful resolution of the Receiver's potential claims.

which he charges clients in comparable matters.  This rate was set forth in the Receiver's submission to the SEC.  *See* Doc. 6, Ex. 1.

The Receiver commenced services immediately upon his appointment.  The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed.  The Billing Instructions identify each such business enterprise or litigation matter as a separate "project."  Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories.[5] At this stage of the Receivership, no separate matters have been commenced to warrant billing as a separate project.

For the time covered by this motion, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information for an eventual claims process and possible litigation.  These activities

---

[5]   The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure; and (6) Employee Benefits/Pensions, which is defined as review issues such as severance, retention, 401K coverage and continuance of pension plan.  The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate.  In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

of the Receiver are set forth in detail in the Quarterly Status Report.  Ex. 2.  A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as Exhibit 3.  The Receiver's time and fees for services rendered for each Activity Category from July 1, 2020 through September 30, 2020, are as follows:

**Receivership**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 31.6 | $11,376.00 |
| Asset Analysis and Recovery | 35.3 | $12,708.00 |
| Business Operations | 51.8 | $18,648.00 |
| Case Administration | 3.6 | $1,296.00 |
| **TOTAL** | **122.3** | **$44,028.00** |

## II.      Wiand Guerra King P.A.

The Receiver requests the Court award WGK fees for professional services rendered and costs incurred from July 1, 2020 through September 30, 2020, in the amounts of $132,425 and $5,699.46, respectively.   As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, WGK's attorneys and paralegals have agreed to reduce their standard rates as provided in the fee schedule attached as Exhibit 4. As shown in the fee schedule, WGK agreed to limit its partner rates, which typically range from $315 to $475, to $350 per hour and its associate rates, which range from $235 to $290, to $240 per hour.  Ex. 4.  WGK began providing services immediately upon the appointment of the Receiver.  The activities of WGK for the time covered by this Application are set forth in the Quarterly Status Report.  *See* Ex. 2.  WGK has billed time for these activities in accordance with the Billing Instructions.  As discussed above, the work of the Receiver and

WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information for the eventual claims process and possible litigation.  Ex. 2. A copy of the statement summarizing the services rendered and costs incurred by WGK from July 1, 2020 through September 30, 2020, is attached as <u>Exhibit 5</u>.  WGK's time and fees for services rendered on this matter for each Activity Category are as follows:

<u>Receivership</u>
**WGK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 111.2 | $25,049.50 |
| Asset Analysis and Recovery | 182.2 | $53,586.50 |
| Business Operations | 99.8 | $19,286.00 |
| Case Administration | 200.1 | $32,164.50 |
| Claims Process | **7.7** | $1,901.50 |
| **TOTAL** | **673.0** | **$132,180.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Katherine Donlon (KCD) | Partner | 25 | 160.90 | $350.00 | $56,315.00 |
| Jared J. Perez (JJP) | Partner | 15 | .9 | $350.00 | $315.00 |
| Maya Lockwood (MML) | Of Counsel | 21 | 4 | $240.00 | $960.00 |
| R. Max McKinley (RMM) | Associate | 5 | 148.6 | $240.00 | $35,644.00 |
| Jeffrey Rizzo (JR) | Paralegal | | 110.6 | $135.00 | $14,931.00 |
| Amanda Stephens (AS) | Paralegal | | 168.8 | $135.00 | $22,788.00 |
| Mary Gura (MG) | Paralegal | | 7.0 | $135.00 | $945.00 |
| Fees | | | | | $132,180.00 |
| Disbursements | | | | | $5,699.46 |
| Total | | | 790.10 | | $137,879.46 |

In addition to legal fees, WGK has advanced costs of $5,699.46 as summarized below.

| Costs | Total |
|---|---|
| Photocopies | $389.40 |
| Telephone | $160.76 |
| Online Research | $568.75 |
| Delivery Services | $379.05 |
| Court Fees | $523.50 |
| Other | $3,678.00 |
| Total | $5,699.46 |

The "Other" category of costs includes costs related to the Receiver's website as well as costs related to the publication of various notices related to the real estate sold during this quarter. Additionally, this amount includes some fees for registered agents for the Receivership Entities.

