# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                              Case No. 8:20-cv-325-T-35AEP

BRIAN DAVISON,
BARRY M. RYBICKI,
EQUIALT LLC,
EQUIALT FUND, LLC
EQUIALT FUND II, LLC,
EQUIALT FUND III, LLC,
EA SIP, LLC,

       Defendants,
and

128 E. DAVIS BLVD., LLC;
et al.,

       Relief Defendants.

_____/

## RECEIVER'S FOURTH QUARTERLY FEE APPLICATION FOR ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF COSTS TO RECEIVER AND HIS PROFESSIONALS

Burton W. Wiand, the Court-appointed Receiver over the corporate Defendants and all Relief Defendants (the "Receiver" and the "Receivership" or "Receivership Estate") pursuant to the Court's Order dated February 14,

2020 (Doc. 11) (the "Order Appointing Receiver"),[1] respectfully submits this Fourth Quarterly Fee Application to the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals. This Application covers all fees and costs incurred from October 1, 2020 through December 31, 2020. A Standardized Accounting Report (the "Accounting Report") from October 1, 2020 through December 31, 2020 is attached as Exhibit 1.[2]

Since the appointment of the Receiver, he and those he has retained to assist him have engaged in substantial and continuing efforts for the benefit of the Receivership. During the time covered by this Application, among other things, the Receiver and his professionals have done the following:

- Held auction for the sale of Brian Davison's high-end vehicles:

  o 2020 Bentley Convertible GTC V8 - $230,360 (net $45,896.13)
  o 2019 Rolls Royce Cullinan - $326,400 (net $75,551.74)
  o 2018 Pagani Huayra – the reserve was not met on this vehicle but the Receiver continues to receive private offers and is optimistic regarding the sale of this vehicle.

- Helped negotiate the sale of Barry Rybicki's 2017 Porsche Targa 4S - $105,000 (net $65,844.35);

---

[1] On August 17, 2020, the Court granted the Receiver's Motion to Expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, EquiAlt QOZ Fund GP, LLC, EquiAlt Secured Income Portfolio REIT, Inc., EquiAlt Holdings LLC, EquiAlt Property Management LLC, and EquiAlt Capital Advisors, LLC ("REIT and QOZ Entities") (Doc. 184).

[2] The Securities and Exchange Commission ("SEC" or the "Commission") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "Billing Instructions"). The Accounting Report is one of the requirements contained in the Billing Instructions.

- Sought and obtained approval from the Court for the sale of the following properties and garnered these net proceeds:

    - 4203 West Bay Villa Avenue, Tampa - $495,336.53
    - 5324 5th Avenue North, St. Petersburg - $216,492.08
    - 6209 2nd Avenue North, St. Petersburg - $256,599.29
    - 2236 Gabarone Boulevard, Auburndale - $160,941.87

- Listed for sale a number of other properties totaling over $6 million and is actively considering offers on these properties;

- Completed the construction of a waterfront luxury home at 2 Bahamas Circle in Tampa and listed it for sale for $4,150,000;

- Spent significant energies and resources working with partners in Commerce Brewing to continue operations and provide for additional investors. The Partners are attempting to restructure the business and add additional financing from partners and the Receivership with the belief that this can result in significant benefits to the Receivership. Other ventures continue to be evaluated regarding the determination of whether to pursue or liquidate these business opportunities;

- Continued investigation of Brian Davison watch collection;

- Responded to jurisdictional issues in the Receiver's California federal case against attorney Paul Wassgren, Fox Rothschild and DLA Piper by filing a similar state court action in California and moving to dismiss the federal case;

- Continued negotiations with Class Action counsel regarding the production of EquiAlt documents and privilege issues;

- Moved to stay the state court case *Mar v. Morh*;

- EquiAlt Fund II received back the remaining $500,000 of its investment in Alternative Capital;

- Continued analyzing investors' investments and distributions in preparation for clawbacks and the initiation of claims process;

- Maintained and updated the Receiver's website for the benefit of EquiAlt investors;

- Continued to register investors – approximately 32 additional registrations since the last status report (for a total of 844 registrations) – and have continued to field inquiries from investors – over 120 emails and over 182 telephone calls this quarter;

- Continued to run the day-to-day operations of the Receivership Entities which includes the management of almost 300 real estate properties, many of which are multi-family properties. These activities include collection of rent, construction, rehab of properties, handling of maintenance requests and continuing the operations in a COVID-19 environment.

