# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                  Case No. 8:20-cv-325-T-35AEP

BRIAN DAVISON,
BARRY M. RYBICKI,
EQUIALT LLC,
EQUIALT FUND, LLC
EQUIALT FUND II, LLC,
EQUIALT FUND III, LLC,
EA SIP, LLC,

       Defendants,
and

128 E. DAVIS BLVD., LLC;
et al.,

       Relief Defendants.
_____/

## RECEIVER'S UNOPPSED EIGHTH QUARTERLY FEE APPLICATION FOR ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF COSTS TO RECEIVER AND HIS PROFESSIONALS

Burton W. Wiand, the Court-appointed Receiver over the corporate

Defendants and all Relief Defendants (the "Receiver" and the "Receivership"

or "Receivership Estate") pursuant to the Court's Order dated February 14,

2020 (Doc. 11) (the "Order Appointing Receiver"),[1] respectfully submits this Eighth Quarterly Fee Application to the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals. This Application covers all fees and costs incurred from October 1, 2021 through December 31, 2021. A Standardized Accounting Report (the "Accounting Report") from October 1, 2021 through December 31, 2021 is attached as Exhibit 1.[2]

Since the appointment of the Receiver, he and those he has retained to assist him have engaged in substantial and continuing efforts for the benefit of the Receivership. During the time covered by this Application, among other things, the Receiver and his professionals have done the following:

- Participated in negotiations with counsel for Barry Rybicki regarding turnover of assets as part of his settlement with the SEC;

- Closed on private sale of five of the six properties that did not sell during the Receiver's first online auction, resulting in net proceeds of $950,630;

---

[1]  The "Receiver" and the "Receivership" or "Receivership Estate" has been expanded to include not only the Corporate and Relief Defendants but also the following entities: EquiAlt Qualified Opportunity Zone Fund, LP; EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc.; EquiAlt Holdings LLC; EquiAlt Property Management LLC; and EquiAlt Capital Advisors, LLC (Doc. 184, at 6-7) and EquiAlt Fund I, LLC (Doc 284).

[2]  The Securities and Exchange Commission ("SEC" or the "Commission") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "Billing Instructions"). The Accounting Report is one of the requirements contained in the Billing Instructions.

- Sought and received the Court's approval for a second online auction for the sale of 20 real estate properties owned by the Receivership Estate (Doc. 457). Auction resulted in the sale of fifteen properties for $4,888,012 in gross proceeds. Results to date from the first two online auctions indicate that this process will result in rapid liquidation of these properties at excellent prices and return to the Receivership;

- Sold luxury watches and jewelry through Sotheby's at auctions in Hong Kong, Geneva, Las Vegas and New York resulting in proceeds to the Receivership Estate of almost $13 million;

- Closed on sales of Davison's New York apartment (Doc. 429), Davison's Davis Island house and property (Doc. 443), and the office location for EquiAlt at 2112 W. Kennedy Blvd., Tampa (Doc. 444) for net proceeds of $7,181,684;

- Closed on sale of Blue Waters, 13-unit multiplex in Treasure Island, for net proceeds of $4,144,700;

- Obtained Clerk's Defaults against one additional defendant in the *Adamek* case, representing $9,690.00 in false profits;

- Received Court approval for the settlement of certain investor clawback claims, resulting in settlements in the amount of $176,968.86 (Docs. 427, 433, and 464);

- Continued to negotiate with sales agent defendants in *Wiand v. Family Tree Financial Planning* case. This quarter, the Receiver reached settlements with two sales agents and their related entities;

- Worked with Omni Agent Solutions during 90-day period between mailing of over 3,370 proof of claim packets and the claim bar date of December 22, 2021;

- Continued efforts in conjunction with class action counsel in the *Gleinn, et al. v. Wassgren, et al.* case toward resolution of the lawsuits against Paul Wassgren, Fox Rothschild, and DLA Piper;

- Negotiated contracts for the following transactions that are still pending inspections and Court's approval:
  - Bungalows, 10-unit multiplex in Treasure Island - $2,800,000;

- o Five multiplex properties on Davis Island - $7,300,000; and
- o Mobile home park at 5123 E. Broadway - $3,520,000;

- Paused renovation of Jasmine Way property in Clearwater as the Receiver entered into a sales contract on the home and the buyer wants to complete the renovation. The Receiver believes the price on this contract, $1,200,000, is advantageous to the Receivership;

- Continued working with partners on the operations of Commerce Brewing and related entities. The company has made substantial strides toward completing its production facilities and a tasting room. The Receiver believes this project is progressing well and the financial commitments of the Receiver are almost fully met. Anticipated increased production will lead to the receipt of substantial rents from the project in the near future;

- Completed the environmental remediation work that was required by New Jersey for Bolero Snort brewery, and the brewery project is progressing well;

- Continued work to streamline Receivership administration and manage EquiAlt operations, including maintenance and leasing of over 250 real estate properties;

The above activities are discussed in more detail in the Receiver's Eighth Quarterly Status Report which was filed on January 31, 2022 (Doc. 490) (the "Quarterly Status Report"). The Quarterly Status Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the claims process; and related (or contemplated) litigation involving Receivership Entities. The Quarterly Status Report

addresses all activity that resulted in the fees and costs sought in this motion and is incorporated herein.

