UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                                                Case No. 8:20-cv-325-MSS-AEP

BRIAN DAVISON, *et al.*,

        Defendants.
_____/

## **REPORT AND RECOMMENDATION**

       This cause comes before the Court upon the Receiver's Eighth Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (Doc. 510).  By the motion, the Receiver seeks reimbursement of fees and costs to the Receiver and the professionals he retained for use in this matter for the period from October 1, 2021 through December 31, 2021.  The Securities and Exchange Commission ("SEC") does not oppose the request, and Defendant Barry M. Rybicki ("Rybicki") takes no position.[1]  For the following reasons, it is recommended that the Receiver's motion (Doc. 510) be granted.

### I.      Background

       The SEC brought this action against Individual Defendants Brian Davison ("Davison") and Rybicki and Corporate Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP LLC (collectively, "Corporate Defendants") for violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C.

_____

[1] Since the filing of the motion, judgment has been entered against Rybicki in this action (Doc. 528).

§§ 77e(a) and 77e(c); Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 regarding the alleged operation of a nationwide Ponzi scheme raising more than $170 million from 1,100 investors through fraudulent unregistered securities offerings (Doc. 1).  The SEC further alleged that Relief Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3d Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC, Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; and TB Oldest House Est. 1842, LLC (collectively, "Relief Defendants") all received proceeds of the fraud without any legitimate entitlement to the money.  Upon consideration of the Complaint (Doc. 1); the SEC's *ex parte* motion for temporary restraining order, asset freeze, and other injunctive relief (Doc. 4); and the SEC's *ex parte* motion to appoint a receiver (Doc. 6), the District Judge granted the request for a temporary restraining order, asset freeze, and other injunctive relief and appointed Burton W. Wiand ("Wiand" or the "Receiver") as the Receiver in this action over the Corporate Defendants and the Relief Defendants and each of their subsidiaries, successors, and assigns (Docs. 10 & 11).[2]

In doing so, the District Judge outlined the Receiver's duties and the basis for compensation for the performance of such duties, as follows:

> **NOW, THEREFORE, IT IS ORDERED AND ADJUDGED** that Burton Wiand, Esq. is hereby appointed the Receiver over the Corporate

---

[2]   Subsequently, the District Judge granted the Receiver's motion seeking to expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, LP ("QOZ"); EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc. ("REIT"); EquiAlt Holdings LLC (sponsor of the QOZ and REIT); EquiAlt Property Management LLC (property manager of the QOZ and REIT); and EquiAlt Capital Advisors, LLC (manager of day-to-day operations for the QOZ and REIT) (Doc. 184).  EquiAlt Fund I, LLC was also later added (Doc. 284).

Defendants and Relief Defendants, each of their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1. Take immediate possession of all property, assets and estates of every kind of the Corporate Defendants and Relief Defendants whatsoever and wheresoever located, including but not limited to all offices maintained by the Corporate Defendants and Relief Defendants, rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Corporate Defendants and Relief Defendants, wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2. Investigate the manner in which the affairs of the Corporate Defendants and Relief Defendants were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Corporate Defendants and Relief Defendants and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, LLC, and EA SIP, LLC, their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, LLC, and EA SIP, LLC; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

3. Initially recover, control and possess liquid assets, known real estate, LLC assets and high-end personal assets purchased with funds traceable from investor proceeds, and trusts if the Receiver deems appropriate. The Receiver is specifically authorized to retain for the purposes of the receivership, forensic accountants (Yip and Associates), information technology consultants and counsel specializing in information technology research (Adam Sharp, E-Hounds, Inc. and Robert Stines of Freeborn & Peters LLP), RWJ Group, LLC, and investigators, and counsel in

Phoenix, Arizona to assist in the service of the Order and securing of records and assets.  The Receiver shall advise and seek the consent of the Court with respect to the institution of claims relating to vendors, professionals, investors, or financial institutions, or other litigation of a complex and significant nature that may involve commitment of significant assets or the incurrence of significant costs or expenses to the receivership;

4.  Present to this Court a report reflecting the existence and value of the assets of the Corporate Defendants and Relief Defendants and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Corporate Defendants and Relief Defendants;

