UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                Case No. 8:20-cv-325-MSS-AEP

BRIAN DAVISON, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court upon the Receiver's Unopposed Ninth Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (Doc. 572). By the motion, the Receiver seeks reimbursement of fees and costs to the Receiver and the professionals he retained for use in this matter for the period from January 1, 2022 through March 31, 2022. The Securities and Exchange Commission ("SEC") does not oppose the request. For the following reasons, it is recommended that the Receiver's motion (Doc. 572) be granted.

### I.     Background

The SEC brought this action against Individual Defendants Brian Davison ("Davison") and Barry Rybicki ("Rybicki") and Corporate Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP LLC (collectively, "Corporate Defendants") for violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 regarding the alleged operation

of a nationwide Ponzi scheme raising more than $170 million from 1,100 investors through fraudulent unregistered securities offerings (Doc. 1). The SEC further alleged that Relief Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3d Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC, Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; and TB Oldest House Est. 1842, LLC (collectively, "Relief Defendants") all received proceeds of the fraud without any legitimate entitlement to the money. Upon consideration of the Complaint (Doc. 1); the SEC's *ex parte* motion for temporary restraining order, asset freeze, and other injunctive relief (Doc. 4); and the SEC's *ex parte* motion to appoint a receiver (Doc. 6), the District Judge granted the request for a temporary restraining order, asset freeze, and other injunctive relief and appointed Burton W. Wiand ("Wiand" or the "Receiver") as the Receiver in this action over the Corporate Defendants and the Relief Defendants and each of their subsidiaries, successors, and assigns (Docs. 10 & 11).[1]

In doing so, the District Judge outlined the Receiver's duties and the basis for compensation for the performance of such duties, as follows:

> **NOW, THEREFORE, IT IS ORDERED AND ADJUDGED** that Burton Wiand, Esq. is hereby appointed the Receiver over the Corporate Defendants and Relief Defendants, each of their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:
>
> 1.  Take immediate possession of all property, assets and estates of every kind of the Corporate Defendants and Relief Defendants

---

[1] Subsequently, the District Judge granted the Receiver's motion seeking to expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, LP ("QOZ"); EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc. ("REIT"); EquiAlt Holdings LLC (sponsor of the QOZ and REIT); EquiAlt Property Management LLC (property manager of the QOZ and REIT); and EquiAlt Capital Advisors, LLC (manager of day-to-day operations for the QOZ and REIT) (Doc. 184). EquiAlt Fund I, LLC was also later added (Doc. 284).

whatsoever and wheresoever located, including but not limited to all offices maintained by the Corporate Defendants and Relief Defendants, rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Corporate Defendants and Relief Defendants, wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.    Investigate the manner in which the affairs of the Corporate Defendants and Relief Defendants were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Corporate Defendants and Relief Defendants and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, LLC, and EA SIP, LLC, their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, LLC, and EA SIP, LLC; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

3.    Initially recover, control and possess liquid assets, known real estate, LLC assets and high-end personal assets purchased with funds traceable from investor proceeds, and trusts if the Receiver deems appropriate.  The Receiver is specifically authorized to retain for the purposes of the receivership, forensic accountants (Yip and Associates), information technology consultants and counsel specializing in information technology research (Adam Sharp, E-Hounds, Inc. and Robert Stines of Freeborn & Peters LLP), RWJ Group, LLC, and investigators, and counsel in Phoenix, Arizona to assist in the service of the Order and securing of records and assets.  The Receiver shall advise and seek the consent of the Court with respect to the institution of claims relating to vendors, professionals, investors, or financial institutions, or other litigation of a complex and significant nature

that may involve commitment of significant assets or the incurrence of significant costs or expenses to the receivership;

4.    Present to this Court a report reflecting the existence and value of the assets of the Corporate Defendants and Relief Defendants and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Corporate Defendants and Relief Defendants;

5.    Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of the Corporate Defendants and Relief Defendants and exercising the power granted by this Order, subject to prior approval by this Court;

6.    Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshal's Service, accountants, or a private security firm;

7.    Defend, compromise or settle legal actions, including the instant proceeding, in which the Corporate Defendants, the Relief Defendants, or the Receiver are a party, commenced either prior to or subsequent to this Order, without authorization of this Court up to a total amount of $50,000 for each claim; except, however, in actions where the Corporate Defendants or Relief Defendants are nominal parties, where the action does not effect a claim against or adversely affect the assets of Corporate Defendants or Relief Defendants, the Receiver may file appropriate pleadings at the Receiver's discretion.  The Receiver may waive any attorney-client or other privilege held by the Corporate Defendants or Relief Defendants;

8.    Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of the Corporate Defendants or Relief Defendants and, upon[] order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

9.    Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize incurrence of, such expenses and make, or authorize the making of, such agreements as may

be reasonable, necessary, and advisable in discharging the Receiver's duties;

10. Have access to and review all mail of Corporate Defendants or Relief Defendants (except for mail that appears to be purely personal or in any respect attorney-client privileged communication to or from the individual Defendants) received at any office or address of Corporate Defendants or Relief Defendants.

