# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                          Case No. 8:20-cv-325-MSS-MRM

BRIAN DAVISON, et al.,

    Defendants, and

128 E. DAVIS BLVD. LLC, et al.,

    Relief Defendants.
_____/

## DAVISON'S VERIFIED MOTION FOR AN ORDER TO SHOW CAUSE WHY THE RECEIVER SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH THE COURT'S ORDERS AND <u>MEMORANDUM IN SUPPORT</u>

Brian Davison, pursuant to the Final Judgment Against Davison (Doc.355-1) and Middle District Local Rule 3.01(c), files this Verified Motion for an Order to Show Cause why the Receiver should not be held in contempt for failure to comply with the Court's Orders.

        **I.**       **RELEVANT BACKGROUND**

The Final Judgment (Doc. 355-1 at 10-11) incorporates the Consent attached to the SEC's Unopposed Motion for Final Judgment against Davison (Doc. 353, Ex. B). The Consent and the Judgment require Davison to assign and turn over certain

1

accounts and assets to the Receiver. On June 27, 2022, the Receiver filed a Verified Motion for an Order to Show Cause Why Brian Davison Should Not be Held in Contempt for Failure to Comply with the Court's Orders (the "Motion). (Doc. 587).[1]

Davison's Assignment of Assets (executed by Burton Wiand as the Receiver) is attached to the Motion as Exhibit 1. Exhibit B to Exhibit 1 is the List of Assets to be retained by Davison. The Receiver has failed and refused to turn over to Davison the following assets:

1. The cash in any of the bank accounts listed in paragraph (1) of Exhibit B with the possible exception of the Chase XXX3995 account:[2]

    a. Bank of America XXX8041 – The Brian D. Davison Revocable Trust - $322,480.06;

    b. Chase XXS5756 – Davison Capital - $24,639.50; and

    c. Chase XXX3995 – Brian and Nicole Davison - $169,642.20.

2. $500,000 from positions to be liquidated in Davison's Merrill Lynch accounts listed in paragraph (vii) of Exhibit B.

---

[1] The evidence, arguments and authorities cited in Davison's Amended Memorandum in Opposition to the Motion (Doc. 603) are equally applicable to this motion.

[2] Davison is not sure whether he received some or all of the proceeds of the Chase XXX3995 account as he did not keep paper statements and no longer has on-line access to the Chase accounts.

## II.     LEGAL ARGUMENT

The Receiver should be ordered to show cause why he has failed and refused to turn those assets over to Davison after he turned over his family home, his watch collection, jewelry, family heirlooms with significant sentimental value and all of the other assets listed in the Final Judgment (Doc. 355-1) other than 3 gold coins and 480 silver coins rather than platinum coins.

The Receiver claims that the difference in value between the value of silver and platinum coins and the value of the 3 gold coins is $484,000. (Doc 587 at 6-7). Based on that alleged shortfall of $484,000 (and ignoring entirely that he has already recovered more than the full amount of the SEC's $27,103,060 judgment against Davison), the Receiver has refused to turn over or allow the release of nearly $850,000 in cash.[3]

The Receiver has taken blatantly inconsistent positions related to the application of the Asset Freeze. The Receiver claims he lacks control over funds at Bank of America and Merrill Lynch but has made clear he would oppose any attempt by Davison to access those funds. He demanded that Davison not touch funds from the Chase account due to the Asset Freeze and objected to Davison's draft motion to alter or amend the final judgment which seeks to lift the asset freeze. Ironically, the

---

[3] The precise total of the Bank of America XXX8041 – The Brian D. Davison Revocable Trust - $322,480.06; Chase XXS5756 – Davison Capital - $24,639.50; and the $500,000 from Davison's Merrill Lynch accounts is $847,119.56.

3

Receiver turned over the brewery interests despite the Asset Freeze but objects to the turnover of cash.

On July 18, 2022, a draft of this Motion was sent to counsel for the Receiver and the SEC pursuant to Middle District Local Rule 3.01(g). Counsel for the Receiver apparently sent emails that evening that went unopened as the undersigned completed work on Davison's Memorandum in Opposition to the Receiver's Motion for an Order to Show Cause (Doc. 600), that was due on July 18, 2022, pursuant to the Court's Endorsed Order Granting Davison's Motion for Extension. (Doc. 592). The July 19, 2022, letter from counsel for the Receiver stated in pertinent part:

> I also sent you a separate email regarding the Bank of America and Merrill Lynch accounts. Specifically, I told you that the Receiver has no control over the funds at these institutions because the accounts are in the name of your clients, not any Receivership Entity, so it is not within the Receiver's power to turn over these funds. I stated specifically that Bank of America's counsel wanted an order from the Court before releasing those funds. I offered to provide you with the contact information for the bank's counsel. You did not respond to any of these emails which I sent last night between 5:42 and 6:42 pm.

In her letter of July 14, 2022, counsel for the Receiver addressed one of the Chase Bank accounts to be retained by Davison (Acct. XXXX3995) and took a completely different position. That letter states in pertinent part:

> We conferred with Chase and they confirmed that they also closed out the joint account (account ending in 3995) and disbursed those funds ($169,844.08) to your clients. Pursuant to paragraph five of the Court's Final Judgment (Doc. 355), these funds should not have been disbursed as the Asset Freeze is still in place . . .

4

>Therefore, that check should not be negotiated nor the funds expended until the conditions of the Final Judgment have been met or the Court rules otherwise. Please confirm that either the check has not been negotiated or that the funds will remain untouched.

On one hand, the Receiver contends he has no control over the Bank of America, Chase or Merrill Lynch accounts and so could not possibly release those funds to Davison. On the other hand, the Receiver makes plain his objection to those funds being released. The Receiver objected to the draft of Davison's Motion to Alter or Amend the Final Judgment Pursuant to Fed. R. Civ. P. 60(b)(1) and 60(b)(5), (provided for Local Rule 3.01(g) purposes) which specifically requested the lifting of the Asset Freeze.

