# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

          **Case No. 8:20-cv-00325-MSS-MRM**

        Plaintiff,

v.

BRIAN DAVISON, et al.,

        Defendants.

---

## JOINT MOTION OF RECEIVER AND INVESTOR PLAINTIFFS FOR (I) PRELIMINARY AND FINAL APPROVAL OF PROPOSED SETTLEMENTS; (II) APPROVAL OF FORM, CONTENT AND MANNER OF NOTICE OF SETTLEMENTS AND BAR ORDERS; (III) ENTRY OF BAR ORDERS; AND (IV) SCHEDULING A HEARING

Through this joint motion, Burton W. Wiand, the Court-appointed Receiver in the above-captioned action (this "Action"), and the Investor Plaintiffs in *Richard Gleinn and Phyllis Gleinn, et al. v. Paul Wassgren*, et al., Case No. 8:20-cv-01677-MSS-CPT, also pending in this Court,[1] respectfully seek approval of ***at least $44 million*** in seventeen interrelated settlement agreements (collectively, the "Settlements") reached with the former lawyers, managers, and sales agents of EquiAlt LLC. ("EquiAlt"). Set forth in **Appendix A**, the Settlements are a remarkable achievement, through which the Receiver

---

[1] The "Investor Plaintiffs" are Richard Gleinn, Phyllis Gleinn, Cary Toone, John Celli, Maria Celli, Eva Meier, Georgia Murphy, Steven J. Rubinstein, as trustee for the Rubinstein Family Living Trust dated 6/25/2010, Tracey F. Rubinstein, as trustee for the Rubinstein Family Living Trust dated 6/25/2010, Bertram D. Greenberg, as trustee for the Greenberg Family Trust, Bruce R. Hannen, Geraldine Mary Hannen, Robert Cobleigh, Rory O'Neal, Marcia O'Neal, and Sean O'Neal, as trustee for the O'Neal Family Trust dated 4/6/2004. To the extent not already admitted to practice before the Court, undersigned counsel for the Investor Plaintiffs have filed a Motion for Special Admission in this action for the purposes of seeking approval of the proposed coordinated settlements by this Court. [Doc. 752]

and the Investor Plaintiffs expect to generate very substantial funds to greatly reduce the gap between (a) total claims that will be allowed under the Receiver's Court-approved Claims Review Process, and (b) the Receivership assets marshalled and liquidated by the Receiver to date. In short, the Settlements present a rare opportunity to repay most of the principal losses suffered by EquiAlt investors holding approved claims in the Receivership Estate.

The Settlements are the fruit of a joint prosecution and common interest agreement between the Receiver and the Investor Plaintiffs effective February 23, 2021 (the "Joint Prosecution Agreement"), under which they have cooperatively pursued monetary relief on behalf of those investors who purchased unregistered securities issued by EquiAlt LLC ("EquiAlt"). That cooperation has included coordinated settlement discussions and, in addition to the above-captioned action, the following filed actions:

- *Burton W. Wiand, as Receiver on behalf of EquiAlt Fund, LLC, et al. v. Paul R. Wassgren, et al.*, Case No. 20STCV49670, pending in the Superior Court of California, County of Los Angeles (the "Receiver's Lawyer Action");

- *Richard Gleinn and Phyllis Gleinn, et al. v. Paul Wassgren*, et al., Case No. 8:20-cv-01677-MSS-CPT, pending in this Court (the "Investors' Lawyer Action"); and

- *Burton W. Wiand v. Family Tree Estate Planning, LLC, et al.*, Case No. 8:21-cv-00361-SDM-AAS, pending in the United States District Court for the Middle District of Florida (the "Receiver's Sales Agent Action").

The simultaneous, coordinated assertion of the claims in these actions has enabled the Receiver and the Investor Plaintiffs to share discovery and otherwise maximize their resources in pursuing potentially culpable third-parties. Furthermore, the Receivership Estate affords a highly cost-effective and efficient means of distributing all recoveries

obtained through those coordinated efforts to EquiAlt investors, along with the proceeds of the Receiver's other liquidation efforts.

As a result of their combined efforts, the Receiver and Investor Plaintiffs (collectively, "the Settling Plaintiffs") have to date achieved the Settlements with the following parties (collectively, "the Settling Defendants"):

(a) EquiAlt managers Brian Davison ("Davison") and Barry Rybicki (collectively, "the Management Defendants"); [2]

(b) EquiAlt sales agents Family Tree Estate Planning, LLC, James Wootten, MASears, LLC d/b/a Picasso Group, DeAndre Sears, Maria Antonio Sears, American Financial Security, LLC, American Financial Investments, LLC, Ronald F. Stevenson, Barbara Stevenson, Live Wealthy Institute, LLC, Dale Tenhulzen, REIT Alliance Marketing, LLC, Ernest "Cal" Babbini, Elliott Financial Group, Inc., Todd Elliott, Elliott Financial Advisors, LLC, Greg Talbot, Rokay Unlimited, LLC, Anthony R. Spooner, Seek Insurance Services, LLC, James D. Gray, John E. Friedrichsen, Agents Insurance Sales, Barry Wilken, Barry Neal, Ben Mohr, Ben Mohr LLC, Ben Mohr, Inc., Marketing Dynamics, Inc., Tim LaDuca, J. Wellington Financial, LLC, and Jason Jodway (collectively, "the Sales Agent Defendants"); [3] and

(c) DLA Piper LLP (US), Fox Rothschild LLP, and Paul R. Wassgren (collectively, "the Lawyer Defendants").

The Receiver and the Investor Plaintiffs hereby respectfully move for the Court's

---

[2] The Court has previously approved the Receiver's earlier settlement agreement with Rybicki. [Doc. 526] The Court also has approved the SEC's settlement with Davison, requiring among other things disgorgement of more than $25 million and an assignment requiring Davison to turn over to the Receiver all of his assets other than certain specified items. [Doc. 587]

[3] The Court has previously approved the Receiver's settlement agreements with certain other EquiAlt sales agents: (1) Edgar Lozano and his affiliated businesses, GIA LLC and GIA, Inc. [Doc. 346]; (2) Joe Prickett and his affiliated business, J. Prickett Agency [Doc. 536]; and (3) The Sterling Group. [Doc. 707]

approval of the foregoing Settlements. Doing so will not only generate over $44 million for the benefit of the Receivership and EquiAlt investors with approved claims, it will also: (a) finally resolve the Receiver's claims against the Lawyer Defendants in the Receiver's Lawyer Action; (b) finally resolve the Investor Plaintiffs' claims against the Lawyer Defendants in the Investors' Lawyer Action; (c) finally resolve the Receiver's claims asserted against the Sales Agent Defendants in the Receiver's Sales Agent Action; and (d) finally resolve the Investor Plaintiffs' claims against the Sales Agent Defendants and Davison.

