## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

     **Plaintiff,**

**v.**                                        **Case No. 8:20-cv-325-MSS-MRM**

**BRIAN DAVISON, et al.,**

     **Defendants, and**

**128 E. DAVIS BLVD. LLC, et al.,**

     **Relief Defendants.**

_____/

### DAVISON'S RENEWED MOTION TO ALTER OR AMEND THE FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)(1) AND 60(b)(5) AND MEMORANDUM IN SUPPORT

Brian Davison, pursuant to Fed. R. Civ. P. 60(b)(1) and 60(b)(5) and Middle District Local Rule 3.01(c), renews his motion to alter or amend the Final Judgment (Doc. 355-1). The financial aspects of the Final Judgment have been satisfied within the meaning of Rule 60(b)(5) as **the Receiver has admitted recovering more than the full amount of the SEC's judgment from assets turned over by Davison**.[1]

---

[1]     On August 15, 2022, the Receiver admitted that **"[t]he net proceeds from the sale of assets turned over to the Receiver by Davison exceed the sum of $27,013,060."** Receiver's Responses and Objections to Davison's First Request for Admissions (Doc. 632-1, No.3) (emphasis added). In addition, as of August 15, 2022, the Receiver still had other property turned over by Davison in his possession. Receiver's Responses and Objections to Davison's First Interrogatories (Doc. 632-2, No.7).

Alternatively, the Final Judgment should be amended to change the requirement for Davison to turn over 480 platinum coins and 61 gold coins to 480 silver coins and 58 gold coins as a result of a mistake within the meaning of Rule 60(b)(1). In either event, the Judgment's Asset Freeze should be lifted. (Doc. 355-1 at 11).

The issue raised in this Motion and in the Receiver's Verified Motion for an Order to Show Cause why Brian Davison Should Not be Held in Contempt for Failure to Comply with the Court's Orders (Doc. 587), is that Davison turned over 58 instead of 61 gold American Eagle coins and turned over a set of 480 coins that were silver instead of platinum.[2] If Davison's Renewed Motion to Alter or Amend the Final Judgment is granted, the Receiver's Renewed Motion for an Order to Show Cause must be denied.

## I.    SUMMARY OF PROCEEDINGS TO DATE.

The recently filed Joint Motion of Receiver and Investor Plaintiffs for Preliminary and Final Approval of Proposed Settlements (Doc. 760) (the "Settlement Motion") describes the background of this case. "On February 11, 2022, the Securities and Exchange Commission ('SEC') commenced this Action in this Court against EquiAlt, Davison, Rybicki, and others, alleged that they 'conducted a

---

[2]    The Receiver's Motion was denied without prejudice by Judge McCoy's Text Order dated November 9, 2022 (Doc. 708) and pursuant to consultation with counsel for the Receiver, that Motion will be renewed by the Receiver.

Ponzi scheme raising more than **$170 million** from over 1,100 investors nationwide, many of them elderly, through fraudulent unregistered securities offerings.'" (*Id*., p.6) (emphasis added).

Despite the near constant repetition of the "Ponzi Scheme" refrain in the Receiver's filings; the Receiver's Quarterly Status Reports and the Settlement Motion reveal that as of September 30, 2022, the Receiver had:

    a. Nearly $71,000,000 in cash (Receiver's Eleventh Quarterly Status Report, Doc. 706, p.4);

    b. Assets sold or under contract he expects to produce another $31,671,000 in gross proceeds (Receiver's Eleventh Quarterly Status Report, Doc. 706, pp.9-12);

    c. nearly 200 remaining real estate properties (Receiver's Eleventh Quarterly Fee Application, Doc. 710, p. 9), worth an average of at least $300,000 for a total of $60,000,000 (that should have been sold into a rising market instead of into the current declining market)[3];

    d. a $44,000,000 settlement with the law firm defendants (Settlement Motion, Doc. 760);

---

[3]    The Receiver's Eleventh Quarterly Status Report, (Doc. 706), does not offer a valuation of the remaining EquiAlt properties. Available data shows the median sale price of homes in Tampa for December 2022 was $375,000. https://www.redfin.com/city/18142/FL/Tampa/housing-market (checked January 17, 2023). Davison believes the $300,000 average value stated above for EquiAlt properties to be conservative.

