UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.                          Case No.: 8:20-cv-325-MSS-NHA

BRIAN DAVISON, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the Receiver's Unopposed Sixteenth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals ("Sixteenth Quarterly Fee Application"). Doc. 1089.  The Receiver seeks reimbursement of fees and costs for the period from October 1, 2023 through December 31, 2023. *Id.* at 2.  The Securities and Exchange Commission ("SEC") does not oppose the request. *Id.* at 35.  For the reasons below, I recommend that the Sixteenth Quarterly Fee Application be **GRANTED**.

### I.    Background

The SEC brought this action against individual Defendants Brian Davison ("Davison") and Barry Rybicki ("Rybicki") (collectively, "Individual

Defendants") and corporate Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP LLC (collectively, "Corporate Defendants"), for violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, regarding the alleged operation of a nationwide Ponzi scheme raising more than $170 million from 1,100 investors through fraudulent unregistered securities offerings. *See* Doc. 1.

The SEC further alleged that Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC, Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; and TB Oldest House Est. 1842, LLC (collectively, "Relief Defendants") all received proceeds of the fraud without any legitimate entitlement to the money. *Id*.

The District Court appointed Burton W. Wiand as the Receiver in this action over the Corporate Defendants, the Relief Defendants, and each of their subsidiaries, successors, and assigns.[1] Docs. 10, 11.

The District Judge outlined the Receiver's duties, the Court's basis for compensating those duties, and the requirements for the Receiver's status reports and applications for fees. Doc. 11 at ¶¶ 1-12, 16, 28-36.  In accordance with the Court's directives, the Receiver now submits his Sixteenth Quarterly Fee Application, seeking compensation for the fees and costs incurred for the performance of his duties as well as the fees and costs incurred by the Retained Personnel he hired to assist in the performance of such duties. Doc. 1089. Specifically, the Receiver seeks an award of fees and costs incurred from October 1, 2023 through December 31, 2023, for: (1) the Receiver, in the amount of $83,270.92; (2) G&P, in the amount of $51,930.90; (3) Johnson, Newlon & DeCort ("JND"), in the amount of $54,506.19; (4) Jared J. Perez, P.A., in the amount of $1,820.00; (5) Yip Associates ("Yip"), in the amount of $21,694.50; (6) PDR CPAs ("PDR"), in the amount of $26,536.24; (7) E-Hounds,

---

[1] Subsequently, the District Judge granted the Receiver's motion seeking to expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, LP ("QOZ"); EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc. ("REIT"); EquiAlt Holdings LLC (sponsor of the QOZ and REIT); EquiAlt Property Management LLC (property manager of the QOZ and REIT); and EquiAlt Capital Advisors, LLC (manager of day-to-day operations for the QOZ and REIT). Doc. 184. EquiAlt Fund I, LLC was also later added. Doc. 284.

3

Inc. ("E-Hounds"), in the amount of $6,945.00; (8) Johnson, Pope, Bokor, Ruppel & Burns, LLP ("Johnson Pope") in the amount of $303.00; (9) Omni Agent Solutions ("Omni"), in the amount of $23,140.30; and (10) The RWJ Group, LLC ("RWJ"), in the amount of $1,431.00. *Id.* at 34-35.

The work of each entity warranting the fee is described below. The SEC does not oppose the requested relief. *Id.* at 35.

## II.   Analysis

District courts maintain broad powers and wide discretion to award relief in an equity receivership. *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). When a receiver reasonably and diligently discharges his or her duties, the receiver is entitled to compensation. *Id.* at 1577 (citation omitted); *see Stuart v. Boulware*, 133 U.S. 78, 82 (1890) ("Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers. That power results necessarily from the relation which the receiver sustains to the court; and, in the absence of any legislation regulating the receiver's salary or compensation, the matter is left entirely to the determination of the court from which he derives his appointment.").

A receiver must provide "specific and detailed evidence" in support of an application for fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and results are always relevant."

*Elliott*, 953 F.2d at 1577. (citation omitted); *see also F.T.C. v. Worldwide Info Servs., Inc.*, No. 6:14-cv-8-Orl-41DAB, 2015 WL 144389, at *4 (M.D. Fla. Jan. 12, 2015) (citation omitted) (noting that courts may consider several factors in determining the reasonableness of a fee award to a receiver, including "(1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership."). "[W]here the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." *Norman*, 836 F.2d at 1303 (citation omitted). "Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted). In this context, "market rate" means the hourly rate charged in the

5

local legal market by an attorney with expertise in the relevant area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation. *Norman*, 836 F.2d at 1305. Both a receiver and his counsel must exercise proper "billing judgment", that is, both should make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…." *Hensley*, 461 U.S. at 434.

