UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.                        Case No.: 8:20-cv-325-MSS-NHA

BRIAN DAVISON, *et al.*,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the Receiver's Unopposed Eighteenth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals ("Eighteenth Quarterly Fee Application"). Doc. 1210. The Receiver seeks reimbursement of fees and costs for the period from April 1, 2024 through June 30, 2024, as well as certain fees that were held back from the Receiver's first three Quarterly Fee Applications. Doc. 1210 at 9. *Id*. at 2. The Securities and Exchange Commission ("SEC") does not oppose the request. *Id*. at 36. For the reasons below, I respectfully recommend that the Court partially grant and partially deny the motion. Specifically, I recommend that the Court: (1) grant the Receiver's request for fees and costs incurred between April 1, 2024 and June 30, 2024, and (2) deny

without prejudice the Receiver's request for funds held back from the first three quarterly fee applications. While the Receiver appears to have done his work with great efficiency and success, this Court's Receivership order indicates that "amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the *final fee application* submitted at the close of the receivership." Doc. 11 ¶ 35 (emphasis added). The present application does not appear to be the final fee application.

## I.    Background

The SEC brought this action against individual Defendants Brian Davison ("Davison") and Barry Rybicki ("Rybicki") (collectively, "Individual Defendants") and corporate Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP LLC (collectively, "Corporate Defendants"), for violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, regarding the alleged operation of a nationwide Ponzi scheme raising more than $170 million from 1,100 investors through fraudulent unregistered securities offerings. *See* Doc. 1.

The SEC further alleged that Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress,

LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC, Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; and TB Oldest House Est. 1842, LLC (collectively, "Relief Defendants") all received proceeds of the fraud without any legitimate entitlement to the money. *Id*.

The District Court appointed Burton W. Wiand as the Receiver in this action over the Corporate Defendants, the Relief Defendants, and each of their subsidiaries, successors, and assigns.[1] Docs. 10, 11.

The District Judge outlined the Receiver's duties, the Court's basis for compensating those duties, and the requirements for the Receiver's status reports and applications for fees. Doc. 11 at ¶¶ 1-12, 16, 28-36.  In accordance with the Court's directives, the Receiver now submits his Eighteenth Quarterly Fee Application, seeking compensation for the fees and costs incurred for the performance of his duties as well as the fees and costs incurred by the Retained Personnel he hired to assist in the performance of such duties. Doc. 1210.

---

[1] Subsequently, the District Judge granted the Receiver's motion seeking to expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, LP ("QOZ"); EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc. ("REIT"); EquiAlt Holdings LLC (sponsor of the QOZ and REIT); EquiAlt Property Management LLC (property manager of the QOZ and REIT); and EquiAlt Capital Advisors, LLC (manager of day-to-day operations for the QOZ and REIT). Doc. 184. EquiAlt Fund I, LLC was also later added. Doc. 284.

Specifically, the Receiver seeks an award of fees and costs incurred from April 1, 2024 through June 30, 2024, for: (1) the Receiver, in the amount of $113,667.14; (2) Guerra & Partner, P.A. ("G&P"), in the amount of $112,496.15; (3) Johnson, Newlon & DeCort ("JND"), in the amount of $24,730.14; (4) Jared J. Perez, P.A., in the amount of $7,420.00; (5) Yip Associates ("Yip"), in the amount of $833.00; (6) PDR CPAs ("PDR"), in the amount of $19,818.66; (7) E-Hounds, Inc. ("E-Hounds"), in the amount of $6,945.00; (8) Omni Agent Solutions ("Omni"), in the amount of $17,394.65; and (9) The RWJ Group, LLC ("RWJ"), in the amount of $1,341.00. *Id*. at 35.

The work of each entity warranting the fee is described below. The SEC does not oppose the requested relief. *Id*. at 36.

## II.    Analysis

District courts maintain broad powers and wide discretion to award relief in an equity receivership. *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). When a receiver reasonably and diligently discharges his or her duties, the receiver is entitled to compensation. *Id*. at 1577 (citation omitted); *see Stuart v. Boulware*, 133 U.S. 78, 82 (1890) ("Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers. That power results necessarily from the relation which the receiver sustains to the court; and, in the absence of any legislation regulating the receiver's salary

or compensation, the matter is left entirely to the determination of the court from which he derives his appointment.").

