UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.                      Case No.: 8:20-cv-325-MSS-NHA

BRIAN DAVISON, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATIONS

Pending before the Court is the Receiver's Unopposed Twentieth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals ("Twentieth Quarterly Fee Application"). Doc. 1287.  The Receiver seeks reimbursement of fees and costs for the period from October 1, 2024 through December 31, 2024. *Id.* at p. 2. The Securities and Exchange Commission ("SEC") does not oppose the request. For the reasons below, I recommend that the Twentieth Quarterly Fee Application be **GRANTED**.

## I.    Background

The SEC brought this action against individual Defendants Brian Davison ("Davison") and Barry Rybicki ("Rybicki") (collectively, "Individual

Defendants") and corporate Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP LLC (collectively, "Corporate Defendants"), for violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, regarding the alleged operation of a nationwide Ponzi scheme raising more than $170 million from 1,100 investors through fraudulent, unregistered securities offerings. *See* Compl. (Doc. 1).

The SEC further alleged that Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC, Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; and TB Oldest House Est. 1842, LLC (collectively, "Relief Defendants") all received proceeds of the fraud without any legitimate entitlement to the money. *Id*.

2

The District Court appointed Burton W. Wiand as the Receiver in this action over the Corporate Defendants, the Relief Defendants, and each of their subsidiaries, successors, and assigns.[1] Doc. 11.

The District Judge outlined the Receiver's duties, the Court's basis for compensating those duties, and the requirements for the Receiver's status reports and applications for fees. Doc. 11, ¶¶ 1-12, 16, 28-36.  In accordance with the Court's directives, the Receiver now submits his Twentieth Quarterly Fee Application, seeking compensation for the fees and costs incurred for the performance of his duties as well as the fees and costs incurred by the retained personnel he hired to assist in the performance of such duties. Doc. 1287. Specifically, the Receiver seeks an award of fees and costs incurred from October 1, 2024 through December 31, 2024, for: (1) the Receiver, in the amount of $57,335.92; (2) Guerra & Partner, P.A. ("G&P"), in the amount of $4,636.50; (3) Johnson, Newlon & DeCort ("JND"), in the amount of $18,627.87; (4) Jared J. Perez, P.A., in the amount of $2,940.00; (5) Yip Associates ("Yip") in the amount of $1,764.00; (6) PDR CPAs ("PDR"), in the

---

[1] Subsequently, the District Judge granted the Receiver's motion seeking to expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, LP ("QOZ"); EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc. ("REIT"); EquiAlt Holdings LLC (sponsor of the QOZ and REIT); EquiAlt Property Management LLC (property manager of the QOZ and REIT); and EquiAlt Capital Advisors, LLC (manager of day-to-day operations for the QOZ and REIT). Doc. 184. EquiAlt Fund I, LLC was also later added. Doc. 284.

amount of $10,955.66; (7) E-Hounds, Inc. ("E-Hounds"), in the amount of $7,471.50; and (8) Omni Agent Solutions ("Omni"), in the amount of $1,367.59. Doc. 1287, pp. 29-30. The work of each entity warranting the fee is described below.

## II.    Analysis

District courts maintain "broad powers and wide discretion to award relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). When a receiver reasonably and diligently discharges his or her duties, the receiver is entitled to compensation. *Id.* at 1577 (citation omitted); *see Stuart v. Boulware*, 133 U.S. 78, 82 (1890) ("Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers. That power results necessarily from the relation which the receiver sustains to the court; and, in the absence of any legislation regulating the receiver's salary or compensation, the matter is left entirely to the determination of the court from which he derives his appointment.").

A receiver must provide "specific and detailed evidence" in support of an application for fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and results are always relevant." *Elliott*, 953 F.2d at 1577 (citation omitted); *see also F.T.C. v. Worldwide Info Servs., Inc.*, No. 6:14-cv-8-Orl-41DAB, 2015 WL 144389, at *4 (M.D. Fla. Jan.

