UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                   Case No.: 8:20-cv-325-MSS-NHA

BRIAN DAVISON, *et al.*,

      Defendants.

_____/

## **REPORT AND RECOMMENDATIONS**

Pending before the Court is the Receiver's Unopposed Twenty-Fourth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals ("Twenty-Fourth Quarterly Fee Application"). Doc. 1400. The Receiver seeks reimbursement of fees and costs for the period from October 1, 2025 through December 31, 2025. *Id.* p. 2. The Securities and Exchange Commission ("SEC") does not oppose the request. *Id.* p. 1. For the reasons below, I recommend that the Twenty-Fourth Quarterly Fee Application be granted in part and denied in part. Specifically, I recommend the Court award the Receiver all fees and reimbursements requested except for the $910.00 requested for Jared J. Perez, P.A.

## I.    Background

The SEC brought this action against individual Defendants Brian Davison ("Davison") and Barry Rybicki ("Rybicki") (collectively, "Individual Defendants") and corporate Defendants EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; and EA SIP LLC (collectively, "Corporate Defendants"), for violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, regarding the alleged operation of a nationwide Ponzi scheme raising more than $170 million from 1,100 investors through fraudulent, unregistered securities offerings. *See* Compl. (Doc. 1).

The SEC further alleged that Defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3D Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC, Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; and TB Oldest House Est. 1842, LLC (collectively, "Relief Defendants") all received proceeds of the fraud without any legitimate entitlement to the money. *Id.*

2

The District Court appointed Burton W. Wiand as the Receiver in this action over the Corporate Defendants, the Relief Defendants, and each of their subsidiaries, successors, and assigns.[1] Doc. 11.

The District Judge outlined the Receiver's duties, the Court's basis for compensating those duties, and the requirements for the Receiver's status reports and applications for fees. Doc. 11, ¶¶ 1–12, 16, 28–36. In accordance with the Court's directives, the Receiver now submits his Twenty-Fourth Quarterly Fee Application, seeking compensation for the fees and costs incurred for the performance of his duties as well as the fees and costs incurred by the retained personnel he hired to assist in the performance of such duties. Doc. 1400. Specifically, the Receiver seeks an award of fees and costs incurred from October 1, 2025 through December 31, 2025, for: (1) the Receiver, in the amount of $38,659.71 (2) Burton W. Wiand P.A., in the amount of $23,536.00, (3) Johnson, Newlon & DeCort ("JND"), in the amount of $21,324.93; (4) Jared J. Perez, P.A., in the amount of $910.00; (5) Levun, Goodman, and Cohen, LLP, in the amount of $121.25; (6) PDR CPAs ("PDR"), in the amount of $16,061.25;

---

[1] Subsequently, the District Judge granted the Receiver's motion seeking to expand the Receivership to include EquiAlt Qualified Opportunity Zone Fund, LP ("QOZ"); EquiAlt QOZ Fund GP, LLC; EquiAlt Secured Income Portfolio REIT, Inc. ("REIT"); EquiAlt Holdings LLC (sponsor of the QOZ and REIT); EquiAlt Property Management LLC (property manager of the QOZ and REIT); and EquiAlt Capital Advisors, LLC (manager of day-to-day operations for the QOZ and REIT). Doc. 184. EquiAlt Fund I, LLC was also later added. Doc. 284.

(7) E-Hounds, Inc. ("E-Hounds"), in the amount of $7,015.00; and (8) Omni

Agent Solutions ("Omni"), in the amount of $911.32. Doc. 1400 p. 25–26. The

work of each entity warranting the fee is described below.

## II.    Analysis

District courts maintain "broad powers and wide discretion to determine

relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th

Cir. 1992) (citations omitted). When a receiver reasonably and diligently

discharges his or her duties, the receiver is entitled to compensation. *Id.* at

1577 (citation omitted); *see Stuart v. Boulware*, 133 U.S. 78, 82 (1890) ("Nor is

there any doubt of the power of courts of equity to fix the compensation of their

own receivers. That power results necessarily from the relation which the

receiver sustains to the court; and, in the absence of any legislation

regula[t]ing the receiver's salary or compensation, the matter is left entirely to

the determination of the court from which he derives his appointment.").