In the Magistrate's previous two Reports and Recommendations on the Receiver's Quarterly Fee Applications, the Magistrate Judge applied the 20% holdback provision of the Receivership Order (Doc. 11 at para. 35). This holdback has been applied to the fees charged by the Receiver and Wiand Guerra King. Further, in the most recent Report and Recommendation, the Court asked for reasons why the holdback should not be applied to Yip and Associates. The holdback provision is standard language in Orders Appointing Receivers, but the language of the provision is permissive not mandatory. In this case, the SEC has not requested that the Court apply the provision, but rather has not objected to the Receiver's fees motions at all. This Receiver has been involved in numerous Receivership actions involving the SEC, FTC and CFTC and has never had a holdback applied. In the Reports and Recommendations, the Magistrate recommended applying the holdback "especially in light of the amount of fees sought by the Receiver." (Doc. 209 at 13) However,

it should be noted that the fees requested by the Receiver and Wiand Guerra King have declined with each successive motion for fees.

|  | Receiver | Monthly Avg | WGK | Monthly Avg |
|---|---|---|---|---|
| **1st** | $79,560.00 | $53,040.00[6] | $158,204.75 | $105,469.83 |
| **2nd** | $68,328.00 | $22,776.00 | $184,628.00 | $61,542.67 |
| **3rd** | $44,028.00 | $14,676.00 | $132,425.00 | $44,141.67 |

Further, given the amount of monies collected by the Receiver, a holdback is unnecessary as there are sufficient resources to run the Receivership Entities and protect the investors. Given this and the already reduced rates charged by the Receiver and his team, the Receiver respectfully requests that the Court not apply the holdback provision as it relates to the fees requested in this motion.

### III.   Yip Associates.

The Receiver requests the Court award Yip fees for professional services rendered and costs incurred from July 1, 2020 through September 30, 2020, in the amount of $60,944.50.   Yip is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support.   The firm is a leading boutique forensic accounting firm serving clients throughout the United States and abroad.  Maria Yip, who founded the firm in 2008, has 27 years of experience in public and forensic accounting.  Yip has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at issue in this case.   Additionally, Yip provides invaluable resources on the tracing of investor proceeds to various assets and properties. Further, Yip

---

[6] This calculation is based on only a month and a half in the first quarter.

has begun the process of gathering the investors' investments and distributions in order to initiate the claims process.

Ms. Yip is a partner in her firm and bills at $495 per hour. Manager Christopher Cropley, Senior Associate Danny Zamorano, and Associate Renee Johnson continue to work diligently on this matter.  Mr. Cropley has 12 years of experience and a billing rate of $300, Mr. Zamorano has five years of experience and a billing rate of $245, and Ms. Johnson has nine years of experience and a billing rate is $195.  Senior Associate Nicole Escudero Duenas also worked on this matter during this period.  Ms. Duenas has nine years of experience and a billing rate of $245.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite Exhibit 6.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Yip Associates Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Maria Yip (MMY) | Partner | 27 | 12.40 | $495.00 | $6,138.00 |
| Christopher M. Cropley (CMC) | Manager | 12 | 18.90 | $300.00 | $5,670.00 |
| Danny D. Zamorano (DDZ) | Sr. Associate | 5 | 110.80 | $245.00 | $27,146.00 |
| Nicole E. Duenas (NED) | Sr. Associate | 9 | 15.10 | $245.00 | $3,699.50 |
| Renee Johnson (RJ) | Associate | 9 | 93.80 | $195.00 | $18,291.00 |
| Fees | | | | | $60,944.50 |
| Disbursements | | | | | $0.00 |
| Total | | | 251.00 | | $60,944.50 |

In the Receiver's previous motions, the fees requested for Yip's services were much higher as forensic accounting in these types of cases is front-loaded as accounts, statements,

transactions, and investor documents are being input, digested and analyzed. Notably, the fees charged by Yip this quarter have significantly decreased – by more than approximately 74% – from the prior two quarters. In the Magistrate's Report and Recommendation on the Receiver's Second Motion for Fees (Doc. 209), the Court asked the Receiver to address why the holdback provision should not apply to Yip on a going forward basis "given the amount of fees and costs associated with the services provided by Yip." Given this vast reduction in fees since the earlier two quarters, the Receiver does not believe that the holdback should be assessed against the fees for Yip's services.