The above activities are discussed in more detail in the Receiver's Fourth Quarterly Status Report which was filed on February 15, 2021 (Doc. 265) (the "Quarterly Status Report"). The Quarterly Status Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the potential establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities. The Quarterly Status Report addresses all activity that resulted in the fees and costs sought in this motion.

## Case Background

As of the date of filing this Application, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities:

a) Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP, LLC;

b)    Relief Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC; Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; TB Oldest House Est. 1842, LLC; and

c)    EquiAlt Qualified Opportunity Zone Fund, EquiAlt QOZ Fund GP, LLC, EquiAlt Secured Income Portfolio REIT, Inc., EquiAlt Holdings LLC, EquiAlt Property Management LLC, and EquiAlt Capital Advisors, LLC ("REIT and QOZ Entities").

*See* Docs. 11 and 184. The foregoing entities are collectively referred to as the "Receivership Entities." On February 11, 2020, the Securities and Exchange Commission ("SEC") filed a complaint (Doc. 1) against the Defendants and Relief Defendants. The complaint charges the Defendants with violations of the federal securities laws and regulations in connection with a real estate Ponzi scheme. The SEC alleges that from January 2010 to November 2019, EquiAlt raised more than $170 million from approximately 1100 investors to invest in three separate real estate funds. The SEC alleges that EquiAlt misrepresented the use of the proceeds of the investments and that Defendants Davison and Rybicki, who controlled the operations of the corporate Defendants, misappropriated monies from EquiAlt to the detriment of the investors. As directed by the Court (*see* Doc. 11 ¶ 2) and discussed in the Quarterly Status Report, the Receiver is conducting an independent investigation of the Receivership Entities and their operations. Although the

5

Receiver's findings are preliminary, there is abundant evidence that supports the allegations that the Defendants were operating a fraudulent investment scheme.

### Professional Services Rendered and Costs Incurred

The Order Appointing Receiver authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court. *See* Doc. 11 ¶¶ 31, 32. The Order Appointing Receiver also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel. *See* Doc. 11 ¶ 31. Paragraph 6 of the Order Appointing Receiver provides for the Receiver to engage persons "to assist the Receiver in carrying out the Receiver's duties and responsibilities, including . . . accountants . . . ." To that end, the Receiver retained PDR CPAs ("PDR") to assist with general accounting and tax services for the Receivership. Out of an abundance of caution, the Receiver filed an unopposed motion to approve the retention of PDR on April 9, 2020. The Court granted this motion on May 11, 2020 (Doc. 85).

The Order Appointing Receiver also specifically authorized the Receiver to retain (1) Wiand Guerra King P.A., now known as Guerra King

6

P.A., ("GK") to provide legal services; (2) Yip Associates ("Yip") to provide forensic accounting services; (3) E-Hounds, Inc. ("E-Hounds") to provide computer forensic services; (4) RWJ Group, LLC ("RWJ") to provide asset management and investigative services;[3] (5) Freeborn & Peters LLP ("Freeborn") to provide legal services relating to information technology; (6) Baskin Richards PLC ("Baskin"), legal counsel in Arizona, to assist in the service of the Order Appointing Receiver and securing records and assets; and (7) Digital Acuity LLC ("Digital Acuity"), forensic investigators in Arizona, to assist in securing records (the foregoing and PDR are collectively, the "Professionals").[4] *See* Doc. 11 ¶¶ 3, 16.[5] (Doc. 88).

---

[3]   RWJ is no longer providing services to this Receivership at this time.