## Case Background

As of the date of filing this Application, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities:

a) Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP, LLC;

b) Relief Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC; Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; TB Oldest House Est. 1842, LLC;

c) EquiAlt Qualified Opportunity Zone Fund, EquiAlt QOZ Fund GP, LLC, EquiAlt Secured Income Portfolio REIT, Inc., EquiAlt Holdings LLC, EquiAlt Property Management LLC, and EquiAlt Capital Advisors, LLC ("REIT and QOZ Entities"); and

d) EquiAlt Fund I LLC.

*See* Docs. 11, 184, and 284. The foregoing entities are collectively referred to as the "Receivership Entities." On February 11, 2020, the Securities and Exchange Commission ("SEC") filed a complaint (Doc. 1) against the Defendants and Relief Defendants. The complaint charges the Defendants with violations of the federal securities laws and regulations in connection with a real estate Ponzi scheme. The SEC alleges that from January 2010 to November 2019, EquiAlt raised more than $170 million from approximately

1100 investors to invest in three separate real estate funds. The SEC alleges that EquiAlt misrepresented the use of the proceeds of the investments and that Defendants Davison and Rybicki, who controlled the operations of the corporate Defendants, misappropriated monies from EquiAlt to the detriment of the investors. As directed by the Court (*see* Doc. 11 ¶ 2) and discussed in the earlier Quarterly Status Reports, the Receiver is conducting an independent investigation of the Receivership Entities and their operations. There is abundant evidence that supports the allegations that the Defendants were operating a fraudulent investment scheme.

### Professional Services Rendered and Costs Incurred

The Order Appointing Receiver authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court. *See* Doc. 11 ¶¶ 31, 32. The Order Appointing Receiver also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel. *See* Doc. 11 ¶ 31. Paragraph 6 of the Order Appointing Receiver provides for the Receiver to engage persons "to assist the Receiver in carrying out the Receiver's duties and responsibilities, including . . . accountants . . . ." To that end, the Receiver retained PDR CPAs

("PDR") to assist with general accounting and tax services for the Receivership as well as provide accounting oversight for the operations of the Receivership entities. The Receiver filed an unopposed motion to approve the retention of PDR on April 9, 2020, which the Court granted on May 11, 2020 (Doc. 85).

The Order Appointing Receiver also specifically authorized the Receiver to retain (1) Wiand Guerra King P.A., now known as Guerra King P.A., ("GK") to provide legal services; (2) Yip Associates ("Yip") to provide forensic accounting services; (3) E-Hounds, Inc. ("E-Hounds") to provide computer forensic services; (4) RWJ Group, LLC ("RWJ") to provide asset management and investigative services; (5) Freeborn & Peters LLP ("Freeborn") to provide legal services relating to information technology; (6) Baskin PLC ("Baskin"), legal counsel in Arizona, to assist in the service of the Order Appointing Receiver and securing records and assets; and (7) Digital Acuity LLC ("Digital Acuity"), forensic investigators in Arizona, to assist in securing records.[3] *See* Doc. 11 ¶¶ 3, 16.[4] (Doc. 88). On March 10, 2021, the

---

[3]  Baskin PLC (formerly Baskin Richards PLC), RWJ, and Digital Acuity are no longer providing services to the Receivership.

[4]  On June 26, 2020, the Receiver filed a motion for leave to retain Johnson Pope Bokor Ruppel & Burns, LLP ("Johnson Pope") on a contingency fee basis to investigate and pursue claims against law firms that provided services to EquiAlt, LLC or another Receivership Entity (Doc. 121), which the Court granted on July 1, 2020 (Doc. 127). In addition to agreeing to work on a contingency fee basis as outlined in the motion to retain Johnson Pope, the firm has also agreed to advance costs subject to reimbursement from any recovery with the exception of costs associated with E-Hounds and Yip Associates. Any costs

Receiver filed a motion for leave to retain Johnson, Cassidy, Newlon & DeCort ("JCND") as co-counsel (Doc. 278).[5] The Court granted this motion on March 26, 2021 (Doc. 282). On June 16, 2021, the Receiver filed a motion to initiate a claims process for this Receivership (Doc. 335). As part of that motion, the Receiver sought the Court's approval of the retention of Omni Agent Solutions ("Omni") as claims administrator to assist with the logistical aspects of the claims process. The Court granted this motion on July 8, 2021 (Doc. 347). All of the foregoing and PDR are collectively, the "Professionals."