5.  Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of the Corporate Defendants and Relief Defendants and exercising the power granted by this Order, subject to prior approval by this Court;

6.  Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshal's Service, accountants, or a private security firm;

7.  Defend, compromise or settle legal actions, including the instant proceeding, in which the Corporate Defendants, the Relief Defendants, or the Receiver are a party, commenced either prior to or subsequent to this Order, without authorization of this Court up to a total amount of $50,000 for each claim; except, however, in actions where the Corporate Defendants or Relief Defendants are nominal parties, where the action does not effect a claim against or adversely affect the assets of Corporate Defendants or Relief Defendants, the Receiver may file appropriate pleadings at the Receiver's discretion.  The Receiver may waive any attorney-client or other privilege held by the Corporate Defendants or Relief Defendants;

8.  Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of the Corporate Defendants or Relief Defendants and, upon[] order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

9.      Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary, and advisable in discharging the Receiver's duties;

10.     Have access to and review all mail of Corporate Defendants or Relief Defendants (except for mail that appears to be purely personal or in any respect attorney-client privileged communication to or from the individual Defendants) received at any office or address of Corporate Defendants or Relief Defendants.

**IT IS FURTHER ORDERED AND ADJUDGED** that, in connection with the appointment of the Receiver provided for above:

11.     The Corporate Defendants or Relief Defendants and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records or other property of the Defendants and Relief Defendants shall deliver forthwith upon demand such property, money, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Corporate Defendants and Relief Defendants;

12.     The Receiver is authorized to open a bank account or accounts in the name of the Receivership to carry out the business of the Receivership and the Receivership Estate;

\*\*\*

16.     The Receiver, and any counsel whom the Receiver may select, are entitled to compensation from the assets now held by or in the possession or control of or which may be received by the Corporate Defendants and Relief Defendants; said amounts or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court.  The Receiver is specifically authorized to retain Wiand Guerra King P.A. as attorneys for the Receiver;[3]

---

[3]  The firm name changed from Wiand Guerra King P.A. to Guerra King P.A. ("GK") since entry of the Order Appointing the Receiver.  Any reference herein to Wiand Guerra King P.A. therefore applies to GK.

***

28.   Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates;

29.   The Quarterly Status Report shall contain the following:

A.   A summary of the operations of the Receiver;

B.   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.   A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.   A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.   A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and (ii) collecting such judgments);

F.   The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

G.   The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

30.   Subject to Paragraphs 31 – 37 immediately below, the Receiver need not obtain Court approval prior to the disbursement of

6

Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes;

31.     Subject to Paragraph 32 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  Except as otherwise provided herein, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement;

32.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court;

33.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff;

34.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership;

35.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership;

36.     Each Quarterly Fee Application shall:

         A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

7

B. Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

(Doc. 11, ¶¶1-12, 16, 28-36).   In accordance with directive in the Order Appointing the Receiver, the Receiver now submits his Eighth Quarterly Fee Application, seeking compensation for the fees and costs incurred for the performance of his duties in this action as well as the fees and costs incurred by the Retained Personnel he hired to assist in the performance of such duties (Doc. 510).   Specifically, the Receiver seeks an award of all fees and costs incurred from October 1, 2021 through December 31, 2021 in the following amounts: (1) Receiver, in the amount of $74,545.50; (2) GK, in the amount of $83,999.46; (3) Freeborn & Peters LLP ("Freeborn"), in the amount of $379.50; (4) Johnson, Cassidy, Newlon & DeCort ("JCND"), in the amount of $65,293.67; (5) Yip Associates ("Yip"), in the amount of $29,461; (6) PDR CPAs ("PDR"), in the amount of $13,126.52; (7) E-Hounds, Inc. ("E-Hounds"), in the amount of $9,811.50; and (8) Omni Agent Solutions ("Omni") in the amount of $117,718.32 (Doc. 510).   As noted, the SEC does not oppose the requested relief, and Rybicki takes no position (Doc. 510, at 35).