**IT IS FURTHER ORDERED AND ADJUDGED** that, in connection with the appointment of the Receiver provided for above:

11. The Corporate Defendants or Relief Defendants and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records or other property of the Defendants and Relief Defendants shall deliver forthwith upon demand such property, money, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Corporate Defendants and Relief Defendants;

12. The Receiver is authorized to open a bank account or accounts in the name of the Receivership to carry out the business of the Receivership and the Receivership Estate;

\*\*\*

16. The Receiver, and any counsel whom the Receiver may select, are entitled to compensation from the assets now held by or in the possession or control of or which may be received by the Corporate Defendants and Relief Defendants; said amounts or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court. The Receiver is specifically authorized to retain Wiand Guerra King P.A. as attorneys for the Receiver;[2]

\*\*\*

28. Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each

---

[2] The firm name changed from Wiand Guerra King P.A. to Guerra King P.A. ("GK") since entry of the Order Appointing the Receiver. Any reference herein to Wiand Guerra King P.A. therefore applies to GK.

Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates;

29.     The Quarterly Status Report shall contain the following:

   A.     A summary of the operations of the Receiver;

   B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

   C.     A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

   D.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

   E.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and (ii) collecting such judgments);

   F.     The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

   G.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

30.     Subject to Paragraphs 31 – 37 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes;

31.     Subject to Paragraph 32 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  Except as otherwise provided herein, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement;

32.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court;

33.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff;

34.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership;

35.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership;

36.     Each Quarterly Fee Application shall:

A.      Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.      Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the

7

> exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

(Doc. 11, ¶¶1-12, 16, 28-36).   In accordance with directive in the Order Appointing the Receiver, the Receiver now submits his Ninth Quarterly Fee Application, seeking compensation for the fees and costs incurred for the performance of his duties in this action as well as the fees and costs incurred by the Retained Personnel he hired to assist in the performance of such duties (Doc. 572).   Specifically, the Receiver seeks an award of all fees and costs incurred from January 1, 2022 through March 31, 2022 in the following amounts: (1) Receiver, in the amount of $79,041.01; (2) GK, in the amount of $124,665.42; (3) Johnson, Cassidy, Newlon & DeCort ("JCND"), in the amount of $69,949.22; (4) Weiss Brown, in the amount of $775; (5) Yip Associates ("Yip"), in the amount of $25,248.50; (6) PDR CPAs ("PDR"), in the amount of $32,655.18; (7) E-Hounds, Inc. ("E-Hounds"), in the amount of $8,193; (8) Omni Agent Solutions ("Omni") in the amount of $14,095.37; and (9) The RWJ Group, LLC ("RWJ"), in the amount of $724.50 (Doc. 572).   As noted, the SEC does not oppose the requested relief (Doc. 572, at 36).

## II.      Discussion

When determining relief in an equity receivership, district courts maintain broad powers and wide discretion.  *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). Where a receiver reasonably and diligently discharges his or her duties, the receiver is entitled to compensation.  *Id.* at 1577 (citation omitted); *see Stuart v. Boulware*, 133 U.S. 78, 82 (1890) ("Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers.   That power results necessarily from the relation which the receiver sustains to the court; and, in the absence of any legislation regulating the receiver's salary or compensation,

the matter is left entirely to the determination of the court from which he derives his appointment."). In determining whether a receiver merits a fee, the court must consider the circumstances surrounding the receivership, with the results obtained always relevant to the analysis. *Elliot*, 953 F.2d at 1577 (citation omitted); *see F.T.C. v. Worldwide Info Servs., Inc.*, No. 6:14-cv-8-Orl-41DAB, 2015 WL 144389, at *4 (M.D. Fla. Jan. 12, 2015) (citation omitted) (noting that courts may consider several factors in determining the reasonableness of a fee award to a receiver, including "(1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership."). In considering a fee award to a receiver, "the prosecuting agency's acquiescence to the requested fees militates strongly in favor of approving them." *F.T.C. v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *4 (M.D. Fla. Dec. 6, 2013) (citations omitted).