In multiple filings in this Court, the Receiver has touted his broad mandate. *See, e.g.*, Receiver's Unopposed Motion to Approve Engagement of Real Estate Valuation Consultant, Specifically, Coldwell Banker (Doc. 295 at 2):

>At the request of the Securities and Exchange Commission ("SEC"), the Court appointed the Receiver on February 14, 2020 ("Receivership Order") and directed him, in relevant part, to "take immediate possession of all property, assets and estates of every kind of the Corporate Defendants and Relief Defendants whatsoever and wheresoever located…" which includes "all real property of the Corporate Defendants and Relief Defendants, wherever situated…." Doc. 11 at ¶ 1. Further, the Receivership Order directs the Receiver to "recover, control and possess liquid assets, known real estate, LLC assets and high-end personal assets purchased with funds traceable from investor proceeds, and trusts if the Receiver deems appropriate." Id. at ¶ 3.

5

The Receiver now takes the position he can't release the funds to Davison, but simultaneously objects to any effort by Davison to have them released. Even excluding the Chase XXXX3995 account, the cash in the other bank accounts and from the Merrill Lynch account is almost $850,000; and the Receiver's claim against Davison for the coins is for $484,000. (Doc. 587 at 6 & n.5).

No justification exists for the Receiver to withhold any amount in excess of the Receiver's claimed damages of $484,000. The remaining cash should be turned over to Davison immediately. In reality, the Court should lift the asset freeze entirely and require the Receiver to turn over to Davison (or consent in writing to their release) all of the cash in the listed accounts not yet released to Davison and the $500,000 from his Merrill Lynch accounts. (Doc. 355 at. 11).

To succeed on a claim for civil contempt, the complainant must show by clear and convincing evidence that (1) the defendant violated a valid and lawful order, (2) the order was clear and unambiguous, and (3) the defendant had the ability to comply with the order. *Checkers Drive-In Rests. Inc. v. One Hundred Twenty LLC*, Case No. 8:11-CV-2462-T-35-MAP, 2012 WL 13106395, at *1 (M.D. Fla. Jan. 4, 2012) (Scriven, J.) (quoting *FTC v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010)).

If the complainant makes a prima-facie case for civil contempt, the burden shifts to the defendant to produce evidence explaining his noncompliance at a show-cause hearing. *Checkers Drive-In Rests. Inc.*, 2012 WL 13106395, at *1 (citation

6

omitted). Establishing good-faith substantial compliance with the court order can defeat a claim for civil contempt. *Id.* at *2 (citations omitted).

This Court's decision in *Brown v. Omni Mgmt. Grp. LLC*, Case No. 8:18-CV-1772-T-35-CPT, 2020 WL 7401272, at *2 (M.D. Fla. Nov. 12, 2020), lays out the elements and standard of proof.

> In a civil contempt proceeding, the petitioning party has the burden to establish by "clear and convincing" proof that the underlying order was violated. *See Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984). "This burden of proof is more exacting than the 'preponderance of the evidence' standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt." *Jordan v. Wilson*, 851 F.2d 1290, 1292 (11th Cir. 1988) (per curiam). The clear and convincing proof must demonstrate that: "1) the allegedly violated order was valid and lawful; 2) the order was clear and unambiguous; and 3) the alleged violator had the ability to comply with the order." *See Georgia Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir.2007).

The Final Judgment incorporating the Consent and the Assignment to be executed pursuant thereto constitute a valid order of this Court to turn over certain assets to Davison.[4] The Receiver is and has been in effective control of the assets listed above and has not returned them to Davison in accordance with the Assignment, Consent and Final Judgment. The requirement to return those assets to Davison's control was clear and unambiguous, and the Receiver at all times had the ability to return those assets to Davison's control.

---

[4] Exhibit B to the Assignment refers to "Asset to be Retained by Davison" but the Receiver has been and remains in full effective control of all assets and accounts not yet returned to Davison.

While Davison has suffered actual damages as a result of lack of access to the cash to which he was entitled, he seeks only an Order compelling the immediate release to him of the cash from the listed accounts, the $500,000 from his Merrill Lynch accounts, and an Order Terminating the Asset Freeze.

### III.  CONCLUSION

Davison requests that the Court enter an Order to Show Cause why the Receiver Should Not be Held in Contempt for Failure to turn over assets Davison is entitled to retain. Additionally, Davison requests that the Receiver be subject to a fine for his conduct that resulted in this motion, such fine to be paid by the Receiver personally and not chargeable to the Receivership estate, and the payment of Davison's attorney's fees and costs for bringing this Motion. Moreover, should the Receiver fail to cure his contempt he should be subject to a continuing fine payable personally and not chargeable to the Receivership estate or imprisonment until his contempt is cured.

## CERTIFICATE UNDER LOCAL RULE 3.01(g)

Counsel for Davison has conferred with counsel for the SEC and for the Receiver and represents to the Court that they object to the relief sought.

## VERIFICATION BY DAVISON

I, Brian D. Davison, hereby certify that the information contained in this motion is true and correct to the best of my knowledge.

**/s/ Brian D. Davison**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed via the Court's CM/ECF system on this 26th day of July 2022.

**/s/ Stanley T. Padgett**
Stanley T. Padgett, Esquire
Florida Bar No. 348686
PADGETT LAW, P.A.
201 E. Kennedy Blvd., Suite 600
Tampa, FL 33602
(813) 230-9098
(866) 896-7664 (Fax)
Email: spadgett@padgettlawpa.com
Co-Counsel for Defendant,
    Brian Davison