This joint resolution constitutes an undeniably valuable asset for the Receivership Estate. Although the claims asserted against the Lawyer Defendants by the Receiver and by the Investor Plaintiffs are potentially competing claims, under the Joint Prosecution Agreement and the Settlements, any recoveries obtained in the Investors' Lawyer Action will be channeled to the Receivership for distribution through the Receivership Claims Process. In addition, the Lawyer Defendants have stated that their proposed settlement payment includes funds they would have otherwise used to defend EquiAlt-related lawsuits, and that they are agreeing to settle and contributing those funds in exchange for releases and other protections from future lawsuits. Accordingly, under the Settlements, the Management Defendants and the Sales Agent Defendants have agreed to release claims against the Lawyer Defendants – absent which the Lawyer Defendants would otherwise insist on withholding substantial defense funds or refuse to settle at all.

To minimize investor confusion and to avoid duplicative proceedings, all of the necessary approvals are being sought through a two-step procedure in this Action consistent with prevailing precedent in other receivership cases.

***First***, the Receiver and Investor Plaintiffs request that the Court enter forms of Preliminary Approval Orders for the settlements with the Lawyer Defendants and for certain of the remaining Settling Defendants[4] substantially in the form and substance as

---

[4] Preliminary approval by the Court and an opportunity for interested parties to object are not

4

the proposed orders attached as **Exhibits A** and **B**. The Preliminary Approval Orders: (1) preliminarily approve the Settlements; (2) establish final approval procedures – including procedures for providing notice to parties affected by the Settlements, along with an opportunity to object and participate in the final approval hearing; and (3) stay certain actions against the Lawyer Defendants to preserve the *status quo* and reduce the unnecessary dissipation of Receivership assets pending completion of the final approval process. Based on the facts and legal authorities set forth in this Motion, the Settling Parties propose that the Preliminary Approval Orders be entered without a hearing. *See, e.g., SEC v. Ariel Quiros, et al.*, Case No. 16-cv-21301, Doc. 318 (S.D. Fla., April 20, 2017) ("*Jay Peak*") (entering a preliminary approval order adopting a similar, two-step settlement approval process) (copy attached as **Exhibit C**).

*Second*, the Receiver and Investor Plaintiffs request that, after the requirements and procedures of the Preliminary Approval Orders are implemented and met, the Court enter orders substantially in the form and substance as the proposed orders attached as **Exhibits D** and **E,** which will serve as the Court's final orders approving the Settlements and bar all non-governmental claims against the Lawyer Defendants, Davison, and certain Sales Agent Defendants, as further described below. The Settling Plaintiffs and the Settling Defendants (collectively "the Settling Parties") will address any objections to final approval through supplemental briefing filed in advance of the final approval hearing. Investor Plaintiffs' Counsel and Special Counsel for the Receiver ("Receiver Special Counsel") will also submit timely separate applications for Court approval of

---

required for those settlement agreements with Sales Agent Defendants that are not conditioned on the entry of bar orders. Accordingly, the proposed Preliminary Approval Order does not seek preliminary approval or notices for the settlement agreements with the following Settling Sales Agents: MASears, LLC d/b/a Picasso Group, DeAndre Sears, Maria Antonio Sears, REIT Alliance Marketing, LLC, Ernest "Cal" Babbini, Elliott Financial Group, Inc., Todd Elliott, Elliot Financial Advisors, LLC, Greg Talbot, Rokay Unlimited, LLC, Anthony R. Spooner, Seek Insurance Services, LLC, James D. Gray, John E. Friedrichsen, Agents Insurance Sales, Barry Wilken, Barry Neal, Ben Mohr, Ben Mohr LLC, Ben Mohr, Inc., J. Wellington Financial, LLC, and Jason Jodway.

their fee and expense awards. Upon final Court approval obtained in this Action, the Receiver's Lawyer Action and the Investors' Lawyer Action will be dismissed with prejudice, thereby obviating the need for parallel class action settlement proceedings.

Accordingly, the Receiver and Investor Plaintiffs respectfully seek leave (a) to submit the proposed forms of preliminary approval order for the Settlements under Local Rule 3.01(f), and (b) to lodge with the Court the proposed forms of final order approving the Settlements for entry at or following the final approval hearing.

## BACKGROUND

### A. This Action

On February 11, 2020, the Securities and Exchange Commission ("SEC") commenced this Action in this Court against EquiAlt, Davison, Rybicki, and others, alleging that they "conducted a Ponzi scheme raising more than $170 million from over 1,100 investors nationwide, many of them elderly, through fraudulent unregistered securities offerings." [Compl. ¶ 1] The SEC named as additional defendants a number of EquiAlt investment funds (the "EquiAlt Funds") and related entities, and moved for the appointment of a receiver to administer EquiAlt's assets and liabilities. The SEC has alleged that at all relevant times, Davison and Rybicki exercised control over the business operations of EquiAlt and the EquiAlt Funds. [Compl. ¶¶ 4, 37] The SEC further alleges that the EquiAlt Funds "have been operated as a Ponzi scheme almost since their inception." [Compl. ¶ 42]

The SEC asserted claims under the Federal Securities Act for unlawfully selling unregistered securities and for committing securities fraud. *See* 15 U.S.C. §§ 77e(a) and (c) and 77q(a)(1), (2) and (3). The SEC also asserted claims against Davison and Rybicki for violating the anti-fraud provisions of the Exchange Act and Rule 10b-5 promulgated thereunder, control person liability and aiding and abetting the foregoing securities laws violations. *See* 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a), (b) and (c).

*//*

**B. Appointment of the Receiver**

On February 14, 2020, the Court entered its Order appointing Burton W. Wiand as Receiver for EquiAlt (the "Receivership Order"), which directed the Receiver to investigate and institute legal proceedings for the benefit and on behalf of the EquiAlt Receivership Estate and its investors. [Doc. 11][5] The Court on July 8, 2021, furthermore approved the Receiver's establishment of a claims process through which to distribute to the EquiAlt investors the proceeds recovered by the Receiver (the "Receivership Claims Process"). [Doc. 347]

The Receiver is specifically charged to "[t]ake immediate possession of all property, assets and estates of every kind" of the Receivership Estate, including specifically claims against potentially liable third-parties. Doc. 11, at ¶¶ 1, 2. The Court subsequently entered an order authorizing the Receiver to engage Johnson Pope Bokor Ruppel & Burns, LLP as Receiver Special Counsel to investigate and prosecute litigation against the Lawyer Defendants, whom the Receiver suspected of committing torts in connection with Davison and Rybicki's offer and sale of the unregistered EquiAlt securities through the unlicensed Sales Agent Defendants. [Doc. 127][6]

**C. The Investors' Lawyer Action and the Receiver's Lawyer Action**

Meanwhile, the Investor Plaintiffs on July 21, 2020, commenced the Investors' Lawyer Action against the Lawyer Defendants in Florida. The Investors' Lawyer Action was transferred to this Court by order dated July 24, 2020 [*Gleinn* Doc. 7], followed by the filing of an amended complaint on August 3, 2020. [*Gleinn* Doc. 13]

On September 28, 2020, the Receiver opened the Receiver's Lawyer Action as a

---

[5] The "Receivership Estate" has since been expanded to include the following entities: EquiAlt Qualified Opportunity Zone Fund, LP; EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc.; EquiAlt Holdings LLC; EquiAlt Property Management LLC; and EquiAlt Capital Advisors, LLC [Doc. 184, at 6–7] and EquiAlt Fund I, LLC [Doc. 284].