e.  an additional $5,457,147.76 in settlements with Selling Agents that are subject to certain offsets and may be of questionable collectability (*Id.*, pp.28-30, App. A); and,

f.  other assets including interests in two (2) breweries the Receiver has represented to the Court will have substantial value to the Receivership Estate[4] and which he believes "are becoming more valuable."[5]

Adding nothing for the potentially greater value of the remaining EquiAlt real estate, the additional settlements with Selling Agents or the Brewery Interests discussed below, **the Receiver's filings show Receivership assets of at least $206,671,000, even after paying the costs to operate the EquiAlt business since February 2020 and paying approximately $4,000,000[6] to the Receiver and his professionals**.[7]

---

[4]    Receiver's Sixth Quarterly Status Report (Doc. 352, pp.25-26).

[5]    (Receiver's Eleventh Quarterly Status Report, Doc. 706, p.17). Davison has been unable to find any document in which the Receiver has assigned specific values to the brewery interests. The Receiver has stated that Commerce Brewing "company's operations are stabilizing and the Receiver is optimistic regarding the progress of this asset." (Receiver's Sixth Quarterly Status Report, Doc. 352, pp.25-26). (*Id.*) The Receivership owns the building leased to Commerce Brewing and a 20% equity interest in the company. (*Id.*) As to Bolero Snort, the Receivership owns a 5% equity interest in the brewery business and owns the building leased by the brewery. (*Id.*) The Receiver is "optimistic" about both assets. (*Id.*)

[6]    The total through the Order Granting the Tenth Fee Application is $3,939,085.48. (*See* Doc. 172, p.2; Doc. 230, p.3; Doc. 260, p.3; Doc. 288, p.3; Doc.391, p.3; Doc. 426, p.3; Doc. 570, p.3, Doc. 578, p.3; Doc. 586, p.3; and Doc. 731, p.3). The Receiver's Eleventh Quarterly Fee Application (Doc. 710) seeks an additional $477,991.92 for time through 9/30/22. (*Id.* at 42-43).

[7]    The Receiver and counsel for the Investor Plaintiffs have or will seek leave of Court to pay approximately $10,000,000 in legal fees and costs related to the Law Firm settlement.

## II.     RULES 60(b)(1) AND 60(b)(5) ENTITLE DAVISON TO RELIEF.

Rule 60 provides that on motion and just terms, the court may relieve a party from a final judgment, for, "(1) mistake, inadvertence, surprise, or excusable neglect;" or "(5) the judgment has been satisfied, released, or discharged . . . ." Fed. R. Civ. P. 60(b). Both grounds apply to the Final Judgment against Davison.

This Court's decision on Davison's Motion under Rule 60(b) is reviewed for an abuse of discretion. *High v. Zant*, 916 F.2d 1507, 1509 (11th Cir.1990). Legal conclusions are reviewed *de novo* and factual findings for clear error. *Young v. New Process Steel, LP*, 419 F.3d 1201, 1203 (11th Cir.2005); *Reynolds v. McInnes*, 338 F.3d 1221, 1226 (11th Cir.2003). *see also AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 579 F.3d 1268, 1270 (11th Cir. 2009) (affirming trial court's grant of Rule 60 relief based on proof of payment of a portion of the final judgment), *rehearing & rehearing en banc denied*, 400 Fed. Appx. 551 (11th Cir.), *cert. denied*, 560 U.S. 905 (2010).

### A. The Amount Due under the Final Judgment has been Recovered

Davison has satisfied the financial terms of the Final Judgment within the meaning of Rule 60(b)(5). No final judgment gives a party the right to recover more than the amount of the judgment. The Court entered a Final Judgment against Davison on August 6, 2021. (Doc. 355-1). The Final Judgment, based on a consent agreement between Davison and the SEC, found that:

> Davison is liable to the Commission for disgorgement of $24,600,000, representing net profits gained as a result of the conduct alleged in the Amended Complaint, together with prejudgment interest on disgorgement of $913,060, and a civil penalty of $1,500,000 pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act, **for a total of $27,013,060**.