As to claims for professional services, the receiver must also provide evidence that the hourly rate is reasonable and commensurate with rates paid for similar services and that the time expended by such professionals was reasonable. *See Norman*, 836 F.2d at 1303 (The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."). The receiver also must present sufficient information to permit the court to determine that any expenses were actually and necessarily incurred. *Id.*

The Court is an expert with respect to fee applications and therefore may consider a fee award based on its own experience and knowledge concerning reasonable and proper fees and therefore may form an independent judgment as to value. *Norman*, 836 F.2d at 1303 (citations omitted).

Additionally, in considering a fee award to a receiver, "[o]pposition or acquiescence by the SEC to the fee application will be given great weight." *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also S.E.C. v. Mgmt. Sols., Inc.*, 824 F. App'x 550, 553 n. 2 (10th Cir. 2020) (holding the same).

As the Court concluded with the prior requests, upon review of the Sixteenth Quarterly Fee Application, including the accompanying fee and costs records (Doc. 1089), I find that the Receiver continued to properly perform his duties and employ professionals to help carry out those duties. Further, the Receiver and the Retained Personnel discharged their duties in a diligent and reasonable manner and did not incur unnecessary fees or costs. Importantly, as noted above, the SEC does not oppose the Receiver's request for fees and costs. *Id*. at 35.

### A. Receiver

The Receiver seeks $83,270.92 for himself, for work performed from October 1, 2023 through December 31, 2023. Doc. 1089 at 11-12. The Receiver charged an hourly rate of $360 for 147.20 hours expended on receivership activities, 2.90 hours expended on recovery of false profits from investors, and a half hour expended on claw-back litigation; he seeks an hourly rate of $125

per hour for 215.2 hours of paralegal work[2] (primarily editing and facilitating the signing of documents and communicating with counsel), for a total of $26,900.00; and he seeks costs (detailed further below) in the amount of $2,154.92. Doc. 1089 at 11-12; *see also* Docs. 1089-2, 1089-3, 1089-4, 1089-5.

Based on my own experience and the rates typically awarded to court-appointed receivers in the Middle District of Florida (*see* Docs. 586, 731), the requested hourly rate of $360 is reasonable. *See, e.g.*, *F.T.C. v. First Choice Horizon LLC*, Case No. 6:19-cv-1028-Orl-40LRH, 2020 WL 1431526, at *2-3 (M.D. Fla. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 1431601 (M.D. Fla. Jan. 31, 2020) (considering several factors in concluding that an hourly rate of $350 was reasonable for a court-appointed receiver in the Middle District of Florida); *F.T.C. v. MOBE Ltd.*, Case No. 6:18-cv-862-Orl-37DCI, 2018 WL 4782327, at *3 (M.D. Fla. Sept. 17, 2018), *report and recommendation adopted*, 2018 WL 4774960 (M.D. Fla. Oct. 3, 2018) (finding a rate of $330 per hour a reasonable rate for compensating a court-appointed

---

[2] Courts only reimburse work of paralegals and law clerks when such individuals perform work traditionally done by attorneys. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (concluding that a district court properly reimbursed the time spent by paralegals and law clerks where the work was that normally done by an attorney). In this instance, review of the time records for the paralegal (Doc. 1089-3) indicates that the work performed by the paralegal constituted legal work normally performed by an attorney rather than clerical work. Accordingly, I recommend awarding the fees requested for work performed by the paralegal, as both the requested rate and the time expended on such work are reasonable.

receiver in the Middle District of Florida); *F.T.C. v. Life Mgmt. Serv. of Orange Cnty., LLC*, Case No. 6:16-cv-982-Orl-41TBS, 2017 WL 4861467, at *3 (M.D. Fla. Aug. 9, 2017), *report and recommendation adopted*, 2017 WL 4877460 (M.D. Fla. Oct. 30, 2017) (finding a rate of $325 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida and finding reasonable 129.2 hours expended by such receiver).