A receiver must provide "specific and detailed evidence" in support of an application for fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and results are always relevant." *Elliott*, 953 F.2d at 1577. (citation omitted); *see also F.T.C. v. Worldwide Info Servs., Inc.*, No. 6:14-cv-8-Orl-41DAB, 2015 WL 144389, at *4 (M.D. Fla. Jan. 12, 2015) (citation omitted) (noting that courts may consider several factors in determining the reasonableness of a fee award to a receiver, including "(1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership."). "[W]here the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." *Norman*, 836 F.2d at 1303 (citation omitted). "Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted).  In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the relevant area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation. *Norman*, 836 F.2d at 1305. Both a receiver and his counsel must exercise proper "billing judgment", that is, both should make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…." *Hensley*, 461 U.S. at 434.

As to claims for professional services, the receiver must also provide evidence that the hourly rate is reasonable and commensurate with rates paid for similar services and that the time expended by such professionals was reasonable. *See Norman*, 836 F.2d at 1303 (The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and

hourly rates."). The receiver also must present sufficient information to permit the Court to determine that any expenses were actually and necessarily incurred. *Id.*

The Court is an expert with respect to fee applications and therefore may consider a fee award based on its own experience and knowledge concerning reasonable and proper fees and therefore may form an independent judgment as to value. *Norman*, 836 F.2d at 1303 (citations omitted).

Additionally, in considering a fee award to a receiver, "[o]pposition or acquiescence by the SEC to the fee application will be given great weight." *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also S.E.C. v. Mgmt. Sols., Inc.*, 824 F. App'x 550, 553 n. 2 (10th Cir. 2020) (holding the same).

As the Court concluded with the prior requests, upon review of the Eighteenth Quarterly Fee Application, including the accompanying fee and costs records (Doc. 1210), I find that the Receiver continued to properly perform his duties and employ professionals to help carry out those duties. Further, the Receiver and the Retained Personnel discharged their duties in a diligent and reasonable manner and did not incur unnecessary fees or costs. Importantly, as noted above, the SEC does not oppose the Receiver's request for fees and costs. *Id.* at 36.

7

### A. Receiver

The Receiver seeks $75,283.94 for himself, for work performed from April 1, 2024 through June 30, 2024, as well as $38,383.20 in fees that were held back in connection with the Court's granting of the Receiver's first three Quarterly Fees Application. Doc. 1210 at 9-12; Doc. 1210 at 9.

1. <u>Reimbursement for Fees and Costs Incurred During the Eighteenth Quarter</u>

During the Eighteenth Quarter, the Receiver charged an hourly rate of $360 for 156.40 hours expended on receivership activities including reviewing correspondence from agents and purchasers, reviewing closing statements, drafting and revising documents for real estate auctions, and reviewing bank account and credit card statements. Doc. 1994-2. The Receiver also charged 1.30 hours expended on recovery of false profits from investors, and 0.20 hours expended on claw-back litigation; he seeks an hourly rate of $125 per hour for 139.70 hours of paralegal work[2] (primarily editing and facilitating the signing

---

[2] Courts only reimburse work of paralegals and law clerks when such individuals perform work traditionally done by attorneys. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (concluding that a district court properly reimbursed the time spent by paralegals and law clerks where the work was that normally done by an attorney). In this instance, review of the time records for the paralegal (Doc. 1210-3) indicates that the work performed by the paralegal constituted legal work normally performed by an attorney rather than clerical work. Accordingly, I recommend awarding the fees requested for work performed by the paralegal, as both the requested rate and the time expended on such work are reasonable.

of documents and communicating with counsel), for a total of $17,462.50; and he seeks costs (detailed further below) in the amount of $977.44. Doc. 1210 at 12-15; *see also* Docs. 1210-2, 1210-3, 1210-4, 1210-5.