4

12, 2015) (citation omitted) (noting that courts may consider several factors in determining the reasonableness of a fee award to a receiver, including "(1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership."). "[W]here the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." *Norman*, 836 F.2d at 1303 (citation omitted). "Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted). In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the relevant area of law who is willing and able to take the case, if indeed such an attorney exists. *Am.*

5

*Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation. *Norman*, 836 F.2d at 1305. Both a receiver and his counsel must exercise proper "billing judgment," that is, both should make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 434.

As to claims for professional services, the receiver must also provide evidence that the hourly rate is reasonable and commensurate with rates paid for similar services and that the time expended by such professionals was reasonable. *See Norman*, 836 F.2d at 1303 (The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."). The receiver must present sufficient information to permit the Court to determine that any expenses were actually and necessarily incurred. *Id.*

The Court is an expert with respect to fee applications and therefore may consider a fee award based on its own experience and knowledge concerning reasonable and proper fees. *Norman*, 836 F.2d at 1303 (citations omitted).

Additionally, in considering a fee award to a receiver, "[o]pposition or acquiescence by the SEC to the fee application will be given great weight." *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also S.E.C. v.*

6

*Mgmt. Sols., Inc.*, 824 F. App'x 550, 553 n. 2 (10th Cir. 2020) (holding the same).

Upon review of the Twentieth Quarterly Fee Application, including the accompanying fee and costs records (Doc. 1287), I find that the Receiver continued to properly perform his duties and employ professionals to help carry out those duties. Further, the Receiver and the retained personnel discharged their duties in a diligent and reasonable manner and did not incur unnecessary fees or costs. Importantly, as noted above, the SEC does not oppose the Receiver's request for fees and costs. *Id.*

### A. Receiver

The Receiver seeks $57,335.92 for himself, for work performed from October 1, 2024 through December 31, 2024. Doc. 1287, p. 8.

During the Twentieth Quarter, the Receiver charged an hourly rate of $360 for 122.30 hours expended on receivership activities, which included, for example, corresponding with agents, purchasers, and auction participants; reviewing disbursement distribution sheets, price opinions, escrow agreements, and settlement statements; coordinating with the professionals he contracted; and reviewing invoices, bank statements, and other financial documents. Doc. 1287-2.

Broken down by Activity Category,[2] the Receiver's time was allocated as follows:

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 40.60 | $14,616.00 |
| Asset Analysis and Recovery | 4.00 | $1,440.00 |
| Business Operations | 70.60 | $25,416.00 |
| Case Administration | 2.40 | $864.00 |
| Claims Administration | 4.70 | $1,692.00 |
| **TOTAL** | **122.30** | **$44,028.00** |

---

[2] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as "identification and review of potential assets including causes of action and non-litigation recoveries"; (2) Asset Disposition, which is defined as "sales, leases, abandonment and related transaction work" (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as "issues related to operation of an ongoing business;" (4) Case Administration, which is defined as "coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.;" (5) Claims Administration and Objections, which is defined as "expenses in formulating, gaining approval of and administering any claims procedure;" and (6) Employee Benefits/Pensions, which is defined as "review [of] issues such as severance, retention, 401K coverage and continuance of pension plan." Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission, available at https://www.sec.gov/oiea/Article/billinginstructions.pdf. The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate. *Id.* at p. 8. Per these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work. Doc. 1287, p. 9.

The Receiver also charged for 2.10 hours expended on recovery of false profits from investors. Doc. 1287, p. 12. In addition, the Receiver seeks an hourly rate of $125 per hour for 99.40 hours of paralegal work,[3] for a total of $12,425.00. Doc. 1287, pp. 10-11; *see* Doc, 1287-3. Specifically, as summarized in the Receiver's invoice (Doc. 1287-3), the Receiver's paraprofessional, Edwina Tate, spent 58.3 hours assisting with asset disposition, 32.8 hours helping with business operations, and 8.3 hours working on claims administration and objections. Doc. 1287-3.