A receiver must provide "specific and detailed evidence" in support of an

application for fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d

1292, 1303 (11th Cir. 1988). "Whether a receiver merits a fee is based on the

circumstances surrounding the receivership, and results are always relevant."

*Elliott*, 953 F.2d at 1577 (citation omitted); *see also F.T.C. v. Worldwide Info*

*Servs., Inc.*, No. 6:14-cv-8-Orl-41DAB, 2015 WL 144389, at *4 (M.D. Fla. Jan.

12, 2015) (citation omitted) (noting that courts may consider several factors in

determining the reasonableness of a fee award to a receiver, including "(1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership."). "[W]here the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." *Norman*, 836 F.2d at 1303 (citation omitted). "Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted). In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the relevant area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). After

determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation. *Norman*, 836 F.2d at 1305. Both a receiver and his counsel must exercise proper "billing judgment," that is, both should make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 434.

As to claims for professional services, the receiver must also provide evidence that the hourly rate is reasonable and commensurate with rates paid for similar services and that the time expended by such professionals was reasonable. *See Norman*, 836 F.2d at 1303 (The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."). The receiver must present sufficient information to permit the Court to determine that any expenses were actually and necessarily incurred. *Id.*

The Court is an expert with respect to fee applications and therefore may consider a fee award based on its own experience and knowledge concerning reasonable and proper fees. *Norman*, 836 F.2d at 1303 (citations omitted).

Additionally, in considering a fee award to a receiver, "[o]pposition or acquiescence by the SEC to the fee application will be given great weight." *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also S.E.C. v.*

*Mgmt. Sols., Inc.*, 824 F. App'x 550, 553 n. 2 (10th Cir. 2020) (holding the same).

Upon review of the Twenty-Fourth Quarterly Fee Application, including the accompanying fee and costs records, I find that the Receiver continued to properly perform his duties and employ professionals to help carry out those duties. Further, although I begin to question the continued need for the Receiver's activities in this case, I find that the Receiver and the retained personnel, with the exception noted below, discharged their duties in a diligent and reasonable manner and likely did not incur unnecessary fees or costs. Importantly, as noted above, the SEC does not oppose the Receiver's request for fees and costs. Doc. 1400 p. 1.

### A. Receiver and His Firm

The Receiver seeks $38,659.71 for himself, for work performed from October 1, 2025 through December 31, 2025, and an additional $23,536.00 for work performed by his paralegals and an of-counsel attorney at his firm during the relevant time period. Doc. 1400 p. 9–12.

During the Twenty-Fourth Quarter, the Receiver charged an hourly rate of $360 for 106.90 hours expended on receivership activities, which included, for example, winding up sales from actions; staying apprised of activities at Commerce Brewing, Bolero Snout, and Persimmon Hollow; coordinating with

7

the professionals he contracted; reviewing invoices, bank statements, and other financial documents; and preparing court filings. Doc. 1400-2.

Broken down by Activity Category,[2] the Receiver's time was allocated as follows:

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 10.30 | $3,708.00 |
| Asset Disposition | 35.00 | $12,600.00 |
| Business Operations | 45.90 | $16,524.00 |
| Case Administration | 2.10 | $756.00 |
| Claims Administration | 13.60 | $4,896.00 |
| **TOTAL** | **106.90** | **$38,484.00** |

Doc. 1400 p. 10.

---

[2] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as "identification and review of potential assets including causes of action and non-litigation recoveries"; (2) Asset Disposition, which is defined as "sales, leases, abandonment and related transaction work" (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as "issues related to operation of an ongoing business;" (4) Case Administration, which is defined as "coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.;" (5) Claims Administration and Objections, which is defined as "expenses in formulating, gaining approval of and administering any claims procedure;" and (6) Employee Benefits/Pensions, which is defined as "review [of] issues such as severance, retention, 401K coverage and continuance of pension plan." Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission, available at https://www.sec.gov/oiea/Article/billinginstructions.pdf.

In addition to legal fees, the Receiver seeks the following costs:

| Costs | Total |
|---|---|
| Postage/Delivery Service | $10.95 |
| NotaryCam | $112.50 |
| Telephone | $52.26 |
| **Total Costs:** | **$175.71** |

Doc. 1400 p. 10.