For the Court's convenience, below is a summary of the work provided by Yip during this billing period:

### July 2020
- Prepared schedule of investment term expirations (by month) for the EquiAlt funds.
- Traced sales commissions and updated schedules of payments to sales agents.
- Finalized analysis of investor vs. non-investor funds for multiple periods.
- Prepared declaration dated July 30, 2020.
- Preparation for and attendance at hearing on motion to show cause.

### August 2020
- Prepared analysis of deposits made into B. Davison's personal bank accounts.
- Updated analysis of transfers between funds.
- Communications with Receiver's counsel regarding investor claims process and information necessary.
- Prepared schedules of transactions with IRA services providers.
- Commenced preparation of investor analysis necessary for investor claims process.

### September 2020
- Continued preparation of investor analysis necessary for investor claims process.
- Conference call with Receiver's team and government representatives regarding forensic work performed to date.
- Updated analysis of payments to A. Sears.

- Updated analysis of payments to or for the benefit of B. Davison.

**IV.    PDR CPAs.**

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from July 1, 2020 through September 30, 2020, in the amount of $11,675.53.  PDR is an accounting firm that specializes in tax matters and has extensive experience with the tax treatment of settlement funds.  PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing.  The Court approved hourly billing rates for PDR's professionals (Doc. 85).  Later, at the request of the Court, the Receiver provided an estimate of anticipated monthly fees for PDR's services – $15,000 for each of the first three months and $6,000 per month thereafter.  The fees and costs incurred by PDR for the month of July exceeded $6,000.  PDR reduced its fees and costs for July by $2,430.14 to comply with the agreed limitation. As shown by the statements attached as composite <u>Exhibit 7</u>, the fees sought for each month during this period are at or below the limitation.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**PDR's Time and Fees for Services Rendered**

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| William E. Price (WEP) | Partner | 4.25 | $320.00 | $1,360.00 |
| Gail Heinold (GAH) | Senior | 23.80 | $155.00 | $3,689.00 |
| Sharon O'Brien (SAO) | Staff | 61.74 | $125.00 | $7,717.50 |
| Fees | | | | $12,766.50 |
| Disbursements | | | | $1,339.17 |
| Total | | 89.79 | | $14,105.67 |
| Reduction for total monthly fee limitation of $6,000 | | | | $2,430.14 |
| Adjusted Total | | | | $11,675.53 |

## V.  E-Hounds, Inc.

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from July 1, 2020 through September 30, 2020, in the amount of $8,576.25.  E-Hounds is a computer forensics firm that assists the Receiver in securing and analyzing electronic data.   They have been instrumental in collecting and preserving all electronic records, including email records, GoDaddy records, and DropBox files as well as computer equipment.   E-Hounds continues to update and maintain its proprietary review platform, which the Receiver's team is actively using. This quarter, E-Hounds assisted the Receiver in accessing Mr. Davison's laptop, including text messages that were saved on the laptop. Additionally, E-Hounds has aided the Receiver with websites and domains owned by the Receiver. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite Exhibit 8.   A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**E-Hounds' Time and Fees for Services Rendered**

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Robert Rohr (RTR) | Technician | 22.80 | $195.00 | $4,446.00 |
| Sean Organ (SPO) | Technician | 4.00 | $195.00 | $780.00 |
| Dave Bukas (DAB) | Project Mgmt | 1.95 | $195.00 | $380.25 |
| Monthly Platform Charges | | | | $2,970.00 |
| Fees | | | | $8,576.25 |
| Disbursements | | | | $0.00 |
| Total | | 28.75 | | $8,576.25 |

Receivers in other cases in the Middle District have been awarded fees at these same rates charged by E-Hounds. *See, e.g., SEC v. Kinetic Investment Group*, Case No. 20-cv-394-T-35SPF (motion at Doc. 73 and order approving at Doc. 101); *CFTC v. Oasis International Group Limited*, Case No. 19-cv-886-T-33SPF (motion at Doc. 203 and order approving at Doc. 207).