[4]   The Order Appointing Receiver specifically authorized the Receiver to retain "investigators, and counsel in Phoenix, Arizona to assist in the service of the Order and securing of records and assets." *See* Doc. 11 ¶ 3. Pursuant to this paragraph, the Receiver retained Baskin and Digital Acuity as stated above. Digital Acuity aided the Receiver with the imaging of the hard drives and other computer equipment at the EquiAlt offices in Arizona. This was a one-time expense for the Receivership, and thus, Digital Acuity is no longer providing services to the Receivership.

[5]   On June 26, 2020, the Receiver filed a motion for leave to retain Johnson Pope Bokor Ruppel & Burns, LLP ("Johnson Pope") on a contingency fee basis to investigate and pursue claims against law firms that provided services to EquiAlt, LLC or another Receivership Entity (Doc. 121), which the Court granted on July 1, 2020 (Doc. 127). In addition to agreeing to work on a contingency fee basis as outlined in the motion to retain Johnson Pope, the firm has also agreed to advance costs subject to reimbursement from any recovery with the exception of costs associated with E-Hounds and Yip Associates. Any costs incurred by Yip Associates and E-Hounds in connection with Johnson Pope's investigation and any eventual litigation will be included in the invoices for these two professionals in the Receiver's fee applications. As with any contingency fee arrangement, Johnson Pope is only entitled to payment if it procures a successful resolution of the Receiver's potential claims.

As described above and more fully in the Quarterly Status Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, and analyze investor information for an eventual claims process and possible litigation. The Receivership is also selling certain assets and properties and preserving those proceeds for the benefit of the victim investors. While the Receiver and his professionals are investigating and locating and preserving assets for the benefit of defrauded investors, they are also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 350 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers. The services provided by the Receiver and his professionals are for the benefit of aggrieved investors, creditors, and other interested parties.

## I.   <u>The Receiver.</u>

The Receiver requests the Court award him fees for the professional services rendered from October 1, 2020 through December 31, 2020, in the amount of $61,740.00.  The standard hourly rate the Receiver charges clients in private litigation is $500.  However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to

$360, representing nearly a thirty percent discount off the standard hourly rate which he charges clients in comparable matters.  This rate was set forth in the Receiver's submission to the SEC.  *See* Doc. 6, Ex. 1.

The Receiver commenced services immediately upon his appointment. The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed.  The Billing Instructions identify each such business enterprise or litigation matter as a separate "project."  Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories.[6] At this stage of the Receivership, no separate matters have been commenced to warrant billing as a separate project.

---

[6] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure; and (6) Employee Benefits/Pensions, which is defined as review issues such as severance, retention, 401K coverage and continuance of pension plan.  The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate.  In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

9

For the time covered by this motion, the work of the Receiver and GK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information for an eventual claims process and possible litigation.  These activities of the Receiver are set forth in detail in the Quarterly Status Report.  Ex. 2.  A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as <u>Exhibit 2</u>.  The Receiver's time and fees for services rendered for each Activity Category from October 1, 2020 through December 31, 2020, are as follows:

**Receivership**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---:|---:|
| Asset Disposition | 88.70 | $31,932.00 |
| Asset Analysis and Recovery | 45.20 | $16,272.00 |
| Business Operations | 30.90 | $11,124.00 |
| Case Administration | 6.40 | $2,304.00 |
| Claims Administration | 0.30 | $108.00 |
| **TOTAL** | **171.50** | **$61,740.00** |

## II.  <u>Guerra King P.A.</u>

The Receiver requests the Court award GK fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amounts of $111,699.00 and $7,363.03, respectively.  As an

accommodation to the Receiver and to conserve the resources of the Receivership Estate, GK's attorneys and paralegals have agreed to reduce their standard rates as provided in the fee schedule attached as <u>Exhibit 3</u>.  As shown in the fee schedule, GK agreed to limit its partner rates, which typically range from $315 to $475, to $350 per hour and its associate rates, which range from $235 to $290, to $240 per hour.  Ex. 4.  GK began providing services immediately upon the appointment of the Receiver.  The activities of GK for the time covered by this Application are set forth in the Quarterly Status Report.  *See* Ex. 2.  GK has billed time for these activities in accordance with the Billing Instructions.  As discussed above, the work of the Receiver and GK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information for the eventual claims process and possible litigation.  (Doc. 265)  A copy of the statement summarizing the services rendered and costs incurred by GK from October 1, 2020 through December 31, 2020, is attached as <u>Exhibit 4</u>.  GK's time and fees for services rendered on this matter for each Activity Category are as follows:

<u>Receivership</u>
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 118.20 | $27,144.50 |
| Asset Analysis and Recovery | 163.60 | $48,518.00 |
| Business Operations | 64.10 | $12,578.50 |
| Case Administration | 139.90 | $23,088.50 |
| Claims Administration | 1.40 | $369.50 |
| **TOTAL** | **487.20** | **$111,699.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Katherine Donlon (KCD) | Partner | 25 | 134.60 | $350.00 | $47,110.00 |
| Jared J. Perez (JJP) | Partner | 15 | 6.10 | $350.00 | $2,135.00 |
| Maya Lockwood (MML) | Of Counsel | 21 | 1.40 | $240.00 | $336.00 |
| Max McKinley (RMM) | Associate | 5 | 147.90 | $240.00 | $35,496.00 |
| Jeffrey Rizzo (JR) | Paralegal | | 72.40 | $135.00 | $9,774.00 |
| Amanda Stephens (AS) | Paralegal | | 123.50 | $135.00 | $16,672.50 |
| Mary Gura (MG) | Paralegal | | 1.30 | $135.00 | $175.50 |
| Fees | | | | | $111,699.00 |
| Disbursements | | | | | $7,363.03 |
| Total | | | 487.20 | | $119,062.03 |

In addition to legal fees, GK has advanced costs of $7,363.03 as summarized below.

| Costs | Total |
|---|---|
| Photocopies | $57.45 |
| Telephone | $71.65 |
| Online Research | $545.66 |
| Delivery Services | $350.55 |
| Court Fees | $53.00 |
| Other | $6,284.72 |
| Total | $7,363.03 |

The "Other" category of costs includes costs related to the Receiver's website and auction website as well as costs related to the publication of various notices for real estate sold during this quarter and research regarding real properties. Additionally, $3,795.00 of the "Other" amount includes advertising expenses for the auction of several high-end, luxury vehicles. The Court approved the marketing and sale of these vehicles on November 2, 2020 (Doc. 210).

## III.   Yip Associates.

The Receiver requests the Court award Yip fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $209,464.50. Yip is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support. The firm is a leading boutique forensic accounting firm serving

clients throughout the United States and abroad.  Maria Yip, who founded the firm in 2008, has 27 years of experience in public and forensic accounting. Yip has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at issue in this case.  Additionally, Yip provides invaluable resources on the tracing of investor proceeds to various assets and properties. Further, Yip has begun the process of gathering the investors' investments and distributions in order to initiate the claims process.

Ms. Yip is a partner in her firm and bills at $495 per hour. Manager Christopher Cropley, Senior Associate Danny Zamorano, and Associate Renee Johnson continue to work diligently on this matter.  Mr. Cropley has 12 years of experience and a billing rate of $300, Mr. Zamorano has five years of experience and a billing rate of $245, and Ms. Johnson has nine years of experience and a billing rate is $195.  Associates Matthew Bellacosa and Peter Tiano also worked on this matter during this period and both have a billing rate of $195.  Mr. Bellacosa has four years of experience and Mr. Tiano has two years of experience.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite Exhibit 5.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Yip Associates Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Maria Yip (MMY) | Partner | 27 | 7.30 | $495.00 | $3,613.50 |
| Christopher M. Cropley (CMC) | Manager | 12 | 134.60 | $300.00 | $40,380.00 |
| Danny D. Zamorano (DDZ) | Senior Associate | 5 | 299.40 | $245.00 | $73,353.00 |
| Renee Johnson (RJ) | Associate | 9 | 335.20 | $195.00 | $65,364.00 |
| Matthew J. Bellacosa (MJB) | Associate | 4 | 43.60 | $195.00 | $8,502.00 |
| Peter Tiano (PT) | Associate | 2 | 93.60 | $195.00 | $18,252.00 |
| Fees | | | | | $209,464.50 |
| Disbursements | | | | | $0.00 |
| Total | | | 913.70 | | $209,464.50 |