As described above and more fully in the Quarterly Status Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, analyze investor information for the claims process and litigation, and administer the claims process. The Receivership is also selling certain assets and properties and preserving

---

incurred by Yip Associates and E-Hounds in connection with Johnson Pope's investigation and any litigation will be included in the invoices for these two professionals in the Receiver's fee applications. As with any contingency fee arrangement, Johnson Pope is only entitled to payment if it procures a successful resolution of the Receiver's potential claims.

[5]  Katherine Donlon, formerly of Guerra King, has been acting as lead counsel for the Receiver for this matter. Ms. Donlon left Guerra King and joined Johnson Cassidy, a litigation firm with extensive experience in federal court practice. Other professionals at Guerra King who have also been providing legal services to the Receiver for this matter have remained at Guerra King. Given Ms. Donlon's knowledge regarding this matter, the Receiver determined that it is in the best interests of the Receivership and the defrauded investors that both Ms. Donlon and other professionals at her new firm and the professionals at Guerra King continue to provide legal services to the Receiver. The Receiver does not anticipate that there will be duplication of services provided by the two firms.

those proceeds for the benefit of the victim investors. While the Receiver and his professionals are investigating and locating and preserving assets for the benefit of defrauded investors, they are also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 250 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers. The services provided by the Receiver and his professionals are for the benefit of aggrieved investors, creditors, and other interested parties.

## I.   <u>The Receiver.</u>

The Receiver requests the Court award him fees for the professional services rendered from October 1, 2021 through December 31, 2021, in the amount of $74,545.50. The standard hourly rate the Receiver charges clients in private litigation is $500. However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to $360, representing nearly a thirty percent discount off the standard hourly rate which he charges clients in comparable matters.  This rate was set forth in the Receiver's submission to the SEC.  *See* Doc. 6, Ex. 1.

The Receiver commenced services immediately upon his appointment. The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of

each "business enterprise or litigation matter" for which outside professionals have been employed. The Billing Instructions identify each such business enterprise or litigation matter as a separate "project." Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories.[6] In addition to the work of the Receivership, the Receiver created two projects related to clawback litigation commenced on February 13, 2021.

### A.    The Receivership.

For the time covered by this motion, the work of the Receiver, GK, and JCND focused on liquidating assets for the benefit of the Receivership, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and administering the claims process. These activities of the Receiver are set forth in detail in

---

[6] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure; and (6) Employee Benefits/Pensions, which is defined as review issues such as severance, retention, 401K coverage and continuance of pension plan.  The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate.  In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

the Quarterly Status Report. (Doc. 490). A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as <u>Exhibit 2</u>. The Receiver's time and fees for services rendered for each Activity Category from October 1, 2021 through December 31, 2021, are as follows:

**<u>Receivership</u>**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 113.30 | $40,788.00 |
| Asset Analysis and Recovery | 20.00 | $7,200.00 |
| Business Operations | 36.50 | $13,140.00 |
| Case Administration | 2.00 | $720.00 |
| Claims Administration | 5.80 | $2,088.00 |
| **TOTAL** | **177.60** | **$63,936.00** |

The Receiver also utilized paralegal services by his paraprofessional, Edwina Tate. During the time covered by this Application, Ms. Tate spent 12.3 hours assisting the Receiver with the disposition of Receivership assets. The Receiver requests the Court award him fees for the professional services rendered by Ms. Tate from October 1, 2021 through December 31, 2021, in the amount of $1,537.50. A copy of the statement summarizing Ms. Tate's services rendered for the Receivership is attached as <u>Exhibit 3</u>.

## B.     Discrete Projects.

In conjunction with the Receivership, the following two discrete projects have been formally commenced by the Receiver.