## II. Discussion

When determining relief in an equity receivership, district courts maintain broad powers and wide discretion. *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). Where a receiver reasonably and diligently discharges his or her duties, the receiver is entitled to compensation. *Id.* at 1577 (citation omitted); *see Stuart v. Boulware*, 133 U.S. 78, 82 (1890) ("Nor is there any doubt of the power of courts of equity to fix the compensation of their own

receivers.  That power results necessarily from the relation which the receiver sustains to the court; and, in the absence of any legislation regulating the receiver's salary or compensation, the matter is left entirely to the determination of the court from which he derives his appointment.").  In determining whether a receiver merits a fee, the court must consider the circumstances surrounding the receivership, with the results obtained always relevant to the analysis.  *Elliot*, 953 F.2d at 1577 (citation omitted); *see F.T.C. v. Worldwide Info Servs., Inc.*, No. 6:14-cv-8-Orl-41DAB, 2015 WL 144389, at *4 (M.D. Fla. Jan. 12, 2015) (citation omitted) (noting that courts may consider several factors in determining the reasonableness of a fee award to a receiver, including "(1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership.").  In considering a fee award to a receiver, "the prosecuting agency's acquiescence to the requested fees militates strongly in favor of approving them."  *F.T.C. v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *4 (M.D. Fla. Dec. 6, 2013) (citations omitted).

Furthermore, once appointed, the receiver operates as an officer of the court and remains subject to the court's directions and orders, and, while in the discharge of his or her official duties, the receiver may obtain counsel for himself or herself, and counsel fees fall within the just allowances that may be made by the court.  *Stuart*, 133 U.S. at 81.  A receiver also is entitled to reimbursement for the actual and necessary expenses the receiver incurred in the performance of his or her duties, although the receiver must support a claim for such expenses with sufficient information to allow a court to determine whether the expenses constituted actual and necessary costs of preserving the receivership estate.  *Worldwide Info Servs., Inc.*, 2015 WL 144389, at *4 (citations omitted).  Receiverships are not intended to generously reward court-appointed officers, however, especially when the receivership estate fails to recover sufficient assets to

9

pay full restitution to the victims of the alleged fraud or misconduct.  *F.T.C. v. Vacation Commc'n Grp., LLC*, No. 6:13-cv-789-Orl-37DAB, 2015 WL 2127724, at *4 (M.D. Fla. May 6, 2015) (citations omitted).

When determining the reasonableness of an award of fees to a receiver and any retained professionals, courts typically begin the analysis with the lodestar method, calculating the reasonable hourly rate in the relevant market and the reasonable number of hours expended.  *Id.* at *3 (citations omitted); *see Worldwide Info Servs., Inc.*, 2015 WL 144389, at *4 n.3 ("In determining the reasonableness of professional fees, courts typically undertake a lodestar approach, which focuses on the reasonableness of the hourly rate and the reasonableness of the hours billed."); *see S.E.C. v. Kirkland*, No. 6:06-cv-183-Orl-28KRS, 2008 WL 4144424, at *4 (M.D. Fla. Sept. 5, 2008); *cf. Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983) (discussing the lodestar method); *cf. Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988) (discussing the lodestar method).  In determining the lodestar figure, a "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted).  In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists.  *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation.  In submitting a fee petition, counsel must exercise proper billing judgment and thus exclude any hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434; *Norman,* 836 F.2d at 1301.  "Both a receiver and his counsel must exercise proper billing judgment in seeking fees from the receivership estate, and

should limit their work to that which is reasonable and necessary irrespective of the amount of money in the receivership estate." *Kirkland*, 2008 WL 4144424, at *5 (citation omitted).  As to claims for professional services, the receiver must also provide evidence indicating the hourly rate is reasonable and commensurate with rates paid for similar services and that the time expended by such professionals was reasonable.  *Id.* at *4.  Furthermore, requests for reimbursement of expenses from the receiver also must be supported by sufficient information to permit the court to determine that the expenses are actual and necessarily incurred.  *Vacation Commc'n Grp., LLC*, 2015 WL 2127724, at *3 (citation omitted).  Regardless, the Court is an expert with respect to fee applications and therefore may consider a fee award based on its own experience and knowledge concerning reasonable and proper fees and therefore may form an independent judgment as to value.  *See Norman,* 836 F.2d at 1303 (citations omitted).