Furthermore, once appointed, the receiver operates as an officer of the court and remains subject to the court's directions and orders, and, while in the discharge of his or her official duties, the receiver may obtain counsel for himself or herself, and counsel fees fall within the just allowances that may be made by the court. *Stuart*, 133 U.S. at 81. A receiver also is entitled to reimbursement for the actual and necessary expenses the receiver incurred in the performance of his or her duties, although the receiver must support a claim for such expenses with sufficient information to allow a court to determine whether the expenses constituted actual and necessary costs of preserving the receivership estate. *Worldwide Info Servs., Inc.*, 2015 WL 144389, at *4 (citations omitted). Receiverships are not intended to generously reward court-appointed officers, however, especially when the receivership estate fails to recover sufficient assets to pay full restitution to the victims of the alleged fraud or misconduct. *F.T.C. v. Vacation*

*Commc'n Grp., LLC*, No. 6:13-cv-789-Orl-37DAB, 2015 WL 2127724, at *4 (M.D. Fla. May 6, 2015) (citations omitted).

When determining the reasonableness of an award of fees to a receiver and any retained professionals, courts typically begin the analysis with the lodestar method, calculating the reasonable hourly rate in the relevant market and the reasonable number of hours expended. *Id.* at *3 (citations omitted); *see Worldwide Info Servs., Inc.*, 2015 WL 144389, at *4 n.3 ("In determining the reasonableness of professional fees, courts typically undertake a lodestar approach, which focuses on the reasonableness of the hourly rate and the reasonableness of the hours billed."); *see S.E.C. v. Kirkland*, No. 6:06-cv-183-Orl-28KRS, 2008 WL 4144424, at *4 (M.D. Fla. Sept. 5, 2008); *cf. Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983) (discussing the lodestar method); *cf. Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988) (discussing the lodestar method). In determining the lodestar figure, a "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted). In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation. In submitting a fee petition, counsel must exercise proper billing judgment and thus exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Norman,* 836 F.2d at 1301. "Both a receiver and his counsel must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary irrespective of the amount of

money in the receivership estate." *Kirkland*, 2008 WL 4144424, at *5 (citation omitted). As to claims for professional services, the receiver must also provide evidence indicating the hourly rate is reasonable and commensurate with rates paid for similar services and that the time expended by such professionals was reasonable. *Id.* at *4. Furthermore, requests for reimbursement of expenses from the receiver also must be supported by sufficient information to permit the court to determine that the expenses are actual and necessarily incurred. *Vacation Commc'n Grp., LLC*, 2015 WL 2127724, at *3 (citation omitted). Regardless, the Court is an expert with respect to fee applications and therefore may consider a fee award based on its own experience and knowledge concerning reasonable and proper fees and therefore may form an independent judgment as to value. *See Norman,* 836 F.2d at 1303 (citations omitted).

As with the prior requests, upon review of the Ninth Quarterly Fee Application, including the accompanying fee and costs records (Doc. 572), the undersigned concludes that the Receiver continued to properly perform his duties and employ professionals to assist in carrying out those duties. Further, the Receiver and the Retained Personnel discharged their duties in a diligent and reasonable manner and did not incur unnecessary fees or costs. Importantly, as noted above, the SEC does not oppose the Receiver's request for fees and costs. The lack of any opposition by the SEC bears great weight in determining the reasonableness of the fees and costs to be awarded by the Court. *See S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (citation omitted) (stating that, in a securities receivership, the SEC's opposition or acquiescence to the fee application will be afforded great weight); *see Direct Benefits Grp., LLC*, 2013 WL 6408379, at *4.

### A. Receiver

With respect to the Receiver's fees, the Receiver indicates that he reduced his standard hourly rate from $500 to $360 and seeks a total of $72,540 for work performed for 177.4 hours