[6] The Receiver and Investor Plaintiffs acknowledge that the allegations in the Amended Complaint in the Investors' Lawyer Action and the complaint in the Receiver's Lawyer Action have not been proven, and that no court has made any findings with respect to the accuracy or inaccuracy of the allegations in these pleadings.

second litigation front against the Lawyer Defendants, initially asserting the Receiver's independent derivative claims against them in California federal court. The Receiver on December 30, 2021, voluntarily refiled those claims in California Superior Court.

Until the settlement was reached with the Lawyer Defendants, the Investors' Lawyer Action was heavily litigated with motions to dismiss fully briefed [*Gleinn* Docs. 63, 73, and 82] and the Motion for Class Certification filed. [*Gleinn* Doc. 129] The parties engaged in significant discovery in that action, including the production and review of over 600,000 pages of documents, discovery motions, and a number of depositions. [*Gleinn* Docs. 88 and 90]

### D. The Joint Prosecution Agreement

Rather than engage in a counterproductive and wasteful competition for potentially limited recovery on behalf of the investors, the Investor Plaintiffs and the Receiver instead entered into the Joint Prosecution Agreement, under which they agreed to pool their efforts and resources and work cooperatively to pursue and maximize recoveries against the Lawyer Defendants. To ensure the efficient and coordinated prosecution of their respective claims, to minimize administration costs, and to avoid needless motion practice, the Investor Plaintiffs and the Receiver specifically agreed that any recoveries in their coordinated actions would be distributed to EquiAlt investors through the Receivership Claims Process, based upon a presumptive 50-50 allocation of the coordinated recoveries. The Joint Prosecution Agreement also allowed the Receiver to receive the fruits of all discovery conducted in the Investors' Lawyer Action, which had progressed to the discovery phase prior to the commencement of discovery in the Receiver's Lawyer Action. The Joint Prosecution Agreement furthermore addressed the sharing of common costs (under which counsel for the Investor Plaintiffs have already advanced some $275,000 and counsel for the Receiver has paid some $25,000).

Any fees or costs to be deducted from the common settlement fund are subject to approval by the Court. Counsel for the Investor Plaintiffs will file a separate application

and supporting documentation seeking Court approval for payment of their attorneys' fees and expenses from the common settlement fund. Receiver Special Counsel, who represent the Receiver pursuant to a contingency fee agreement previously approved by the Court, will file an application seeking Court approval of expenses incurred by Receiver Special Counsel.

### E. The Receiver's Sales Agent Action

The Receiver meanwhile tasked his forensic accountants to identify those EquiAlt sales agents and their associated entities who received substantial "commissions" or "marketing fees" in return for their sales of the EquiAlt securities. Based on this information, the Receiver on February 13, 2021, commenced the Receiver's Sales Agent Action, naming some 37 sales agents and entities as defendants. For their part, the Investor Plaintiffs negotiated tolling agreements with several of the key sales agents. This allowed the Investor Plaintiffs and the Receiver to engage in coordinated negotiations and to pursue side-by-side settlements with several Sales Agent Defendants, concurrently with their prosecution of the Investors' Lawyer Action and the Receiver's Lawyer Action.

### F. The Proposed Settlement Agreement with the Lawyer Defendants

The Receiver, the Investor Plaintiffs, and the Lawyer Defendants spent months negotiating a resolution of the Receiver's and the Investor Plaintiffs' claims, including engaging in multiple mediation sessions under the supervision of nationally renowned JAMS mediator David Geronemus. The Lawyer Defendants were only willing to make the maximum available financial contribution if reasonably assured that they would not need those funds to defend third-party claims by sales agents and others. Specifically, the Lawyer Defendants were only willing to contribute a total payment of $44 million to resolve the claims of the Receiver and the Investor Plaintiffs if the settlement were conditioned on (a) the securing of general releases and covenants not to sue the Lawyer Defendants from the Management Defendants and the Sales Agent Defendants, and (b)

the entry of a bar order protecting the Lawyer Defendants from the commencement or continuation of any actions against them brought by non-governmental plaintiffs relating to EquiAlt.[7] Entry of the proposed bar orders by the Court is thus an essential required term and express condition of the Lawyer Defendant Settlement. Bar orders are routinely sought and granted in this type of complex litigation and in exchange for significant monetary settlements like the Settlements sought to be approved here.

Securing the required releases with a multitude of Sales Agent Defendants and the Management Defendants was a complicated, time-consuming and protracted ordeal that took almost 18 months to accomplish. As explained below, the Receiver, and Investor Plaintiffs have (with several waivers provided by the Lawyer Defendants) successfully obtained all required general releases and covenants not to sue from the Management Defendants and the Sales Agent Defendants through settlement agreements previously and presently submitted for Court approval. Approval of the Settlements now presented is thus an essential required term and express condition of the Lawyer Defendant Settlement.

**G. The Proposed Settlement Agreements with the Sales Agent Defendants**

On March 10, 2022, the Receiver, the Investor Plaintiffs, the SEC, and certain of the Sales Agent Defendants participated in an initial mediation session before highly regarded Florida mediator Howard Tescher. Although substantial progress was made, separate final agreements were achieved only after months of extensive subsequent negotiations with each Sales Agent Defendant, including the production of supplemental, sworn financial information and documentation by certain of the Sales Agent Defendants.