(Doc. 355-1 at 6) (emphasis added).

The Receiver's discovery responses admit he has obtained net proceeds of sale from assets Davison turned over in excess of $27,103,060; the total amount due under the Final Judgment, and still has additional assets turned over by Davison in his possession. Under controlling Fifth and Eleventh Circuit cases, that fact entitles Davison to a satisfaction of the financial aspects of the Final Judgment.

In *AIG Baker Sterling Heights,* a landlord-tenant dispute was arbitrated pursuant to the terms of a lease. The landlord claimed the tenant owed it for unpaid rent and unpaid property taxes. At the arbitration, the tenant presented no proof of having paid the taxes. After an award of over $800,000 against it (over $225,000 of which was for unpaid taxes), the tenant discovered that it had directly paid the taxing authority part of that sum. The trial court initially entered an order modifying the arbitration award to deduct the taxes paid by the tenant. That order was reversed on appeal.

The trial court then entered a final judgment for the full amount of the arbitration award, and separately granted the tenant relief from a portion of the final

judgment under Rule 60(b)(5) on grounds it had been satisfied by the tenant's direct payment of the taxes. The Eleventh Circuit affirmed the trial court's decision.

> Under Rule 60(b), a court may relieve a party from a judgment if "the judgment has been satisfied, released, or discharged ...." Fed.R.Civ.P. 60(b)(5). This authority encompasses the power to declare a judgment satisfied "when damages are paid before trial or a tortfeasor or obligor has paid the judgment debt." *Gibbs v. Maxwell House, A Div. of Gen. Foods Corp.,* 738 F.2d 1153, 1155 (11th Cir.1984).

579 F.3d at 1272. The Court went on to discuss two pre-*Bonner* cases from the Fifth Circuit, which remain binding precedent in the Eleventh Circuit.

In *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir. 1955), a final judgment was entered against a defendant who allegedly failed to make one of eighteen payments due on a truck trailer. After entry of the judgment, the defendant secured copies of documents that conclusively proved he had made the disputed payment and moved for relief under Rule 60(b). The trial court denied relief and the Fifth Circuit reversed, stating, "[i]f, in fact, **practically conclusive evidence** shows that the [defendant] had actually paid all eighteen installments for the purchase of the trailer, **it is obvious that the judgment should be set aside to prevent a manifest miscarriage of justice**." (*Id*. at 699) (emphasis added). In this case, the evidence of payment is not "practically conclusive", it is absolutely conclusive based upon the Receiver's admissions in discovery. (*See* n.1, *supra*).

Similarly, in *Johnson v. Waste Materials v. Marshall*, 611 F.2d 593, 595-96 (5th Cir. 1980), the government sued several defendants for Fair Labor Standards

Act violations and secured judgments based on employee testimony after the defendants offered no documentary evidence to rebut the testimony. More than a year later, defendants moved to set aside or reform the judgment under Rule 60 after locating cancelled checks and other evidence establishing that plaintiffs were due less than the amounts awarded to them at trial.

The trial court denied relief under Rule 60 and again the Fifth Circuit reversed. The court in *AIG Baker Sterling Heights* described the reason for the holding in *Johnson* as follows:

> [D]efendants, to receive relief from the judgment under Rule 60(b)(5), were not obligated to produce newly discovered evidence or to demonstrate due diligence in securing that evidence. *Id*. at 599. Instead, we said that the defendants needed only to produce conclusive evidence that they partially satisfied the judgment. *Id*. at 599–600. To rule otherwise, we stressed, would effectively grant the plaintiffs a windfall: "Reducing the judgment ... by the amount that defendants have already paid will not deprive the employees of the wages that they properly earned. When defendants pay the remainder of the judgment, the employees will have received the full amount to which the trial court determined they were entitled. *They will only be denied a windfall recovery*." *Id.* at 600-01 (emphasis added).