Furthermore, the hours expended by the Receiver and his paralegal during the period from October 1, 2023 through December 31, 2023 do not appear excessive, redundant, or unnecessary at this point. As detailed more fully in the Receiver's Sixteenth Status Report, this matter involves more than 1,100 investors, $170 million in investments, and more than 200 properties. Doc. 1087. During the relevant period, the Receiver and the Retained Personnel sold 24 properties through the Receiver's court-approved online auctions, for net proceeds of $3,581,950.19; continued preparations for additional periodic online auctions as approved by the Court; received proceeds from Sotheby's watch auction for $36,150; received $35,019.63 in proceeds from claw-back settlements with investors; received $109,000 in proceeds from claw-back settlements with sales agents; received the Court's approval for a settlement with sales agent Robert Armijo; and continued working with partners on the operations of Commerce Brewing and related entities to

complete the construction of the tasting room and continue to increase production and sales. Doc. 1089 at 2-4; Doc. 1087.

I find the 147.20 hours expended by the Receiver, the 215.2 hours expended by the paralegal, and the costs incurred (including costs for notary services and automobile insurance and tag renewal), from October 1, 2023 through December 31, 2023, which total $83,270.92, are fair and reasonable considering the activities performed and the results achieved. Accordingly, I recommend that the Receiver be awarded fees and costs in the amount of $83,270.92.

### B. G&P

With respect to legal services, the Receiver retained G&P, which the District Judge specifically authorized in the Order Appointing the Receiver. Doc. 11 at ¶ 16. G&P liquidated assets for the benefit of the Receivership, investigated and pursued additional assets for the Receivership, and administered the claims process. *See* Doc. 1089 at 14.

The Receiver now seeks $50,392.50 in fees and $1,538.40 in costs for services provided by G&P. Doc. 1089 at 15. The attorney fee schedule provided by G&P includes the following proposed rates: $350 for members/partners; $240 for associates; and $135 for paralegals. *Id.*; *see also* Doc. 1089-6. The fees requested include the following:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Maya Lockwood | Of Counsel | 23 years | 111.70 | $240.00 | $26,808.00 |
| Amanda Stephens | Paralegal | | 70.50 | $135.00 | $9,517.50 |
| Kimberly Paulson | Paralegal | | 104.20 | $135.00 | $14,067.00 |
| **TOTAL:** | | | | | $50,392.50 |

Doc. 1089 at 15; *see also* Doc. 1089-7.

Upon review, the requested hourly rates are reasonable. *See F.T.C. v. Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5 (M.D. Fla. Oct. 3, 2017), *report and recommendation adopted*, 2017 WL 4700396 (M.D. Fla. Oct. 19, 2017) (finding an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty one years' experience reasonable)*; Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed

11

receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable).

And the hours expended by counsel and the paralegals do not appear unnecessary, excessive, or redundant but rather reflect a reasonable amount of time spent on this matter.  Given that both the hourly rate and the hours expended are reasonable, I recommend that G&P be awarded $50,392.50 in fees.

G&P also seeks reimbursement in the amount of $1,538.40 for costs, encompassing costs for online research and website-related expenses. Doc. 1089 at 15. The costs appear to have been necessarily incurred for the Receiver and the Retained Personnel to carry out their duties. Such costs are thus fair and reasonable and should be awarded. I recommend that G&P be awarded costs in the amount of $1,538.40.

In total, I recommend that fees and costs be awarded in the amount of $51,930.90 for work performed by G&P, which represents $50,392.50 in fees and $1,538.40 in costs.

### C. JND[3]

The Receiver retained the law firm of JND to assist as co-counsel to G&P (*see* Doc. 278), which the Court approved (Doc. 282).  As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JND has agreed to the reduced rates for attorneys and paralegals provided in the G&P fee schedule. Doc. 1089 at 16; *see also* Doc. 1089-6. Based on those rates, the Receiver now seeks fees for professional services rendered by JND from October 1, 2023 through December 31, 2023 for assisting in investigating the fraud and related activities, liquidating Receivership assets, investigating and pursuing additional assets for the Receivership, and administering the claims process. *Id*. JND seeks the following as to those services:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 28 years | 54.10 | $350.00 | $18,935.00 |
| Mary Gura | Paralegal | | 170.00 | $135.00 | $22,950.00 |
| **TOTAL:** | | | | | $41,885.00 |

Doc. 1089 at 17; *see also* Docs. 1089-8, 1089-9, 1089-10.

---

[3] The firm name changed from Johnson, Cassidy, Newlon & DeCort (*see* Doc. 975 at 3) to Johnson, Newlon & DeCort ("JND") since entry of the Order Appointing the Receiver (*see* Doc. 936).