Based on my own experience and the rates typically awarded to court-appointed receivers in the Middle District of Florida (*see* Docs. 586, 731), the requested hourly rate of $360 is reasonable. *See, e.g., F.T.C. v. First Choice Horizon LLC*, Case No. 6:19-cv-1028-Orl-40LRH, 2020 WL 1431526, at *2-3 (M.D. Fla. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 1431601 (M.D. Fla. Jan. 31, 2020) (considering several factors in concluding that an hourly rate of $350 was reasonable for a court-appointed receiver in the Middle District of Florida); *F.T.C. v. MOBE Ltd.*, Case No. 6:18-cv-862-Orl-37DCI, 2018 WL 4782327, at *3 (M.D. Fla. Sept. 17, 2018), *report and recommendation adopted*, 2018 WL 4774960 (M.D. Fla. Oct. 3, 2018) (finding a rate of $330 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida); *F.T.C. v. Life Mgmt. Serv. of Orange Cnty., LLC*, Case No. 6:16-cv-982-Orl-41TBS, 2017 WL 4861467, at *3 (M.D. Fla. Aug. 9, 2017), *report and recommendation adopted*, 2017 WL 4877460 (M.D. Fla. Oct. 30, 2017) (finding a rate of $325 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida and finding reasonable 129.2 hours expended by such receiver).

Furthermore, the hours expended by the Receiver and his paralegal during the period from April 1, 2024 through June 30, 2024 do not appear excessive, redundant, or unnecessary at this point. As detailed more fully in the Receiver's Eighteenth Status Report, this matter involves more than 1,100 investors, $170 million in investments, and more than 200 properties. Doc. 1194. During the relevant period, the Receiver and the Retained Personnel obtained Court approval of the second distribution of $40 million to investors; continue working with claimants to resolve distribution issues; collected $64,311.31 in monies from investor clawback claims; collected $600 in sales agent clawback claims; received $68,988.79 from Tiffany's for a credit Davison had; obtained Court approval and closed on the private sale of two Tennessee properties for net proceeds of $805,925.65; closed on the final property from the eleventh auction for net proceeds of $6,561.50; closed on all four properties from the Receiver's twelfth auction for a total of $451,874.84 in net proceeds; closed on four properties from the Receivers thirteenth auction for a total of $915.817.84 in net proceeds; closed on four properties from the Receiver's fourteenth auction for net proceeds of $989,567.03; obtained Court approval of Transfer Title motions for the properties sold during the Receiver's thirteenth, fourteenth, and fifteenth auctions; successfully auctioned commercial property in Sylva, North Carolina for a gross price of $1,013,250; received an additional distribution of $9,585 from Caribbean Isles Co-Op; received $2,850.36 in

proceeds for sale/auction of miscellaneous items; obtained Court approval of
sale of Defendant through consignment; and continued working with partners
on the operations of Commerce Brewing and related entities. Doc. 1210 at 2-4;
Doc. 1194.

I find the 156.4 hours expended by the Receiver, the 139.7 hours
expended by the paralegal, and the costs incurred (including costs for delivery
services, notary services and postage), from April 1, 2024 through June 30,
2024, which total $977.44, are fair and reasonable considering the activities
performed and the results achieved.

2. <u>Release of Fees Previously Held Back by the Court</u>

The Receiver also seeks $38,383.20 in fees that were held back in
connection with the Court's granting of the Receiver's first three Quarterly Fee
Applications. Doc. 1210 at 9. The SEC's Billing Instructions for Receivers in
Civil Actions ("Billing Instructions") provide that, "to the extent requested by
the SEC, interim fee applications may be subject to a holdback in the amount
of 20% of the amount of fees and expenses for each application filed with the
Court."[3]

---

[3] *See* Billing Instructions for Receivers in Civil Actions Commenced by the
United States Securities and Exchange Commission, available at
https://www.sec.gov/oiea/Article/billinginstructions.pdf.

Plaintiff included this provision within its motion to appoint Burton
Wiand as Receiver (Doc. 6-7), and—consistent with the SEC's standard Billing
Instructions—the Court reserved the right to implement a discretionary 20%
holdback. Doc. 11 ¶ 35. Per the Billing Instructions and the Court's
Receivership Order, "the total amounts held back during the course of the
receivership will be paid out at the discretion of the Court *as part of the final
fee application submitted at the close of the receivership*." *Id. (*emphasis added).

In this case, for the Receiver's first three fee applications (Docs. 88, 186,
218), the Court imposed the 20% holdback from the Receivership Order (Doc.
11) to the fees sought by the Receiver and G&P. (Docs. 141, 209, 249). The
Court reasoned that, "given the amount of the fees sought by Receiver," a 20%
holdback was appropriate. (Doc. 141, 209, 249).