Based on my own experience and the rates typically awarded to court-appointed receivers in the Middle District of Florida (*see* Docs. 586, 731, 830), the Receiver's requested hourly rate of $360, and his paralegal's requested hourly rate of $125, are reasonable. *See, e.g.*, *F.T.C. v. First Choice Horizon LLC*, Case No. 6:19-cv-1028-Orl-40LRH, 2020 WL 1431526, at *2-3 (M.D. Fla. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 1431601 (M.D. Fla. Jan. 31, 2020) (considering several factors in concluding that an hourly

---

[3] Courts only reimburse work of paralegals and law clerks when such individuals perform work traditionally done by attorneys. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (concluding that a district court properly reimbursed the time spent by paralegals and law clerks where the work was normally done by an attorney). In this instance, a review of the time records for the paralegal (Doc. 1287-3) indicates that the work performed by the paralegal constituted legal work normally performed by an attorney rather than clerical work. Accordingly, I recommend awarding the fees requested for work performed by the paralegal, as both the requested rate and the time expended on such work are reasonable.

rate of $350 was reasonable for a court-appointed receiver in the Middle
District of Florida); *F.T.C. v. MOBE Ltd.*, Case No. 6:18-cv-862-Orl-37DCI,
2018 WL 4782327, at *3 (M.D. Fla. Sept. 17, 2018), *report and recommendation
adopted*, 2018 WL 4774960 (M.D. Fla. Oct. 3, 2018) (finding a rate of $330 per
hour a reasonable rate for compensating a court-appointed receiver in the
Middle District of Florida); *F.T.C. v. Life Mgmt. Serv. of Orange Cnty., LLC*,
Case No. 6:16-cv-982-Orl-41TBS, 2017 WL 4861467, at *3 (M.D. Fla. Aug. 9,
2017), *report and recommendation adopted*, 2017 WL 4877460 (M.D. Fla. Oct.
30, 2017) (finding a rate of $325 per hour a reasonable rate for compensating
a court-appointed receiver in the Middle District of Florida and finding
reasonable 129.2 hours expended by such receiver).

Furthermore, the hours expended by the Receiver and his paralegal
during the period from October 1, 2024 through December 31, 2024 do not
appear excessive, redundant, or unnecessary. During the relevant period, the
Receiver held two online auctions resulting in contracts on sixteen properties;
continued working with claimants to resolve distribution issues related to
death, divorce, and custodian changes; collected $2,099.88 in monies from
investor claw back claims; collected $600 in sales agent claw back claims;
closed on the last three properties from sixteenth auction for net proceeds of
$544,679.96; closed on eight of thirteen properties from the seventeenth
auction with net proceeds of $1,171,980.21; closed on two of eight properties

10

from the Receiver's eighteenth auction for a total of $224,351.48 in net proceeds; reviewed the Court approved Transfer Title motions for the properties sold during the Receiver's eighteenth auction; worked to register claw back judgments in California and New York; continued the sale of miscellaneous items resulting in proceeds of $692.31; continued working with partners on the operations of Commerce Brewing, including the acquisition by Commerce of Persimmon Hollow; and investigated the potential sale of claw back judgments. Doc. 1286, pp. 3-4.

In addition to reimbursement for fees, the Receiver seeks reimbursement of costs in the amount of $126.92, which he spent on delivery services, web-related expenses, and notary services. Doc. 1287, p. 11.

I find the 124.40 hours expended by the Receiver, the 99.40 hours expended by the paralegal, and the $126.92 in costs incurred from October 1, 2024 through December 31, 2024 to be fair and reasonable, considering the activities performed and the results achieved. Thus, I recommend the Court award the Receiver the requested $57,335.92.

### B. G&P

With respect to legal services, the Receiver retained G&P, which the District Judge specifically authorized in the Order Appointing the Receiver. Doc. 11, ¶ 16. The Receiver now seeks $4,636.50 for services provided by G&P from October 1, 2024 through December 31, 2024. Doc. 1287, pp. 13-14.

From October 1, 2024 through December 31, 2024, G&P liquidated assets for the benefit of the Receivership, investigated and pursued additional assets for the Receivership, and administered the claims process. *See* Doc. 1287, p. 13. Specifically—and as further detailed in G&P's description of services (Doc. 1287-6)—G&P spent 4.70 hours on business operations assistance and 20.70 hours on claims administration and objections.[4] Doc. 1287, p. 13; *see* Doc. 1287-6.