Further, the Receiver seeks an hourly rate of $125 to $135 per hour for

127.00 hours of paralegal work,[3] and an hourly rate for $240.00 for 29.80 hours

of work by an attorney designated "of counsel," for a total of $23,536.00. Doc.

1400 pp. 11–12; *see* Doc. 1400-4. Specifically, as summarized in the Receiver's

invoice (Doc. 1400-4), the Receiver's paraprofessionals and of-counsel attorney

spent 0.8 hours on asset analysis and recovery, 17.2 hours assisting with asset

disposition, 15.6 hours helping with business operations, 6.4 hours on case

---

[3] Courts only reimburse work of paralegals and law clerks when such individuals perform work traditionally done by attorneys. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (concluding that a district court properly reimbursed the time spent by paralegals and law clerks where the work was normally done by an attorney). In this instance, a review of the time records for the paralegal (Doc. 1400-4) indicates that the work performed by the paralegal constituted legal work normally performed by an attorney rather than clerical work. Accordingly, I recommend awarding the fees requested for work performed by the paralegal, as both the requested rate and the time expended on such work are reasonable.

administration, and 116.8 hours working on claims administration. Doc. 1400-4; Doc. 1400 p. 11. The paralegals' work included monitoring the status of various tasks, coordinating the closings of numerous property sales, revising documents as directed by the Receiver, assisting with claimant communications and distributions, maintaining records, and other activities. Doc. 1400-4. The of-counsel attorney's work primarily included work on issues related to claims distributions, including calls with claimants and their representatives, tracking down missing claimants, and handling issues related to reissuing payments and the death of claimants. *Id.*

Based on my own experience and the rates typically awarded to court-appointed receivers in the Middle District of Florida (*see* Docs. 586, 731, 830), the Receiver's requested hourly rate of $360, the of-counsel attorney's requested hourly rate of $240, and his paralegals' requested hourly rates of $125 to $135, are reasonable. *See, e.g.*, *F.T.C. v. First Choice Horizon LLC*, Case No. 6:19-cv-1028-Orl-40LRH, 2020 WL 1431526, at *2-3 (M.D. Fla. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 1431601 (M.D. Fla. Jan. 31, 2020) (considering several factors in concluding that an hourly rate of $350 was reasonable for a court-appointed receiver in the Middle District of Florida); *F.T.C. v. MOBE Ltd.*, Case No. 6:18-cv-862-Orl-37DCI, 2018 WL 4782327, at *3 (M.D. Fla. Sept. 17, 2018), *report and recommendation adopted*, 2018 WL 4774960 (M.D. Fla. Oct. 3, 2018) (finding a rate of $330 per hour a

10

reasonable rate for compensating a court-appointed receiver in the Middle District of Florida); *F.T.C. v. Life Mgmt. Serv. of Orange Cnty., LLC*, Case No. 6:16-cv-982-Orl-41TBS, 2017 WL 4861467, at *3 (M.D. Fla. Aug. 9, 2017), *report and recommendation adopted*, 2017 WL 4877460 (M.D. Fla. Oct. 30, 2017) (finding a rate of $325 per hour a reasonable rate for compensating a court-appointed receiver in the Middle District of Florida and finding reasonable 129.2 hours expended by such receiver); *Fed. Trade Comm'n, Plaintiff, v. Legion Media, LLC, et al.*, No. 8:24-CV-1459-JLB-AAS, 2025 WL 3162342, at *2 (M.D. Fla. Aug. 28, 2025) (hourly rate of $150.00 for paralegal working for receiver was reasonable); *Fed. Trade Comm'n v. E.M. Sys. & Servs., LLC*, No. 8:15-CV-1417-T-23AEP, 2018 WL 1801214, at *6 (M.D. Fla. Jan. 22, 2018), *report and recommendation adopted*, No. 8:15-CV-1417-T-23AEP, 2018 WL 1801216 (M.D. Fla. Feb. 15, 2018) ($225.00 for associates and an attorney listed as "of counsel" was reasonable).