## VI.    The RWJ Group, LLC.

The Receiver requests the Court award RWJ fees for professional services rendered and costs incurred from July 1, 2020 through September 30, 2020, in the amounts of $7,155.00 and $418.04, respectively.  RWJ, which is owned and operated by Roger Jernigan, is an asset management and investigation firm.  Roger Jernigan, the founder of RWJ Group, acts as an investigator and asset manager for the Receiver. Mr. Jernigan is a former law enforcement officer with over 30 years experience in law enforcement, investigations and business management.  He has over 11 years experience working with Receivers, specifically for investigative work and marshalling and management of assets.  RWJ assisted the Receiver with overseeing ongoing business operations and property recovered by the Receiver, including aiding with efforts to sell such businesses and property. Its efforts were designed to ensure that Receivership assets are maintained and/or enhanced to allow for maximum recovery for the Receivership Estate.  Mr. Jernigan was also instrumental in overseeing employees at EquiAlt and helping to manage its day to day operations which has been particularly challenging given the recent pandemic.  Mr. Jernigan's rate is $90/hour which is much less than the fees that were approved by an investigator in *SEC v. Kirkland*, *S.E.C. v. Kirkland,* 606CV183ORL28KRS, 2008 WL 3981434 at *3 (M.D. Fla. Aug. 21,

2008)(approving hourly rate of $150 for investigator).  Mr. Jernigan is in the process of retiring and as such, RWJ is not currently providing services to the Receivership.  RWJ did not provide any services after July 2020. WGK and EquiAlt employees are handling the matters previously handled by Mr. Jernigan.  The Receiver anticipates that these individuals will be able to continue to provide the services previously provided by RWJ at this time.

A copy of the statement summarizing the services rendered and costs incurred for the pertinent period is attached as composite Exhibit 9.  A summary of the professional's hours rendered during the time covered by this Application is set forth below.

**RWJ's Time and Fees for Services Rendered**

| Professional | Hours | Rate | Total |
|---|---|---|---|
| Roger Jernigan (RWJ) | 79.50 | $90.00 | $7,155.00 |
| Fees | | | $7,155.00 |
| Disbursements (Mileage) | | | $418.04 |
| Total | 79.50 | | $7,573.04 |

## VII.  Freeborn & Peters LLP.

The Receiver requests the Court award Freeborn fees for professional services rendered from July 1, 2020 through September 30, 2020, in the amount of $16,456.50. The Court specifically appointed attorney Robert Stines of Freeborn & Peters LLP to aid the Receiver with technology-related issues that would necessarily arise with the Receivership. Mr. Stines has been practicing law for over ten years and is a certified IAPP U.S.-law privacy professional.  His practice is focused on cyber law, electronic discovery, digital evidence, privacy and data security.  He provides counsel and assistance to the Receiver related to EquiAlt's websites, investor portals, internet and email accounts, and encrypted data on servers and laptops. Mr. Stines works with E-Hounds to segregate and review potentially

privileged data prior to allowing access to the Receiver's attorneys.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite <u>Exhibit 10</u>.   A summary of the professional's hours rendered during the time covered by this Application is set forth below.

**Freeborn's Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Robert Stines | Partner | 10 | 47.70 | $345.00 | $16,456.50 |
| Total | | | 47.70 | | $16,456.50 |

## VIII.   <u>Baskin Richards PLC.</u>

The Receiver's Arizona counsel, Baskin Richards, did not incur expenses or charge fees for services for the time covered by this Application.