Yip has been working diligently on the investor analysis for purposes of both the investor clawback claims as well as the claims process. Given the large number of investments held through trust companies (i.e. Goldstar, Provident, Vantage, etc.), Yip had to process additional documents received by the Receiver from the trust companies (more than 45 GB of data).

The efforts of Yip during this quarter (and into the first quarter of 2021) have been intensive and directed at preparing an individual analysis of each of the over 1200 investors' transactions in the Ponzi scheme.  These efforts have been complicated by the fact that the EquiAlt records are far from straightforward. In many cases, transactions must be evaluated and confirmed from bank records and other source documents.  This analysis is

15

critical to the Receiver's clawback efforts and will be invaluable during the claims process.

In addition to the evaluation of investors transactions has prepared analysis of the funds paid by the Ponzi scheme to numerous vendors and unregistered sales agents who are the of claims by the receiver for the return of Receivership funds. While this work has been extensive, in light of the fact that we are dealing with a business that raised over $180 million and operated for over nine years, the scope of the work in the Receiver's experience is not unanticipated. Having this work almost completed, the forensic expense should significantly decline in the second quarter of 2021, with future expenses being limited to litigation activities.

For the Court's convenience, below is a summary of the work provided by Yip during this billing period:

### October 2020

- Continued preparation of investor analysis, including compilation and review of investor information, investment terms and investment history, and reconciliation of information obtained to bank activity of the Funds. Records reviewed and analyzed include investor files maintained by EquiAlt personnel, investor website, accounting records, and bank records.
- Updated bank activity analysis based on additional bank records received from Bank of America.
- Updated analysis of payments to or for the benefit of B. Rybicki.
- Updated schedule of payments to Dale Tenhulzen.

### November 2020

- Continued preparation of investor analysis, including compilation and review of investor information, investment terms and investment history, and reconciliation of information obtained to bank activity of the Funds. Records reviewed and analyzed include:
    - o Investor files maintained by EquiAlt personnel;
    - o Investor website;
    - o Monthly distribution lists maintained by EquiAlt personnel;
    - o Files produced by IRA account trustees (e.g. Provident Trust Group, Vantage Retirement Plans, GoldStar Trust Company, IRA Services Trust, etc.);
    - o Accounting records and bank records.
- Communications with Receiver's team and assistance with preparation of Receiver's Status Report.

### December 2020

- Continued preparation of investor analysis, including compilation and review of investor information, investment terms and investment history, and reconciliation of information obtained to bank activity of the Funds. Records reviewed and analyzed include:
    - o Investor files maintained by EquiAlt personnel;
    - o Investor website;
    - o Monthly distribution lists maintained by EquiAlt personnel;
    - o Files produced by IRA account trustees (e.g. Provident Trust Group, Vantage Retirement Plans, GoldStar Trust Company, IRA Services Trust, etc.);
    - o Accounting records and bank records.

## IV.   PDR CPAs.

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $9,725.42.   PDR is an accounting firm that specializes in tax matters and has extensive experience with the tax

treatment of settlement funds.  PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing. The Court approved hourly billing rates for PDR's professionals (Doc. 85). Later, at the request of the Court, the Receiver provided an estimate of anticipated monthly fees for PDR's services – $15,000 for each of the first three months and $6,000 per month thereafter.  As shown by the statements attached as composite Exhibit 6, the fees sought for each month during this period are below the limitation.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