### 1.     Recovery of False Profits from Investors.

This is a project involving the Receiver's efforts to recover false profits from investors whose purported accounts received monies in an amount that exceeded their investments. (*See also* Doc. 490 at 20-21.) These purported profits were false because they were not based on any investment gain, but rather were fruits of a Ponzi scheme that consisted of funds of new and existing investors. The Receiver engaged in a pre-suit resolution process with investors who received such false profits. The pre-suit resolution process was fruitful. However, many investors did not take advantage of the opportunity afforded by this process. On February 13, 2021, the Receiver filed a clawback complaint against 124 EquiAlt investors who received $2,729,829 in false profits combined. A copy of the statement summarizing the Receiver's services rendered for this project from October 1, 2021 through December 31, 2021 is attached as Exhibit 4. The Receiver's time and fees for services rendered for each Activity Category are as follows:

**Recovery from Investors**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 12.50 | $4,500.00 |
| **TOTAL** | **12.50** | **$4,500.00** |

### 2.   Clawback Litigation Against Non-Investors.

This is a project involving the Receiver's clawback litigation against former principals and employees of EquiAlt and sales agents who received commissions for the sale of EquiAlt debentures. (*See also* Doc. 490 at 21-22.) On February 13, 2021, the Receiver filed a clawback complaint against 20 sales agents and their corresponding 17 corporate entities for the recovery of commissions paid for the sale of EquiAlt debentures in the total amount of $18,934,950. A copy of the statement summarizing the Receiver's services rendered for this project from October 1, 2021 through December 31, 2021 is attached as Exhibit 5.  The Receiver's time and fees for services rendered for each Activity Category are as follows:

**Clawback Litigation Against Non-Investors**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 12.70 | $4,572.00 |
| **TOTAL** | **12.70** | **$4,572.00** |

## II.    **Guerra King P.A.**

The Receiver requests the Court award GK fees for professional services rendered and costs incurred from October 1, 2021 through December 31, 2021, in the amounts of $81,708.00 and $2,291.46, respectively.  As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, GK's attorneys and paralegals have agreed to reduce their standard rates as provided in the fee schedule attached as Exhibit 6. As shown in the fee schedule, GK agreed to limit its partner rates, which typically range from $315 to $475, to $350 per hour and its associate rates, which range from $235 to $290, to $240 per hour. Ex. 5. GK began providing services immediately upon the appointment of the Receiver. The activities of GK for the time covered by this Application are set forth in the Quarterly Status Report. *See* Doc. 490. GK has billed time for these activities in accordance with the Billing Instructions.

### A.    **The Receivership.**

As discussed above, the work of the Receiver and GK focused on, liquidating assets for the benefit of the Receivership, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and administering the claims process. A copy of the statement summarizing the services rendered

and costs incurred by GK from October 1, 2021 through December 31, 2021, is attached as <u>Exhibit 7</u>. GK's time and fees for services rendered on this matter for each Activity Category are as follows:

**Receivership**
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 203.50 | $37,783.50 |
| Asset Analysis and Recovery | 33.10 | $6,789.00 |
| Business Operations | 43.70 | $6,267.00 |
| Case Administration | 14.80 | $2,040.00 |
| Claims Administration | 171.80 | $28,159.50 |
| **TOTAL** | **466.90** | **$81,039.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Maya Lockwood (MML) | Of Counsel | 21 | 45.70 | $240.00 | $10,968.00 |
| Max McKinley (RMM) | Associate | 5 | 125.80 | $240.00 | $30,192.00 |
| Jeffrey Rizzo (JR) | Paralegal | | 155.50 | $135.00 | $20,992.50 |
| Amanda Stephens (AS) | Paralegal | | 90.60 | $135.00 | $12,231.00 |
| Kimberly Paulson (KP) | Paralegal | | 49.30 | $135.00 | $6,655.50 |
| Fees | | | | | $81,039.00 |
| Disbursements | | | | | $2,291.46 |
| Total | | | **466.90** | | **$83,330.46** |

In addition to legal fees, GK has advanced costs of $2,291.46 as summarized below.

| Costs | Total |
|---|---|
| Online Research | $208.82 |
| Delivery Services | $62.64 |
| Web-Related | $2,020.00 |
| **Total** | **$2,291.46** |

### B.    Discrete Projects.

In conjunction with the Receivership, the following two discrete projects have been formally commenced by the Receiver.