As with the prior requests, upon review of the Eighth Quarterly Fee Application, including the accompanying fee and costs records (Doc. 510), the undersigned concludes that the Receiver continued to properly perform his duties and employ professionals to assist in carrying out those duties.  Further, the Receiver and the Retained Personnel discharged their duties in a diligent and reasonable manner and did not incur unnecessary fees or costs. Importantly, as noted above, the SEC does not oppose the Receiver's request for fees and costs (Doc. 510, at 35).  The lack of any opposition by the SEC bears great weight in determining the reasonableness of the fees and costs to be awarded by the Court.  *See S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (citation omitted) (stating that, in a securities receivership, the SEC's opposition or acquiescence to the fee application will be afforded great weight); *see Direct Benefits Grp., LLC*, 2013 WL 6408379, at *4.

### A.      Receiver

With respect to the Receiver's fees, the Receiver indicates that he reduced his standard

hourly rate from $500 to $360 and seeks a total of $74,545.50 in fees, including $73,008 for 177.6 hours expended on Receivership activities, 12.5 hours expended on recovery of false profits from investors, and 12.7 hours expended on clawback litigation against non-investors by the Receiver from October 1, 2021 through December 31, 2021, as well as an award of $1,537.50 for 12.3 hours of paralegal work[4] at a rate of $125 per hour (Doc. 510, at 10-13 & Ex. 2-6).  Based on the undersigned's own experience and the rates typically awarded to court-appointed receivers in the Middle District of Florida, the requested hourly rate of $360 is reasonable.  *See, e.g., F.T.C. v. First Choice Horizon LLC*, Case No. 6:19-cv-1028-Orl-40LRH, 2020 WL 1431526, at *2-3 (M.D. Fla. Jan. 15, 2020), *report and recommendation adopted,* 2020 WL 1431601 (M.D. Fla. Jan. 31, 2020) (considering several factors in concluding that an hourly rate of $350 was reasonable for a court-appointed receiver in the Middle District of Florida); *F.T.C. v. MOBE Ltd.*, Case No. 6:18-cv-862-Orl-37DCI, 2018 WL 4782327, at *3 (M.D. Fla. Sept. 17, 2018), *report and recommendation adopted,* 2018 WL 4774960 (M.D. Fla. Oct. 3, 2018) (finding a rate of $330 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida); *F.T.C. v. Life Mgmt. Serv. of Orange Cnty., LLC*, Case No. 6:16-cv-982-Orl-41TBS, 2017 WL 4861467, at *3 (M.D. Fla. Aug. 9, 2017), *report and recommendation adopted,* 2017 WL 4877460 (M.D. Fla. Oct. 30, 2017) (finding a rate of $325 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida and finding reasonable 129.2 hours expended by such receiver).

---

[4] Courts only reimburse work of paralegals and law clerks when such individuals perform work traditionally done by attorneys. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (concluding that a district court properly reimbursed the time spent by paralegals and law clerks where the work was that normally done by an attorney).  In this instance, review of the time records for the paralegal (Doc. 510, Ex. 3) indicates that the work performed by the paralegal in this matter constituted legal work normally performed by an attorney rather than clerical work. Accordingly, the undersigned recommends awarding the fees requested for work performed by the paralegal, as both the requested rate and the time expended on such work are reasonable.

Furthermore, the hours expended by the Receiver during the period from October 1, 2021 through December 31, 2021 are reasonable and do not appear excessive, redundant, or unnecessary at this juncture.