expended on Receivership activities in this action, 2.2 hours expended on recovery of false profits from investors, and 21.9 hours expended on clawback litigation against non-investors from January 1, 2022 through March 31, 2022, as well as an award of $2,775 for 22.2 hours of paralegal work[3] at a rate of $125 per hour and costs in the amount of $3,726.01 (Doc. 572, at 9-14 & Ex. 2-6).  Based on the undersigned's own experience and the rates typically awarded to court-appointed receivers in the Middle District of Florida, the requested hourly rate of $360 is reasonable.  *See, e.g., F.T.C. v. First Choice Horizon LLC*, Case No. 6:19-cv-1028-Orl-40LRH, 2020 WL 1431526, at *2-3 (M.D. Fla. Jan. 15, 2020), *report and recommendation adopted,* 2020 WL 1431601 (M.D. Fla. Jan. 31, 2020) (considering several factors in concluding that an hourly rate of $350 was reasonable for a court-appointed receiver in the Middle District of Florida); *F.T.C. v. MOBE Ltd.*, Case No. 6:18-cv-862-Orl-37DCI, 2018 WL 4782327, at *3 (M.D. Fla. Sept. 17, 2018), *report and recommendation adopted,* 2018 WL 4774960 (M.D. Fla. Oct. 3, 2018) (finding a rate of $330 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida); *F.T.C. v. Life Mgmt. Serv. of Orange Cnty., LLC*, Case No. 6:16-cv-982-Orl-41TBS, 2017 WL 4861467, at *3 (M.D. Fla. Aug. 9, 2017), *report and recommendation adopted,* 2017 WL 4877460 (M.D. Fla. Oct. 30, 2017) (finding a rate of $325 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida and finding reasonable 129.2 hours expended by such receiver).  Furthermore, the hours expended by the Receiver and his paralegal during the period

---

[3] Courts only reimburse work of paralegals and law clerks when such individuals perform work traditionally done by attorneys. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (concluding that a district court properly reimbursed the time spent by paralegals and law clerks where the work was that normally done by an attorney).  In this instance, review of the time records for the paralegal (Doc. 572, Ex. 3) indicates that the work performed by the paralegal in this matter constituted legal work normally performed by an attorney rather than clerical work. Accordingly, the undersigned recommends awarding the fees requested for work performed by the paralegal, as both the requested rate and the time expended on such work are reasonable.

from January 1, 2022 through March 31, 2022 are reasonable and do not appear excessive, redundant, or unnecessary at this juncture.

As detailed more fully in the Receiver's Ninth Quarterly Status Report, the Receivership involves more than 1,100 investors, $170 million in investments, and more than 200 properties (Doc. 563). During the relevant period, the Receiver and the Retained Personnel facilitated the turnover of assets that Rybick was required to turn over as part of his SEC settlement and consent judgment, including real property, automobiles, watches, jewelry, sports memorabilia, accounts, and furniture; sought Court approval for the settlement of claims against Rybicki related to a Scottsdale, Arizona property; sold Davison's Defender for $205,000 (Doc. 491); sought and received Court approval for a second online auction for the sale of 20 real estate properties owned by the Receivership Estate (Doc. 457), resulting in the sale of 15 properties for $4,888,012 in gross proceeds; closed on the sale of the Bungalows in Treasure Island, Florida, for net proceeds of $2,636,610.62; received payments of approximately $13 million from the auction of 49 luxury watches through Sotheby's; received Court approval for the private sale of five multiplex properties on Davis Islands totaling $7,300,000; received Court approval for the settlement of certain investor clawback claims, resulting in additional settlements in the amount of $89,534.70 (Docs. 464, 488, 535); continued to negotiate with the sales agent defendants in a related case and reached settlements with five sales agents and their related entities; continued the review of more than 1,900 Proof of Claim Forms submitted by investors and creditors; continued efforts in conjunction with class action counsel to reach a resolution of other related lawsuits; negotiated contracts for three properties, with closings forthcoming; continued working with two breweries; and continued efforts to streamline the Receivership administration and EquiAlt operations, including the maintenance and leasing of more than 200 real estate properties (Doc. 563, at 4-22; Doc. 572, at 2-4, 9-14 & Ex. 2-5). As

a result, the 201.5 hours expended by the Receiver, the 22.2 hours expended by the paralegal, and the costs incurred, including costs for delivery services, out-of-town travel, web-related services, and other costs, encompassing the notarization of documents related to the sale of assets, registration and insurance renewal for vehicles held by the Receivership, and the moving of Receivership assets (Doc. 572, Ex. 2-5), from January 1, 2022 through March 31, 2022, along with costs incurred previously but inadvertently omitted from the prior fee application, are fair and reasonable considering the activities performed and the results achieved (*see* Doc. 563, at 4-22; Doc. 572, at 9-14 & Ex. 2-5).  Accordingly, the Receiver should be awarded fees and costs in the amount of $79,041.01.