Ultimately, as part and parcel of the voluntary resolution of the Receiver's claw-

---

[7] To date, no federal or state governmental or regulatory body has brought any action against the Lawyer Defendants. The only pending suit against the Lawyer Defendants by any third-party (aside from the Receiver and the Investor Plaintiffs) is the action filed by former sales agent Robert Armijo, as discussed *infra*.

back claims and the Investor Plaintiff's distinct investor claims, through the mediation and through non-mediated negotiations, the Receiver and Investor Plaintiffs successfully reached the Sales Agent Settlements with the Sales Agent Defendants, submitted as **Exhibits J-X**. The precise terms and conditions of each settlement varies depending upon the Sales Agent Defendant's (a) relative degree of culpability, (b) total amount of commissions received, (c) established or anticipated regulatory repayment obligations, (d) overall financial condition, and (e) purported legal or equitable defenses or offsets. Collectively, the remaining Sales Agent Settlement Agreements obtained through the joint efforts of the Arizona Corporation Commission (the "ACC"), the SEC, the Receiver and the Investor Plaintiffs could contribute additional amounts for the benefit of EquiAlt investors, either through the Receivership or the appropriate regulatory agency. However, the amount ultimately realized from the Sales Agent Settlement Agreements is dependent on the financial capacity of the Settling Sales Agents and the collectability of their payment obligations, which in many cases is doubtful.

To induce certain Sales Agent Defendants (specifically, Ronald F. Stevenson, Tim LaDuca, Jason Wootten, Dale Tenhulzen, and their respective related entities) to maximize their voluntary reimbursement payments and to release all their competing claims against the Lawyer Defendants, the Receiver and the Investor Plaintiffs in those instances agreed to seek entry of bar orders protecting them from further third-party claims for which they would otherwise have to (a) reserve funds to defend themselves, or (b) preserve competing indemnity claims against the Lawyer Defendants. Obtaining these bar orders is an essential term of the settlement with each of these Sales Agent Defendants, and in turn an essential term of the settlement with the Lawyer Defendants.

### H. The Remaining Sales Agents

Despite the extensive, unflagging efforts of the Receiver and Investor Plaintiffs, certain sales agents – John Marques; Lifeline Innovations and Insurance Solutions, LLC; Patrick Runninger; The Financial Group, LLC; Robert Armijo aka Bobby Joseph

Armijo; Joseph Financial Investment Advisors, LLC; and Joseph Financial, Inc. (collectively, the "Remaining Sales Agents") – did not sign releases. However, the Lawyer Defendants have agreed to waive the release condition as to the Remaining Sales Agents, so long as the Court (a) approves the Settlement with the Lawyer Defendants and (b) enters the bar order preventing the assertion of claims against the Lawyer Defendants.[8]

## I. The Proposed Settlement Agreement with Davison

As the Court is aware, the SEC earlier moved for entry of final judgment against Management Defendants Davison and Rybicki. [Doc. 353 (Davison); Doc. 526 (Rybicki)]  In granting the SEC's motions, the Court entered consent judgments requiring Davison and Rybicki to turn over virtually all their respective assets to the Receiver for ultimate distribution through the Receivership Estate to the investors. [Doc. 355 (Davison); Doc. 528 (Rybicki)]

The Receiver did not initiate formal litigation against Davison because the recoveries from him in the SEC Action (other than civil penalties) would be channeled and distributed through the Receivership. However, in his settlement with the SEC, Davison specifically carved out from his assignment of assets any claims he might have against the Lawyer Defendants, leaving him free to prosecute claims against them in competition with the Receiver and the Investor Plaintiffs. Because prosecution of such claims by Davison against the Lawyer Defendants would inevitably interfere with the efforts of both the Receiver and the Investor Plaintiffs to recover against the Lawyer Defendants, to satisfy the condition of the Lawyer Defendant Settlement, the Investor Plaintiffs negotiated a separate settlement agreement with Davison through which they

---

[8] The Investor Plaintiffs initiated actions against Robert Armijo, Joseph Financial Investment Advisors LLC and Joseph Financial, Inc. in California Superior Court and in the U.S. District Court for the Middle District of Florida. The Investor Plaintiffs recently dismissed those actions when the Lawyer Defendants agreed to waive the release condition with respect to Mr. Armijo and his affiliated entities pending this Court's approval of the Lawyer Defendant Settlement and entry of a bar order.

have secured the requisite release of his claims against the Lawyer Defendants in return for the entry of a corresponding bar order likewise protecting Davison against any further claims, including any claims by the Lawyer Defendants.

The Receiver fully supports this arrangement because through the SEC settlement he has already taken an assignment of most of Davison's remaining assets. [Doc. 355-1, at 6-9] The Lawyer Defendants have agreed to extend the operative deadline to allow sufficient time for the Davison release, which is conditioned on entry of a bar order, to become effective. Obtaining the Davison bar order is thus again both an essential required term of the settlement with Davison and a condition and essential term of the $44 million settlement with the Lawyer Defendants.

## J. The Related Regulatory Actions

As noted above, either or both the SEC and the ACC have initiated various actions seeking regulatory relief against Davison, against Rybicki, and against certain of the Sales Agent Defendants. While negotiating the Davison Settlement Agreement and the Sales Agent Settlement Agreements, the Receiver and the Investor Plaintiffs were careful to ensure that nothing in the Settlements (including the entry of any of the proposed bar orders) would adversely affect the SEC's independent regulatory authority and objectives. At the same time, to avoid any counter-productive competitive pursuit of the same limited assets, the Receiver and the Investor Plaintiffs agreed to credit payments made to the SEC and/or the ACC in satisfaction of payments due under the Sales Agent Settlement Agreements, since those payments ultimately flow to the benefit of the same set of EquiAlt investors. Nothing in the Settlement Agreements undermines or otherwise dilutes the relief obtained by the SEC and ACC.

## K. Summary

The seventeen legally and factually intertwined Settlements with the Lawyer Defendants, the Sales Agent Defendants, and the Management Defendants (collectively, "the Settling Defendants") are thus the product of extensive, exhaustive, and tightly

coordinated efforts of the Receiver and the Investor Plaintiffs, all designed to afford maximum, cost-effective recoveries for the benefit of EquiAlt investors while protecting Receivership assets from diminishment through potential competing claims against the Lawyer Defendants.

## APPLICABLE LEGAL STANDARD

The Court's power to supervise an equity receivership and to determine the appropriate actions to be taken in the administration of the receivership is extremely broad. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566. A court imposing a receivership assumes custody and control of all assets and property of the receivership, and it has broad equitable authority to issue all orders necessary for the proper administration of the receivership estate. *See SEC v. Credit Bancorp Ltd.*, 290 F.3d 80, 82-83 (2d Cir. 2002); *SEC v. Wencke*, 622 F.2d 1363, 1370 (9th Cir. 1980). The court may enter such orders as may be appropriate and necessary for a receiver to fulfill his duty to preserve and maintain the property and funds within the receivership estate. *See, e.g., Official Comm. Of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006).