579 F.3d at 1273 (emphasis in original).

That same principle applies in this case. The Receiver admitted he obtained net proceeds of more than $27,103,060 from the sale of assets turned over by Davison; the full amount of the Final Judgment. Neither the Receiver nor the SEC are entitled to a windfall. All funds due under the Final Judgment have been paid in

full and the Court should enter a Partial Satisfaction of all financial aspects of the Final Judgment and should enter its Order lifting the Asset Freeze.[8]

## B. A Portion of the Final Judgment Should be Amended Based on Mistake.

If the Court grants the relief sought in Section II.A. above, then this request is moot. If not, then the Final Judgment should be altered for mistake pursuant to Rule 60(b)(1). The issue raised in the Receiver's Verified Motion for an Order to Show Cause why Brian Davison Should Not be Held in Contempt for Failure to Comply with the Court's Orders (Doc. 587) was that Davison turned over only 58 instead of 61 gold American Eagle coins and turned over a boxed set of 480 coins that were silver instead of platinum.

After this case was filed, Davison turned over to the Receiver all of his gold coins and the boxed set of 480 coins. Davison prepared his list of assets at a time when his life, family and business had been turned upside down by these proceedings. (Davison Decl. ¶¶ 3-4, attached as Ex. A). Davison believed that the 480 coins he had were platinum and that he had 61 gold coins. (*Id* at ¶¶ 5-11).

One of the attorney's assisting Davison in the turnover of assets was Gerald Davis, Esq. of Trenam Law. Mr. Davis was present at the turnover of assets at Davison's home on Davis Island on August 31, 2021. (Davis Decl. ¶ 7, attached as Ex. B).  Davis's Declaration states in relevant part:

---

[8]      Once the financial aspects of the Final Judgment have been satisfied, the Receiver has no basis upon which to make further claims against Davison.

There were watches and coins to be turned over and the turnover began with the coins which were placed on the granite countertop in the kitchen. I watched as a representative of the Receiver, Carlos Lopez, examined and counted the coins. When Mr. Lopez counted the American Eagle gold coins, he found only 58, rather than the 61 gold coins listed in the Assignment. When Mr. Lopez examined a wooden box that appeared designed to hold 480 coins, he stated that the coins were silver instead of platinum. Mr. Davison appeared shocked by that statement and indicated he believed he had purchased platinum coins from the Gold & Diamond Source; which I know to be located on Ulmerton Road in Clearwater. I do not recall Mr. Davison ever saying he, "got a really good deal" on the coins or mentioning IDC Coin & Bullion; a competitor of Gold & Diamond Source. I'm familiar with IDC Coin & Bullion and know it also is located on Ulmerton Road in Clearwater.

(*Id*. at ¶¶ 8-14).

Davison was shocked to be locked out of his office and his business, have his assets frozen and his primary personal computer taken from him. (Davison Decl. ¶ 4). Prior to his settlement with the SEC, Davison attempted to create a complete list of all of his assets, even though he did not have access to his primary personal computer or any of the records kept in EquiAlt's offices. (*Id*. at ¶ 5). He did the best he could to create a complete list of assets, including his coin and watch collection. (*Id*.).

When he counted the gold coins, he came up with 61. (*Id*. at ¶ 7). After he learned of this case, he never sold, transferred, concealed or gave away any of his gold coins. (*Id*.). When Davison looked at the 480 coins to put them on the asset list, they were in a plastic U.S. mint box that contained slots for rolls of coins. (*Id*. at ¶ 8). The U.S. mint box was slightly longer and narrower than a shoebox and was

inside a cardboard box. (*Id*.). When he opened the cardboard box and opened the U.S. mint box, he counted the number of slots of rolls of 20 coins and determined there were 480 coins. (*Id*. at ¶ 9). Davison believed the 480 coins were platinum, not silver. (*Id*. at ¶ 10). He has never owned any other set of 480 coins; and after he learned of this case, he never sold, transferred, concealed or gave away any set of 480 coins. (*Id*. at ¶ 11).