During the relevant period, JND also undertook two discrete projects relating to recovery of false profits from investors and claw-back litigation against non-investors. Doc. 1089 at 15-20. In relation to the recovery of false profits from investors, the Receiver seeks the following for JND:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 28 years | 28.70 | $350.00 | $10,045.00 |
| Brad Kinni | Associate | 4 years | 2.60 | $225.00 | $585.00 |
| **TOTAL:** | | | | | $10,630.00 |

Doc. 1089 at 19; *see also* Doc. 1089-9. In addition to legal fees, JND seeks $124.75 in costs for online research expenses. Doc. 1089 at 19. As to clawback litigation, JND seeks $420.00 in fees for 1.20 hours of Ms. Donlon's time. *Id.* at 20.

Upon review of the billing records and the Sixteenth Quarterly Status Report, the hours expended appear fair and reasonable for the services performed and present no redundancies or superfluities. Docs. 1089-8, 1089-9, 1089-10. While some of JND's services appear redundant to those of G&P, the Receiver explained that lead counsel of G&P (Ms. Donlon) left G&P to join JND. Doc. 278 at 2-3. The Receiver believed that, due to her extensive experience, it would be in the best interest of the receivership to continue to use Ms. Donlon's services and to have JND act as co-counsel to G&P on this

14

matter. *Id.* The Receiver asserted "there will not be any duplication of services provided by the two firms." *Id.* at 3.

As discussed above, the rates charged are reasonable for the Middle District of Florida. *See Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted*, 2017 WL 4700396; *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460.  In addition, JND incurred costs in the amount of $1,446.44 for certified copies, publication costs, delivery services, and a certificate of good standing. Doc. 1089 at 17.  These costs appear to be necessary and reasonable.

I recommend that JND be awarded $54,506.19, which includes $52,935.00 in fees and $1,571.19 in costs.

### D. Jared J. Perez, P.A.

The Receiver also retained the services of Jared J. Perez, P.A. (Doc. 610) for services such as claims research (including research regarding fund outcomes in receiverships) and preparing for and attending case management and strategy meetings (Doc. 1089 at 20-21; Doc. 1089-11).  The District Judge approved the retention of those services. Doc. 639.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, Mr. Perez has agreed to follow the reduced rates for attorneys provided in the G&P fee schedule. Doc. 1089 at 20-21; *see also* Doc.

1089-6.  Based on those rates, the Receiver now seeks a total of $1,820 for 5.2 hours of Mr. Perez's work, billed at an hourly rate of $350.00; Mr. Perez is a partner with 17 years of experience. Doc. 1089 at 21; *see also* Doc. 1089-11.

I find the hours expended and the hourly rate fair and reasonable given Mr. Perez's experience and the work he performed. Therefore, I recommend that Jared J. Perez be awarded $1,820.00.

### E. Yip

With the District Judge's express authorization (Doc. 11, ¶ 3), the Receiver retained the services of Yip, a forensic accounting firm specializing in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support (Doc. 1089 at 21-22). Yip assisted with the accounting analysis for establishing a claims process. *Id.*  In addition, as detailed more fully by the Receiver, Yip "has been instrumental in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at issue in this case," including, but not limited to, tracing investor proceeds to various assets and properties and substantially completing the process of gathering the investors' investments and distributions for the claims process. Doc. 1089 at 22; *see also* Doc. 1089-12.  As the Receiver has indicated throughout these proceedings, most of the cost associated with forensic accounting services occur on the front end of the

Receivership, are not duplicated later, and result in greater efficiency as the claims process and filing of claw-back actions commences.

The Receiver now seeks an award of $21,694.50 in fees to Yip based on its services as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Maria Yip | Partner | 30 years | 7.30 | $495.00 | $3,613.50 |
| Danny Zamorano | Manager | 6 years | 73.80 | $245.00 | $18,081.00 |
| **TOTAL:** | | | | | $21,694.50 |

Doc. 1089 at 22-23; Doc. 1089-12.

Such hourly rates are reasonable considering the experience levels of each professional. *See F.T.C. v. Nationwide Connections, Inc.*, Case No. 06-80180-Civ-Ryskamp/Vitunac, 2009 WL 10669124, at *8-9 (S.D. Fla. Apr. 14, 2009), *report and recommendation adopted*, 2009 WL 10668438 (S.D. Fla. Apr. 24, 2009) (awarding a forensic accounting firm used by a court appointed receiver fees in the amount of $32,333.50 for 143.7 hours of forensic accounting work at a blended rate of approximately $225 per hour). Nor do the hours appear inflated, excessive, or unnecessary for the work performed during this period. Accordingly, I recommend that Yip be awarded $21,694.50.