The Court discontinued the holdback in its approval of the Receiver's
Fourth Quarterly Fees Application (Docs. 274, 288), noting the extensive work
that Receiver and the retained personnel completed during the fourth quarter,
including selling luxury vehicles, selling and listing for sale several properties,
completing construction on a luxury home, participating in litigation in
California and elsewhere, and running the day-to-day operations of the
Receivership Entities. Doc. 274 at 12-13. The Court found that "[g]iven the
Receiver's exercise of billing judgment, performance, and the results achieved
thus far," the holdback was unnecessary (Doc. 274 at 13); it clarified, however,

12

that "if the hours expended appear inflated or unnecessary" in the future, the holdback may be reinstated (Doc. 274 at 13 n.3). The holdback has not been applied since, but because of the application of the holdback provision to the first three applications, $38,383.20 in fees has not been paid to the Receiver. Doc. 1210 at 10. The Receiver now requests that the Court release those fees "in light of the significant success achieved to date." *Id*.

For example, the Receiver has distributed the combined amount of approximately $140 million to claimants, and the Receiver's distributions have provided approved investor claimants with the recovery of approximately 94% of their allowed amounts. Doc. 1210 at 10. And the Receiver anticipates that the value of the Receivership Estate will exceed by an unspecified amount the claims presently allowed by the Court and expects to recommend a method to distribute surplus funds to victim investors in his motion to approve a distribution to claimants. Doc. 1210 at 1.

However, per the language of the Court's Receivership Order, "the total amounts held back during the course of the receivership will be paid out at the discretion of the Court *as part of the final fee application* submitted *at the close of the receivership*." Doc. 11 ¶ 35 (emphasis added). At that time, "upon final review of the reasonableness of the aggregate fees, the efficiency of the receivership, and the results of the receivership," *then* the Court should reconsider the release of the held back funds. *F.T.C. v. Life Mgmt. Serv. of*

*Orange Cnty., LLC*, Case No. 6:16-cv-982-Orl-41TBS, 2017 WL 4861467, at *3 (M.D. Fla. Aug. 9, 2017), *report and recommendation adopted*, 2017 WL 4877460 (M.D. Fla. Oct. 30, 2017); *S.E.C. v. Price*, 108 F. Supp. 3d 1342, 1347 (N.D. Ga. 2010). Because the current application does not appear to be the Receiver's final fee application, as the receivership remains ongoing, I recommend denying without prejudice the motion to release the funds previously held back. *Id.*

Accordingly, I recommend that the Court grant the Receiver's request for $75,283.94 in fees and costs incurred between April 1, 2024 and June 30, 2014, but that the Court deny without prejudice his request for $38,383.20 in funds held back from the Receiver's first three applications, and reconsider the request with "the final fee application submitted at the close of the receivership." *See* Doc. 11 ¶ 35.

### B. G&P

With respect to legal services, the Receiver retained G&P, which the District Judge specifically authorized in the Order Appointing the Receiver. Doc. 11 at ¶ 16.  The Receiver now seeks $112,496.15 for services provided by G&P, which includes $17,550.00 in fees and costs incurred from April 1, 2024 through June 30, 2024 and $94,946.15 in fees that were held back in connection with the Court's granting of the Receiver's first three Quarterly Fees Applications. Doc. 1210 at 15-16.

1. <u>Reimbursement for Fees and Costs Incurred During
Eighteenth Quarter</u>

From April 1, 2024 through June 30, 2024, G&P liquidated assets for the

benefit of the Receivership, investigated and pursued additional assets for the

Receivership, and administered the claims process. *See* Doc. 1210 at 17. For

associated fees, G&P proposes rates of $350 for members/partners; $240 for

associates; and $135 for paralegals. *Id.*; *see also* Doc. 1210-6. The fees

requested include the following:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Maya Lockwood | Of Counsel | 25 years | 37.90 | $240.00 | $9,096.00 |
| Amanda Stephens | Paralegal | | 6.70 | $135.00 | $904.50 |
| Kimberly Paulson | Paralegal | | 53.70 | $135.00 | $7,249.50 |
| **TOTAL:** | | | | | $17,250.00 |

Doc. 1210 at 18; *see also* Doc. 1210-7.