For associated fees, G&P proposes hourly rates of $240 for non-partners and $135 for paralegals. Doc. 1287, p. 14.; *see* Doc. 1287-6. The requested rates are as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Maya Lockwood | Of Counsel | 25 years | 11.50 | $240.00 | $2,760.00 |
| Kimberly Paulson | Paralegal | | 13.90 | $135.00 | $1,876.50 |
| **TOTAL** | | | | | **$4,636.50** |

Doc. 1287-6.

Given the parties' respective positions and Ms. Lockwood's level of experience level, the requested hourly rates appear reasonable. *See F.T.C. v. Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5 (M.D. Fla. Oct. 3, 2017), *report and recommendation adopted*, 2017 WL

---

[4] G&P also spent 16.20 hours working on fee motions, time for which they did not charge the Court. Doc. 1287-6, pp. 8-11.

4700396 (M.D. Fla. Oct. 19, 2017) (finding an hourly rate of $210 for an attorney with two years' experience on the high side but not unreasonable; an hourly rate of $325 for an associate with seven years' experience reasonable and at or below that charged by attorneys of comparable experience and skills in the Middle District of Florida; an hourly rate of $400 for an attorney with twelve years' experience and particularized expertise reasonable; and a discounted hourly rate of $400 for a partner with twenty-one years' experience reasonable); *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460 (concluding that hourly rates charged for legal services rendered on behalf of a court-appointed receiver in the amounts of $310, $360, and $410 were reasonable and an hourly rate of $125 for legal work performed by paralegals was reasonable).

The hours expended by counsel and the paralegal do not appear unnecessary, excessive, or redundant but rather reflect a reasonable amount of time spent on this matter.  Given that both the hourly rate and the hours expended are reasonable, I recommend that G&P be awarded $4,636.50 in fees for the quarter.

### C. JND[5]

The Receiver retained the law firm of JND to assist as co-counsel to G&P (*see* Doc. 278), which the Court approved (Doc. 282). As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JND agreed to the reduced rates for attorneys and paralegals as provided in the G&P fee schedule. Doc. 1287, p. 14; *see also* Doc. 1287-5. Based on those rates, the Receiver asks the Court to award JND $18,627.87, which includes $17,549.50 in fees for professional services rendered and $1,078.37 in costs incurred from October 1, 2024 through December 31, 2024. Doc. 1287, p. 14.

JND assisted the Receiver in investigating fraud and related activities; liquidating Receivership assets; investigating and pursuing additional assets for the Receivership; and administering the claims process. *Id.* at pp. 14-15; Doc. 1287-7. In this capacity, JND corresponded with the Receiver regarding case and account management; reviewed and drafted motions to strike and transfer accounts; and reviewed and organized case documents. Doc. 1287-7. JND's time and fees for services rendered on this matter for each Activity Category are as follows:

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 6.50 | $2,124.50 |

---

[5] The firm name changed from Johnson, Cassidy, Newlon & DeCort (*see* Doc. 975 at p. 3) to Johnson, Newlon & DeCort ("JND") since entry of the Order Appointing the Receiver (*see* Doc. 936).

| Asset Analysis and Recovery | 7.30 | $2,555.00 |
|---|---|---|
| Business Operations | 17.40 | $5,144.00 |
| Case Administration | 4.90 | $1,650.50 |
| Claims Administration | 34.90 | $5,270.50 |
| **TOTAL** | **71.00** | **$16,744.50** |

Doc. 1237, p. 15; Doc. 1237-7.

A summary of the professionals' hours rendered during the time covered by this Application is set forth below

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 28 years | 33.30 | $350.00 | $11,655.00 |
| Mary Gura | Paralegal | | 37.70 | $135.00 | $5,089.50 |
| **Total Fees:** | | | 71.00 | | $16,744.50 |

Doc. 1287, p. 15.

In addition to legal fees, JND seeks the following costs:

| Costs | Total |
|---|---|
| Publication Costs | $425.17 |
| Research | $7.05 |
| Delivery/Mail | $64.65 |
| Certified Copies | $175.50 |
| **Total Costs:** | **$672.37** |

Doc. 1287, pp. 15-16.