Furthermore, the hours expended by the Receiver, his of-counsel attorney, and his paralegals during the period from October 1, 2025 through December 31, 2025 do not appear excessive, redundant, or unnecessary. During the relevant period, the Receiver and his professionals continued working with claimants regarding the third distribution; closed on one of the three properties from the 23rd Auction for net proceeds of $59,551.72; closed on all four properties sold through the 24th Auction with net proceeds of

11

$319,603.27; collected $300 in sales agent claw-back claims; continued work on the Treasure Island condominiums; continued working on the operations of Commerce Brewing; and continued monitoring the progress of Bolero Snort brewery. Doc. 1400 p. 2–3.

I find the 106.90 hours expended by the Receiver and the 156.80 hours expended by the paralegals and the of-counsel attorney, from October 1, 2025 to December 31, 2025, to be fair and reasonable, considering the activities performed and the results achieved. Thus, I recommend the Court award the Receiver the requested $38,659.71, which includes $38,484.00 in fees for professional services and $175.71 in costs, and his firm the requested $23,536.00.

### B. JND[4]

The Receiver retained the law firm of JND to assist as co-counsel for legal services (*see* Doc. 278), which the Court approved (Doc. 282). As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JND agreed to the reduced rates for attorneys and paralegals as provided in the G&P fee schedule. Doc. 1400 p. 12; *see also* Doc. 1400-5. Based on those rates, the Receiver asks the Court to award JND

---

[4] The firm name changed from Johnson, Cassidy, Newlon & DeCort (*see* Doc. 975 at p. 3) to Johnson, Newlon & DeCort ("JND") since entry of the Order Appointing the Receiver (*see* Doc. 936).

$21,324.93, which includes $21,070.50 in fees for professional services rendered and $254.43 in costs incurred from October 1, 2025 through December 31, 2025. Doc. 1400 pp. 12, 15.

JND assisted the Receiver with issues related to sales of coins, title transfers, issues related to the clawbacks, and administration of the claims process. Doc. 1400-5, 1400-6. In this capacity, JND corresponded with the claimants, reviewed bank statements, prepared and reviewed title transfers, and drafted and revised court documents. Doc. 1400-5, Doc. 1400-6. JND's time and fees for services rendered on this matter for each Activity Category are as follows:

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 6.30 | $2,205.00 |
| Asset Analysis and Recovery | 15.70 | $5,430.50 |
| Business Operations | 6.90 | $1,985.00 |
| Case Administration | 5.90 | $2,065.00 |
| Claims Administration | 69.20 | $9,385.00 |
| **TOTAL** | **103.40** | **$21,070.50** |

Doc. 1400 p. 13; Doc. 1400-5, Doc. 1400-6.

A summary of the professionals' hours rendered during the time covered by this Application is set forth below:

| Professional | Position | Experience | Hours | Rate | Fees |
|---|---|---|---|---|---|
| Katherine Donlon | Partner | 30 years | 32.70 | $350.00 | $11,445.00 |
| Mary Gura | Paralegal | | 71.30 | $135.00 | $9,625.50 |
| **Total Fees:** | | | 104.00 | | **$21,070.50** |

Doc. 1400 p. 13.

In addition to legal fees, JND seeks the following costs:

| Costs | Total |
|---|---|
| Delivery/Mail | $159.93 |
| Certified Copies | $94.50 |
| **Total Costs:** | **$254.43** |

Doc. 1400 p. 14.

Upon review of the billing records, the hours JND expended appear fair and reasonable for the services performed and present no redundancies or superfluities. Docs. 1400-5, 1400-6.

As discussed above, the proposed rates are reasonable for the Middle District of Florida. *See Hardco Holding Grp. LLC*, No. 6:17-cv-1257-Orl-37TBS, 2017 WL 4772624, at *4-5, *report and recommendation adopted*, 2017 WL 4700396; *Life Mgmt. Serv. of Orange Cnty., LLC*, 2017 WL 2869535, at *2-4, *report and recommendation adopted*, 2017 WL 4877460. In addition, the costs incurred appear to be necessary and reasonable. Doc. 1400 p. 13. I

recommend that JND be awarded $21,324.93, which includes $21,070.50 in fees for professional services and $254.43 in costs.

### C. Jared J. Perez, P.A.

The Receiver also retained Jared J. Perez, P.A. (Doc. 610) for assistance with his duties. The District Judge approved the retention of those services. Doc. 639.  From October 1, 2025 to December 31, 2025, Jared J. Perez, P.A. expended 2.6 hours preparing for and attending a monthly operations meeting and another (undescribed) call. Doc. 1400-7.