## <u>MEMORANDUM OF LAW</u>

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services.  *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 11 ¶ 16.  The determination of fees to be awarded is largely within the discretion of the trial court.  *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir.

1944).  In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership.  *See Elliot*, 953 F.2d at 1577.

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This is in part based on the nature and extent of the services rendered and the value of those services. *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). Additionally, the Court should consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a case involving an award of attorneys' fees under federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Based on the information provided herein as well as the Receiver's Third Quarterly Status Report, the Receiver believes that the Court when considering these factors

and the work accomplished during this quarter of the Receivership will determine that the Receiver's motion for fees is reasonable and should be granted.

A receiver and the team he or she assembles is entitled to reasonable compensation and courts have looked at several factors in determining reasonableness: (1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership. *SEC v. W.L. Moody & Co*, 374 F. Supp. 465, 480-484 (S.D. Tex. 1974). In this case, the Receiver has begun his duties in earnest to investigate, locate and preserve assets for the benefit of defrauded investors while also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 350 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers.

Additionally, the Receiver and his attorneys continue to struggle to obtain cooperation from Defendant Davison for access to records, vehicles, websites and financial information. Finally, the Receiver has sought to keep the EquiAlt investors up to date regarding the Court's progress through the Receivership website, allowing investors to register for information related to this matter. The Receiver and designated paralegals at Wiand Guerra King also field telephone calls from investors and sales agents regarding the allegations in this case and the underlying investments.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal

receiverships, securities, banking, and finance.  Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and WGK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets.  The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida and have been found reasonable by this Court in granting the Receiver's first Application for Fees.  This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently.  The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties.  The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the SEC investigated and filed the initial pleadings in this case, as directed by the Order Appointing Receiver (*see, e.g.,* Doc. 11 ¶¶ 2, 4), the Receiver is now involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to locate and gather investors' money, the determination of investor and other creditor claims and any ultimate payment of these claims.  While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership.

Notably, the Commission has no objection to the relief sought in this motion.  *S.E.C. v. Byers,* 590 F. Supp. 2d 637 (S.D.N.Y. 2008) (quoting *S.E.C. v. Fifth Ave. Coach Lines, Inc.,* 364 F.Supp. 1220, 1222 (S.D.N.Y.1973) ("[I]n a securities receivership, '[o]pposition or acquiescence by the SEC to the fee application will be given great weight.'").

## CONCLUSION

Under the Order Appointing Receiver, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations.  The Order Appointing Receiver further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred.  In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Burton W. Wiand, Receiver | $44,028.00 |
| Wiand Guerra King P.A. | $137,879.46 |
| Yip Associates | $60,944.50 |
| PDR CPAs | $11,675.53 |
| E-Hounds, Inc. | $8,576.25 |
| RWJ Group, LLC | $7,573.04 |
| Freeborn & Peters LLP | $16,456.50 |

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel for the Receiver has conferred with counsel for the SEC and is authorized to represent to the Court that the SEC does not oppose the relief requested in this

motion.  Counsel for defendant Brian Davison has not consented to the relief sought. Counsel for Barry Rybicki takes no position on the motion. Both individual defendants reserve their rights as to this motion.

**RECEIVER'S CERTIFICATION**

The Receiver has reviewed this Third Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Application**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Securities and Exchange Commission.

All fees contained in the Application are based on the rates listed in the fee schedule, attached as Exhibit 4.  Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches),

the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor.  The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate.  With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/Burton W. Wiand**       
Burton W. Wiand, as Receiver

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 13, 2020, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court through the CM/ECF system, which served counsel of record.

**s/Katherine C. Donlon**     
Katherine C. Donlon, FBN 0066941
kdonlon@wiandlaw.com
Jared J. Perez, FBN 0085192
jperez@wiandlaw.com
WIAND GUERRA KING P.A.
5505 West Gray Street
Tampa, FL  33609
Tel.:   (813) 347-5100
Fax:   (813) 347-5198

*Attorneys for the Receiver Burton W. Wiand*