### PDR's Time and Fees for Services Rendered

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| William E. Price (WEP) | Partner | 7.75 | $320.00 | $2,480.00 |
| Gail Heinold (GAH) | Senior | 10.00 | $155.00 | $1,550.00 |
| Sharon O'Brien (SAO) | Staff | 34.85 | $125.00 | $4,356.25 |
| Fees | | | | $8,386.25 |
| Disbursements | | | | $1,339.17 |
| Total | | 52.60 | | $9,725.42 |

## V.   E-Hounds, Inc.

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $3,165.00.  E-Hounds is a computer forensics firm that assists the Receiver in securing and analyzing electronic data.  E-Hounds has been instrumental in collecting and preserving all electronic

records, including email records, GoDaddy records, and DropBox files as well as computer equipment.   E-Hounds continues to update and maintain its proprietary review platform, which the Receiver's team is actively using. This quarter, E-Hounds also assisted the Receiver with data decryption. Additionally, E-Hounds has aided the Receiver with websites and domains owned by the Receiver. Copies of the statements summarizing the services rendered for the pertinent period are attached as composite Exhibit 7.   A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

### E-Hounds' Time and Fees for Services Rendered

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Robert Rohr (RTR) | Technician | 1.00 | $195.00 | $195.00 |
| Monthly Platform Charges | | | | $2,970.00 |
| Fees | | | | $3,165.00 |
| Disbursements | | | | $0.00 |
| Total | | 1.00 | | $3,165.00 |

Receivers in other cases in the Middle District have been awarded fees at these same rates charged by E-Hounds. *See, e.g., SEC v. Kinetic Investment Group*, Case No. 20-cv-394-T-35SPF (motion at Doc. 73 and order approving at Doc. 101); *CFTC v. Oasis International Group Limited*, Case No. 19-cv-886-T-33SPF (motion at Doc. 203 and order approving at Doc. 207).

## VI.   <u>Freeborn & Peters LLP.</u>

The Receiver requests the Court award Freeborn fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $724.50. The Court specifically appointed attorney Robert Stines of Freeborn & Peters LLP to aid the Receiver with technology-related issues that would necessarily arise with the Receivership. Mr. Stines has been practicing law for over ten years and is a certified IAPP U.S.-law privacy professional.   His practice is focused on cyber law, electronic discovery, digital evidence, privacy and data security.   He provides counsel and assistance to the Receiver related to EquiAlt's websites, investor portals, internet and email accounts, and encrypted data on servers and laptops. Mr. Stines works with E-Hounds to segregate and review potentially privileged data prior to allowing access to the Receiver's attorneys.   Copies of the statements summarizing the services rendered for the pertinent period are attached as composite <u>Exhibit 8</u>.   A summary of the professional's hours rendered during the time covered by this Application is set forth below.

**Freeborn's Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Robert Stines | Partner | 10 | 2.10 | $345.00 | $724.50 |
| Total | | | 2.10 | | $724.50 |

## VII.   <u>Baskin Richards PLC.</u>

The Receiver requests the Court award Baskin Richards fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $90.00.  EquiAlt's main office is located in Tampa, but individual Defendant Barry Rybicki ran part of the EquiAlt operations in Phoenix from both his home and an executive office space. Recognizing this, the Court approved the retention of Arizona counsel and investigators as the Receiver deemed necessary.  The Receiver hired the firm of Baskin Richards as local counsel to aid him with issues in Arizona related to Defendant Rybicki and other employees and sales agents located in Arizona, including the initial takedown of those offices.  Since that time, the Baskin firm has assisted the Receiver in interviewing former employees of BR Support Services and EquiAlt in Arizona as well as sales agents who were involved in the solicitation of the EquiAlt Funds.

Mr. Baskin has been practicing law for 30 years and is a former Senior Counsel at the Securities Division of the Arizona Corporation Commission and also worked for the Arizona Attorney' General's Office prosecuting securities and white collar cases.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite <u>Exhibit 9</u>.  A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Baskin Richards' Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp | Hours | Rate | Total |
|---|---|---|---|---|---|
| Mladen Milovic (MZM) | Associate | 1 | 0.40 | $225.00 | $90.00 |
| Total | | | 0.40 | | $90.00 |

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 11 ¶ 16. The determination of fees to be awarded is largely within the discretion of the trial court. *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944). In determining reasonable compensation for the services rendered by the

Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership. *See Elliot*, 953 F.2d at 1577.