#### 1.    Recovery of False Profits from Investors.

As discussed above in Section I.B.1, this is a project involving the Receiver's efforts to recover false profits from investors whose purported accounts received monies in an amount that exceeded their investments. (*See also* Doc. 490 at 20-21.) These purported profits were false because they were not based on any trading or investment gain, but rather were fruits of a Ponzi scheme that consisted of funds of new and existing investors. A copy of the statement summarizing the services rendered and costs incurred by GK from October 1, 2021 through December 31, 2021 for this project is attached as Exhibit 8. GK's time and fees for services rendered for each Activity Category are as follows:

## Recovery from Investors
## GK's Time and Fees for Services Rendered

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 4.10 | $669.00 |
| **TOTAL** | **4.10** | **$669.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Max McKinley (RMM) | Associate | 5 | 1.10 | $240.00 | $264.00 |
| Jeffrey Rizzo (JR) | Paralegal | | 2.00 | $135.00 | $270.00 |
| Amanda Stephens (AS) | Paralegal | | 1.00 | $135.00 | $135.00 |
| Fees | | | | | $669.00 |
| Disbursements | | | | | $.00 |
| Total | | | **4.10** | | **$669.00** |

### 2.    Clawback Litigation Against Non-Investors.

As discussed above in Section I.B.2, this is a project involving the Receiver's clawback litigation against former principals and employees of EquiAlt and sales agents who received commissions for the sale of EquiAlt debentures. (*See also* Doc. 490 at 21-22.) GK did not incur expenses or charge fees for services for this matter for the time covered by this Application.

## III.    Johnson Cassidy Newlon & DeCort.

The Receiver requests the Court award JCND fees for professional services rendered and costs incurred from October 1, 2021 through December

31, 2021, in the amounts of $60,606.00 and $4,687.67, respectively. As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JCND's attorneys and paralegals have agreed to follow the reduced rates provided in the GK fee schedule. Ex. 6. JCND began providing services on March 15, 2021. The activities of JCND for the time covered by this Application are set forth in the Quarterly Status Report. *See* Doc. 490. JCND has billed time for these activities in accordance with the Billing Instructions.

A.    **The Receivership.**

JCND assisted the Receiver with the work of investigating the fraud and related activities, liquidating assets for the benefit of the Receivership, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and initiating the claims process. A copy of the statement summarizing the services rendered and costs incurred by JCND from October 1, 2021 through December 31, 2021, is attached as Exhibit 9. JCND's time and fees for services rendered on this matter for each Activity Category are as follows:

**Receiverership**
**JCND's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 38.60 | $12,972.50 |
| Asset Analysis and Recovery | 25.80 | $9,008.50 |
| Business Operations | 4.20 | $1,470.00 |
| Case Administration | 13.60 | $4,760.00 |
| Claims Administration | 86.50 | $14,881.00 |
| **TOTAL** | **168.70** | **$43,092.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Katherine Donlon (KCD) | Partner | 26 | 94.50 | $350.00 | $33,075.00 |
| Mary Gura (MG) | Paralegal | | 74.20 | $135.00 | $10,017.00 |
| Fees | | | | | $43,092.00 |
| Disbursements | | | | | $2,009.20 |
| Total | | | **168.70** | | **$45,101.20** |

In addition to legal fees, JCND has advanced costs of $2,009.20 as summarized below.

| Costs | Total |
|---|---|
| Certified Copies | $156.50 |
| Publication Costs | $1,226.00 |
| Delivery Services | $626.70 |
| Service of Process | $.00 |
| Total | $2,009.20 |

**B.    Discrete Projects.**

In conjunction with the Receivership, the following two discrete projects have been formally commenced by the Receiver.

**1.    Recovery of False Profits from Investors.**

As discussed above, this is a project involving the Receiver's efforts to recover false profits from investors whose purported accounts received monies in an amount that exceeded their investments. (*See also* Doc. 490 at 20-21.) A copy of the statement summarizing the services rendered and costs incurred by JCND from October 1, 2021 through December 31, 2021 for this project is attached as <u>Exhibit 10</u>. JCND's time and fees for services rendered for each Activity Category are as follows:

**<u>Recovery from Investors</u>**
**JCND's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 18.30 | $6,362.00 |
| **TOTAL** | **18.30** | **$6,362.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Katherine Donlon (KCD) | Partner | 26 | 18.10 | $350.00 | $6,335.00 |
| Mary Gura (MG) | Paralegal | | 0.20 | $135.00 | $27.00 |

| | | | | |
|---|---|---|---|---|
| Fees | | | | $6,362.00 |
| Disbursements | | | | $678.47 |
| Total | | | **18.30** | **$7,040.47** |

In addition to legal fees, JCND has advanced costs of $678.47 as summarized below.

| Costs | Total |
|---|---|
| Photocopies | $.00 |
| Postage | $114.76 |
| Online Research | $.00 |
| Service of Process | $563.71 |
| **Total** | **$678.47** |

### 2.    Clawback Litigation Against Non-Investors.

As discussed above, this is a project involving the Receiver's clawback litigation against former principals and employees of EquiAlt and sales agents who received commissions for the sale of EquiAlt debentures. (*See also* Doc. 490 at 21-22.) A copy of the statement summarizing the services rendered and costs incurred by JCND from October 1, 2021 through December 31, 2021 for this project is attached as <u>Exhibit 11</u>. JCND's time and fees for services rendered for each Activity Category are as follows:

### <u>Clawback Litigation Against Non-Investors</u><br>JCND's Time and Fees for Services Rendered

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 32.60 | $11,152.00 |

| | | |
|---|---|---|
| **TOTAL** | **32.60** | **$11,152.00** |

A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Katherine Donlon (KCD) | Partner | 26 | 31.40 | $350.00 | $10,990.00 |
| Mary Gura (MG) | Paralegal | | 1.20 | $135.00 | $162.00 |
| Fees | | | | | $11,152.00 |
| Disbursements | | | | | $2,000.00 |
| Total | | | **32.60** | | **$13,152.00** |

In addition to legal fees, JCND has advanced costs of $2,000.00 as summarized below.

| Costs | Total |
|---|---|
| Mediation | $2,000.00 |
| Total | $2,000.00 |

## IV.   <u>Yip Associates.</u>

The Receiver requests the Court award Yip fees for professional services rendered and costs incurred from October 1, 2021 through December 31, 2021, in the amount of $29,461.00. Yip is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support. The firm is a leading boutique forensic accounting firm serving clients throughout the United States and abroad. Maria Yip, who founded the

firm in 2008, has 27 years of experience in public and forensic accounting. Yip has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at issue in this case. Additionally, Yip provides invaluable resources on the tracing of investor proceeds to various assets and properties. Further, Yip has substantially completed the process of gathering the investors' investments and distributions for the claims process.

Ms. Yip is a partner in her firm and bills at $495 per hour. Director Hal Levenberg and Manager Christopher Cropley continue to work diligently on this matter. Mr. Levenberg has 13 years of experience and a billing rate of $300. Mr. Cropley has 12 years of experience and a billing rate of $300. Senior Associates Nicole Duenas, Susan Tai, and Christopher Vatti also worked on this matter during this period. Their hourly rate is $245 and their years of experience are noted below. Associate Christopher Leo also assisted with this matter. Mr. Leo's hourly billing rate is $195 and he has five years of experience. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite Exhibit 12. A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Yip Associates Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Maria Yip (MMY) | Partner | 27 | 1.00 | $495.00 | $495.00 |
| Hal A. Levenberg (HAL) | Director | 13 | 41.90 | $300.00 | $12,570.00 |
| Christopher M. Cropley (CMC) | Manager | 12 | 16.50 | $300.00 | $4,950.00 |
| Nicole E. Duenas (NED) | Sr. Assoc. | 9 | 29.70 | $245.00 | $7,276.50 |
| Susan Tai (SYT) | Sr. Assoc. | 7 | 4.30 | $245.00 | $1,053.50 |
| Christopher Vatti (CV) | Sr. Assoc. | 5 | 4.60 | $245.00 | $1,127.00 |
| Christopher F. Leo (CFL) | Assoc. | 4 | 10.20 | $195.00 | $1,989.00 |
| | | | | | |
| Fees | | | | | $29,461.00 |
| Disbursements | | | | | $0.00 |
| Total | | | **108.20** | | **$29,461.00** |

During this time period, Yip aided the Receiver with information related to certain investors for purposes of the claims process. Their work in this regard will continue as the Receiver and his team review the submitted claims. Additionally, Yip aided in analyzing transactions related to certain sales agents related to the separate clawback litigation against the sales agents. For the Court's convenience, below is a summary of the work provided by Yip during this billing period:

**4th Quarter 2021 – Summary of Work Completed**

- Continued to assist the Receiver and his counsel with the requisite claims analysis including but not limited to:

24

- o Analyzing additional claim discrepancies raised by multiple investors;

- o Assisting with analyzing claims registered on the Receiver's website and comparison of that information to EquiAlt records; and

- o Tracing of investor deposits and disbursements for multiple investors including investors with several investments.

- Researched investments made by sales agents and how investments were recorded in EquiAlt records.

- Researched and investigated payments made to sales agents for commissions and how those payments were recorded in EquiAlt records.