As detailed more fully in the Receiver's Eighth Quarterly Status Report, the Receivership involves more than 1,100 investors, $170 million in investments, and more than 250 properties (Doc. 490). During the relevant period, the Receiver and the Retained Personnel participated in negotiations with Rybicki's Counsel regarding the turnover of assets as part of the settlement with the SEC; closed on private sales for five of the six properties that remained unsold after the Receiver's first online auction, resulting in net proceeds of $950,630; sought and received Court approval for a second online auction for the sale of 20 real estate properties owned by the Receivership Estate (Doc. 457), which resulted in the sale of 15 properties for $4,888,012 in gross proceeds; sold luxury watches and jewelry through Sotheby's auctions, resulting in approximately $13 million in proceeds to the Receivership Estate; closed on Davison's New York apartment (Doc. 429), Davison's Davis Islands house and property (Doc. 443), and the office location for EquiAlt in Tampa, resulting in net proceeds of $7,181,684; closed on the sale of Blue Waters, a 13-unit multiplex in Treasure Island, Florida, resulting in net proceeds of $4,144,700; obtained defaults against an additional defendant in a related case, representing $9,690 in false profits; received Court approval for the settlement of some investor clawback claims, resulting in settlements in the amount of $176,968.86 (Docs. 427, 433, 464); continued negotiating with sales agent defendants in a related case and reached settlements with two of them and their related entities; worked with Omni between the mailing of 3,370 proof-of-claim packets and the claim bar date of December 22, 2021; continued efforts in conjunction with class action counsel toward resolution of lawsuits against Paul Wassgren, Fox Rothschild, and DLA Piper; negotiated contracts for transactions that were still pending inspections and

Court approval at the time of the motion, including bungalows in Treasure Island, multiplex properties on Davis Islands, and a mobile home park; paused renovations of the Jasmine Way property in Clearwater to enter into a sales contract on the home; continued working with partners on the operations of Commerce Brewing and related entities; and continued streamlining Receivership administration and management of EquiAlt operations, including the maintenance and leasing of more than 250 real estate properties (Doc. 490, at 1-23; Doc. 510, at 10-13 & Ex. 2-5).  As a result, the 202.8 hours expended by the Receiver and the 12.3 hours expended by the paralegal from October 1, 2021 through December 31, 2021 are fair and reasonable considering the activities performed and the results achieved (*see* Doc. 490, at 1-23; Doc. 510, at 10-13 & Ex. 2-5).  Accordingly, the Receiver should be awarded fees in the amount of $74,545.50.

**B.    GK**

With respect to legal services, the Receiver retained GK, which the District Judge specifically authorized in the Order Appointing the Receiver (Doc. 11, ¶16).  The Receiver now seeks $81,708 in fees and $2,291.46 in costs for services provided by GK.  The attorney fee schedule provided by GK includes the following proposed rates for the Receivership: $350 for members/partners; $240 for associates; and $135 for paralegals (Doc. 510, Ex. 6).  The fee records indicate that the fees requested include the following:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Maya Lockwood | Of Counsel | 21 years | 45.7 | $240 | $10,968 |
| R. Max McKinley | Associate | 5 years | 126.9 | $240 | $30,456 |
| Jeffrey Rizzo | Paralegal | | 157.5 | $135 | $21,262.50 |
| Amanda Stephens | Paralegal | | 91.6 | $135 | $12,366 |

| Kimberly Paulson | Paralegal | 49.3 | $135 | $6,655.50 |
| | | | **TOTAL:** | **$81,708** |

(Doc. 510, at 14-17 & Ex. 7-8).  These numbers reflect work performed on Receivership matters and for the discrete projects involving the recovery of false profits from investors and the clawback litigation against non-investors, although GK did not incur expenses or charge fees for services as to the latter during this applicable period.

Upon review, all the requested hourly rates are reasonable.  *See F.T.C. v. Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5 (M.D. Fla. Oct. 3, 2017), *report and recommendation adopted*, 2017 WL 4700396 (M.D. Fla. Oct. 19, 2017) (finding that an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty-one years' experience reasonable); *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable).  Furthermore, the 471 hours expended by counsel and the paralegals do not appear unnecessary, excessive, or redundant but rather reflect a reasonable amount of time spent on this matter, including the liquidation of assets for the benefit of the Receivership, analysis of investor information for the claims process and litigation, and administration of the claims process.  Given that both the hourly rate and the hours expended

are reasonable, attorneys' fees should be awarded for work performed by GK. Accordingly, GK should be awarded $81,708 in fees.

GK also seeks reimbursement in the amount of $2,291.46 for costs, encompassing costs for printing, online research, delivery services, and web-related fees (Doc. 510, at 14-17 & Ex. 7). The costs appear to have been necessarily incurred for the Receiver and the Retained Personnel to carry out their duties. Such costs are thus fair and reasonable and should be awarded. Given the foregoing, GK should be awarded costs in the amount of $2,291.46. In total, therefore, fees and costs should be awarded in the amount of $83,999.46 for work performed by GK, which represents $81,708 in fees and $2,291.46 in costs.