**B.    GK**

With respect to legal services, the Receiver retained GK, which the District Judge specifically authorized in the Order Appointing the Receiver (Doc. 11, ¶16).  The Receiver now seeks $122,208.50 in fees and $2,456.92 in costs for services provided by GK.  The attorney fee schedule provided by GK includes the following proposed rates for the Receivership: $350 for members/partners; $240 for associates; and $135 for paralegals (Doc. 572, Ex. 6).  The fee records indicate that the hourly rates requested include the following:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Maya Lockwood | Of Counsel | 21 years | 63.6 | $240 | $15,264 |
| Jared Perez | Partner | 15 years | 0.7 | $350 | $245 |
| Ailen Cruz | Associate | 8 years | 146.8 | $240 | $35,232 |
| R. Max McKinley | Associate | 5 years | 102.2 | $240 | $24,528 |
| Jeffrey Rizzo | Paralegal | | 172 | $135 | $23,220 |
| Amanda Stephens | Paralegal | | 51.20 | $135 | $6,912 |

| Kimberly Paulson | Paralegal | 124.5 | $135 | $16,807.50 |
| | | | **TOTAL:** | **$122,208.50** |

(Doc. 572, at 14-18 & Ex. 7-8).  These numbers reflect work performed on Receivership matters and for the discrete projects involving the recovery of false profits from investors and the clawback litigation against non-investors, although GK did not incur expenses or charge fees for services as to the latter during this applicable period.

Upon review, all the requested hourly rates are reasonable.  *See F.T.C. v. Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5 (M.D. Fla. Oct. 3, 2017), *report and recommendation adopted*, 2017 WL 4700396 (M.D. Fla. Oct. 19, 2017) (finding that an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty-one years' experience reasonable); *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable).  Furthermore, the 661 hours expended by counsel and the paralegals do not appear unnecessary, excessive, or redundant but rather reflect a reasonable amount of time spent on this matter, including investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and continuing litigation, and administering the claims process.  Given that both the hourly rate and

the hours expended are reasonable, attorneys' fees should be awarded for work performed by GK.  Accordingly, GK should be awarded $122,208.50 in fees.

GK also seeks reimbursement in the amount of $2,456.92 for costs, encompassing costs for online research and web-related expenses (Doc. 572, at 16 & Ex. 7).  The costs appear to have been necessarily incurred for the Receiver and the Retained Personnel to carry out their duties.  Such costs are thus fair and reasonable and should be awarded.  Given the foregoing, GK should be awarded costs in the amount of $2,456.92.  In total, therefore, fees and costs should be awarded in the amount of $124,665.42 for work performed by GK, which represents $122,208.50 in fees and $2,456.92 in costs.

### C.    JCND

The Receiver retained the law firm of JCND to assist as co-counsel (Doc. 278), which the Court approved (Doc. 282).[4]  As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JCND has agreed to follow the reduced rates for attorneys and paralegals provided in the GK fee schedule (Doc. 572, Ex. 6).  Based on those rates, the Receiver now seeks fees for professional services rendered by JCND from January 1, 2022 through March 31, 2022 in the amount of $65,232 as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 25 years | 145.8 | $350 | $51,030 |
| Mary Gura | Paralegal | | 105.2 | $135 | $14,202 |
| | | | | **TOTAL:** | **$65,232** |

(Doc. 572, at 18-22 & Ex. 9-11).  Upon review of the billing records and the Ninth Quarterly

---

[4]  The Receiver retained JCND following the departure of Ms. Donlon, who had been acting as lead counsel for the Receiver, from GK to join JCND (Doc. 278; Doc. 572, at 8 n.6).  The Receiver does not anticipate any duplication of efforts will occur given the roles of various legal professionals at GK and JCND (Doc. 278, at 3).

Status Report, the hours expended are fair and reasonable for the services performed and present no redundancies or unnecessary time spent on this matter (Doc. 563, at 4-22; Doc. 572, Ex. 9-11).   Namely, during the relevant period, JCND assisted the Receiver with investigating the fraud and related activities, liquidating Receivership assets, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and continuing the claims process, along with work on the two discrete projects relating to recovery of false profits from investors and clawback litigation against non-investors.   Further, as discussed above, the rates charged are reasonable for the Middle District of Florida.   *See Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted*, 2017 WL 4700396 (finding that an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty-one years' experience reasonable); *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable).   In addition, the costs incurred in the amount of $4,717.22 for certified copies, publication costs, delivery services, service of process, postage, and mediation are reasonable and necessary.   Accordingly, JCND should be awarded $69,949.22, which includes $65,232 in fees and $4,717.22 in costs.