A district court therefore has the power to approve a settlement proposed by a receiver that is fair, adequate, and reasonable, and is the product of good faith negotiations after an adequate investigation by the receiver. *Sterling v. Steward*, 158 F.3d 1199 (11th Cir. 1998). The same standard generally applies to approval of settlements proposed by plaintiffs in class action proceedings asserting securities fraud claims. *See* Fed. R. Civ. P. 23(e)(2). "Determining the fairness of the settlement is left to the sound discretion of the trial court and ***we will not overturn the court's decision absent a clear showing of abuse of that discretion***." *Id.* at 1202 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (emphasis supplied)).

A district court also has the power to enter an order preliminarily staying and

permanently enjoining third parties from bringing any claims against a settling party that could have been asserted by or through the receivership or in connection with any of the facts giving rise to the receivership – often referred to as a "bar order." *SEC v. Quiros*, 966 F.3d 1195, 1199–1200 (11th Cir. 2020); *see, e.g., SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (approving bar order in SEC receivership). Bar orders are often necessary "to assist the parties in reaching a settlement," where (1) "essential" to the settlement and (2) "fair and equitable, with an eye toward the effect on the barred parties." *Quiros*, 966 F.3d at 1199 (citing, *e.g., Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) (approving a bar order in a bankruptcy case)). Entry of a bar order is reviewed for an abuse of discretion. *Quiros,* 766 F.3d at 1199.

Finally, the powers of the Court over the Receivership include the fixing of procedures for the approval of the proposed settlement, as long as due process is afforded to affected persons. *See Elliott*, 953 F.2d at 1566.

## LEGAL ARGUMENT

### L. Each of the Settlements is Fair, Adequate, and Reasonable

To approve a settlement in an equity receivership, the district court must find the settlement is fair, adequate, and reasonable, and is not the product of collusion between the parties. *See Sterling*, 158 F.3d at 1203. To determine whether the settlement is fair, courts examine the following factors: "(1) the likelihood of success; (2) the range of possible [recovery]; (3) the point on or below the range of [recovery] at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id.* at 1203 n.6 (citing *Bennett*, 737 F.2d at 986).

Here, application of the *Sterling* factors undeniably weighs heavily in favor of approval. The Receiver and the Investor Plaintiffs have for more than two years jointly and diligently investigated and prosecuted all claims filed against the Lawyer

Defendants, the Management Defendants, and the Sales Agent Defendants. Before entering into the settlements, the Receiver and the Investor Plaintiffs – through the coordinated efforts of their respective highly experienced counsel – carefully considered and dutifully investigated, analyzed, and evaluated their potential claims with the benefit of discovery; the defenses that would be asserted to those claims and the risks attendant to those defenses; the delay and expense of prosecution of such claims; the uncertainty of outcome in any such litigation; the possibility and risks of appeal of any adverse outcome; and the ultimate collectability of any judgments obtained against the Settling Defendants. That investigation and evaluation revealed that the potential claims against the Settling Defendants without exception involved contested and hotly disputed facts and legal defenses that would require very substantial time and expense to litigate, with significant uncertainty as to the outcome of such litigations and any ensuing appeals and the collectability of any judgments if obtained. Throughout the related litigations, pre-litigation demands, and resulting settlement negotiations, the Settling Defendants were likewise represented by extremely accomplished defense counsel, underscoring the risk of litigation in terms of time, expense, and uncertainty of outcome. *See, Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement[.]").

The Settlements were furthermore only executed after extensive, arm's length mediations and negotiations conducted between the parties in good faith. *See, e.g., Poertner v. Gillette Co.,* 14-13882, 2015 WL 4310896, *6 (11th Cir. 2015) (affirming approval of class action settlement, noting the parties' arm's-length negotiations moderated by an experienced mediator); *Lee v. Ocwen Loan Servicing, LLC,* No. 14-CV-60649, slip op. at 25-26 (S.D. Fla. Sept. 14, 2015) (approving settlement and noting that parties' use of a highly respected mediator supported the conclusion that the settlement was not the product of collusion); *Hamilton v. SunTrust Mortg. Inc.,* No. 13-60749-CIV,

2014 WL 5419507, at *2 (S.D. Fla. Oct. 24, 2014) (noting that the fact that the settlement occurred following significant litigation, considerable document discovery, and months of negotiations with the help of a well-respected mediator supported approval of class action settlement). In addition to the mediation with the Lawyer Defendants overseen by David Geronemus, the Receiver, the Investor Plaintiffs, and the SEC participated in two different mediations and follow up sessions before Howard Tescher to negotiate settlements with many of the EquiAlt sales agents. During negotiations and in preparation for mediations, the parties exchanged extensive substantive legal analysis of the parties' potential claims and defenses. Settlements with most of the Sales Agent Defendants were ultimately achieved through the mediations before Mr. Tescher and separate arms' length negotiations.

The Receiver and the Investor Plaintiffs thus carefully analyzed the range of potential recovery against the Settling Defendants, balanced against the risks and costs associated with continued litigation. The claims of the Investor Plaintiffs and the Receiver against the Lawyer Defendants involve vigorously contested legal and factual disputes that would require substantial time and expense to litigate, with attendant uncertainty as to the outcome of such litigation and any ensuing appeal. Moreover, continued litigation among the Receiver, the Investor Plaintiffs, and the Lawyer Defendants will substantially delay any potential recovery to EquiAlt investors.[9] Furthermore, the settlements reached by the SEC, the Receiver and the Investor Plaintiffs with Davison and Rybicki resulted in the turnover by Davison and Rybicki to the Receiver of virtually all meaningful assets held by them. Thus, entry of a bar order in Davison's favor forgoes nothing, while clearing the path to the $44 million contribution secured from the Lawyer Defendants.

The Receiver at the same time asserted fraudulent transfer and unjust enrichment

---

[9] The Receiver's Lawyer Action and the Investors' Lawyer Action have both been stayed while the conditions precedent to the executed Lawyer Defendant Settlement have been satisfied by the Receiver and Investor Plaintiffs.

claims against the Sales Agent Defendants, while the Investor Plaintiffs threatened or filed direct securities laws claims against them. The Receiver sought to recover the commissions paid by EquiAlt to the Sales Agent Defendants, while the Investor Plaintiffs demanded statutory damages generally equal to the principal amount of the EquiAlt debentures they sold, plus statutory interest. The settlements reached by the SEC, the ACC, the Receiver, and the Investor Plaintiffs with the Sales Agent Defendants resulted in the agreement to repay all or a portion of sales commissions subject to the agents' varying degrees of financial capacity, while simultaneously and more importantly clearing the way for the $44 million settlement with the Lawyer Defendants.