Davison had made purchases of coins through International Diamond Center, Inc. (IDC) located on Ulmerton Road in Clearwater and thought he may have bought the set of 480 coins from IDC. (*Id*. at ¶ 17). On or about November 28, 2022, IDC produced certain documents related to Davison's coin purchases pursuant to Subpoena, copies of which are attached to his Declaration as Ex.1. (*Id*. at ¶ 18). The IDC records do not reflect a purchase of 480 silver or platinum coins. (*Id*.).

Since the filing of the Receiver's Motion for an Order to Show Cause (Doc. 587), Davison has reviewed all of the personal credit card statements in his possession, including the Citi Credit Card accounts ending in 4515 and 2484 for the period 2/2016-12/2020; the Barclay Credit Card accounts ending in 7484, 9129, 6688 and 8425 for the period from 12/2013-4/20/19; and the Barclay Black Card accounts ending in 5512, 4167, 3138, 1975, 4966, 1979, 2868 and 8991 for the period from 9/2014-2/2020. (*Id*. at ¶ 19).

Since the filing of the Receiver's Motion for an Order to Show Cause (Doc. 587), Davison also has reviewed bank records recently provided by the SEC for his personal account at Chase ending in 8545 for the period 2/2103-1/2020; for the EquiAlt/McDonald Trust accounts at Bank of America ending in 0138 and 5514 for the period 3/2013-10/2019; and the EquiAlt account at Wells Fargo ending in 1052 for the period 2/2014-12/2019. (*Id*. at ¶ 20).

He was not able to locate a charge, check or wire transfer that would correspond to the purchase of **either** 480 silver or platinum coins. (*Id*. ¶ 21). Davison does not recall where he got the set of 480 coins and has exhausted all avenues available to him to obtain records of the purchase. (*Id*. ¶ 22). He can and does state unequivocally that he has never owned any set of 480 coins other than the one he turned over to the Receiver on August 31, 2021. (*Id*. ¶ 23).

The Receiver has had more than 2 and 1/2 years and has charged the Receivership nearly $4,000,000 for himself and his Retained Personnel[9] but cannot present any evidence that Davison ever had more than the 58 gold coins and the boxed set of 480 silver coins he turned over. As such, the listing of 61 gold coins and 480 platinum coins on the assignment is the result of a mistake and the Final Judgment should be altered or amended to require Davison to turn over the 58 gold coins and 480 silver coins he delivered to the Receiver on August 31, 2021.

---

[9]    *See* fn.6, *supra*.

Since there is no dispute that Davison has already delivered those coins to the Receiver, the Court also should enter its Order determining that the asset turnover has been completed and lifting the Asset Freeze.

### III.   DAVISON'S MOTION IS TIMELY FILED.

Under Rule 60(c)(1), a motion under Rule 60(b) must be made within a reasonable time; and for mistake under Rule 60(b)(1), no more than a year after the entry of the judgment. The Final Judgment against Davison (Doc. 355-1) was entered August 5, 2021. Davison's Motion to Alter or Amend the Final Judgment Pursuant to Fed. R. Civ. P.60(b)(1) and 60(b)(5) was filed on July 26, 2022 (Doc. 605); within a year of the judgment. On August 18, 2022, the Court entered its Order referring that Motion (and others) to Magistrate Judge McCoy. (Doc. 633).

By a Text Order dated November 9, 2022 (Doc. 708), Judge McCoy denied Davison's Motion "without prejudice" to renewing the Motion after specified discovery and consultation with counsel for the Receiver.[10] The required discovery and consultation did not resolve the issues raised. Pursuant to Judge McCoy's direction, Davison has filed this Renewed Motion to Alter or Amend the Final Judgment.

---

[10]    Pursuant to Judge McCoy's Text Order, Davison served Subpoenas Duces Tecum on Gold & Diamond Source, Inc. and International Diamond Center, LLC; both businesses from which Davison had purchased coins and jewelry. None of the documents produced by either business (all of which were provided to counsel for the SEC and Receiver) shed any light on the coins at issue in this Motion and the Receiver's Renewed Motion for Order to Show Cause.