**F. PDR**

The Receiver also retained the services of PDR to assist with accounting and tax matters. Doc. 1089 at 23-24. The District Judge approved the retention of PDR and limited its role to internal Receivership accounting, financial reporting, tax preparation and filing, and internal accounting for EquiAlt. *See* Doc. 85. The District Judge directed the Receiver to report the maximum number of hours it anticipated PDR would expend, and, should it become apparent that PDR's hours would exceed the anticipated maximum, to submit a motion to that effect. *Id.* In approving the retention of PDR, the District Judge approved the following hourly rates for PDR employees working on this matter: $320 for partners/principals; $210 for managers; $180 for senior associates; and $125 for staff members. *Id.*

Originally, the Receiver reported that a principal of PDR agreed to a maximum of $15,000 for PDR's services for each of the first three months and then a maximum of $6,000 for each month thereafter. Doc. 87 at 3.

Subsequently, the Receiver filed a motion seeking fees for PDR in excess of the previously approved limits, because PDR had expanded its role[4] in this case. Doc. 572 at 25-26. In that motion, the Receiver explained that the

_____

[4] PDR's role in the case expanded when EquiAlt's senior accounting employee was terminated at the end of February 2022. Doc. 572 at 25. Following the termination of this position, PDR assumed the duties of that position. *Id.* The Receiver has not specified which duties this encompasses. *Id.*

monthly limits were "no longer reflective of reasonable monthly fees." *Id*. The Court granted the motion and awarded fees in excess of the previous budget. Doc. 586. Since then, the Receiver has routinely requested fees in excess of the previously approved budget (Docs. 572 at 25; 614 at 27; 710 at 29; 804 at 27), and the Court has routinely granted such requests (Docs. 586 at 3; 731 at 3; 830 at 3; 889 at 3).

Here, the Receiver again seeks an award above the originally approved budget. The Receiver seeks $26,536.24 in fees for accounting, auditing, consulting, and tax services provided by PDR during the relevant period. Doc. 1089 at 23-24; Doc. 1089-13. Specifically, PDR recorded bank activity, reconciled bank statements, reviewed invoices, researched auction item deposits, reviewed ledgers, adjusted entries for fund balances, processed payroll, and attended monthly operation meetings. Doc. 1089-13 at 1-3. The requested fees include hourly rates consistent with the original rate proposal: $320 for Partner William Price, $210 for Manager Matthew Low, $155 for Manager Gail Heinold, and $125 for Staff Members Sharon O'Brien, Andres Almanza Madrid, and Taylor Jones. Doc. 1089 at 24; Doc. 1089-13.

Upon review, the 174.90 hours expended on accounting and tax matters by PDR over the three-month period appear reasonable. Doc. 1089 at 24.  If the Court intended that its initial deviation from the budget render void the

original proposed budget, I recommend fees be awarded in the amount of $26,536.24 for the work performed by PDR.

### G. E-Hounds

For computer forensics services, the Receiver retained E-Hounds, which the District Judge authorized in the Order Appointing the Receiver. Doc. 11 at ¶ 3. Relevant here, E-Hounds maintains and updates a proprietary review platform, which collects and preserves electronic records. Doc. 1089 at 25-26.

The Receiver seeks an award of $6,945.00 for services rendered and costs incurred by E-Hounds, which includes $3,570.00 in monthly charges for maintenance and use of the proprietary platform, and $3,375.00 for use of the platform by additional users. *Id*. at 25. The costs are reasonable for collecting and preserving electronic records to facilitate review of electronic data. *See, e.g., SEC v. Kinetic Inv. Grp.*, Case No. 8:20-cv-394-MSS-SPF (M.D. Fla.) (Docs. 73 and 101); *CFTC v. Oasis Int'l Grp. Ltd.*, Case No. 8:19-cv-886-VMC-SPF (M.D. Fla.) (Docs. 203 and 207). I recommend that E-Hounds be awarded $6,945.00 for services provided.

### H. Johnson Pope

With the District Judge's approval (Doc. 127), the Receiver retained Johnson Pope to assist in pursing claims against law firms that provided services to EquiAlt (*see* Doc. 121). This quarter, Christopher Dingman, a partner at Johnson Pope, advised the Receiver regarding the tax consequences

of a specific claim. Doc. 1089-15. Mr. Dingman billed 0.6 hours at an hourly rate of $505.00 for a call on the matter. Doc. 1089-15.