Given the parties' respective levels of experience, the requested hourly

rates appear reasonable. *See F.T.C. v. Hardco Holding Grp. LLC*, No. 6:17-cv-

1257-Orl-37TBS, 2017 WL 4772624, at *4-5 (M.D. Fla. Oct. 3, 2017), *report and

recommendation adopted*, 2017 WL 4700396 (M.D. Fla. Oct. 19, 2017) (finding

an hourly rate of $210 for an attorney with two years' experience on the high

side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty one years' experience reasonable)*; Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable). And, the hours expended by counsel and the paralegals do not appear unnecessary, excessive, or redundant but rather reflect a reasonable amount of time spent on this matter.  Given that both the hourly rate and the hours expended are reasonable, I recommend that G&P be awarded $17,250.00 in fees for the time period from April 1, 2024 through June 30, 2024.

In addition to its legal fees, G&P seeks reimbursement in the amount of $300.00 for website-related expenses, identified in the Receiver's invoice as follows:

| Date | Description of Disbursements | Amount |
|---|---|---|
| 4/1/2024 | Rad Technology Consulting LLC- Web-related expenses- Monthly hosting services | $50.00 |
| 5/16/2024 | George Guerra- Web-related expenses- RAD Technology - service order | $37.50 |
| 5/16/2024 | George Guerra- Web-related expenses- RAD Technology - monthly hosting | $50.00 |
| 6/1/2024 | Rad Technology Consulting LLC- Web-related expenses- Website hosting for June 2024 | $50.00 |
| 6/1/2024 | Rad Technology Consulting LLC- Web-related expenses- Service order | $112.50 |
| **TOTAL:** | | $300.00 |

Doc. 1210 at 18; *see also* Doc. 1210-7.

The costs appear to have been necessarily incurred for the Receiver and the Retained Personnel to carry out their duties. Such costs are thus fair and reasonable and should be awarded. I recommend that G&P be awarded costs in the amount of $300.00.

2.  Release of Fees Previously Held Back by the Court

I turn next to the Receiver's request that the Court release funds held back from the Receiver's first three quarterly fee awards, specifically, $94,946.15 in fees for services G&P rendered in 2020. For the reasons stated above, *supra* Section II.A.2—namely, the terms of the Court's order appointing the Receiver—I recommend that the Court deny without prejudice the request to release the funds, and reconsider the request with "the final fee application submitted at the close of the receivership." Doc. 11 ¶ 35.

17

I recommend that the Court award fees and costs to G&P only in the amount of $17,550.00, which represents $17,250.00 in fees and $300.00 in costs incurred between April 1, 2024 and June 30, 2024.

### 3. JND[4]

The Receiver retained the law firm of JND to assist as co-counsel to G&P (*see* Doc. 278), which the Court approved (Doc. 282).  As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JND has agreed to the reduced rates for attorneys and paralegals provided in the G&P fee schedule. Doc. 1210 at 19; *see also* Doc. 1210-6. Based on those rates, the Receiver now seeks fees for professional services rendered by JND from April 1, 2024 through June 30, 2024 for assisting in investigating the fraud and related activities, liquidating Receivership assets, investigating and pursuing additional assets for the Receivership, and administering the claims process. *Id*. JND seeks the following as to those services:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 28 years | 32.00 | $350.00 | $11,200.00 |
| Mary Gura | Paralegal | | 79.30 | $135.00 | $10,705.50 |
| **TOTAL:** | | | | | $21,905.50 |

---

[4] The firm name changed from Johnson, Cassidy, Newlon & DeCort (*see* Doc. 975 at 3) to Johnson, Newlon & DeCort ("JND") since entry of the Order Appointing the Receiver (*see* Doc. 936).

Doc. 1210 at 20; *see also* Docs. 1210-8, 1210-9, 1210-10.