JND also assisted the Receiver in recovering false profits from investors who received monies in excess of their investments. Doc. 1287, p. 16. Specifically, JND drafted and reviewed correspondences regarding the registration of judgments and receipts of payment. R. 1287-8.

15

JND seeks the following fees and costs as to those services (*see* Doc. 1287,

p. 17):

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 28 years | 2.30 | $350.00 | $805.00 |
| **Total Fees:** | | | **2.30** | | **$805.00** |

| Costs | Total |
|---|---|
| Delivery/Mail | $205.74 |
| Certification of Judgments | $137.00 |
| **Total Costs:** | $342.74 |

JND also assisted the Receiver in clawback litigation against former

principals and employees of EquiAlt and sales agents who received

commissions for the sale of EquiAlt debentures. Doc. 1287, p. 17. JND did not

incur any fees for services rendered for this matter for the time covered by this

Application, but advanced costs of $63.26 as summarized below:

| Costs | Total |
|---|---|
| Fee to Register Judgment | $52.00 |
| Delivery/Mail | $11.26 |
| **Total Costs:** | $63.26 |

Doc. 1287, p. 18.

Upon review of the billing records, the hours JND expended appear fair

and reasonable for the services performed and present no redundancies or

superfluities. Docs. 1287-7, 1287-8. While some of JND's services appear

redundant to those of G&P, the Receiver explained that lead counsel of G&P

(Ms. Donlon) left G&P to join JND. Doc. 278, pp. 2-3. The Receiver believed

that, due to her extensive experience, it would be in the best interest of the receivership to continue to use Ms. Donlon's services and to have JND act as co-counsel to G&P on this matter. *Id.* The Receiver asserted there will not be "any duplication of services provided by the two firms." *Id.* at p. 3.

As discussed above, the proposed rates are reasonable for the Middle District of Florida. *See Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted*, 2017 WL 4700396; *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460.

In addition, the costs of publishing, researching, obtaining certified copies and certification of judgments, and performing delivery services appear to be necessary and reasonable. Doc. 1287, pp. 16-17.

I recommend that JND be awarded $18,627.87, which includes $17,549.50 in fees for professional services and $1,078.37 in costs.

### D. Jared J. Perez, P.A.

The Receiver also retained the services of Jared J. Perez, P.A. (Doc. 610) for services such as motion drafting and preparing for and attending case management and strategy meetings. The District Judge approved the retention of those services. Doc. 639. From October 1, 2024 to December 31, 2024, Jared J. Perez, P.A. expended 4.4 hours revising the first draft of the

motion to approve the third interim distribution and 4 hours attending monthly operations and case management meetings. Doc. 1287-10.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, Mr. Perez, a partner with 17 years of experience (*see* Doc. 1287, p. 19), has agreed to reduce his hourly rate to $350, as provided in the G&P fee schedule. Doc. 1287, p. 18; *see* Doc. 1287-5. Based on that rate, the Receiver now seeks a total of $2,940.00 for the 8.40 hours of Mr. Perez's work. Doc. 1287, p. 19.

Given Mr. Perez's experience and the work he performed, I find the hours expended and the hourly rate fair and reasonable. Therefore, I recommend that Jared J. Perez be awarded $2,940.00.

### E. Yip Associates

With the District Judge's express authorization (Doc. 11, ¶ 3), the Receiver retained the services of Yip, a forensic accounting firm specializing in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support (Doc. 1287, p. 19). During the relevant quarter, Yip spent 7.2 hours rendering its professional services, specifically: 1.5 hours reviewing disgorgement calculations for corporate defendants and corresponding with Receiver's counsel regarding that review; 2.4 hours preparing a schedule of disgorgement calculations; 3.1 hours reviewing and updating calculations of lost returns on investment (ROI), and

0.2 hours corresponding with Receiver's counsel regarding that review. Doc.
1287-11. In addition, as detailed more fully by the Receiver, Yip "has been
instrumental to the Receiver in investigating and analyzing the financial
status of the Receivership Entities and the investment scheme at issue in this
case," including, but not limited to, tracing investor proceeds to various assets
and properties and substantially completing the process of gathering the
investors' investments and distributions for the claims process. Doc. 1287, pp.
19-20.; *see also* Doc. 1287-11.  As the Receiver has indicated throughout these
proceedings, most of the costs associated with forensic accounting services
occur on the front end of the Receivership, are not duplicated later, and result
in greater efficiency as the claims process and filing of claw-back actions
commences.