This is the second quarter in a row that Mr. Perez's contribution has been limited to attendance at meetings. *See* Doc. 1379-6. Given that he is performing no other work on which he needs to update the Receiver, I find his attendance on these meetings to be unnecessary. Therefore, I recommend that the request that Jared J. Perez be awarded $910.00 be denied.

### D. Levun Goodman & Cohen, LLP

The Receiver also engaged Levun Goodman & Cohen, LLP to determine if an IRS private letter ruling was feasible in connection with the distribution of additional funds in the third interim distribution. Doc. 1400 p. 17. The District Judge has not explicitly approved the retention of Levun Goodman & Cohen, LLP, although this Court has previously dispersed payments to the firm incurred as "costs" to the Receiver's approved accountant, PDR. Doc. 1385 p. 3; Doc. 1390 p. 17–18; *see also* Doc. 85 (approving PDR). Here, too, Levun

15

Goodman & Cohen, LLP worked directly with PDR. Doc. 1385 p. 4. Given that PDR—and not the Receiver—retained Levun Goodman & Cohen, LLP, and given the Court's prior approval of payment for Levun Goodman & Cohen's services, I find that Court approval of Levun Goodman & Cohen, LLP was not required in this instance.

During the relevant quarter, Levun Goodman & Cohen, LLP spent 0.25 hours researching whether an IRS private letter ruling was feasible in connection with the distribution of additional funds in the third interim distribution. Doc. 1400-8.

The Receiver now seeks an award of $121.25 in fees for Levun Goodman & Cohen, LLP based on the 0.25 hours expended by SK Miller at an hourly rate of $485. Doc. 1400-8.

The hourly rate appears reasonable given Mr. Miller's tax specialization and is in line with the rates previously awarded to tax attorneys in this matter. *See* Doc. 1017 p. 23 (awarding $505 hourly rate to attorneys who specialized in tax law and collecting cases in support). Upon review of the time records, the hours do not appear excessive, redundant, or unnecessary. Accordingly, I recommend an award of $121.25 in fees to Levun Goodman & Cohen, LLP.

### E. PDR

The Receiver also retained the services of PDR to assist with accounting

and tax matters. Doc. 1400 p. 17. The District Judge approved the retention of

PDR and limited its role to internal Receivership accounting, financial

reporting, tax preparation and filing, and internal accounting for EquiAlt. *See*

Doc. 85. The District Judge directed the Receiver to report the maximum

number of hours it anticipated PDR would expend and, should it become

apparent that PDR's hours would exceed the anticipated maximum, to submit

a motion to that effect. *Id.* In approving the retention of PDR, the District

Judge approved the following hourly rates for PDR employees working on this

matter: $320 for partners/principals; $210 for managers; $180 for senior

associates; and $125 for staff members. *Id.*

Originally, the Receiver reported that a principal of PDR agreed to a

maximum of $15,000 for PDR's services for each of the first three months and

then a maximum of $6,000 for each month thereafter. Doc. 87 p. 3.

Subsequently, the Receiver filed a motion seeking fees for PDR above the

previously approved limits, because PDR had expanded its role in this case.[5]

Doc. 572, p. 25–26. In that motion, the Receiver explained that the monthly

---

[5] PDR's role in the case expanded when EquiAlt's senior accounting
employee was terminated at the end of February 2022. Doc. 572 p. 25.
Following the termination of this position, PDR assumed the duties of that
position. *Id.* The Receiver has not specified which duties this encompasses. *Id.*

17

limits were "no longer reflective of reasonable monthly fees." *Id*. at p. 26. The Court granted the motion and awarded fees over the previous budget. Doc. 586. Since then, the Receiver has routinely requested fees above the previously approved budget (Doc. 614 p. 27; Doc. 710 p. 29; Doc. 804 p. 27; Doc. 1089, p. 23–24), and the Court has routinely granted such requests (Doc. 586 p. 3; Doc. 731 p. 3; Doc. 830 p. 3; Doc. 889 p. 3; Doc. 1151 p. 3).