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is in part based on the nature and extent of the services rendered and the value of those services. *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). Additionally, the Court should consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a case involving an award of attorneys' fees under federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Based on the information provided herein as well as the Receiver's Fourth Quarterly Status Report, the Receiver believes that the Court when considering these factors and the work accomplished during this quarter of the Receivership will determine that the Receiver's motion for fees is reasonable and should be granted.

A receiver and the team he or she assembles is entitled to reasonable compensation and courts have looked at several factors in determining reasonableness: (1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership. *SEC v. W.L. Moody & Co*, 374 F. Supp. 465, 480-484 (S.D. Tex. 1974). In this case, the Receiver has continued his duties, investigating, locating, preserving and/or liquidating assets for the benefit of defrauded investors while also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 350 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers.

Finally, the Receiver has sought to keep the EquiAlt investors up to date regarding the Court's progress through the Receivership website, allowing investors to register for information related to this matter. The Receiver and designated paralegals at Guerra King also field telephone calls from investors and sales agents regarding the allegations in this case and the underlying investments.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal receiverships, securities, banking, and finance.  Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and GK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets.  The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida and have been found reasonable by this Court in granting the Receiver's first Application for Fees.  This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and

efficiently.  The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties.  The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the SEC investigated and filed the initial pleadings in this case, as directed by the Order Appointing Receiver (*see, e.g.,* Doc. 11 ¶¶ 2, 4), the Receiver is now involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to locate and gather investors' money, the determination of investor and other creditor claims and any ultimate payment of these claims.  While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership.  Notably, the Commission has no objection to the relief sought in this motion.  *S.E.C. v. Byers,* 590 F. Supp. 2d 637 (S.D.N.Y. 2008) (quoting *S.E.C. v. Fifth Ave. Coach Lines, Inc.,* 364 F.Supp. 1220, 1222 (S.D.N.Y.1973) ("[I]n a securities receivership, '[o]pposition or acquiescence by the SEC to the fee application will be given great weight.'").

## CONCLUSION

Under the Order Appointing Receiver, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in

carrying out his duties and obligations.   The Order Appointing Receiver further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred.   In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Burton W. Wiand, Receiver | $61,740.00 |
| Guerra King P.A. | $119,062.03 |
| Yip Associates | $209,464.50 |
| PDR CPAs | $9,725.42 |
| E-Hounds, Inc. | $3,165.00 |
| Baskin Richards PLC | $90.00 |
| Freeborn & Peters LLP | $724.50 |

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel for the Receiver has conferred with counsel for the SEC and is authorized to represent to the Court that the SEC does not oppose the relief requested in this motion.   Counsel for defendant Brian Davison has not consented to the relief sought. Counsel for Barry Rybicki takes no position on the motion. Both individual defendants reserve their rights as to this motion.

<u>**RECEIVER'S CERTIFICATION**</u>

The Receiver has reviewed this Fourth Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Application**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Securities and Exchange Commission.

All fees contained in the Application are based on the rates listed in the fee schedule, attached as Exhibit 3.  Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested

reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor.  The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate. With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/Burton W. Wiand**
Burton W. Wiand, as Receiver

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 15, 2021, I electronically filed

a true and correct copy of the foregoing with the Clerk of the Court through

the CM/ECF system, which served counsel of record.

> **s/Katherine C. Donlon**
> Katherine C. Donlon, FBN 0066941
> kdonlon@guerraking.com
> Jared J. Perez, FBN 0085192
> jperez@guerraking.com
> GUERRA KING P.A.
> 5505 West Gray Street
> Tampa, FL  33609
> Tel.:  (813) 347-5100
> Fax:  (813) 347-5198
>
> *Attorneys for the Receiver Burton W. Wiand*