## V.   PDR CPAs.

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from October 1, 2021 through December 31, 2021, in the amount of $13,126.52. PDR is an accounting firm that specializes in tax matters and has extensive experience with the tax treatment of settlement funds. PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing. The Court approved hourly billing rates for PDR's professionals (Doc. 85). Later, at the request of the Court, the Receiver provided an estimate of anticipated monthly fees for PDR's services – $15,000 for each of the first three months and $6,000 per month thereafter. As shown by the statements attached as composite <u>Exhibit 13</u>, the fees sought for each month during this

period are below the limitation. A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**PDR's Time and Fees for Services Rendered**

| Professional | Position | Hours | Rate | Total |
|---|---|---:|---:|---:|
| William E. Price (WEP) | Partner | 2.25 | $320.00 | $720.00 |
| Gail Heinold (GAH) | Senior | 7.50 | $155.00 | $1,162.50 |
| Sharon O'Brien (SAO) | Staff | 78.25 | $125.00 | $9,781.25 |
| Stephany Henry (SH) | Staff | 1.50 | $60.00 | $90.00 |
| Fees | | | | $11,753.75 |
| Disbursements | | | | $1,372.77 |
| Total | | **89.50** | | **$13,126.52** |

## VI.   E-Hounds, Inc.

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from October 1, 2021 through December 31, 2021, in the amount of $9,811.50. E-Hounds is a computer forensics firm that assists the Receiver in securing and analyzing electronic data. E-Hounds has been instrumental in collecting and preserving all electronic records, including email records, GoDaddy records, and DropBox files as well as computer equipment. E-Hounds continues to update and maintain its proprietary review platform, which the Receiver's team is actively using. Additionally, during this time, they aided the Receiver with the domains that were part of the settlement with Brian Davison. They also worked to free the domain for Commerce Brewing, a Receivership asset. Copies of the statements summarizing the services rendered for the pertinent period are

26

attached as composite <u>Exhibit 14</u>. A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**E-Hounds' Time and Fees for Services Rendered**

| Professional | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Robert Rohr (RTR) | Technician | 12.50 | $195.00 | $2,437.50 |
| Sean Organ (SPO) | Technician | 2.20 | $195.00 | $429.00 |
| Fees | | | | $2,866.50 |
| Monthly Platform Charges | | 6.00 | $595.00 | $3,570.00 |
| Platform Additional Users | | 27.00 | $125.00 | $3,375.00 |
| Disbursements | | | | $0.00 |
| Total | | | | **$9,811.50** |

Receivers in other cases in the Middle District have been awarded fees for computer forensic services at the same rates charged by E-Hounds. *See, e.g., SEC v. Kinetic Investment Group*, Case No. 20-cv-394-T-35SPF (motion at Doc. 73 and order approving at Doc. 101); *CFTC v. Oasis International Group Limited*, Case No. 19-cv-886-T-33SPF (motion at Doc. 203 and order approving at Doc. 207).

## VII.   <u>Freeborn & Peters LLP.</u>

The Receiver requests the Court award Freeborn fees for professional services rendered and costs incurred from October 1, 2021 through December 31, 2021, in the amount of $379.50. The Court specifically appointed attorney Robert Stines of Freeborn & Peters LLP to aid the Receiver with technology-related issues that would necessarily arise with the Receivership. Mr. Stines

27

has been practicing law for over ten years and is a certified IAPP U.S.-law privacy professional. His practice is focused on cyber law, electronic discovery, digital evidence, privacy and data security. He provides counsel and assistance to the Receiver related to EquiAlt's websites, investor portals, internet and email accounts, and encrypted data on servers and laptops. This time period, Mr. Stines worked with E-Hounds to deal with domain issues. A copy of the statement summarizing the services rendered for the pertinent period are attached as Exhibit 15. A summary of the professionals' hours rendered during the time covered by this Application is set forth below.

**Freeborn's Time and Fees for Services Rendered**

| Professional | Position | Yrs Exp. | Hours | Rate | Total |
|---|---|---|---|---|---|
| Robert Stines | Partner | 10 | 1.10 | $345.00 | $379.50 |
| Fees | | | | | $379.50 |
| Disbursements | | | | | $0.00 |
| Total | | | **1.10** | | **$379.50** |

## VIII. Omni Agent Solutions.

The Receiver requests the Court award Omni fees for professional services rendered and costs incurred from October 1, 2021 through December 31, 2021, in the amount of $117.718.32. Omni is an information management company that provides administrative services and technology solutions to simplify claims administration. The Receiver retained Omni to assist with the logistical aspects of the claims process, including mailing, determining

more accurate addresses if any mail is returned, addressing clerical deficiencies, assisting with data entry of information on returned Proof of Claim Forms, and processing eventual distributions. Omni is also providing the Receivership with an online platform for claimants to submit claims electronically or upload their claims. Omni has been providing these types of services to receivers and bankruptcy trustees for many years and has been approved for these services in courts throughout the county.