### C.   Freeborn

The Receiver also retained Attorney Robert A. Stines of Freeborn for legal services regarding information technology, data collection, and potential privacy and confidentiality issues, which the District Judge specifically authorized in the Order Appointing the Receiver (Doc. 11, ¶3). As the Receiver indicates, Freeborn works with E-Hounds to segregate and review potentially privileged data prior to allowing access to the Receiver's attorneys and provides counsel and assistance to the Receiver related to websites, investor portals, internet and email accounts, and encrypted data on servers and laptops. The Receiver seeks $379.50 in fees for services rendered by Freeborn as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Robert Stines | Partner | 10 years | 1.1 | $345 | $379.50 |
| | | | | **TOTAL:** | **$379.50** |

(Doc. 510, at 27-28 & Ex. 15). Upon review of the billing records, the hours expended are fair and reasonable for the services performed and present no redundancies or unnecessary time spent on this matter. The rate charged for Stines likewise is reasonable for the Middle District

of Florida. *See Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted*, 2017 WL 4700396 (finding that an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty-one years' experience reasonable); *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable). Accordingly, fees should be awarded in the amount of $379.50 for work performed by Freeborn.

### D.   JCND

The Receiver retained the law firm of JCND to assist as co-counsel (Doc. 278), which the Court approved (Doc. 282).[5] As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JCND has agreed to follow the reduced rates for attorneys and paralegals provided in the GK fee schedule (Doc. 510, Ex. 6). Based on those rates, the Receiver now seeks fees for professional services rendered by JCND from October 1, 2021 through December 31, 2021 in the amount of $60,606 as follows:

---

[5] The Receiver retained JCND following the departure of Ms. Donlon, who had been acting as lead counsel for the Receiver, from GK to join JCND (Doc. 278; Doc. 361, at 8 n.6). The Receiver does not anticipate any duplication of efforts will occur given the roles of various legal professionals at GK and JCND (Doc. 278, at 3).

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 25 years | 144 | $350 | $50,400 |
| Mary Gura | Paralegal | | 75.6 | $135 | $10,206 |
| | | | | **TOTAL:** | **$60,606** |

(Doc. 510, at 17-22 & Ex. 9-11).  Upon review of the billing records and the Quarterly Status Report, the hours expended are fair and reasonable for the services performed and present no redundancies or unnecessary time spent on this matter (Doc. 490, at 1-23; Doc. 510, Ex. 9-11). Namely, during the relevant period, JCND assisted the Receiver with investigating the fraud and related activities, liquidating assets for the benefit of the Receivership, investigating and pursuing additional assets for the Receivership, and initiating the claims process.  Further, as discussed above, the rates charged are reasonable for the Middle District of Florida.  *See Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted*, 2017 WL 4700396 (finding that an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty-one years' experience reasonable); *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable).  In addition, the costs incurred in the amount of $4,687.67 for certified copies, duplication, publication costs, delivery services, postage, online research, service of process,

and mediation are reasonable and necessary.   Accordingly, JCND should be awarded $65,293.67, which includes the $60,606 in fees and $4,687.67 in costs.

### E.    Yip

With respect to the non-legal professional services obtained, the Receiver retained the services of Yip, a forensic accounting firm specializing in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support, to assist with the cash in/cash out analysis for establishing a claims process, among other things. The District Judge specifically authorized the retention of Yip in the Order Appointing the Receiver (Doc. 11, ¶3).  As detailed more fully by the Receiver, Yip "has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at issue in this case," including but not limited to the tracing of investor proceeds to various assets and properties, continuing to assist the Receiver and counsel with claims analysis, and researching investments made by and to sales agents (Doc. 510, at 23-25 & Ex. 12).  As the Receiver indicated throughout these proceedings, most of the costs associated with forensic accounting services occur on the front end of the Receivership and will not be duplicated later but rather will result in greater efficiency as the claims process and filing of clawback actions commence.