### D.     Weiss Brown

For assistance with effectuating service of the Order Appointing the Receiver and to secure records and assets in Arizona, the Receiver initially retained Baskin Richards PLC, later renamed Baskin PLC (the "Baskin Firm"), as local legal counsel in Arizona.  The District Judge specifically authorized the retention of the Baskin Firm as counsel in Arizona to assist in the service of the Order Appointing the Receiver and securing records and assets in Arizona (Doc. 11, at ¶3).  Subsequently, Alan Baskin ("Mr. Baskin"), the primary attorney representing the Receiver in Arizona, along with other professionals from the Baskin Firm who worked on this matter, joined Weiss Brown, "a business and technology litigation firm also located in Arizona" (Doc. 572, at 7 n.3).  After consideration, the Receiver determined that, given Mr. Baskin's knowledge regarding this matter, it remained in the best interests of the Receivership and defrauded investors that Mr. Baskin continue to represent the Receiver at Weiss Brown and to no longer use the services of the Baskin Firm (Doc. 572, at 7 n.3).

The Receiver now seeks an award of $775 for services rendered by Weiss Brown (Doc. 572, at 28-29 & Ex. 15).  Specifically, the Receiver seeks fees as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Alan Baskin | Partner | 30 years | 0.8 | $425 | $340 |
| Mladen Milovic | Associate | 1 year | 1.1 | $225 | $247.50 |
| Christina McDonald | Paralegal | | 1.5 | $125 | $187.50 |
| | | | | **TOTAL:** | **$775** |

(Doc. 572, at 28-29 & Ex. 15).  Though billed in Arizona, these rates come within the range of hourly rates typically charged in the Middle District of Florida.[5]  *See Hardco Holding Grp.*

---

[5]  The $225 hourly rate for associates with one to two years' experience is on the high side for the Middle District of Florida, similar to the $210 hourly rate identified in *Hardco Holding Grp.*

*LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted at* 2017 WL 4700396 (finding that an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty-one years' experience reasonable); *Life Mgmt. Serv. of Orange Cty., LLC*, 2017 WL 2869535, at *2-4 *report and recommendation adopted at* 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable)  Moreover, the 3.4 hours expended do not appear unnecessary, redundant, or excessive based on the services provided, and the costs were warranted.  Fees should thus be awarded in the amount of $775 for work performed by Weiss Brown.

### E.    Yip

With respect to the non-legal professional services obtained, the Receiver retained the services of Yip, a forensic accounting firm specializing in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support, to assist with the cash in/cash out analysis for establishing a claims process, among other things. The District Judge specifically authorized the retention of Yip in the Order Appointing the Receiver (Doc. 11, ¶3).  As detailed more fully by the Receiver, Yip "has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and

---

*LLC*, but, given the limited use of the associate and the work performed in Arizona, the undersigned finds it reasonable to award the requested fees in this instance.

the investment scheme at issue in this case," including but not limited to the tracing of investor proceeds to various assets and properties and substantially completing the process of gathering the investors' investments and distributions for the claims process (Doc. 572, at 22-23 & Ex. 12). As the Receiver indicated throughout these proceedings, most of the costs associated with forensic accounting services occur on the front end of the Receivership and would not be duplicated later but rather would result in greater efficiency as the claims process and filing of clawback actions commenced.

To that end, the Receiver now seeks an award of $25,248.50 in fees as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Maria Yip | Partner | 28 years | 1.5 | $495 | $742.50 |
| Hal Levenberg | Director | 14 years | 50.7 | $300 | $15,210 |
| Christopher Cropley | Manager | 12 years | 16.5 | $300 | $4,950 |
| Nicole Duenas | Sr. Assoc. | 9 years | 4.8 | $245 | $1,176 |
| Christopher Vatti | Sr. Assoc. | 5 years | 4.9 | $245 | $1,200.50 |
| Christopher Leo | Associate | 4 years | 10.1 | $195 | $1,969.50 |
| | | | | **TOTAL:** | **$25,248.50** |

(Doc. 572, at 22-25 & Ex. 12). Such hourly rates are reasonable considering the experience levels of each professional and the results achieved by Yip thus far. *See F.T.C. v. Nationwide Connections, Inc.*, Case No. 06-80180-Civ-Ryskamp/Vitunac, 2009 WL 10669124, at *8-9 (S.D. Fla. Apr. 14, 2009), *report and recommendation adopted*, 2009 WL 10668438 (S.D. Fla. Apr. 24, 2009) (awarding a forensic accounting firm utilized by a court-appointed receiver fees in the amount of $32,333.50 for 143.7 hours of forensic accounting work at a blended rate of approximately $225 per hour). Moreover, the hours do not appear inflated, excessive, or

unnecessary for the work performed during this period.  The requested total of $25,248.50 in fees for Yip therefore should be awarded.