In short, the Settlements collectively provide an undeniable, substantial benefit to the Receivership Entities and thereby to every EquiAlt investor, and as such are unquestionably fair, adequate, and reasonable, and the product of good faith after an adequate investigation by the Receiver and the Investor Plaintiffs. *See, e.g., SEC v. Alleca,* No. 1:12-CV-03261-ELR, 2021 WL 4843987, at *12 (N.D. Ga. Sept. 9, 2021) (approving receiver's proposed settlement under the *Sterling* factors); *SEC v. 1 Glob. Cap. LLC*, No. 18-CV-61991, 2018 WL 8050527, at *3 (S.D. Fla. Dec. 27, 2018) (same). The funds generated by the Settlements are expected to help fill the shortfall between (a) all allowed investor principal losses, plus interest, and (b) the funds currently in the Receivership estate.

### M. Entry of the Preliminary Approval Orders Is Appropriate and Warranted

The proposed forms of Preliminary Approval Orders (**Exbibit A** and **B**) are consistent with those typically entered in connection with the recognized two-step approval process. *See, e.g., Jay Peak* [Preliminary Approval Order, Doc. 318], copy attached as **Exhibit C**. The Preliminary Approval Orders address the provision of notice regarding the proposed Settlements involving bar orders, and set dates for fee and/or expense applications by the Investor Plaintiffs and Special Counsel, for objections, and for further briefing in response to any objections.

The proposed Preliminary Approval Orders also include a provision that would stay all pending actions against the Lawyer Defendants relating to EquiAlt. **Exhibit A**, ¶ 2. *See generally, SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) (recognizing the District Court's authority to enter anti-litigation injunctions where necessary to prevent interference with administration of the receivership estate); *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1195 (10th Cir. 2010) (discussing need for stay of related actions where litigation would affect receivership's distribution). At this time, the only known such action by a third-party (the "Armijo Action") has been brought by a former EquiAlt sales agent, Robert J. Armijo ("Armijo"). Armijo is the only sales agent with substantial sales who refused to release his purported claims against the Lawyer Defendants. Armijo contends the Lawyer Defendants are liable for his offer and sale of the unregistered EquiAlt securities,[10] even though (a) he was never a client of the Lawyer Defendants, (b) he did not even purport to discuss the offering with Wassgren until years after he started selling EquiAlt securities and received hundreds of thousands of dollars in sales commissions, and (c) any such claims are long-since time-barred. Armijo has meanwhile voluntarily submitted to this Court's personal jurisdiction by filing a claim for some $14 million against the Receivership Estate. In the Receiver's forthcoming claim determination motion, he will be recommending that the Court deny Armijo's claim.[11]

The stay provisions of the Preliminary Approval Order pertaining to the Lawyer Defendants are an appropriate means to briefly pause the Armijo Action (and any other such actions) pending the Court's consideration of the bar order necessary under the Lawyer Defendant Settlement to generate the payment of funds and the inter-related releases of claims required thereunder. Here, as in *Jay Peak*, such continuing actions

---

[10] Armijo has sued the Lawyer Defendants in state court in California, an action which the Lawyer Defendants have removed to federal court and have moved to transfer to this District pursuant to 28 U.S.C. § 1404(a).

[11] The Receiver has furthermore filed suit against Armijo, seeking to recover approximately $1.4 million in commissions paid to Armijo for the unlawful offer and sale of the unregistered EquiAlt securities.

threaten the Settlement because the claims asserted by Armijo are interrelated to those asserted against the Lawyer Defendants by the Investor Plaintiffs and the Receiver. Indeed, much of Armijo's complaint was plainly cribbed directly from the Investor Plaintiffs' complaint. *Compare, e.g.,* **Exhibits F** & **G**.[12] In addition, continued prosecution of claims against the Lawyer Defendants necessarily distracts from the Settling Parties' efforts to resolve all matters, while also increasing litigation fees and costs on all sides – including the Receivership Estate, thereby harming investors and creditors with valid claims.

### N. Entry of the Bar Orders Is Appropriate and Warranted

In addition to approving the Settlements, the proposed forms of final order submitted by the Receiver and Investor Plaintiffs contain bar orders consistent with the provisions of the settlement agreements with the Lawyer Defendants and certain Sales Agent Defendants. **Exhibits D** & **E**; *see also, e.g., SEC v. Ariel Quiros, et al.*, Case No. 16-cv-21301, Doc. 353 (S.D. Fla., June 30, 2017) (copy of final order attached as **Exhibit H**); *see generally, U.S. Oil and Gas Lit.,* 967 F.2d 489, 494 (11th Cir. 1992) ("[B]ar orders play an integral role in facilitating settlement. Defendants buy little peace through settlement unless they are assured that they will be protected against … other causes relating to the underlying litigation.").

Federal courts overseeing receiverships have regularly entered bar orders to facilitate settlement. *SEC v. DeYoung*, 850 F.3d 1172, 1182 & 1183 n.5 (10th Cir. 2017) (affirming the entry of a bar order to maximize the value of settlement to the receivership estate; collecting cases where similar bar orders were approved by federal courts); *Kaleta*, 530 F. App'x at 362 (entering bar order and injunction in an SEC receivership proceeding where necessary and appropriate as "ancillary relief" to that proceeding); *Gordon v.*

---

[12] The Court may take judicial notice of the respective complaints, which are offered to show the high degree of interrelatedness, not for the truth of the matter alleged within those pleadings. *DeBose v. Ellucian Co., L.P.*, 802 F. App'x 429, 434 (11th Cir. 2019); *Bakov v. Consol. Travel Holdings Grp., Inc.*, No. 19-CV-61509-WPD/SNOW, 2020 WL 9934410, at *1, n.1 (S.D. Fla. Apr. 9, 2020).

*Dadante*, 336 F. App'x 540, 542 (6th Cir. 2009) (approving a settlement that was conditioned on the entry of a bar order). District courts have the power to enter bar orders in equity receiverships where necessary or appropriate as ancillary relief in the context of the underlying action, including injunctions against non-parties as part of settlements in the receivership. *Kaleta*, 530 F. App'x at 362. The Receiver has in fact used this same procedure multiple times in this Court in similar cases involving entities operated as alleged fraudulent Ponzi schemes. *See, e.g., Wiand v. Stoel Rives LLP, et al.*, Case No: 8:16-cv-1133-T-36JSS (M.D. Fla.); *SEC v. Nadel et al.*, Case No. 8:09-cv-87-T-26TBM (M.D. Fla.) (same).

Under Eleventh Circuit jurisprudence, a bar order may be entered to facilitate a receivership settlement so long as the bar order is (1) "fair and equitable" under the circumstances presented, and (2) "integral" to the settlement, in the sense that the parties would not resolve their dispute without its entry. *Quiros,* 966 F.3d at 1199–1200; *Alleca*, 2021 WL 4843987, at *12.