This Motion also is filed, "within a reasonable time." A motion to deem the financial aspects of a judgment satisfied under Rule 60(b)(5) cannot be filed until the judgment is satisfied. The Receiver's discovery responses served August 15, 2022, (Doc. 632-1 and 632-2) reflect payment of the Final Judgment by Davison's turnover of assets, the sale of which resulted in net proceeds in excess of the amount due under the Final Judgment (Doc. 355-1).

Any time a money judgment is paid, the judgment debtor is entitled to a satisfaction of that judgment. Davison is entitled to a satisfaction of the financial terms of the Final Judgment and his request for same has been filed within a reasonable time of the Receiver providing discovery responses demonstrating the sums recovered from Davison's assets.

Davison's motion under Rule 60(b)(1) also has been filed within a reasonable time as required by the rule. The Receiver and Davison both learned Davison's asset list and assignment of assets were inaccurate on the same day, August 31, 2021 (when the asset turnover occurred). The Receiver's Ninth Quarterly Status Report dated May 2, 2022, states, "Counsel for the Receiver and Mr. Davison are continuing to discuss this discrepancy . . . ." (Doc. 563 at 16). While those discussions were ongoing, there was no reason for Davison to move to amend. The filing of the Receiver's Motion on June 27, 2022 (Doc. 587) made clear that no agreement could be reached between Davison and the Receiver.

In analyzing a motion asserting excusable neglect as a ground for relief under Rule 60(b)(1), a court looks at several factors, including prejudice to the non-moving party, the length of the delay caused by the neglect and its potential impact on the judicial proceedings, the reason for the delay including whether it was in the reasonable control of the movant, and whether the party acted in good faith. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993)).

Application of those factors reflect that this Motion is timely filed. The Receiver's Tenth Quarterly Status Report (Doc. 606), reveals that 2 and 1/2 years after being appointed,[11] the Receiver still had "over two hundred properties to liquidate . . . ." (p.26). The Receiver's Eleventh Quarterly Status Report (Doc. 606), recommends that the Court continue the Receivership "for the (1) continued liquidation of properties as they are available and suitable for sale; (2) continued management of Receivership business assets including certain breweries; and (3) continuing the claims determination process and ultimately the distribution of funds . . . ." (p.23). This motion will not extend the time necessary to administer the Receivership.

---

[11]   The Court's Sealed Order Granting Plaintiff's Emergency Ex Parte Motion for Appointment of a Receiver was entered on February 14, 2020. (Doc. 11).

According to the Receiver, counsel for Davison and the Receiver continued to discuss the discrepancy in the number and metal of the coins. (Doc. 563 at 16). Under those circumstances, there is no indication - nor can there be any - that Davison is not acting in good faith in requesting that the Final Judgment be modified to reflect the 58 gold and 480 silver coins he already turned over to the Receiver.

## IV.   CONCLUSION

Davison requests that the Court enter an Order finding that the financial aspects of the Final Judgment have been satisfied, enter a Partial Satisfaction of Judgment to that extent, and enter an Order lifting the asset freeze. Alternatively, the Court should enter an Order amending the Final Judgment to change the 480 platinum coins and 61 gold coins to 480 silver coins and 58 gold coins as a result of mistake within the meaning of Rule 60(b)(1) and enter an Order determining that the asset turnover has been completed and lifting the asset freeze.

## <u>CERTIFICATE UNDER LOCAL RULE 3.01(g)</u>

Pursuant to Local Rule 3.01(g) and Judge McCoy's Order (Doc. 708), Counsel for Davison, the SEC and the Receiver have meaningfully conferred and have been unable to resolve the issues presented to the Court by this Motion. Counsel for the SEC and the Receiver object to the relief sought.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

filed via the Court's CM/ECF system on this 17th day of January 2023.

> **/s/ Stanley T. Padgett**
> Stanley T. Padgett, Esquire
> Florida Bar No. 348686
> PADGETT LAW, P.A.
> 201 E. Kennedy Blvd., Suite 600
> Tampa, FL 33602
> (813) 230-9098
> (866) 896-7664 (Fax)
> Email: spadgett@padgettlawpa.com
> Co-Counsel for Defendant,
>    Brian Davison