I find that the hourly rate was reasonable given that the District Judge already approved the use of Mr. Dingman's time on a contingency basis. *See* Docs. 121-1 and 127. Additionally, the time expended appears fair and reasonable given the service performed and the position held by Mr. Dingman. *See Hardco Holding Grp. LLC*, 2017 WL 4772624, at *4-5; *Life Mgmt. Serv. of Orange Cnty.*, LLC, 2017 WL 4861467, at *3. I recommend that Johnson Pope be awarded fees in the amount of $303.

### I. Omni

The Receiver retained Omni to assist with administration of the claims process (*see* Doc. 335), which the District Judge approved (Doc. 347). According to the Receiver, "Omni is an information management company that provides administrative services and technology solutions to simplify claims administration." Doc. 1089 at 27. The receiver describes the services Omni performed as restructuring services, quality control services, administrative services, database programming services, and call center operations. Doc. 1089-17. Omni assists in mailing, determining the correct addresses for returned mail, addressing clerical deficiencies, performing data entry for the returned Proof of Claim Forms, and processing distributions. Doc. 1089 at 27. The Standard Services Agreement between the Receiver and Omni indicates

21

that, except as otherwise stated therein, services rendered by Omni will be billed at rates ranging from $135 to $205 per hour, representing a 5% discount (*see* Doc. 335-5), which the District Judge adopted in authorizing the Receiver to retain Omni (Doc. 347 at 4).

The Receiver now seeks fees in the amount of $23,140.30 for 240.10 hours expended by several Omni employees on the claims administration process. Doc. 1089 at 27-28; Doc. 1089-17.  Upon review of the time records, none of the hours appear excessive, redundant, or unnecessary, though I would recommend that future fee requests for these services be supported by more detailed information justifying the time expended . Doc. 1089-17.  Further, the fee amounts fall within the rates that the District Judge has approved. Accordingly, I recommend that fees in the amount of $23,140.30 be awarded to Omni.

## J. RWJ

The Receiver retained RWJ, an asset management and investigation firm, to assist with the investigation and oversight of ongoing business operations and property recovered by the Receiver. Doc. 1089 at 28-29.  The District Judge specifically authorized the retention of RWJ in the Order Appointing the Receiver. Doc. 11 at ¶ 3. The Receiver now seeks an award of $1,431.00 in fees for work performed by RWJ in this matter. Doc. 1089 at 29; Doc. 1089-18.  The billing records indicate that RWJ billed for one employee,

Roger Jernigan, who performed 15.9 hours of work at an hourly rate of $90.00. Specifically, Mr. Jernigan monitored security cameras and responded to alerts for trespassers relating to the Arizona properties, which were listed for sale during this quarter. Doc. 1089 at 29; Doc. 1089-18. As indicated by his biography, Roger Jernigan holds more than 30 years' experience in law enforcement and more than 11 years' experience assisting on receivership matters. Doc. 122-11 at 6-7.

Both the hourly rate and the hours expended appear fair and reasonable given the services performed and the experience held by Mr. Jernigan. *See generally, SEC v. Kirkland*, No. 6:06-cv-183- Orl-28KRS, 2008 WL 3981434, at *3 (Aug. 21, 2008), *report and recommendation adopted at* 2008 WL 4533931 (M.D. Fla. Sept. 29, 2008) (approving a rate of $150 per hour for investigative services). I recommend that RWJ be awarded $1,431.00 in fees.

### III. Conclusion

For these reasons, I **RECOMMEND**:

1.   The Receiver's Unopposed Sixteenth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals (Doc. 1089) be **GRANTED**; and

2.   Fees and costs be awarded in the following amounts to:

   a. The Receiver, in the amount of $83,270.92;

   b. G&P, in the amount of $51,930.90;

23

c. JND, in the amount of $54,506.19;

d. Jared J. Perez, P.A., in the amount of $1,820.00;

e. Yip, in the amount of $21,694.50;

f. PDR, in the amount of $26,536.24;

g. E-Hounds, in the amount of $6,945.00;

h. Johnson Pope in the amount of $303.00;

i. Omni, in the amount of $23,140.30; and

j. RWJ, in the amount of $1,431.00.

**REPORTED** in Tampa, Florida, this 20th day of May, 2024.

NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual

24

and legal conclusions contained in this Report and Recommendation.  11th Cir.

R. 3-1.