During the relevant period, JND also undertook two discrete projects relating to recovery of false profits from investors and claw-back litigation against non-investors. Doc. 1210 at 20-22. In relation to the recovery of false profits from investors, the Receiver seeks the following for JND:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 28 years | 3.90 | $350.00 | $1,365.00 |
| Emily Thompson | Associate | 1 year | 0.20 | $195.00 | $39.00 |
| Maya Gura | Paralegal | | 0.30 | $135.00 | $40.50 |
| **TOTAL:** | | | | | $1,444.50 |

Doc. 1210 at 19; *see also* Doc. 1210-9. In addition to legal fees, JND seeks $14.10 in costs for online research expenses. Doc. 1210 at 21. As to clawback litigation, JND seeks $315.00 in fees for 0.90 hours of Ms. Donlon's time. *Id*. at 22.

Upon review of the billing records and the Eighteenth Quarterly Status Report, the hours expended appear fair and reasonable for the services performed and present no redundancies or superfluities. Docs. 1210-8, 1210-9, 1210-10. While some of JND's services appear redundant to those of G&P, the Receiver explained that lead counsel of G&P (Ms. Donlon) left G&P to join JND. Doc. 278 at 2-3. The Receiver believed that, due to her extensive

19

experience, it would be in the best interest of the receivership to continue to use Ms. Donlon's services and to have JND act as co-counsel to G&P on this matter. *Id.* The Receiver asserted "there will not be any duplication of services provided by the two firms." *Id.* at 3.

As discussed above, the rates charged are reasonable for the Middle District of Florida. *See Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted*, 2017 WL 4700396; *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460. In addition, JND incurred costs in the amount of $1,051.04 for certified copies, publication costs, and delivery services. Doc. 1210 at 20. These costs appear to be necessary and reasonable.

I recommend that JND be awarded $24,730.14, which includes $23,665.00 in fees and $1,065.14 in costs.

### 4. Jared J. Perez, P.A.

The Receiver also retained the services of Jared J. Perez, P.A. (Doc. 610) for services such as claims research (including research regarding fund outcomes in receiverships) and preparing for and attending case management and strategy meetings (Doc. 1210 at 22-23; Doc. 1210-11). The District Judge approved the retention of those services. Doc. 639.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, Mr. Perez has agreed to follow the reduced rates for attorneys provided in the G&P fee schedule. Doc. 1210 at 22-23; *see also* Doc. 1210-6. Based on those rates, the Receiver now seeks a total of $7,420.00 for 21.20 hours of Mr. Perez's work, billed at an hourly rate of $350.00; Mr. Perez is a partner with 17 years of experience. Doc. 1210 at 23; *see also* Doc. 1210-11.

I find the hours expended and the hourly rate fair and reasonable given Mr. Perez's experience and the work he performed. Therefore, I recommend that Jared J. Perez be awarded $7,420.00.

### 5. Yip

With the District Judge's express authorization (Doc. 11, ¶ 3), the Receiver retained the services of Yip, a forensic accounting firm specializing in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support (Doc. 1210 at 24). Yip assisted with the accounting analysis for establishing a claims process. Doc. 1210 at 24. In addition, as detailed more fully by the Receiver, Yip "has been instrumental to the Receiver in investigating and analyzing the financial status of the Receivership Entities and the investment scheme at issue in this case," including, but not limited to, tracing investor proceeds to various assets and properties and substantially completing the process of gathering the investors' investments and distributions for the claims process. *Id.*; *see also*

Doc. 1210-12.  As the Receiver has indicated throughout these proceedings, most of the cost associated with forensic accounting services occur on the front end of the Receivership, are not duplicated later, and result in greater efficiency as the claims process and filing of claw-back actions commences.

The Receiver now seeks an award of $833.00 in fees to Yip based on its services as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Danny Zamorano | Manager | 6 years | 3.40 | $245.00 | $833.00 |
| **TOTAL:** | | | | | $833.00 |

Doc. 1210 at 5; Doc. 1210-12.

The hourly rate appears reasonable given Mr. Zamorano's experience and position.  *See F.T.C. v. Nationwide Connections, Inc.*, Case No. 06-80180-Civ-Ryskamp/Vitunac, 2009 WL 10669124, at *8-9 (S.D. Fla. Apr. 14, 2009), *report and recommendation adopted*, 2009 WL 10668438 (S.D. Fla. Apr. 24, 2009) (awarding a forensic accounting firm used by a court appointed receiver fees in the amount of $32,333.50 for 143.7 hours of forensic accounting work at a blended rate of approximately $225 per hour).  Nor do the hours appear inflated, excessive, or unnecessary for the work performed during this period.  Accordingly, I recommend that Yip be awarded $833.00.