The Receiver now seeks an award of $1,764.00 in fees to Yip based on its
services as follows:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Danny Zamorano | Manager | 6 years | 7.20 | $245.00 | $1,764.00 |
| **TOTAL:** | | | | | $1,764.00 |

Doc. 1287, p. 20; Doc. 1287-11.

The hourly rate appears reasonable given Mr. Zamorano's experience
and position.  *See F.T.C. v. Nationwide Connections, Inc.*, Case No. 06-80180-

Civ-Ryskamp/Vitunac, 2009 WL 10669124, at *8-9 (S.D. Fla. Apr. 14, 2009),
*report and recommendation adopted*, 2009 WL 10668438 (S.D. Fla. Apr. 24,
2009) (awarding a forensic accounting firm used by a court appointed receiver
fees in the amount of $32,333.50 for 143.7 hours of forensic accounting work at
a blended rate of approximately $225 per hour).  Nor do the hours appear
inflated, excessive, or unnecessary for the work performed during this period.
Accordingly, I recommend that Yip be awarded $1,764.00.

### F. PDR

The Receiver also retained the services of PDR to assist with accounting
and tax matters. Doc. 1287, p. 21. The District Judge approved the retention
of PDR and limited its role to internal Receivership accounting, financial
reporting, tax preparation and filing, and internal accounting for EquiAlt. *See*
Doc. 85. The District Judge directed the Receiver to report the maximum
number of hours it anticipated PDR would expend, and, should it become
apparent that PDR's hours would exceed the anticipated maximum, to submit
a motion to that effect. *Id.*  In approving the retention of PDR, the District
Judge approved the following hourly rates for PDR employees working on this
matter: $320 for partners/principals; $210 for managers; $180 for senior
associates; and $125 for staff members. *Id.*

Originally, the Receiver reported that a principal of PDR agreed to a maximum of $15,000 for PDR's services for each of the first three months and then a maximum of $6,000 for each month thereafter. Doc. 87, p. 3.

Subsequently, the Receiver filed a motion seeking fees for PDR in excess of the previously approved limits, because PDR had expanded its role in this case.[6] Doc. 572, pp. 25-26. In that motion, the Receiver explained that the monthly limits were "no longer reflective of reasonable monthly fees." *Id.* at p. 26. The Court granted the motion and awarded fees in excess of the previous budget. Doc. 586. Since then, the Receiver has routinely requested fees in excess of the previously approved budget (Docs. 614, p. 27; 710, p. 29; 804, p. 27; 1089, pp. 23-24), and the Court has routinely granted such requests (Docs. 586, p. 3; 731, p. 3; 830, p. 3; 889, p. 3; 1151, p. 3).

Here, the Receiver again seeks an award far above the originally approved budget. The Receiver seeks $10,955.66 for fees and disbursements for accounting, consulting, and tax services provided by PDR during the relevant period. Doc. 1287, pp. 21-22; Doc. 1287-12. Specifically, PDR researched tax planning, reviewed and approved accounts payable, entered invoices, printed checks, reviewed bank activities, processed payroll, updated

---

[6] PDR's role in the case expanded when EquiAlt's senior accounting employee was terminated at the end of February 2022. Doc. 572, p. 25. Following the termination of this position, PDR assumed the duties of that position. *Id.* The Receiver has not specified which duties this encompasses. *Id.*

account records, and prepared for and attended monthly operations meetings.
*Id.* The requested fees include hourly rates consistent with the original rate
proposal: $320 for Partner William Price, $210 for Manager Matthew Low,
$155 for Manager Gail Heinold, and $125 for Staff Members Sharon O'Brien,
Andres Almanza Madrid, Daria Ivantsova, and Taylor Jones. Doc. 1287, p. 21;
Doc. 1287-12.