**Here, the Receiver again seeks an award above the originally approved budget.** The Receiver seeks $16,061.25 for fees and disbursements for accounting, consulting, and tax services provided by PDR during the relevant period. Doc. 1400 pp. 17–18; Doc. 1400-9. Specifically, PDR reviewed financials, handled tax issues, and worked on issues related to claimant payments. Doc. 1400-9. The requested fees include hourly rates consistent with the original rate proposal: $320 for Partner William Price, $210 for Manager Matthew Low, $155 for Manager Gail Heinold, and $125 for Staff Members Sharon O'Brien and Taylor Jones. Doc. 1400 p. 18. Upon review, the hours PDR spent on accounting and tax matters over the three-month period appear reasonable. Doc. 1400.

**If, and only if, the Court intended that its initial deviation from the budget would render void the originally proposed budget limit and would authorize exceeding the budget every quarter thereafter**, I

recommend fees be awarded in the amount of $16,061.25 for the work performed by PDR.

### F. E-Hounds

For computer forensics services, the Receiver retained E-Hounds, which the District Judge authorized in the Order Appointing the Receiver. Doc. 11, ¶ 3. Relevant here, E-Hounds maintains and updates a proprietary review platform, which collects and preserves electronic records. Doc. 1400 p. 20.

The Receiver seeks an award of $7,015.00 for costs incurred by E-Hounds. Doc. 1400 p. 18. This award includes $3,570.00 in charges for use of the proprietary platform; $3,375.00 in charges for use of the platform by additional users; and $70 in fees for "Expert Configuration Cancel Auto Renew (Unused SSL GoDaddy)." *Id.* p. 19; Doc. 1400-10.

The fees and costs are reasonable for collecting and preserving electronic records to facilitate review of electronic data. *See, e.g., SEC v. Kinetic Inv. Grp.*, Case No. 8:20-cv-394-MSS-SPF (M.D. Fla.) (Docs. 73 and 101); *CFTC v. Oasis Int'l Grp. Ltd.*, Case No. 8:19-cv-886-VMC-SPF (M.D. Fla.) (Docs. 203 and 207). I recommend that E-Hounds be awarded $7,015.00 for services provided and costs incurred between October 1, 2025 and December 31, 2025.

### G. Omni

The Receiver retained Omni to assist with the administration of the claims process (*see* Doc. 335), which the District Judge approved (Doc. 347).

According to the Receiver, "Omni is an information management company that provides administrative services and technology solutions to simplify claims administration." Doc. 1400 pp. 19–20.

Omni assists in mailing, determining the correct addresses for returned mail, addressing clerical deficiencies, performing data entry for the returned Proof of Claim Forms, and processing distributions. Doc. 1400 p. 20. The Standard Services Agreement between the Receiver and Omni (Doc. 335-5) indicates that Omni will generally charge hourly rates ranging from $35 to $205, subject to increases not to exceed 10% per annuum, which the District Judge adopted in authorizing the Receiver to retain Omni (Doc. 347 p. 4).

The Receiver now seeks fees in the amount $911.32 for 13.30 hours expended by several Omni employees. Docs. 1400-11, 1400-12. As detailed in Omni's timesheet, Omni employees reviewed and responded to creditors' email inquiries and corresponded regularly with JND. Doc. 1400-11.

Upon review of the time records, the hours do not appear excessive, redundant, or unnecessary, and the hourly rate falls within that proposed to the Court. Docs. 1400-11, 1400-12. Accordingly, I recommend that the Court award Omni $911.32 in fees.

### III.  Conclusion

For these reasons, I respectfully **RECOMMEND**:

1. The Receiver's Unopposed Twenty-Fourth Quarterly Fee Application for Order Awarding Fees and Reimbursement of Costs to Receiver and His Professionals (Doc. 1400) be granted in part and denied in part;

2. The requested fees and costs be awarded to:

   a. The Receiver, in the amount of $38,659.71, and his firm in the amount of $23,536.00;

   b. JND in the amount of $21,324.93;

   c. Levun Goodman & Cohen, LLP, in the amount of $121.25;

   d. PDR, in the amount of $16,061.25, if the Court meant for its order permitting the initial request for deviation from the budget to render void the originally proposed budget;

   e. E-Hounds, in the amount of $7,015.00; and

   f. Omni, in the amount of $911.32.

3. That the motion otherwise be denied.

**RESPECTFULLY SUBMITTED** on March 30, 2026.

NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE

21

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.