The Receiver sought the Court's approval of Omni's retention in the motion to initiate the claims process (Doc. 335). Material related to Omni's background and the retention agreement, which included Omni's billing rates and costs, was submitted to the Court with this motion. *See* Doc. 335, Exhibits 4 (background information) and 5 (retention agreement). In its July 8, 2021 Order, the Court specifically authorized the Receiver to retain Omni as set forth in Exhibit 5 to the motion. (Doc. 347). Omni began providing services to the Receivership on June 1, 2021 and has billed in accordance with the approved rates. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as Exhibit 16. A summary of the professional's hours rendered during the time covered by this Application is attached as Exhibit 17.

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984)  ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 11 ¶ 16. The determination of fees to be awarded is largely within the discretion of the trial court. *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944). In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership.  *See Elliot*, 953 F.2d at 1577.

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is in part based on the nature and extent of the services

rendered and the value of those services. *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). Additionally, the Court should consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a case involving an award of attorneys' fees under federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Based on the information provided herein as well as the Receiver's Eighth Quarterly Status Report, the Receiver believes that the Court when considering these factors and the work accomplished during this quarter of the Receivership will determine that the Receiver's motion for fees is reasonable and should be granted.

A receiver and the team he or she assembles are entitled to reasonable compensation and courts have looked at several factors in determining reasonableness: (1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership. *SEC v. W.L. Moody & Co*, 374 F. Supp. 465, 480-484 (S.D. Tex. 1974). In this case, the Receiver has continued his duties, investigating, locating, preserving and/or liquidating assets for the benefit of defrauded investors while also continuing to operate the Receivership Entities. This case involves over 1100 investors and over $170 million in investments. The Receiver is responsible for the active management of over 300 properties, the assessment of pending construction and maintenance projects, as well as supervising employees and property managers.

Finally, the Receiver has sought to keep the EquiAlt investors up to date regarding the Court's progress through the Receivership website, allowing investors to register for information related to this matter. The Receiver and designated paralegals at GK and JCND also field telephone calls from investors and sales agents regarding the allegations in this case, the underlying investments, and the claims process.

32

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal receiverships, securities, banking, and finance. Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver, GK, and JCND have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida and have been found reasonable by this Court in granting the Receiver's previous Applications for Fees. This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties. The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the SEC investigated and filed the initial pleadings in this case, as directed by the Order Appointing Receiver (*see, e.g.,* Doc. 11 ¶¶ 2, 4), the Receiver is involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to locate and gather investors' money, the determination of investor and other creditor claims, and any ultimate payment of these claims. While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion. *S.E.C. v. Byers,* 590 F. Supp. 2d 637 (S.D.N.Y. 2008) (quoting *S.E.C. v. Fifth Ave. Coach Lines, Inc.,* 364 F.Supp. 1220, 1222 (S.D.N.Y.1973) ("[I]n a securities receivership, '[o]pposition or acquiescence by the SEC to the fee application will be given great weight.'").

## CONCLUSION

Under the Order Appointing Receiver, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations. The Order Appointing Receiver further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their

attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Burton W. Wiand, Receiver | $74,545.50 |
| Guerra King P.A. | $83,999.46 |
| Johnson, Cassidy, Newlon & DeCort | $65,293.67 |
| Yip Associates | $29,461.00 |
| PDR CPAs | $13,126.52 |
| E-Hounds, Inc. | $9,811.50 |
| Freeborn & Peters LLP | $379.50 |
| Omni Agent Solutions | $117,718.32 |

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel for the Receiver has conferred with counsel for the SEC and Mr. Rybicki. The SEC does not object to the relief sought and Mr. Rybicki takes no position.

## RECEIVER'S CERTIFICATION

The Receiver has reviewed this Eighth Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Application**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Securities and Exchange Commission.

All fees contained in the Application are based on the rates listed in the fee schedule, attached as Exhibit 6. Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested

36

reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor. The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate. With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/Burton W. Wiand**
Burton W. Wiand, as Receiver

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 15, 2022, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court through the CM/ECF system, which served counsel of record.

**/s/ Katherine C. Donlon**
Katherine C. Donlon, FBN 0066941
kdonlon@jclaw.com
JOHNSON, CASSIDY, NEWLON &
DECORT P.A.
2802 N. Howard Avenue
Tampa, FL 33607
Tel: (813) 291-3300
Fax: (813) 324-4629

and

Jared J. Perez, FBN 0085192
jperez@guerraking.com
R. Max McKinley, FBN 119556
mmckinley@guerraking.com
GUERRA KING P.A.
The Towers at Westshore
1408 N. Westshore Blvd.
Tampa, FL 33607
Tel: (813) 347-5100
Fax: (813) 347-5198

*Attorneys for Receiver Burton W. Wiand*