Indeed, the fees requested in the Eighth Quarterly Fee Request reflect another decrease in the total fees requested.  The Receiver now seeks an award of $29,461 in fees as follows:

| **Professional** | **Position** | **Experience** | **Hours** | **Rate** | **Fees** |
|---|---|---|---|---|---|
| Maria Yip | Partner | 27 years | 1 | $495 | $495 |
| Hal Levenberg | Director | 13 years | 41.9 | $300 | $12,570 |

| | | | | | |
|---|---|---|---|---|---|
| Christopher Cropley[6] | Director | 12 years | 16.5 | $300 | $4,950 |
| Nicole Duenas | Manager | 9 years | 29.7 | $245 | $7,276.50 |
| Susan Tai | Sr. Associate | 7 years | 4.3 | $245 | $1,053.50 |
| Christopher Vatti | Sr. Associate | 5 years | 4.6 | $245 | $1,127 |
| Christopher Leo | Associate | 4 years | 10.2 | $195 | $1,989 |
| | | | | **TOTAL:** | **$29,461** |

(Doc. 510, at 22-25 & Ex. 12). Such hourly rates are reasonable considering the experience levels of each professional and the results achieved by Yip thus far. *See F.T.C. v. Nationwide Connections, Inc.*, Case No. 06-80180-Civ-Ryskamp/Vitunac, 2009 WL 10669124, at *8-9 (S.D. Fla. Apr. 14, 2009), *report and recommendation adopted*, 2009 WL 10668438 (S.D. Fla. Apr. 24, 2009) (awarding a forensic accounting firm utilized by a court-appointed receiver fees in the amount of $32,333.50 for 143.7 hours of forensic accounting work at a blended rate of approximately $225 per hour). Moreover, the hours do not appear inflated, excessive, or unnecessary for the work performed during this period. The requested total of $29,461 in fees for Yip therefore should be awarded.

### F.   PDR

The Receiver also retained the services of PDR to assist with accounting and tax matters. The District Judge approved the retention of PDR and limited its role to internal Receivership accounting, financial reporting, tax preparation and filing, and internal accounting for EquiAlt (Doc. 85). The District Judge directed the Receiver to advise as to the maximum number of hours anticipated to be incurred by PDR, and should it become apparent that PDR's hours would

---

[6] The motion indicates that Christopher Cropley is a Manager and Nicole E. Duenas is a Senior Associate (Doc. 510, at 24), while the fee invoices indicate that Christopher Cropley is a Director and Nicole E. Duenas is a Manager (Doc. 510, Ex. 12). The undersigned therefore uses the job titles identified for those two individuals in the fee invoices rather than those identified in the motion.

exceed the anticipated maximum, the Receiver should submit a motion to that effect (Doc. 85). In approving the retention of PDR, the District Judge approved the following hourly rates for PDR employees working on this matter: $320 for partners/principals; $210 for managers; $180 for senior managers; and $125 for staff members (Doc. 85).[7] Subsequently, the Receiver submitted the anticipated maximum number of hours for PDR, indicating that a principal of PDR agreed to a maximum of $15,000 for PDR's services for each of the first three months and then a maximum of $6,000 for each month thereafter (Doc. 87, at 3).

The Receiver now seeks an award of $13,126.52 in fees and costs for accounting, auditing, consulting, and tax services provided by PDR during the relevant period (Doc. 510, at 25-26 & Ex. 13). The requested fees and costs thus fall within the anticipated $6,000 monthly maximum previously approved by the District Judge and include reasonable rates in the following amounts: $320 for Partner William Price, $155 for Senior Manager Gail Heinold, $125 for Staff Member Sharon O'Brien, and $60 for Staff Member Stephany Henry (Doc. 510, at 25-26 & Ex. 13). Further, upon review, the 89.5 hours expended on accounting and tax matters by PDR appear reasonable (Doc. 510, at 25-26 & Ex. 13). Additionally, the $1,372.77 in costs relating to QuickBooks are warranted (Doc. 510, Ex. 13). Accordingly, fees and costs should be awarded in the amount of $13,126.52 for the work performed and costs incurred by PDR.