### F.    PDR

The Receiver also retained the services of PDR to assist with accounting and tax matters. The District Judge approved the retention of PDR and limited its role to internal Receivership accounting, financial reporting, tax preparation and filing, and internal accounting for EquiAlt (Doc. 85).  The District Judge directed the Receiver to advise as to the maximum number of hours anticipated to be incurred by PDR, and should it become apparent that PDR's hours would exceed the anticipated maximum, the Receiver should submit a motion to that effect (Doc. 85). In approving the retention of PDR, the District Judge approved the following hourly rates for PDR employees working on this matter: $320 for partners/principals; $210 for managers; $180 for senior associates; and $125 for staff members (Doc. 85).[6]  Subsequently, the Receiver submitted the anticipated maximum number of hours for PDR, indicating that a principal of PDR agreed to a maximum of $15,000 for PDR's services for each of the first three months and then a maximum of $6,000 for each month thereafter (Doc. 87, at 3).

The Receiver now seeks to deviate from the previously approved budget.  According to the Receiver, during the relevant timeframe for this application, the Receiver determined that EquiAlt's senior accounting employee was no longer necessary due to the change of the business activities of EquiAlt and therefore terminated the position at the end of February (Doc. 572, at 25).  The Receiver indicates that the reduction in force reduced the Receivership's employee expense by more than $125,000 annually, with some of the accounting duties taken over by PDR (Doc. 572, at 25.  Consequently, the Receiver contends that the prior budget

---

[6]  Though the District Judge approved a rate of $180 for senior associates, PDR billed the senior associate who worked on this matter at a reduced rate of $155 or $160 per hour (Doc. 572, at 26 & Ex. 13).

limitations for PDR's services no longer reflect reasonable monthly fees and thus requests that such limits no longer be applied (Doc. 572, at 25-26).[7]

Indeed, the Receiver seeks an award of $32,655.18 in fees and costs for accounting, auditing, consulting, and tax services provided by PDR during the relevant period (Doc. 572, at 25-26 & Ex. 13). The requested fees include reasonable rates in the following amounts: $320 for Partner William Price, $155 and $160 for Senior Associate Gail Heinold, $125 for Staff Member Sharon O'Brien, $125 for Staff Member Dawn Melton, $60 for Staff Member Taylor Jones, and $60 for Staff Member Tamra Warden (Doc. 572, at 26 & Ex. 13).[8] Further, upon review, the 196.39 hours expended on accounting and tax matters by PDR appear reasonable (Doc. 572, at 26 & Ex. 13). Additionally, the $921.43 in costs relating to QuickBooks are warranted (Doc. 572, Ex. 13). Accordingly, fees and costs should be awarded in the amount of $32,655.18 for the work performed and costs incurred by PDR.

## G.    E-Hounds

For computer forensics services to assist the Receiver in securing and analyzing electronic data, the Receiver retained E-Hounds, which the District Judge authorized in the Order Appointing the Receiver (Doc. 11, ¶3). Specifically, E-Hounds assists with the collection and preservation of electronic records, including email records, GoDaddy records, DropBox files, and computer equipment and with updating and maintaining the property review platform.

---

[7] While the undersigned recommends that the fees be adjusted for purposes of this application, the District Judge, who approved the initial budget for PDR's services (Docs. 85 & 87), may require a more formal request with a new proposed budget in order to adjust the budget going forward.

[8] A discrepancy exists between the application and the billing records. Though the application indicates that Staff Members Tayler Jones and Tamra Warden billed at a rate of $60 per hour (Doc. 572, at 26), the billing records indicate that they each billed at a rate of $125 per hour (Doc. 572, Ex. 13, at 12-14). Multiplying the number of hours expended by the actual billed rate of $125 per hour (rather than the listed rate of $60 per hour) produces the figures presented in the total column in the application.