Here, there can be no doubt that the voluntary resolutions achieved through those Settlements requiring bar orders are in each instance fair, equitable, and in the best interests of the Receivership and the EquiAlt investors. Without the bar orders, the Lawyer Defendants are unwilling to pay the $44 million to fund the Lawyer Defendant Settlement. It is doubtful they would even be willing to settle without the protection of a bar order, and even if they were willing to do so, they would no doubt insist that funds be reserved to defend and/or pay potential claims against them by third-parties, including Davison, Armijo, and the Settling Sales Agents. Absent a settlement with Davison, the Investor Plaintiffs would potentially be mired in time-consuming and expensive class action litigation with Davison – with very slim prospects for additional recoveries given the Final Judgment in this Action already requiring Davison to turn over to the Receiver the lion's share of his assets. Also, without the bar orders, Davison and the larger Sales Agent Defendants would have likewise demanded a holdback of

settlement funds and the preservation of their claims against the Lawyer Defendants, for fear that they would be sued by non-settling investors – leaving the Receiver the prospect of continued time-consuming and expensive litigation without any certainty of outcome. *See Seaside Eng'g*, 780 F.3d at 1079 (bar order appropriate to stop the depletion of estate assets expended in litigation).

The Settlements (and the bar orders entered pursuant thereto) are also in the best interests of investors because they represent a substantial recovery to the Receivership estate without the expense and risk of litigation, thereby compensating investors with approved claims through the Receivership Claims Process. *See Kaleta*, 530 F. App'x at 362 (investors may "pursue their claims by participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate") (alteration in original; internal quotations omitted); *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 903 (5th Cir. 2019) (rejecting third party's argument that "bar order deprived them of their property (that is, their claims) without due process and without just compensation" because "the bar orders channel investors' recovery associated with [the settling parties] through the receivership's distribution process"); *DeYoung*, 850 F.3d at 1182-83 (same). As the Fifth Circuit recognized in *Zacarias*, a bar order is often necessary to prevent self-interested objectors from circumventing the orderly process of a receivership: "Allowing investors to circumvent the receivership would dissolve this orderly process – circumvention that must be foreclosed for the receivership to work. It was no abuse of discretion for the district court to enter the bar orders to effectuate and preserve the coordinating function of the receivership." 945 F.3d at 902.

Moreover, the entry of a bar orders is expressly made "integral" to every settlement reached with those Settling Defendants who demanded them, in the sense that the settling parties could not resolve their disputes without entry of the bar orders and the primary interrelated settlements are expressly conditioned on entry of the bar orders. *See U.S. Oil and Gas Lit.*, 967 F.2d at 494-95 (approving bar order deemed

"integral" to approved settlement); *contrast, Quiros*, 766 F.3d at 1199 (disapproving bar order that was not "essential" to resolving the underlying litigation). First, the Lawyer Defendant Settlement is explicitly dependent upon the entry of a bar order approved by the Court and upheld on appeal (if any). **Exhibit I**, at § II.B.4 ("If the Claimant Settling Parties do not secure the Bar Order, or if the Respondent Settling Parties determine that any material modification of the Bar Order by the district court in the Action is unsatisfactory, invalid, or unenforceable, in whole or in part, then this Agreement will terminate and the entire Settlement will be null and void."). Likewise, the settlement agreements with those Sales Agent Defendants contemplating the entry of a bar order expressly provide: "Should the Court decline either to approve the Settlement Agreement or to enter the requested Bar Order, unless the Parties in writing agree otherwise, this Settlement Agreement (and any exhibit executed thereunder) will be deemed void *ab initio* and the Parties returned to their status *quo ante*." *See,* **Exhibits J- M**, ¶ 4.

The bar order required by the Davison Settlement Agreement is no less "integral" to both the Davison settlement ***and*** the Lawyer Defendant Settlement. As explained above, in his Assignment with the Receiver, Davison had expressly carved out and preserved his competing claims against the Lawyer Defendants. The Investor Plaintiffs were keenly aware that, no matter how remote the prospects might be for successful litigation of those claims, the continued viability of such claims by Davison posed a significant obstacle to the Investor Plaintiffs' ability to maximize their recovery on their claims against the Lawyer Defendants in the Investors' Lawyer Action. Yet Davison refused to release his claims against the Lawyer Defendants absent a comparable bar order eliminating the risk that he might have to assert those claims if sued by a non-settling party. Consequently, the Davison Settlement Agreement explicitly provides: "Should the Court decline to enter the Bar Order…as to Davison, unless the Parties in writing agree otherwise, the Settlement Agreement…will be deemed void *ab initio* and the Parties returned to their *status quo ante*." **Exhibit Y**, ¶ 2. Moreover, entry of the

Davison bar order is at the same time integral to the $44 million Lawyer Defendant Settlement, the effectiveness of which is conditioned on the Davison release, which as just noted is itself conditioned on entry of the Davison bar order.

### O. The Proposed Notice, Summary Notice and Final Approval Process Is Appropriate and Warranted

"Due process requires notice and an opportunity to be heard." *Elliott*, 953 F.2d at 1566. The procedures required to satisfy due process vary "according to the nature of the right and to the type of proceedings." *Id.* "[A] hearing is not required if there is no factual dispute." *Elliott*, 953 F.2d at 1566. Ultimately, due process requires procedures that are "fair." *Id.*; *see also, e.g., Harmelin v. Man Fin. Inc.,* No. CIV.A. 05-2973, 2007 WL 4571021, at *4 (E.D. Pa. Dec. 28, 2007) (notice of bar order provided to all investors before court approved settlement); *Gordon*, 336 F. App'x at 544 (court entered order providing interested parties with opportunity to "comment" on settlement reached by equity receiver with broker/dealer and request for bar order).

Here, the Proposed Notice sets forth the terms of the Settlements requiring bar orders and advises the recipients that they may object or otherwise respond to this Joint Motion in writing within 30 days from the date of the Notice, and provides notice that the final approval hearing date will occur 30 days later. As such, the Proposed Notice will provide all known potential claimants with actual notice of – and the opportunity to object to – approval of those Settlements and entry of the respective bar orders.

The Parties propose the issuance of the agreed-upon forms of notice (the "Proposed Notice") to all persons and entities whose interests are conceivably affected by the Court's approval of those Settlements conditioned on the entry of bar orders. *See* attached **Exhibit Z**. In addition, the Parties propose that the Receiver publish a summary notice (the "Proposed Summary Notice") once in **USA Today, The Tampa Bay Times, The Arizona Republic, The San Francisco Chronicle, and the Los Angeles Times.** *See* attached **Exhibit AA**. Through this process, the Parties will provide notice of the proposed settlements in the form of: (1) actual notice to the investors in EquiAlt and to potential

24

other parties the Receiver believes have liability to Receivership Entities or claims against the Settling Defendants, and (2) publication notice to all other interested parties.