### 6. PDR

The Receiver also retained the services of PDR to assist with accounting and tax matters. Doc. 1210 at 25-26. The District Judge approved the retention of PDR and limited its role to internal Receivership accounting, financial reporting, tax preparation and filing, and internal accounting for EquiAlt. *See* Doc. 85. The District Judge directed the Receiver to report the maximum number of hours it anticipated PDR would expend, and, should it become apparent that PDR's hours would exceed the anticipated maximum, to submit a motion to that effect. *Id.*  In approving the retention of PDR, the District Judge approved the following hourly rates for PDR employees working on this matter: $320 for partners/principals; $210 for managers; $180 for senior associates; and $125 for staff members. *Id.*

Originally, the Receiver reported that a principal of PDR agreed to a maximum of $15,000 for PDR's services for each of the first three months and then a maximum of $6,000 for each month thereafter. Doc. 87 at 3.

Subsequently, the Receiver filed a motion seeking fees for PDR in excess of the previously approved limits, because PDR had expanded its role[5] in this case. Doc. 572 at 25-26. In that motion, the Receiver explained that the

---

[5] PDR's role in the case expanded when EquiAlt's senior accounting employee was terminated at the end of February 2022. Doc. 572 at 25. Following the termination of this position, PDR assumed the duties of that position. *Id*. The Receiver has not specified which duties this encompasses. *Id*.

monthly limits were "no longer reflective of reasonable monthly fees." *Id*. The
Court granted the motion and awarded fees in excess of the previous budget.
Doc. 586. Since then, the Receiver has routinely requested fees in excess of the
previously approved budget (Docs. 572 at 25; 614 at 27; 710 at 29; 804 at 27;
1089 at 23-24), and the Court has routinely granted such requests (Docs. 586
at 3; 731 at 3; 830 at 3; 889 at 3; 1133 at 219; 1152).

Here, the Receiver again seeks an award above the originally approved
budget. The Receiver seeks $19,818.66 in fees for accounting, auditing,
consulting, and tax services provided by PDR during the relevant period. Doc.
1210 at 25-26; Doc. 1210-13. Specifically, PDR recorded bank activity,
reconciled bank statements, reviewed invoices, reviewed ledgers, adjusted
entries for fund balances, processed payroll, and attended monthly operation
meetings. Doc. 1210-13 at 2-11. The requested fees include hourly rates
consistent with the original rate proposal: $320 for Partner William Price, $210
for Manager Matthew Low, $155 for Manager Gail Heinold, and $125 for Staff
Members Sharon O'Brien, Andres Almanza Madrid, and Taylor Jones. Doc.
1210 at 26; Doc. 1210-13.

Upon review, the 124.25 hours expended on accounting and tax matters
by PDR over the three-month period appear reasonable. Doc. 1210 at 26. If the
Court intended that its initial deviation from the budget render void the

original proposed budget, I recommend fees be awarded in the amount of $19,818.66 for the work performed by PDR.

### 7. E-Hounds

For computer forensics services, the Receiver retained E-Hounds, which the District Judge authorized in the Order Appointing the Receiver. Doc. 11 at ¶ 3. Relevant here, E-Hounds maintains and updates a proprietary review platform, which collects and preserves electronic records. Doc. 1210 at 27.

The Receiver seeks an award of $6,945.00 for services rendered and costs incurred by E-Hounds, which includes $3,570.00 in monthly charges for maintenance and use of the proprietary platform, and $3,375.00 for use of the platform by additional users. *Id.* The costs are reasonable for collecting and preserving electronic records to facilitate review of electronic data. *See, e.g., SEC v. Kinetic Inv. Grp.*, Case No. 8:20-cv-394-MSS-SPF (M.D. Fla.) (Docs. 73 and 101); *CFTC v. Oasis Int'l Grp. Ltd.*, Case No. 8:19-cv-886-VMC-SPF (M.D. Fla.) (Docs. 203 and 207). I recommend that E-Hounds be awarded $6,945.00 for services provided.