Upon review, the 72.75 hours PDR spent on accounting and tax matters
over the three-month period appear reasonable. Doc. 1287, pp. 21-22. If the
Court intended that its initial deviation from the budget would render void the
originally proposed budget limit and would authorize exceeding the budget
every quarter thereafter, I recommend fees be awarded in the amount of
$10,955.66 for the work performed by PDR.

### G. E-Hounds

For computer forensics services, the Receiver retained E-Hounds, which
the District Judge authorized in the Order Appointing the Receiver. Doc. 11,
¶ 3. Relevant here, E-Hounds maintains and updates a proprietary review
platform, which collects and preserves electronic records. Doc. 1287, p. 22.

The Receiver seeks an award of $7,471.50 for services rendered and costs
incurred by E-Hounds. Doc. 1287, pp. 22-23. This award includes $3,570.00 in
charges for maintenance and use of the proprietary platform; $3,375.00 in
charges for use of the platform by additional users; and $526.50 for computer

forensic services such as managing updates and refunds relating to its
collection and preservation of GoDaddy records. Doc. 1287, pp. 22-23.

The fees and costs are reasonable for collecting and preserving electronic
records to facilitate review of electronic data. *See, e.g., SEC v. Kinetic Inv. Grp.*,
Case No. 8:20-cv-394-MSS-SPF (M.D. Fla.) (Docs. 73 and 101); *CFTC v. Oasis
Int'l Grp. Ltd.*, Case No. 8:19-cv-886-VMC-SPF (M.D. Fla.) (Docs. 203 and 207).
I recommend that E-Hounds be awarded $7,998.00 for services provided and
costs incurred between October 1, 2024 and December 31, 2024.

### H. Omni

The Receiver retained Omni to assist with the administration of the
claims process (*see* Doc. 335), which the District Judge approved (Doc. 347).
According to the Receiver, "Omni is an information management company that
provides administrative services and technology solutions to simplify claims
administration." Doc. 1287, p. 23.

Omni assists in mailing, determining the correct addresses for returned
mail, addressing clerical deficiencies, performing data entry for the returned
Proof of Claim Forms, and processing distributions. Doc. 1287, pp. 23-24.  The
Standard Services Agreement between the Receiver and Omni indicates that
Omni will generally charge hourly rates ranging from $135 to $205,
representing a 5% discount (*see* Doc. 335-5), which the District Judge adopted
in authorizing the Receiver to retain Omni (Doc. 347, p. 4).

23

The Receiver now seeks fees in the amount of $1,367.59 for 21.20 hours expended by several Omni employees. Doc. 1287-15. As detailed in Omni's timesheet, Omni employees reviewed and responded to creditors' email inquiries; prepared and sent communication logs to, and otherwise corresponded with, JND; and worked on project-related communications and daily reports. Doc. 1287-14.

Upon review of the time records, the hours do not appear excessive, redundant, or unnecessary. Docs. 1287-14, 1287-15. Further, the fee amounts fall within those the District Judge has approved. Accordingly, I recommend that the Court award Omni $1,367.59 in fees.

## III.  Conclusion

For these reasons, I respectfully **RECOMMEND**:

1. The Receiver's Unopposed Twentieth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals (Doc. 1287) be **GRANTED;**

2. The requested fees and costs be awarded to:

    a. The Receiver, in the amount of $57,335.92;

    b. G&P, in the amount of $4,636.50;

    c. JND, in the amount of $18,627.87;

    d.  Jared J. Perez, P.A., in the amount of $2,940.00;

e.  Yip Associates, in the amount of $1,764.00;

f.  PDR, in the amount of $10,955.66, if the Court meant for
    its order permitting the initial request for deviation from
    the budget to render void the originally proposed budget;

g.  E-Hounds, in the amount of $7,471.50; and

h.  Omni, in the amount of $1,367.59.

**RESPECTFULLY SUBMITTED** for consideration by the Honorable Mary S.

Scriven, in Tampa, Florida, on February 10, 2025.

_____

NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the

Report and Recommendation's factual findings and legal conclusions. A party's

failure to file written objections waives that party's right to challenge on appeal

any unobjected-to factual finding or legal conclusion the district judge adopts

from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite

resolution, parties may file a joint notice waiving the 14-day objection period.