### G.    E-Hounds

For computer forensics services to assist the Receiver in securing and analyzing electronic data, the Receiver retained E-Hounds, which the District Judge authorized in the Order Appointing the Receiver (Doc. 11, ¶3). Specifically, E-Hounds assists with the collection

---

[7] Though the District Judge approved a rate of $180 for senior managers, PDR billed the senior manager who worked on this matter at a reduced rate of $155 per hour (Doc. 510, at 26 & Ex. 13).

and preservation of electronic records, including email records, GoDaddy records, and DropBox files as well as computer equipment (Doc. 510, at 26).  During the relevant period, E-Hounds continued to update and maintain the platform, allowed the Receiver's Retained Personnel to access the platform, and assisted the Receiver with domains that were part of the settlement with Davison.  The Receiver seeks an award of $13,126.52 for services rendered and costs incurred by E-Hounds, which includes $2,866.50 in fees; $3,570 in monthly platform charges; and $3,375 for additional platform users (Doc. 510, at 26-27 & Ex. 14).  The billing records further indicate that E-Hounds charged $195 per hour for 14.7 hours of technician work. The hourly rate charged, the hours expended, and costs incurred are all reasonable for the work performed collecting and preserving electronic data.  *See, e.g., SEC v. Kinetic Investment Grp.*, Case No. 8:20-cv-394-MSS-SPF (M.D. Fla.) (Docs. 73 & 101); *CFTC v. Oasis Int'l Grp. Ltd.*, Case No. 8:19-cv-886-VMC-SPF (M.D. Fla.) (Docs. 203 & 207).  Fees and costs in the amount of $9,811.50 for work performed and services provided by E-Hounds should be awarded.

### H.     Omni

In June, the Receiver retained Omni to assist with the logistical aspects of the claims process (Doc. 335), which the Court approved (Doc. 347).  According to the Receiver, Omni is "an information management company that provides administrative services and technology solutions to simplify claims administration" (Doc. 510, at 28-29).  Omni assists with logistical components of the claims process, including mailing, determining the correct addresses for returned mail, addressing clerical deficiencies, assisting with data entry for the returned Proof of Claim Forms, and processing distributions as well as providing an online platform for claimants to submit claims electronically or upload their claims (Doc. 510, at 28-29).  The Standard Services Agreement entered into between the Receiver and Omni indicates that, except as otherwise stated therein, services rendered by Omni will be billed at rates ranging

from $135 to $205 per hour, representing a 5% discount (Doc. 335, Ex. 5), which the Court adopted in authorizing the Receiver to retain Omni (Doc. 347, at 4).

The Receiver now seeks fees and costs in the amount of $118,680 for time expended by 38 separate individuals on the claims administration process, less a discount of $5,934.01, and $4,972.33 for costs incurred, or a total of $117,718.32 (Doc. 510, at 28-29 & Ex. 16-17).  Upon review of the time records, the hours expended on case administration and the claims process do not appear excessive, redundant, or unnecessary, although Omni should endeavor to streamline its efforts and staff and to distribute tasks more efficiently, if possible, in implementing the claims administration process (Doc. 510, Ex. 16-17).[8]  Further, the fee amounts fall within the agreed-upon rates that the Court already approved.  Additionally, costs in the amount of $4,972.33, which includes costs for duplication, scanning, postage, envelopes, phone charges, PACER charges, delivery services, and labels, do not appear excessive given the nature of the claims administration process.  Accordingly, fees in the amount of $117,718.32 should be awarded to Omni.

### III.    Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1.      The Receiver's Eighth Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (Doc. 510) be GRANTED.

2.      Fees and costs be awarded in the following amounts:

        a.  The Receiver, in the amount of $74,545.50;

---

[8]  For instance, Omni used 10 claims assistants to process claims during the relevant period (Doc. 510, Ex. 17).

   b.  GK, in the amount of $83,999.46;

   c.  Freeborn, in the amount of $379.50;

   d.  JCND, in the amount of $65,293.67;

   e.  Yip, in the amount of $29,461;

   f.  PDR, in the amount of $13,126.52;

   g.  E-Hounds, in the amount of $9,811.50; and

   h.  Omni, in the amount of $117,718.32.

IT IS SO REPORTED in Tampa, Florida, on this 16th day of May, 2022.


ANTHONY E. PORCELLI
United States Magistrate Judge


## NOTICE TO PARTIES

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**


cc:   Hon. Mary S. Scriven
      Counsel of Record