The Receiver seeks an award of $8,193 for services rendered and costs incurred by E-Hounds, which includes $3,570 in monthly platform charges and $3,375 for additional platform users (Doc. 572, at 26-27 & Ex. 14).  The billing records further indicate that E-Hounds charged $195 per hour for 6.4 hours of technician work.  The hourly rate charged, the hours expended, and costs incurred are all reasonable for the work performed collecting and preserving electronic data.  *See, e.g., SEC v. Kinetic Investment Grp.,* Case No. 8:20-cv-394-MSS-SPF (M.D. Fla.) (Docs. 73 & 101); *CFTC v. Oasis Int'l Grp. Ltd.*, Case No. 8:19-cv-886-VMC-SPF (M.D. Fla.) (Docs. 203 & 207).  Fees and costs in the amount of $8,193 for work performed and services provided by E-Hounds should be awarded.

### H.    Omni

The Receiver retained Omni to assist with the logistical aspects of the claims process (Doc. 335), which the District Judge approved (Doc. 347).  According to the Receiver, "Omni is an information management company that provides administrative services and technology solutions to simplify claims administration" (Doc. 572, at 29).  Omni assists with the logistical components of the claims process, including mailing, determining the correct addresses for returned mail, addressing clerical deficiencies, assisting with data entry for the returned Proof of Claim Forms, and processing distributions as well as providing an online platform for claimants to submit claims electronically or upload their claims.  The Standard Services Agreement entered into between the Receiver and Omni indicates that, except as otherwise stated therein, services rendered by Omni will be billed at rates ranging from $135 to $205 per hour, representing a 5% discount (Doc. 335, Ex. 5), which the District Judge adopted in authorizing the Receiver to retain Omni (Doc. 347, at 4).

The Receiver now seeks fees in the amount of $14,644.50 for time expended by several individuals on the claims administration process, less a discount of $732.23, and $183.10 for

costs incurred, or a total of $14,095.37 (Doc. 572, at 29-30 & Ex. 16).  Upon review of the time records, none of the hours expended on case administration and the claims process appear excessive, redundant, or unnecessary (Doc. 572, Ex. 16).  Further, the fee amounts fall within the agreed-upon rates that the District Judge already approved.  Additionally, costs in the amount of $183.10, which includes costs for scanning, in-house storage, shredding, duplication, postage, and envelopes, do not appear excessive given the nature of the claims administration process.  Accordingly, fees and costs in the amount of $14,095.37 should be awarded to Omni.[9]

## I.    RWJ

The Receiver retained RWJ, an asset management and investigation firm, to assist with investigations and overseeing ongoing business operations and property recovered by the Receiver (Doc. 572, at 30).  The District Judge specifically authorized the retention of RWJ in the Order Appointing the Receiver (Doc. 11, at ¶3).  The Receiver now seeks an award of $724.50 in fees for work performed by RWJ in this matter (Doc. 572, at 30-31 & Ex. 17).  Namely, the billing records indicate that RWJ billed for one employee, Roger Jernigan, for 8.05 hours of work performed at a rate of $90 per hour (Doc. 572, Ex. 17).   As indicated by his biography, Roger Jernigan holds more than 30 years' experience in law enforcement and maintains more than 11 years' experience assisting on receivership matters (Doc. 122, Ex. 11, at 6-7).  Such experience is integral in performing RWJ's work, including overseeing day-to-day property management and supervision, employee management and supervision, and property identification, preparation, and assessment.  Both the hourly rate and the hours expended appear fair and reasonable given the services performed and the experience held by Roger Jernigan.  *See, generally, SEC v. Kirkland*, No. 6:06-cv-183-Orl-28KRS, 2008 WL

---

[9]   In considering future applications, it would assist the undersigned to receive a chart summarizing Omni's billing records and costs in addition to the actual billing records.

3981434, at *3 (Aug. 21, 2008), *report and recommendation adopted at* 2008 WL 4533931 (M.D. Fla. Sept. 29, 2008) (approving a rate of $150 per hour for investigative services).  The requested fees in the amount of $724.50 for RWJ's services therefore should be awarded.

### III.   Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1.     The Receiver's Ninth Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (Doc. 572) be GRANTED.

2.     Fees and costs be awarded in the following amounts:

a.  The Receiver, in the amount of $79,041.01;

b.  GK, in the amount of $124,665.42;

c.  JCND, in the amount of $69,949.22;

d.  Weiss Brown, in the amount of $775;

e.  Yip, in the amount of $25,248.50;

f.  PDR, in the amount of $32,655.18;

g.  E-Hounds, in the amount of $8,193;

h.  Omni, in the amount of $14,095.37; and

i.  RWJ, in the amount of $724.50.

IT IS SO REPORTED in Tampa, Florida, on this 6th day of June, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the District Judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**


cc:     Hon. Mary S. Scriven
        Counsel of Record