**P. Proposed Settlements Approval Schedule.**

The Parties propose that the following deadlines be set forth in the Preliminary Approval Orders:

| | |
|---|---|
| Dissemination of Proposed Notice | Complete Within 10 Days After Entry of Preliminary Approval Orders |
| Deadline for Objections to Settlements | 30 Days Before Final Approval Hearing |
| Deadline for Responses to Objections to Settlements | 14 Days After Filing Of Objections to Settlements |
| Final Approval Hearing | To Be Ordered By The Court |

## CONCLUSION

For the foregoing reasons, the Receiver and the Investor Plaintiffs respectfully request (a) that the Court grant their Joint Motion, and enter the proposed forms of Preliminary Approval Orders, and (b) following further briefing and the final hearing, entering the proposed Final Approval Orders, approving the Settlements as fair and reasonable, entering the respective bar orders, and approving the fee awards to Special Counsel and to counsel for the Investor Plaintiffs.

## RULE 3.01 CERTIFICATION

Counsel for the Receiver and for the Investor Plaintiffs have conferred with counsel for the Settling Defendants, and are authorized to represent to the Court that there are no objections from them to the relief requested in this Joint Motion. Further, counsel for the SEC has stated that the SEC does not object to the relief sought herein.

Dated: January 5, 2023.

Respectfully submitted,

/s/ *Katherine C. Donlon*
Katherine C. Donlon, FBN 0066941
kdonlon@jclaw.com
**Johnson, Cassidy, Newlon & Decort P.A.**
3242 Henderson Blvd., Ste 210
Tampa, FL 33609
Telephone: (813) 291-3300

and

Jared J. Perez, FBN 0085192
jared.perez@jaredperezlaw.com
**Law Office of Jared J. Perez**
301 Druid Rd. W
Clearwater, FL 33759
Telephone: (727) 641-6562

and

R. Max McKinley, FBN 119556
mmckinley@guerraking.com
**Guerra King P.A.**
The Towers at Westshore
1408 N. Westshore Blvd., Ste. 1010
Tampa, FL 33607
Telephone: (813) 347-5100

***Attorneys for Receiver Burton W. Wiand***

/s/ *Guy M. Burns*
Guy M. Burns
Scott Ilgenfritz
**Johnson Pope Bokor Ruppel & Burns, LLP**
401 East Jackson Street, Ste. 3100
Tampa, FL 33602

***Special Counsel for Receiver***

By: /s/ Andrew S. Friedman

Andrew S. Friedman (admitted *pro hac vice*)
afriedman@bffb.com
Francis J. Balint, Jr. (admitted *pro hac vice*)
fbalint@bffb.com
**Bonnett Fairbourn Friedman & Balint, PC**
7301 N. 16th Street, Suite 102
Phoenix, Arizona 85020
Telephone: (602) 274-1100

Adam M. Moskowitz, Esq.
Fla. Bar No. 984280
Adam@moskowitz-law.com
Howard M. Bushman
Fla. Bar No. 0364230
Howard@moskowitz-law.com
**The Moskowitz Law Firm, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, Florida 33134
Telephone: (305) 740-1423

Gayle M. Blatt (admitted *pro hac vice*)
gmb@cglaw.com
**Casey Gerry Schenk Rancavilla Blatt & Penfield, LLP**
110 Laurel Street
San Diego, California 92101
Telephone: (619) 238-1811

Jeffrey Sonn
Fla Bar No. 773514
jsonn@sonnlaw.com
**Sonn Law Group PA**
One Turnberry Place
19495 Biscayne Blvd., Suite 607
Aventura, Florida 33180
Telephone: (305) 912-3000

*Counsel for Investor Plaintiffs*

# APPENDIX A

| Settling Defendant(s) | Exhibit | Gross Financial Contribution | Release of Lawyer Defendants |
|---|---|---|---|
| DLA Piper LLP (US), Fox Rothschild LLP, and Paul Wassgren | **I** | $44,000,000.00 | -- |
| Ronald F. Stevenson Barbara Stevenson American Financial Security, LLC American Financial Investments, LLC | **J** | $520,657.00 [offset to extent payment made through to SEC & ACC], plus release of $204,367.90 in claims filed with the Receivership Estate | X |
| Tim LaDuca Marketing Dynamics Inc. | **K** | $84,216.95 [offset by payment made to clients through ACC] | X |
| Jason Wootten Family Tree Estate Planning, LLC | **L** | $1,105,054.00 [offset to extent payment made through to SEC & ACC] | X |
| Dale Tenhulzen Live Wealthy Institute, LLC | **M** | $____**TBD**_____ [offset to extent payment made through to SEC], plus release of $53,050.00 in claims filed with the Receivership Estate | X |
| DeAndre Sears, Maria Antonio Sears MASears LLC dba Picasso Group | **N** | $1,321,165.00 [offset to extent payment made to SEC] | X |

| Settling Defendant(s) | Exhibit | Gross Financial Contribution | Release of Lawyer Defendants |
|---|---|---|---|
| Todd Elliott<br>Elliott Financial Group, Inc.<br>Elliott Financial Advisors, LLC | O | $805,662.68<br>[offset to extent payment made through to ACC] | X |
| Anthony Spooner<br>Rokay Unlimited, LLC | P | $744,158.70<br>[offset to extent payment made through to ACC] | X |
| James Gray<br>Seek Insurance Services LLC | Q | $309,428.75<br>[offset to extent payment made through to ACC] | X |
| Ernest C. Babbini<br>REIT Alliance Marketing, LLC | R | $68,384.28,<br>plus release of $32,000.00 claim filed with the Receivership Estate | X |
| Barry Neal | S | $5,951.86, plus release of $25,000.00 claim filed with the Receivership Estate | X |
| Greg Talbot | T | $13,047.09 | X |
| Barry Wilken<br>Agents Insurance Sales | U | $12,304.97, plus release of $175,612.46 in claims filed with the Receivership Estate | X |
| Ben Mohr<br>Ben Mohr, LLC<br>Ben Mohr, Inc. | V | $5,678.90 | X |
| John Friedrichsen | W | $15,784.08, plus release of $242,541.04 in claims filed with the Receivership Estate | X |

| Settling Defendant(s) | Exhibit | Gross Financial Contribution | Release of Lawyer Defendants |
|---|---|---|---|
| Jason Jodway J. Wellington Financial, LLC | **X** | $2,500.00 | X |
| Brian Davison | **Y** | Davison's release of the Lawyer Defendants; all assets previously assigned to the Receivership | X |