### 8. Omni

The Receiver retained Omni to assist with administration of the claims process (*see* Doc. 335), which the District Judge approved (Doc. 347). According to the Receiver, "Omni is an information management company that provides administrative services and technology solutions to simplify claims

25

administration." Doc. 1210 at 28.  The Receiver describes the services Omni performed as restructuring services, quality control services, administrative services, database programming services, and call center operations. Doc. 1210-15. Omni assists in mailing, determining the correct addresses for returned mail, addressing clerical deficiencies, performing data entry for the returned Proof of Claim Forms, and processing distributions. Doc. 1210 at 28. The Standard Services Agreement between the Receiver and Omni indicates that, except as otherwise stated therein, services rendered by Omni will be billed at rates ranging from $135 to $205 per hour, representing a 5% discount (*see* Doc. 335-5), which the District Judge adopted in authorizing the Receiver to retain Omni (Doc. 347 at 4).

The Receiver now seeks fees in the amount of $17,394.65 for 155.40 hours expended by several Omni employees on the claims administration process. Doc. 1210 at 28; Doc. 1210-16.  Upon review of the time records, none of the hours appear excessive, redundant, or unnecessary. Doc. 1210-15.  Further, the fee amounts fall within the rates that the District Judge has approved. Accordingly, I recommend that fees in the amount of $17,394.65 be awarded to Omni.

### 9.  RWJ

The Receiver retained RWJ, an asset management and investigation firm, to assist with the investigation and oversight of ongoing business

operations and property recovered by the Receiver. Doc. 1210 at 29. The District Judge specifically authorized the retention of RWJ in the Order Appointing the Receiver. Doc. 11 at ¶ 3. The Receiver now seeks an award of $1,341.00 in fees for work performed by RWJ in this matter. Doc. 1210 at 29; Doc. 1210-17. The billing records indicate that RWJ billed for one employee, Roger Jernigan, who performed 14.9 hours of work at an hourly rate of $90.00. Doc. 1210-17. Specifically, Mr. Jernigan monitored security cameras and responded to alerts for trespassers relating to the Arizona properties, which were listed for sale during this quarter. *Id*. As indicated by his biography, Roger Jernigan holds more than 30 years' experience in law enforcement and more than 11 years' experience assisting on receivership matters. Doc. 122-11 at 6-7.

Both the hourly rate and the hours expended appear fair and reasonable given the services performed and the experience held by Mr. Jernigan. *See generally, SEC v. Kirkland*, No. 6:06-cv-183- Orl-28KRS, 2008 WL 3981434, at *3 (Aug. 21, 2008), *report and recommendation adopted at* 2008 WL 4533931 (M.D. Fla. Sept. 29, 2008) (approving a rate of $150 per hour for investigative services). I recommend that RWJ be awarded $1,341.00 in fees.

## III.   Conclusion

For these reasons, I respectfully **RECOMMEND**:

1.   The Receiver's Unopposed Eighteenth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals (Doc. 1210) be **GRANTED** in part and **DENIED** in part.

2.   I recommend that the application be granted to the extent that the Receiver requests fees and costs be awarded to:

a. The Receiver, in the amount of $75,283.94.

b. G&P, in the amount of $17,550.00.

c. JND, in the amount of $24,730.14;

d. Jared J. Perez, P.A., in the amount of $7,420.00;

e. Yip, in the amount of $833.00;

f. PDR, in the amount of $19,818.66, if the Court meant for its order permitting the initial request for deviation from the budget to render void the originally proposed budget;

g. E-Hounds, in the amount of $6,945.00;

h. Omni, in the amount of $17,394.65; and

i. RWJ, in the amount of $1,341.00.

3.   I recommend that the application be otherwise denied without prejudice.

**RESPECTFULLY SUBMITTED** for consideration by the Honorable

Mary S. Scriven, in Tampa, Florida, this 25th day of September, 2024.

NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Within fourteen days after being served with a copy of this Report and

Recommendation, any party may serve and file written objections to the

proposed findings and recommendations or request an extension of time to do

so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object

in accordance with the provisions of § 636(b)(1) waives that party's right to

challenge on appeal the district court's order based on the unobjected-to factual

and legal conclusions contained in this Report and Recommendation. 11th Cir.

R. 3-1.